**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, Samuel James Shaw, and Joshua Bosire, individually and on behalf of a class,<br><br>*Plaintiffs*,<br><br>v.<br><br>Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol, Master Trooper Doug Schulte in his individual capacity, and Technical Trooper Brandon McMillan in his individual capacity,<br><br>*Defendants*. | **6:19-cv-01343-EFM-GEB**<br><br>**FIRST AMENDED COMPLAINT-CLASS ACTION**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiffs Blaine Shaw, Samuel Shaw, and Joshua Bosire, on behalf of themselves and others similarly situated allege as follows:

<u>**INTRODUCTION**</u>

1.      This case is a class action for declaratory and injunctive relief challenging the Kansas Highway Patrol ("KHP")'s practice of targeting motorists traveling on I-70 for unlawful prolonged detentions based on their out-of-state license plates and/or travel plans to Colorado. Many of these out-of-state motorists and their passengers are people of color.

2.      KHP has designated I-70 as a "drug corridor"/"known trafficking corridor" and trained its officers to scrutinize motorists traveling to and from Colorado due to that state's legalization of medicinal and recreational marijuana.[1]

---

[1] Sarah Washburn, *Advanced Interdiction Case Outline* (Kan. Highway Patrol, 2019), pp. 4-5, Ex.1 hereto.

3.      KHP has acknowledged that their troopers treat out-of-state motorists and Colorado-based travel plans as indicia of criminal activity.[2] Former Lt. Col. Randy Moon explained that troopers could reasonably expect that travelers "are going to come across the country to go to [Colorado] to purchase marijuana, and then leave [Colorado] and go back to where they came from . . . ."[3]

4.      KHP stop statistics[4] and civil forfeiture actions[5] reveal drivers with out-of-state plates are disproportionately policed by KHP.

5.      In addition to targeting drivers from out-of-state, KHP maintains a practice of scrutinizing drivers and passengers with travel plans to or from Colorado and other states the agency has designated as "drug source" areas.

6.      In particular, and in direct violation of the prohibition established by the United States Tenth Circuit Court of Appeals,[6] KHP maintains a practice of illegally detaining drivers for

---

[2] *Id.*

[3] Katie Moore, *KHP says out-of-state license plates not a factor in stops; agency can't provide records substantiating claim,* TOPEKA CAPITOL JOURNAL, Mar. 4, 2017, https://www.cjonline.com/news/crime-courts/2017-03-04/khp-says-out-state-license-plates-not-factor-stops-agency-can-t-provide.

[4] William Joy, *Law enforcement tool or highway robbery? Civil asset forfeiture law is centuries old,* KMBC 9, May 16, 2018, https://www.kmbc.com/article/civil-asset-forfeiture-in-kansas-law-enforcement-tool-or-highway-robbery/20268079 ("Records obtained by KMBC 9 News showed in the past three years, 90 percent of the Kansas Highway Patrol's significant seizures have been vehicles with out-of-state plates. . . . In 2017, vehicles with Kansas license plants accounted for just 7 percent of stops by the Highway Patrol. Neighboring Missouri tied Colorado for the top of the out-of-state list—along with vehicles licensed out of California.")

[5] Kan. Bureau of Investigation, *Kansas Asset Forfeiture Reporting,* KANSAS ASSET SEIZURE AND FORFEITURE REPOSITORY, *available at* https://kasfr.kbi.ks.gov/res/p/download/(last downloaded Jan. 23, 2020) (capturing civil forfeiture data and revealing that 27 of 28—or 96%—of KHP forfeiture actions on I-70 from 2018 to 2019 targeted out-of-state drivers.

[6] *Vasquez v. Lewis,* 834 F.3d 1132, 1138-39 (10th Cir. 2016).

WA 14119616.5

questioning beyond the purpose of the stop to inquire about their travel plans, absent reasonable suspicion of criminal activity.

7.       KHP also maintains and continues a practice of unlawfully detaining drivers for canine drug searches based only on the drivers' out-of-state plates and/or Colorado-based travel plans (referred to herein as "innocent-travel indicia") and, absent any other facts that would support reasonable suspicion, are solely relying on factors consistent with innocent travel (in combination, referred to herein as "factors consistent with innocent travel").

8.       Kansas state courts regularly suppress evidence seized by KHP troopers where, in their decision to detain the driver for a canine drug search, the KHP improperly relied on the driver's travel plans to or from states that have legalized cannabis.[7]

9.       Similarly, in civil forfeiture actions, KHP troopers have pervasively identified the driver's travel origin or destination as the primary reason for detaining drivers for a canine drug search.[8]

10.       Joshua Bosire, Blaine Shaw, and Samuel Shaw (collectively referred to herein as "Named Plaintiffs") were all in cars with out-of-state plates on I-70 to or from Colorado when they were stopped by KHP and detained while awaiting a canine unit absent reasonable suspicion.

---

[7] *See e.g., State v. Gonzalez*, No. 119,212, 2019 WL 6334041, at **2-3, 6 (Kan. Ct. App. Nov. 27, 2019); *State v. Arrizabalaga*, 57 Kan. App. 2d 79, 96, 447 P.3d 391, 403 (2019);  Motion to Quash Stop, Detention, and Arrest and Suppress Evidence at p.3, *State of Kansas v. Joshua C. Jones*, No. 2018-CR-000674 (Dist. Ct. Shawnee County Feb. 24, 2019) (Ex. 2 hereto); Minutes of hearing, *Jones,* No. 2018-CR-000674 (Dist. Ct. Shawnee County Mar. 22, 2019) ("Court grants Defendant's Motion to Suppress Evidence") (Ex. 3 hereto); *see also* Motion to Suppress Evidence at pp. 4-6, *State of Kansas v. Marquis Burton*, 2018-CR-003217 (Dist. Ct. Shawnee County May 2, 2019) (Ex. 4 hereto) (case dismissed by state after filing, *see* Ex. 5 hereto).

[8] *See e.g.,* Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Lt. John Rule at ¶ 1.c., *State of Kansas, ex. rel. Kansas Highway Patrol v. $27,000 in US Currency, M/L 3 Marijuana Cigarettes*, No. 2019-cv-000014 (Dist. Ct. Wabaunsee County Feb. 19, 2019) (Ex. 6 hereto); Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Trooper Bryan Clark at ¶ 1.c., *State of Kansas ex. Rel. Kansas Highway Patrol v. $16,000 in U.S. Currency, M/L*, 2019-cv-000032 (Dist. Ct. Wabaunsee County Aug. 6, 2019) (Ex. 7 hereto).

WA 14119616.5

11. As regular innocent travelers on I-70 who travel through Kansas to visit Colorado, Named Plaintiffs fear that absent an injunction, they will be subject to future unlawful detentions on account of their travel plans to a "drug source state."

12. Through proper training, education and discipline, Defendant Herman Jones, as Superintendent of the KHP, has ultimate statutory authority to oversee and direct the conduct of KHP troopers and specifically to prevent future unlawful detentions of Named Plaintiffs and similarly situated individuals.

13. Defendant Master Trooper Doug Schulte violated Named Plaintiffs' constitutional rights, by detaining them for a canine search absent reasonable suspicion of criminal activity.

14. Defendant Trooper Brandon McMillan violated Plaintiff Joshua Bosire's constitutional rights by detaining him for a canine search absent reasonable suspicion of criminal activity.

15. Named Plaintiffs bring this action against Defendant Jones, in his official capacity, and against the individually named troopers under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to and the Privileges and Immunities Clause in Article IV of the United States Constitution.

## JURISDICTION AND VENUE

16. This civil rights action arises under 42 U.S.C. § 1983 and seeks vindication of Named Plaintiffs' rights under the Fourth and Fourteenth Amendments to and the Privileges and Immunities Clause in Article IV of the United States Constitution.

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

18. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §2201 and 2202.

WA 14119616.5

19.     Venue is properly set within the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391.

## PARTIES

20.     Plaintiff Joshua Bosire ("Bosire") is a Black man in his mid-30s who resides in Wichita, Kansas, where he works as an engineer in the aviation industry and is pursuing a Master's Degree in engineering management at Wichita State University. Mr. Bosire travels on I-70 twice a month to visit his 4-year old daughter who resides in Littleton, Colorado.

21.     Elontah Blaine Shaw ("B. Shaw") is a Native American man in his mid-30s who resides in Oklahoma City, Oklahoma. He is a member of the Osage Nation and wears a scalplock. Mr. B. Shaw is employed as an Uber driver. He travels on I-70 through Kansas several times per year to visit family and friends in Colorado.

22.     Samuel Shaw ("S. Shaw") is a Native American man who resides in Oklahoma City, Oklahoma. He regularly travels on I-70 through Kansas to Colorado to visit family as both a passenger and a driver.

23.     Herman Jones is the Superintendent for the Kansas Highway Patrol and has been since April 2019 ("Defendant Jones"). Defendant Jones has authority to issue orders to members of the highway patrol specifying duty assignments and limitations upon the duties of the members and is empowered to make all necessary rules and regulations for the conduct of the members of the state highway patrol.[9]

24.     Master Trooper Doug Schulte is a Kansas Highway Patrol officer assigned to Troop D and is based in Ellis County, Kansas ("Defendant Schulte"). He participated in the unlawful detentions of Messrs. Bosire, B. Shaw, and S. Shaw. At all times relevant to this Complaint,

---

[9] K.S.A. § 74-2107.

WA 14119616.5

Defendant Schulte has been employed by KHP and acting under the color of state law. Named Plaintiffs sue Defendant Schulte in his individual capacity.

25.     Trooper Brandon McMillan is a Kansas Highway Patrol officer assigned to Troop D and is based in Ellis County, Kansas ("Defendant McMillan").[10] He unlawfully detained Mr. Bosire on February 9, 2019. At all times relevant to this Complaint, Defendant McMillan has been employed by KHP and acting under the color of state law. Mr. Bosire sues Defendant McMillan in his individual capacity.

## FACTUAL ALLEGATIONS

### The KHP's General Practice of Targeting Out-of-State Drivers and Colorado-Travelers

26.     Colorado legalized cultivation, sale, and possession of medicinal marijuana in 2010 and recreational marijuana in 2014.[11]

27.     Kansas law enforcement quickly characterized Colorado's marijuana legalization efforts as a threat to Kansas's public health and safety.[12]

28.     In 2016, Kansas Attorney General Derek Schmidt issued a survey to law enforcement agencies in an attempt to capture the impact Colorado-sourced cannabis was having on Kansas.[13]

---

[10] Collectively, Defendants Jones, Schulte, and McMillan are referred to herein as "Defendants".

[11] Colo. Const. Art. XVIII, Sec. 16.

[12] Oliver Morrison, *Colorado pot isn't affecting Kansas like you think,* THE WICHITA EAGLE, Oct. 12, 2016 (quoting Attorney General Derek Schmidt, "Here you have our sister state—we love them, we get along great with them most of the time. But doggone it, they have done something that federal law says they may not do, and it's Kansans who are paying a price for that.")

[13] *"Legalization" of Marijuana in Colorado: The Impact on Kansas*, Kansas Attorney General, Oct. 18, 2016 available at https://ag.ks.gov/docs/default-source/documents/colorado-marijuana-report.pdf?sfvrsn=9cadd81a_12.

WA 14119616.5

29.     KHP replied to the Attorney General's survey and reported a significant increase in their seizures of marijuana originating from Colorado—suspecting that 69% of all marijuana seized in 2015 came from Colorado.[14]

30.     As a result of Colorado's decision to legalize marijuana, KHP increased scrutiny of drivers traveling to and from Colorado.[15]

31.     Defense attorneys reported an uptick in clients with Colorado travel plans being targeted by KHP troopers for stops, prolonged questioning, and detentions.[16] This trend was noted as particularly true for out-of-state drivers.

32.     Attorney Christopher Joseph succinctly explained KHP's practice of targeting out-of-state drivers going to or leaving Colorado, noting "It's not lawful, but they do it. They know they do it. They're trained to do it . . . ."[17]

33.     KHP   stop   and   forfeiture   data   demonstrates   out-of-state   drivers   are disproportionately stopped by KHP troopers and subjected to civil asset forfeiture proceedings at higher rates.

---

[14] *Id.*

[15] Bruce Kennedy, *Colorado's legal cannabis not welcomed in neighboring states*, CBS NEWS, Jan.   17,   2014,   https://www.cbsnews.com/news/colorados-legal-cannabis-not-welcomed-in-neighboring-states/.

[16] *Id.* (quoting defense attorney Brian Lenninger, "The Kansas Highway Patrol and police agencies out near the border are really looking hard for people who are bringing marijuana into the state from Colorado . . ."); Joy, n.4 *supra* (quoting defense attorney Christopher Joseph "'It works. It makes sense,' Joseph said about stopping out-of-state vehicles. 'To say that they don't do that seems silly because of course they do.'""); Tony Rizzo, *Some note an uptick in marijuana busts near   the   Colorado   border*, THE   KANSAS   CITY   STAR,   Feb.   12,   2014, https://www.kansascity.com/news/local/article338976.html (quoting Sean McAllister, a Denver criminal defense attorney and spokesman for the Colorado chapter of the National Organization to Reform Marijuana Laws, "I've had several clients pulled over by police in Kansas, Missouri and Nebraska," McAllister said. "I think there's been a lot of profiling of Colorado plates.")

[17] Moore, n.3 *supra*.

WA 14119616.5

34.     Drivers with out-of-state plates made up 93% of KHP stops in 2017.[18]

35.     Further, out-of-state motorists driving through Kansas on I-70 constituted 96% of all reported KHP civil forfeitures from 2018 to 2019.[19] Two-thirds of those motorists were either drivers of color or had passengers of color in their vehicle.[20]

36.     KHP has admitted that Colorado-traveling, out-of-state drivers are proper targets for trooper suspicion through one of the agency's supervisory officers. In a 2017 Topeka Capitol Journal article, former KHP Lt. Randy Moon noted that "it's not an unreasonable expectation" for troopers to assume drivers with out-of-state plates headed to or returning from Colorado are trafficking marijuana.[21]

37.     KHP troopers engage in unconstitutional detentions of drivers with out-of-state plates in their hunt for Colorado-sourced marijuana.

### The KHP's Unconstitutional Practice of Prolonging Detentions After a Stop Has Ended to Ask Questions About Travel Plans

38.     KHP maintains a practice of detaining drivers on I-70 after the initial purpose of their traffic stop has been resolved in order to question them about their travel plans absent consent or reasonable suspicion of criminal activity.[22]

39.     KHP troopers typically engage in this practice in an attempt to engage stopped drivers in a purported consensual encounter. They frequently do this through a maneuver known as "the Kansas Two Step" or some similar procedure.[23]

---

[18] Joy, n.4 *supra*.

[19] *See* n.5 *supra*.

[20] *Id.* (18 or the 27 KHP stops of out-of-state drivers on I-70 resulting in forfeiture included at least one person of color in the vehicle.)

[21] Moore, n.3 *supra*.

[22] *See Gonzalez*, No. 119,212, 2019 WL 6334041, at *2.

[23] *Id.*

WA 14119616.5

40.     The Two Step maneuver is described by the Kansas Court of Appeals in *Gonzalez* as follows: "After telling Gonzalez to have a safe trip, Trooper Marten turned his body, took two steps toward his patrol vehicle, turned back around, and, through the Escalade's still open passenger window, asked Gonzalez if he would answer a few more questions. This maneuver is known as the 'Kansas Two Step' and is taught to all Kansas Highway Patrol officers as a way to break off an initial traffic detention and attempt to reengage the driver in what would then be a consensual encounter." No. 119,212, 2019 WL 6334041, at *2.

41.     The Kansas Two Step is included in KHP's training materials.[24]

42.     KHP troopers who are unable to obtain voluntary consent from a driver to answer additional questions will block the detained vehicle from safely re-entering traffic while questioning its occupants about their travel plans and whether there is anything illegal in the vehicle.[25]

43.     In particular, KHP troopers will detain drivers based on innocent-travel indicia for this type of non-consensual questioning after the original purpose of the traffic stop has dissipated.[26]

### *KHP Troopers Improperly Rely on Out-of-State License Plates and Colorado Travel Plans to Justify Detentions for Canine Drug Searches*

44.     KHP maintains a practice of impermissibly relying on innocent-travel indicia to justify detaining innocent travelers on I-70 for canine drug searches.

---

[24] *See e.g.* Lt. Kirk Simone, EPIC Operation Pipeline: Passenger Vehicle Drug Interdiction, Kansas Highway Patrol, Ex. 8 hereto at pp. 16-17 of 31 (educating KHP troopers to "complete traffic enforcement action and return all paperwork" to the driver, then to "ask the driver if you c[an] talk to him," asking six "interdiction questions" about weapons, marijuana, cocaine, methamphetamine, heroin and large amounts of cash, and then, if the trooper "see[s] indicators," to "ask for consent" to search the vehicle.)

[25] *Id.* at p. 15-17 of 31.

[26] *Id.* p. 15 of 31.

WA 14119616.5

45.     On information and belief, KHP troopers have engaged in the practice of unlawfully detaining drivers on I-70 based on factors consistent with innocent travel for canine searches since at least 2011.[27]

46.     In particular, KHP troopers who are unable to obtain consent to search a driver's vehicle will justify their decision to detain a driver on I-70 on the basis of innocent-travel indicia. This is true even when the trooper is unable to identify other facts that would support reasonable suspicion.

47.     KHP troopers typically execute the practice of impermissibly detaining a driver based on factors consistent with innocent travel after employing "the Kansas Two Step" or a similar technique.

48.     Specifically, the unlawful detention described above begins when a KHP trooper stops a vehicle with out-of-state plates on I-70 under the pretense of a minor traffic violation and conducts some variation of the following:

    a.     The trooper issues the driver a ticket or warning for the infraction or tells the driver that they are receiving the ticket/warning;

    b.     Without breaking contact with the vehicle, the trooper asks the driver to agree to answer "a quick question" or "a few more questions;"

    c.     The trooper then asks about the driver's travel plans, if not already established during questioning about the initial stop;

    d.     If the driver declines to answer or provides travel details that indicate they are coming from or going to Colorado, the trooper asks the driver if they are transporting anything illegal;

---

[27] *See e.g.* Affidavit of Richard Jimerson at ¶¶ 5 & 9, *Vasquez v. Lewis*, No. 5:12-cv-04021-DDC-JPO, Doc. 70-3 (D. Kan. Aug. 1, 2013) (Ex. 9 hereto) (claiming that Aurora, Colorado travel origin and out-of-state destination formed a basis for detention for canine unit search); Deposition Transcript of Trooper Dax Lewis at 59:16-21, *Vasquez,* No. 5:12-cv-04021-DDC-JPO, Doc. 70-6 (Ex. 10 hereto) ("Q: Is it your testimony today that only the Denver area carries significance in drug trafficking, not the rest of Colorado? A: No, not—not totally. That is—that is the main area where we see most of our seizures coming from in the Colorado area.").

WA 14119616.5

     e.      When the driver denies transporting anything illegal, the trooper requests consent to search the car; and/or,

     f.      When the driver declines to give consent to search, the trooper detains the driver for a canine drug search.

49.     In 2016, the Tenth Circuit found that KHP troopers illegally relied on the fact that a driver was traveling from Colorado and other innocuous conduct to support their "reasonable suspicion" that the driver was trafficking drugs. *Vasquez*, 834 F.3d 1132. "[I]t is time to abandon the pretense that state citizenship is a permissible basis upon which to justify the detention and search of out-of-state motorists, and time to stop the practice of detention of motorists for nothing more than an out-of-state license plate." *Id.* at 1138.

50.     During the stop in *Vasquez*, the troopers used the "Kansas Two Step" to improperly detain him for a canine drug search.[28]

51.     Courts across Kansas have suppressed evidence obtained by KHP troopers on I-70 who employed the "Kansas Two Step" to improperly detain drivers for a canine search based on factors consistent with innocent travel.[29] Kansas courts have also decried such stops against other Kansas law enforcement agencies.[30]

---

[28] Transcript at 5:2-6:15, *Vasquez,* No. 5:12-cv-04021-DDC-JPO, Doc. 37, (D. Kan. Sept. 18, 2012) (Ex. 11 hereto).

[29] *See e.g. Gonzalez*, No. 119,212, 2019 WL 6334041, at **2 & 5; Ex 2, Motion to Quash Stop, Detention, and Arrest and Suppress Evidence at pp. 1, 3, 12, 16, *Jones*, No. 2018-CR-000674 (granted, *see* Ex. 3); *United States v. $39,440.00 in U.S. Currency*, 39 F. Supp. 3d 1169, 1171-72, 1172 & 1174 (D. Kan. 2014) ("[Trooper] Littrell told them that they were free to go. The video shows Littrell turn towards his patrol vehicle, take a couple of steps and then turn back around. Littrell immediately leaned back into the passenger window and asked if he could ask them some more questions." Littrell relied on their Colorado travel plans as a basis for continued detention.); *United States v. Medina*, No. 14-40019-EFM-1, 2014 WL 3107965, at *1 (D. Kan. July 8, 2014) (J. Melgren suppressing evidence, describing a break in contact much like the Two Step maneuver, and the trooper's reliance on travel plans as a basis for suspicion); *see also,* Ex. 4, Motion to Suppress Evidence at pp. 1-6, 9-10, 12, *Burton*, 2018-CR-003217 (case dismissed by state after filing, *see* Ex. 5).

[30] *See State v. Lowery*, 308 Kan. 359, 360-363 & 370, 420 P.3d 456, 458 (2018) (in a similar stop, affirming suppression of evidence seized by the Junction City police); *State ex rel. Geary Cty.*

WA 14119616.5

52.     KHP's practice of illegally detaining drivers for canine drug searches is statewide in scope. KHP troopers who police different parts of the state have employed nearly identical maneuvers when unlawfully detaining a driver based on factors consistent with innocent travel.[31]

53.     KHP troopers have also provided affidavits in which they testify to using this maneuver to detain drivers for canine drug searches.[32]

### KHP Troopers Are Trained to Rely on An Individual's Travel Origin or Destination to Justify Detaining Drivers for a Canine Drug Search

54.     Targeting drivers traveling from or destined for Colorado is consistent with KHP's long-standing practice of relying on a driver's origin and destination as indicia of criminal activity.[33]

---

*Sheriff's Dep't v. One 2008 Toyota Tundra, VIN: 5TBBV54158S517709*, 55 Kan. App. 2d 356, 371, 415 P.3d 449, 460 (2018) (affirming suppression of evidence seized by the Geary County Sheriff's Department); *State v. Wendler*, 47 Kan. App. 2d 182, 203, 274 P.3d 30, 44 (2012) (in a similar stop, affirming suppression of evidence seized by the Topeka police).

[31] *See e.g. Gonzalez*, No. 119,212, 2019, WL 6334041, at *1 (stop occurred on Interstate 35 in Coffey County, Kansas); *Arrizabalaga*, 57 Kan. App. 2d at 81, 447 P.3d at 394 (along I-70 near Salina); Ex. 6, Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Lt. John Rule at ¶ 2.a., *$27,000 in US Currency, M/L 3 Marijuana Cigarettes*, No. 2019-cv-000014 (stop occurred in Wabaunsee County, Kansas); Ex. 2, Motion to Quash Stop, Detention, and Arrest and Suppress Evidence at p.1, *Jones*, No. 2018-CR-000674 (stop occurred at exit 362 near Topeka); Ex. 7, Notice of Pending Forfeiture at Ex. A thereto, Affidavit of Trooper Bryan Clark at ¶ 1.a., *$16,000 in U.S. Currency, M/L*, 2019-cv-000032 (stop occurred near Wabaunsee, Kansas); *Medina*, No. 14-40019-EFM-1, 2014 WL 3107965, at *1 (stop occurred near exit 333 in eastern Kansas); *see also* Ex. 12, Motion to Suppress Evidence at pp. 4-6, *United States v. Muller*, No. 5:19-cr-40067-HLT, Doc. 43, (D. Kan. Dec. 27, 2019) (Ex. 12 hereto) (trooper based in Wabaunsee County, Kansas, asked the driver and passenger about their travel plans and rental car, gave the driver a verbal warning, told them to "have a safe trip," and then reengaged to "ask[] a few more questions." The trooper asked more about travel plans and then asked if there was anything illegal in the vehicle, eventually ordering a canine drug search when the passenger did not consent to a search.)

[32] *See* n.8 *supra* and exhibits cited there.

[33] Simone, n. 24 *supra*, Ex. 8 hereto at p. 15 of 31.

12

55.     KHP trains its troopers to use a driver's origin or destination to justify reasonable suspicion, directing troopers that a driver's travel plans in conjunction with other factors consistent with innocent travel is sufficient to justify a search.[34]

56.     KHP notably does not train its troopers that using travel origin plus other factors consistent with innocent travel violates the Fourth Amendment.[35]

57.     KHP does not include the 10th Circuit's decision in *Vasquez v. Lewis* in its advanced interdiction training curriculum.[36]

### *Defendant Jones Has the Responsibility and Authority to Remedy KHP's Unconstitutional Detention Practices*

58.     As the Superintendent of KHP, Defendant Jones is the chief officer of the statewide police force.

---

[34] Washburn, n.1 *supra*, Ex. 1 hereto at p. 5 ("In the 10th Circuit there are no published cases on the use of a "drug corridor." But all the unpublished cases will treat . . . [use of a "drug corridor"] as a potential factor leading to reasonable suspicion when taken as part of the totality of the circumstances"). And, in this particular case, KHP troopers are actively being taught something that is not true. *See e.g. Vasquez,* 834 F.3d at 1137 ("As we have said previously, 'that the defendant[ ] [was] traveling from a drug source city—or . . . a drug source state—does little to add to the overall calculus of suspicion.' . . . Such a factor is "so broad as to be indicative of almost nothing." (internal citations omitted)"); *$39,440.00 in U.S. Currency*, 39 F. Supp. 3d at 1174, n.4 ("The court, based on testimony in other I–70 cases, recognizes that persons who have been stopped on I–70 have been found to be in possession of illegal drugs. However, given the volume of traffic on I–70 and its status as the only east-west interstate highway through Kansas, it is hard to consider it to be a drug 'corridor.'"); *United States v. Simpson*, 609 F.3d 1140, 1152, n.3 (10th Cir. 2010) ("We also give no credence to Trooper Bowles's testimony that Mr. Simpson was traveling on a major 'drug corridor.' . . . 'Because law enforcement officers have offered countless cities as drug source cities and countless others as distribution cities, however, the probativeness of a particular defendant's route is minimal.'" quoting *United States v. White*, 584 F.3d 935, 951–52 (10th Cir. 2009); *United States v. Medina*, No. 14-40019-EFM-1, 2014 WL 3107965, at *7 (D. Kan. July 8, 2014) (same, J. Melgren citing *White*).

[35] Washburn, n.1 *supra.*

[36] *Id.*

WA 14119616.5

59.     Defendant Jones has statutory authority to direct the conduct of KHP troopers. Consequently, he is responsible for training, guiding, and directing KHP troopers in the performance of their jobs.

60.     He has authority to end KHP's unconstitutional practices described herein.

### *Named Plaintiffs' Individual Allegations*

61.     Each of the Named Plaintiffs have suffered constitutional violations as a direct result of KHP's unlawful detention practices. They have been targeted for detentions for canine drug searches because of innocent-travel indicia and absent reasonable suspicion. The Named Plaintiffs also regularly travel through Kansas to and from Denver, Colorado along I-70 and plan to travel this route in the future.

62.     Named Plaintiffs' uniform experiences demonstrate that KHP's unlawful stop and detention practices are pervasive and widespread. The events also illustrate the extreme likelihood that the Named Plaintiffs will be subject to unlawful detentions for canine drug searches in the future.

### *Joshua Bosire's Detention*

63.     As detailed above, Mr. Bosire is a Black man who travels monthly on I-70 to Denver, Colorado to see his daughter.

64.     Mr. Bosire uses a rental car for his winter trips as his own vehicle is not equipped for snow and bad weather. His rental cars usually have out-of-state license plates.

65.     On February 10, 2019, Mr. Bosire was on a return trip from visiting his daughter, driving a rented Nissan Altima with a Missouri license plate. He was eastbound on I-70 in Ellis County, Kansas, when he was stopped and detained by KHP troopers, Defendants Schulte and McMillan.

WA 14119616.5

66.     Defendant McMillan told Mr. Bosire he stopped him for exceeding the posted speed limit by six miles per hour.

67.     When Defendant McMillan first approached the car, he asked Mr. Bosire for his drivers' license and informed him that he was driving over the posted speed limit. Defendant McMillan next asked Mr. Bosire where he was traveling from. When Mr. Bosire responded that he was traveling from the west, Defendant McMillan asked him to clarify whether he was traveling from Colorado. Mr. Bosire declined to provide more detail or state the purpose of his trip.

68.     When Defendant Schulte arrived, Defendant McMillan conceded twice that he did not smell drugs in the car and did not believe he could hold Mr. Bosire for a canine search.

69.     Defendant Schulte encouraged Defendant McMillan to try to obtain consent from Mr. Bosire.

70.     Defendant McMillan returned to the car and informed Mr. Bosire that he was going to give him a warning for speeding. However, Defendant McMillan told Mr. Bosire that he was suspicious Mr. Bosire was transporting something illegal because he refused to clarify his travel plans.

71.     Defendant McMillan then asked Mr. Bosire for consent to search his car. When Mr. Bosire refused, Defendant McMillan stated that he was calling a canine unit.

72.     Mr. Bosire was detained for 36 minutes before the canine unit arrived. Mr. Bosire was forced to exit the car, undergo a pat down search of his person, and stand in the cold night while the dog circled the car. The canine searched the exterior of the car but did not alert. Mr. Bosire was released from the detention.

73.     As a result of the detention, Mr. Bosire suffered extreme anxiety and developed a fear of driving by himself at night.

74. Mr. Bosire refrained from visiting his daughter for two months after his detention out of fear that he would be detained at night again.

75. Since the detention, Mr. Bosire has changed his travel schedule to ensure he does not have to drive on I-70 at night, electing to stay in a hotel rather than continue to drive after the sun sets.

76. Additionally, Mr. Bosire missed several days of work to cope with the stress of the detention and in order to submit information requests.

77. At Mr. Bosire's request, the KHP performed an internal investigation of his stop. On August 9, 2019, the KHP published the findings of that investigation. The findings stated that "after considering everything we had access to, and comparing what we know with what occurred during [Mr. Bosire's] traffic contact, we have determined some of [Mr. Bosire's] concerns had merit. The findings concluded that "the length of time" Mr. Bosire was "detained was unnecessary given the suspicions . . . articulated" by Defendant McMillan.[37]

### *Elontah Blaine Shaw's Detention*

78. Mr. B. Shaw has family members and friends in Colorado including several cousins who live in Durango and Colorado Springs. He also maintains contact with members of the Osage community who reside in a suburb north of Denver.

79. Mr. B. Shaw drives through Kansas to Colorado on I-70 several times a year to visit his family and friends and plans to continue to make trips to visit them via I-70 in the future.

80. On December 20, 2017, Mr. B. Shaw was driving on I-70 with his brother, S. Shaw, in their father's 2010 Chrysler, which has Osage Nation license plates. They were westbound in Ellis County, Kansas, on their way to Denver when pulled over by Defendant Schulte.

---

[37] August 9, 2019, letter from Defendant Jones to Mr. Bosire, Exhibit 13 hereto.

WA 14119616.5

81.    Defendant Schulte told Mr. B. Shaw that he had stopped him because he was driving 91 miles per hour in a 75 mile per hour zone.

82.    During the initial stop, Defendant Schulte twice noted Mr. B. Shaw's Oklahoma residence.

83.    Defendant Schulte wrote Mr. B. Shaw a ticket for speeding, explained how he could pay the ticket, and then told him to have a safe trip. Seconds later, before returning to his patrol car, Defendant Schulte reengaged Mr. B. Shaw, asking whether he could ask Mr. B. Shaw a few questions.

84.    Defendant Schulte asked Mr. B. Shaw where he was traveling and, when told, "Denver," Defendant Schulte immediately asked whether Mr. B. Shaw had anything in the car that he was not supposed to have, specifically asking about weapons, narcotics, and cash. Mr. B. Shaw stated that he did not have any of the listed items.

85.    Defendant Schulte then asked Mr. B. Shaw if he could search the vehicle for such items. Mr. B. Shaw unequivocally declined. Defendant Schulte instructed Mr. B. Shaw to wait while he returned to his patrol car. Five minutes later that Trooper returned to Mr. B. Shaw's vehicle and told him he was being detained for a canine drug search because he refused to consent to a search.

86.    Defendant Schulte detained Mr. B. Shaw for 19 minutes waiting for the canine unit. The trooper ran the dog around the car and it alerted in the backseat of the vehicle. The troopers searched the vehicle for 33 minutes while Mr. B. Shaw waited outside of the vehicle on the side of the road.

87.    During the search, Defendant Schulte did not find any illicit drugs, only medication for which Mr. B. Shaw had a prescription. Defendant Schulte damaged Mr. B. Shaw's bags during the search, breaking zippers on two pieces of luggage.

17

88.     After the Trooper was unable to locate any drugs, he then directed Mr. B. Shaw to follow him to the station in order to make copies of Mr. B. Shaw's medical paperwork. Mr. B. Shaw followed the Trooper to the station where the Trooper made copies. Mr. B. Shaw was released from detention after approximately one and a half hours.

89.     Mr. B. Shaw dealt with significant anxiety following his detention. He ceased work as an Uber driver for 14 months out of fear that he would be stopped and detained by local police like he was by KHP. As a result of his detention, Mr. B. Shaw feels he no longer has protections or any rights.

### Samuel Shaw's Detention

90.     Like his brother, Mr. S. Shaw travels through Kansas on I-70 to Colorado once a year and plans to continue traveling the route with the same frequency for the foreseeable future. Mr. S. Shaw often accompanies his brother Mr. B. Shaw when he travels to Colorado and visits his friend who lives in Aurora and his cousins who live in Durango.

91.     Mr. S. Shaw was riding as a passenger when his brother was stopped and detained by Defendant Schulte on December 20, 2017. He was stopped and detained for the same duration, delaying his trip by over an hour.

92.     As a result of the December 20, 2017 stop, Mr. S. Shaw has become fearful of police and reminded of a traumatic experience with police as a teenager.

### Detaining Drivers for Canine Drug Searches Because of Factors Consistent with Innocent Travel Violates Clearly Established Federal Law

93.     The Tenth Circuit has held that detaining a driver because of their travel origin or destination and a combination of other facts consistent with innocent travel violates the Fourth Amendment. *Vasquez*, 834 F.3d at 1138 ("Such conduct does not raise an inference of reasonable suspicion.")

WA 14119616.5

94.     Despite the clear illegality of the practice, however, the KHP continues the practice of subjecting drivers to prolonged detentions well past resolution of the original purpose of the stop in order to conduct canine searches without sufficient legal cause.

95.     Pursuant to KHP's practice, Defendants McMillan and Schulte detained Named Plaintiffs for canine drug searches based on factors consistent with innocent travel.

96.     During the stops, there were no other factors that legally justified the decisions of Defendants McMillan and Schulte to detain Named Plaintiffs.

97.     Because Defendants McMillan and Schulte lacked reasonable suspicion of criminal activity, their actions violated established federal law:

> *[United States v.] Wood*[, 106 F.3d 942, 948 (10th Cir. 2007)] "place[s] the statutory or constitutional question beyond debate" and provides "contours [that] are sufficiently clear that a reasonable offic[er] would understand that what he is doing violates that right." . . . Thus, at the time of the detention, it was clearly established that the Officers did not have reasonable suspicion based upon the articulated circumstances.

*Vasquez*, 834 F.3d at 1139 quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014).

## **CLASS ACTION ALLEGATIONS**

98.     Named Plaintiffs Bosire, B. Shaw, and S. Shaw seek to bring this action on their own behalves and on behalf of a class of persons similarly situated pursuant to Rules 23(a) and (b)(2)&(3) of the Federal Rules of Civil Procedure.

99.     The proposed Class is defined as all persons in the United States who travelled on I-70 as a motorist or passenger, were actually or appeared to be driving to or from Colorado, in a vehicle with license plates from a state other than Kansas, who were stopped, detained by the KHP and subjected to searches of their vehicles or persons by a canine but were not subsequently convicted of a crime as a result of the stop, detainment, arrest, or search by the KHP. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers,

WA 14119616.5

agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.[38]

100.    Certification of Named Plaintiffs' claims for class-wide treatment is appropriate because they can prove the elements of their claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims.

101.    The proposed Class meets all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

102.    The members of the proposed Class are so numerous that joinder is impracticable. Although the exact size of the class is currently unknown, an average of over 10,000 motorists and their passengers drive through Kansas on I-70 on a daily basis.[39] Many of those individuals—approximately 7,820 per day by previous state estimates—are traveling to or coming from Colorado.[40] The precise number or identification of members of the Class are currently unknown to Named Plaintiffs, but may be ascertained from KHP's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

---

[38] The word "Class" means all persons fitting this description, including the Named Plaintiffs. The phrase "Class Members," refers to members of the class who are not Named Plaintiffs. Collectively, Named Plaintiffs and the Class Members are referred to herein as "Plaintiffs".

[39] Kansas Dep't of Transportation, *Traffic Count Maps*, 2019 TRAFFIC FLOW MAP KANSAS STATE HIGHWAY SYSTEM (July 2019), *available at* http://www.ksdot.org/Assets/wwwksdotorg/bureaus/burTransPlan/maps/CountMaps/Districts/countmap2018.pdf (listing an annual average daily traffic volume of over 10,000 vehicles per day along the entire I-70 corridor in Kansas).

[40] Kansas Historical Society, *Eisenhower Highway/Interstate 70* (February 2013), *available at* https://www.kshs.org/kansapedia/eisenhower-highway-interstate-70/16894 (noting that interstate highway travel into Kansas "averaged from 7,820 per day from the Kansas/Colorado state line").

WA 14119616.5

103.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

    a.    Whether Defendants violated Fourth Amendment rights of Class members by conducting illegal stops, detentions, unreasonable searches of persons and/or vehicles, and unreasonable seizures of persons and/or vehicles;

    b.    Whether Defendant Jones maintains a policy, practice, and/or custom of targeting drivers with out-of-state plates for illegal stops, detentions, and unreasonable searches of persons and/or vehicles in violation of the right to travel protected by Article IV of and the Fourteenth Amendment to the United States Constitution;

    c.    Whether Defendant Jones maintains a  policy, practice, and/or custom of authorizing and encouraging stops that are unsupported by individualized, objective, and articulable reasonable suspicion of criminal conduct as required by the Fourth Amendment;

    d.    Whether Defendant Jones has failed to properly train, supervise, monitor, and/or discipline KHP troopers, and whether those failures have caused KHP troopers to violate the Fourth Amendment rights of the Class members; and,

    e.    Whether Defendants have encouraged, sanctioned, acquiesced to, and/or failed to rectify unconstitutional stops and/or stops and frisks by KHP officers of which they were aware or should have been aware, and whether such acts and or omissions have caused KHP officers to violate the Article IV and Fourth and Fourteenth Amendment rights of Class members.

104.    Defendants engaged in a common course of conduct giving rise to the legal claims of Named Plaintiffs for enforcement of constitutional rights on behalf of themselves and the Class Members. Similar or identical statutory or common law violations and injuries are involved. Common questions of law and fact predominate over any questions that affect the individual members of the Class.

105.    Named Plaintiffs' claims are also typical of the proposed Class Members. Like other members of the Class, the Named Plaintiffs have been and likely will again be victims of Defendant Jones's practice of detaining drivers on I-70 because of factors consistent with innocent

WA 14119616.5

travel in violation of the Fourth Amendment. Further, the harms suffered by the Named Plaintiffs are typical of the harms suffered by the Class Members.

106.     The legal theories under which the Named Plaintiffs are seeking declaratory and injunctive relief are the same or similar to those on which Class Members will rely, and the harms suffered by the Named Plaintiffs are also the harms suffered by the Class Members.

107.     The Named Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with other members of the proposed Class, and will fairly and adequately represent the interests of the Class. All Named Plaintiffs regularly travel on I-70 to or from Colorado in vehicles with out-of-state license plates and intend to continue such trips in the future. The Named Plaintiffs only seek compensatory and punitive damages on an individual basis.

108.     The Plaintiffs are represented by the law firm Spencer Fane LLP and the American Civil Liberties Union Foundation of Kansas, who are competent and experienced in complex class action litigation. Counsel for the Plaintiffs have no known conflicts with Class Members. Counsel fully intend to fairly and adequately protect the interests of the Class.

109.     The proposed Class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants acted on grounds generally applicable to the proposed Class—in that they developed and maintained a policy, practice, and custom of prolonging detentions of drivers on I-70 because of out-of-state license plates and Colorado travel plans—thereby making Class-wide declaratory or injunctive relief appropriate.

## CLAIMS FOR RELIEF

### COUNT 1
### VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES

**(Claims of Plaintiffs Pursuant to 42 U.S.C. §1983 Against Defendant Jones for Violations of the Fourth Amendment)**

110.    Plaintiffs repeat and reallege paragraphs 1-109.

111.    The Fourth Amendment to the United States Constitution protects the people from unreasonable searches and seizures by the government. As such, it prohibits the police from subjecting a person to a stop in the absence of individualized, objective, and articulable reasonable suspicion of criminal activity. The Amendment's protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Vasquez*, 834 F.3d at 1136.

112.    More specifically, the Constitution prohibits police from extending a traffic stop in order to question a driver about issues beyond the scope of the stop absent reasonable suspicion or consent. *United States v. Villa*, 589 F.3d 1334, 1339 (10th Cir. 2009); *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998).

113.    The Fourth Amendment also protects Plaintiffs from detentions for the purpose of conducting a canine search absent reasonable suspicion. *Rodriguez v. United States*, 575 U.S. 348 (2015).

114.    Neither state residency nor travel plans are sufficient to justify a detention, even when combined with other factors consistent with innocent travel. *Vasquez*, 834 F.3d at 1137-38. "Absent a demonstrated extraordinary circumstance, the continued use of state residency as a justification for the fact of or continuation of a stop is impermissible." *Id.* at 1138.

WA 14119616.5

115.     Defendant Jones, by maintaining a practice of detaining drivers on I-70—including Named Plaintiffs and Class Members—using innocent-travel indicia, absent individualized, objective, and articulable reasonable suspicion, has and continues to violate the Fourth Amendment rights of Named Plaintiffs and hundreds of other innocent travelers stopped on I-70 each year.

116.     Ignoring the mandate of the *Vasquez* decision, Defendant Jones continues to train KHP troopers that apparent travel to or from states considered drug source areas supports reasonable suspicion and prolonged detention absent strong indicia of criminal activity.

117.     Defendant Jones, acting under the color of state law, has maintained and continues to facilitate a detention practice that violates the constitutional rights of drivers and passengers along I-70 to be free of unreasonable detentions and creates a continued risk that Named Plaintiffs and Class Members whose travel plans include Colorado will be subject to these unconstitutional detentions in the future.

118.     Declaratory and injunctive relief is required to remedy and prevent future violations of travelers' Fourth Amendment rights.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a.     Enter judgment against Defendant Jones for the declaratory and injunctive relief requested;

b.     Award Plaintiffs attorneys' fees and costs; and,

c.     Award any further relief that this Honorable Court deems just and equitable.

**COUNT 2**
**VIOLATION OF ARTICLE IV AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION—THE RIGHT TO TRAVEL**

**(Claims Of Plaintiffs Pursuant to 42 U.S.C. § 1983 Against Defendant Jones for Violations of the Article IV and the Fourth and Fourteenth Amendments)**

119.     Plaintiffs repeat and re-allege paragraphs 1-118.

24

120.     Article IV, Section 2 of the United States Constitution provides that the citizens of each state shall be entitled to all Privileges and Immunities of citizens in the other states. The Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall make any law which shall abridge the privileges or immunities of the citizens of the United States. Both of these clauses establish and protect the right to travel in these United States.

121.     The United States Supreme Court "long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969), overruled in part on other grounds by *Edelman v. Jordan*, 415 U.S. 651 (1974). "For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States." *Smith v. Turner*, 48 U.S. 283, 492 (1849). "The constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757 (1966).

122.     "The 'right to travel' . . . embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other

WA 14119616.5

citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). The first and second of these components are implicated by the illegal actions of the KHP addressed herein.

123.   Defendants actively created and enforced a policy to target vehicles with out-of-state license plates as part of their drug interdiction program; thereby penalizing out-of-state motorists for exercising their right to travel or right to free movement.

124.   Defendants did so, while acting under color of state law and without reasonable suspicion, and restricted the right of the Named Plaintiffs and the Class Members to travel freely through Kansas to and from Colorado and to be treated as a welcome visitor in Kansas, which restrictions were based in large part on travelling through Kansas to or from Colorado in a vehicle registered in another state.

125.   At the time of the events described herein, each of the Named Plaintiffs and the Class Members were driving a vehicle registered in a State other than Kansas and was engaged in interstate travel when they were stopped.

126.   Establishing and enforcing a policy to target vehicles with out-of-state license plates for purposes of drug interdiction activities infringes upon the right to travel under Article IV, section 2 and the Fourteenth Amendment of the United States Constitution and/or other laws of the United States.

127.   The constitutional rights of the Named Plaintiffs and Class Members have been violated under the Privileges and Immunities Clauses of Article IV, section 2, and the Fourteenth Amendment of the United States Constitution by the Defendants, as described herein.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a.   Enter judgment against Defendant Jones for the declaratory and injunctive relief requested;

b.   Award Plaintiffs attorneys' fees and costs; and,

c.   Award any further relief that this Honorable Court deems just and equitable.

WA 14119616.5

**COUNT 3**
**VIOLATION OF FOURTH AMENDMENT TO THE UNITED STATES**
**CONSTITUTION—THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND**
**SEIZURES**

**(Claims of Named Plaintiffs Against Defendant Schulte, in his Individual Capacity, for**
**Violations of the Fourth Amendment)**

128.    Plaintiffs repeat and re-allege paragraphs 1-127.

129.    As a natural consequence of being innocent persons suspected of a crime and subjected to illegal detentions for invasive searches of their persons and vehicles, Named Plaintiffs have been caused by Defendants to feel humiliated and embarrassed, to lose trust of police, their right to be free from random, unlawful seizures and searches, and to suffer emotional distress.

130.    Defendant Schulte, acting under the color of state law, detained Named Plaintiffs for questioning unrelated to their initial traffic stop and a canine drug search absent reasonable suspicion.

131.    By prolonging the detention of the Named Plaintiffs based on factors consistent with innocent travel, Defendant Schulte violated the Named Plaintiffs' Fourth Amendment rights, as applied to the states by the Fourteenth Amendment, to be free from unreasonable seizures.

132.    It was clearly established at the time of the Named Plaintiffs' seizures that Defendant Schulte's practice of detaining the Named Plaintiffs for canine drug searches based on innocent-travel indicia and in the absence of reasonable suspicion of criminal activity was illegal.

133.    The Named Plaintiffs suffered loss of their fundamental rights and liberty as a result of Defendant Schulte's illegal conduct.

134.    As such, Defendant Schulte is liable to the Named Plaintiffs for damages under 42 U.S.C. § 1983.

WA 14119616.5

WHEREFORE, Plaintiffs ask that this Honorable Court:

    a.      Enter judgment against Defendant Schulte;

    b.      Award Named Plaintiffs compensatory and punitive damages;

    c.      Award attorneys' fees and costs; and,

    d.      Award any further relief that this Honorable Court deems just and equitable.

**COUNT 4**
**VIOLATION OF FOURTH AMENDMENT—THE RIGHT TO BE FREE OF**
**UNREASONABLE SEARCHES AND SEIZURES**

**(Claims of Joshua Bosire Against Trooper McMillan, in his Individual Capacity, for**
**Violations of the Fourth Amendment)**

135.    Plaintiffs repeat and re-allege paragraphs 1-134.

136.    Mr. Bosire reasonably believes that Defendant McMillan stopped him and conducted an unlawful search and seizure because he is a Black man. This profiling conduct by Defendant McMillan, along with the natural consequences of being an innocent person being accused of a crime and unlawfully detained for an invasive search of his person and car, caused Mr. Bosire to feel humiliated and embarrassed, to lose trust of police and his right to be free from random, unlawful seizures and searches, and to suffer emotional distress.

137.    Trooper McMillan, acting under the color of state law, detained Mr. Bosire for questioning unrelated to his initial traffic stop and had a canine drug search performed on Mr. Bosire's vehicle absent reasonable suspicion.

138.    By prolonging the detention of Mr. Bosire based on factors consistent with innocent travel, Defendant McMillan violated Mr. Bosire's Fourth Amendment rights, as applied to the states by the Fourteenth Amendment, to be free from unreasonable seizures.

139.    It was clearly established at the time of Mr. Bosire's stop that it was unlawful for Defendant McMillan to detain Mr. Bosire for a canine drug search based on innocent-travel indicia and in the absence of reasonable suspicion of criminal activity.

WA 14119616.5

140.     Mr. Bosire suffered loss of his fundamental rights and liberty as a result of Trooper McMillan's actions.

141.     As such, Defendant McMillan is liable to Mr. Bosire for damages under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a.     Enter judgment against Defendant McMillan;

b.     Award Mr. Bosire compensatory and punitive damages;

c.     Award attorneys' fees and costs; and,

d.     Award any further relief that this Honorable Court deems just and equitable.

## PRAYER FOR RELIEF

Wherefore, Named Plaintiffs and other members of the Class they seek to represent, respectfully request that:

a.     The Court issue an Order certifying this case as a class action pursuant to Rule 23(a) and 23(b)(2)&(3) of the Federal Rules of Civil Procedure, with the Named Plaintiffs as representatives of the Class;

b.     The Court issue a class-wide judgment declaring that the Defendants' policy, practice, and/or custom of unreasonably searching and seizing persons and vehicles in the absence of reasonable suspicion, including the specific practices alleged herein, violates the rights of the Named Plaintiffs and the Class Members under the Fourth Amendment to the United States Constitution;

c.     The Court issue a class-wide judgment declaring that the Defendants' policy, practice, and custom of targeting drivers with out-of-state license plates for stops, detentions, searches, and, seizures infringes on Named Plaintiffs' and the Class Members' right to travel under Article IV of and the Fourteenth Amendment to the United States Constitution ;

d.     The Court issue an Order for the following injunctive relief:

i.     Enjoining the Defendant Jones from continuing the policy, practice, and custom of prolonging detentions for canine searches without reasonable suspicion of criminal activity;

ii.     Enjoining the Defendant Jones from continuing the policy, practice, and custom of targeting drivers with out-of-state plates in violation

29

of the right to travel protected by Article IV of and the Fourteenth Amendment to the United States Constitution;

iii.    Requiring Defendant Jones to implement improved policies and programs with respect to training, supervision, monitoring, and discipline that will eliminate the policy, practice, pattern, and custom of suspicionless detentions and seizures;

iv.    Requiring Defendant Jones to implement appropriate measures for supervision and discipline of KHP troopers who conduct suspicionless detentions and seizures;

v.    Requiring Defendant Jones to implement appropriate measures to ensure that KHP troopers document:

1.    all canine drug searches, including the location, the basis for each such search—the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, regardless of whether the encounter is followed by the use of force, consent search, citation, warning or arrest and,

2.    all citations and arrests, including the location, the basis for each such search, the residency and demographics—including the state issuing the license plate on the vehicle—of each individual stopped, issued and or conducted as a result of a canine drug search,

and to do so in sufficient detail as to permit supervisory review for compliance with Article IV and the Fourth and Fourteenth Amendments;

vi.    Requiring Defendant Jones to implement appropriate measures to ensure that documentation of all canine drug searches is retained in a single, up-to-date computerized database;

vii.    Requiring Defendant Jones to make publicly available data on all canine drug searches conducted by the KHP on a semiannual basis, including information on location, the basis for each such search, the residency and demographics of each individual stopped;

viii.    Requiring Defendant Jones to monitor and audit canine drug search policies, practices, and customs, to ensure that such searches comport with constitutional and statutory requirements, including by, among other things, periodically reviewing forms documenting these searches and analyzing data on such searches;

e.    Awarding Named Plaintiffs compensatory and emotional distress damages against Troopers McMillan and Schulte, in amounts that are fair, just and

reasonable to be determined at trial, caused by the violation of the Named Plaintiffs' Constitutional rights;

f.  Awarding Named Plaintiffs punitive damages against Troopers McMillan and Schulte, to the extent their liability is based on reprehensible actions and/or inaction undertaken in their individual capacities in violation of the Named Plaintiffs' Constitutional rights, in amounts that are fair, just and reasonably designed to punish and deter said reprehensible conduct, to be determined at trial;

g.  Awarding reasonable attorneys' fees to the Plaintiffs, pursuant to 42 U.S.C. § 1988;

h.  Awarding costs of litigation to the Plaintiffs, pursuant to 42 U.S .C. §§ 1920 and 1988; and,

i.  Awarding such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

## **JURY TRIAL DEMAND**

142.  Named Plaintiffs demand a jury trial on all of the claims for which they have a right to trial by jury. Named Plaintiffs designate Kansas City, Kansas, as the place of trial.

Dated this 30th day of January, 2020.

Respectfully submitted by,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS

s/ Lauren Bonds

Lauren Bonds                    KS # 27807
Zal Kotval Shroff             KS # 28013
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

and

WA 14119616.5

SPENCER FANE LLP

s/ Leslie A. Greathouse

| | |
|---|---|
| Leslie A. Greathouse | KS # 18656 |
| Patrick McInerney | KS # 22561 |
| Madison Perry | KS # 27144 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com

*Attorneys for Plaintiffs*

WA 14119616.5