# Advanced Interdiction Case Outline

Advanced Interdiction Class 2019

Prepared by: Sarah Washburn

I. Tag Not on File as Basis for Stop

   A. If there is no reason to worry about the database's reliability, then having a tag come back from dispatch as "not on file" is sufficient reasonable suspicion to stop the vehicle. *United States v. Esquivel – Rios*, 39 F.Supp 3d 1175, 187-88 ( (D. Kan. 2014), aff'd, 786 F.3d 1299 (10th Cir. 2015)  See, e.g., *United States v. Cortez–Galaviz*, 495 F.3d 1203, 1205–06 (10th Cir.2007); *United States v. Garcia–Ballesteros*, 74 F.3d 1250, 1996 WL 3920, at *1 (10th Cir.1996) (unpublished table decision).

   B. Holding that police has reasonable suspicion to conduct traffic stop to investigate whether the defendant's vehicle was properly registered where dispatch computer check performed immediately before the stop indicated that vehicle's license plate tags were "not on file" and the defendant's driver's license had expired. *United States v. Stephens*, 350 F.3d 778, 779-80 (8th Cir. 2003).

II. Nervousness

   A. Nervousness alone, and not "beyond what is normally anticipated during a police - citizen encounter," is not sufficient to support reasonable suspicion to extend the traffic stop beyond its original scope.

      1. "[N]o showing was made that operator exhibited nervousness beyond that normally anticipated during citizen-police encounter, and shaking hand while agreement was handed over was only sign of nervousness cited." *United States v. Salzano*, 158 F.3d 1107 (10th Cir. 1998)

      2. "Defendant's extreme nervousness during traffic stop was relevant factor in totality of the circumstances analysis in determining whether trooper had reasonable suspicion to prolong investigatory stop beyond time necessary to resolve initial traffic violation, since trooper did not merely assert that defendant was nervous, but provided basis for his conclusion by noting that defendant shook uncontrollably throughout entire encounter even after trooper assured defendant he would not get traffic ticket." *United States v. Simpson*, 609 F.3d 1140 (10th Cir. 2010)

   B. If you are going to cite nervousness as part of your reasonable suspicion calculus, you must articulate what signs you are seeing that show the suspect is more nervous than would be normal on a traffic stop.  Your video must support your articulation.  Even then, **you should be cautious in relying too heavily on this one factor.** *Id*

      1. "A defendant's extreme and persistent nervousness is entitled to somewhat more weight than normal nervousness in determining whether an officer has reasonable suspicion to support continued detention of defendant following a traffic stop." *United States v. Simpson*

1



EXHIBIT 1

2. "[H]is hands were shaking when he handed over his license, he rarely made eye contact, he could not stop fidgeting, his heart was beating rapidly, he immediately asked if he could smoke a cigarette, and he remained nervous even after being told that he would only be receiving a warning for speeding." *United States v. Moore*, 795 F.3d 1224 (10th Cir. 2015).

3. **"We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance ... on nervousness ... as a basis for reasonable suspicion ... '"must be treated with caution."' *United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir. 1994)**
   a) Recently cited in a Kansas Court of Appeals decision which referred back to *Wood* and *DeMarco* but not *United States v. Arvizu*.
   b) However, *Wood (1997)* and *DeMarco (1998)* were decided after *US v. Arvizu* (2002).
   c) *United States v. Arvizu*, 534 U.S. 266 (2002) should be the controlling case law in instances where there is a conflict between lower federal or state court rulings. *Arvizu* requires that judges and appellate courts look at the totality of the circumstances.

C. As a subset of the "nervousness" clue, "talkative, and overly-friendly behavior" are also factors that can indicate nervousness and be considered as part of your reasonable suspicion (and even probable cause) calculus. *United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999).

III. Implausible Travel Plans / Indirect Route / Quick Turnaround
   A. "Implausible travel plans of a motorist can contribute to reasonable suspicion for detention after traffic stop." *United States v. Simpson*, 609 F.3d 1140 (10th Cir. 2010)
      1. "travel plans, which included driving long distance to spend single night in Reno to gamble at friend's house, coupled with defendant's inability to easily recount when he left home or when he planned to return, were more akin to 'bizarre' travel plans than unusual travel plans." *Id.*
      2. Vague, evasive or inconsistent answers to questions about travel plans are different than plans that are merely implausible. The 10th Circuit has routinely permitted officers to use answers that were the inconsistent, vague or evasive to be considered contributory to reasonable suspicion. Plans that are merely implausible are less favored. *United States v. Santos*, 403 F.3d 1120 and *United States v. Simpson*, supra.
      3. Travel plans that are merely not what the officer would have chosen to do are not implausible. They are more properly cataloged as unusual. United *States v. Wood*, 106 F.3d 942 (1997). In that case, the court found that it was not "[un]likely or [im]plausible that an unemployed painter in Kansas could afford to take a two-week vacation in California, to fly there one-way in a commercial airplane, to rent a 1995 Mercury Marqu[i]s in California, and then to drive the rental car back to Kansas." After all, if he's unemployed he has the time to take a scenic route.



2

- B. As a related factor to implausible travel plans, an indirect route to the stated location can be considered when looking at the totality of the circumstances. "Unusual or implausible travel plans, such as the very brief stay in Los Angeles despite the lengthy drive back to Atlanta, and the indirect path being taken to get to Atlanta, can contribute to a reasonable suspicion of illegal activity." *United States v. Hernandez-Dominguez*, 1 Fed. Appx. 827, *4 (10th Cir. 2001)(unpublished).
- C. A quick turn – around trip can be considered as part of the reasonable suspicion calculus along with other factors. *United States v. Garcia*, 167 Fed. Appx. 737 (10th Cir. 2006)(unpublished) Finding that the driver's nervousness, inconsistent stories between the driver and passengers and "the quick turnaround trip" from California to Illinois provided reasonable suspicion to detain vehicle for canine sniff."

IV. Vague, Evasive and Inconsistent Answers
- A. Refusal to cooperate with or answer questions of law enforcement, without more, **does not** create reasonable suspicion for a detention or seizure. *Florida v. Bostick*, 501 US 429, 437, 111 S.Ct. 2382 (1991).
- B. "Confusion about details is often an indication that a story is being fabricated on the spot. Mr. Santos volunteered information about his family, but was unable to supply corroborative details ordinarily known to a family member, and he seemed to shift his ground upon close questioning." *United States v. Santos*, 403 F.3d 1120, 1131 (10th Cir. 2005).
- C. Inconsistent statements about the destination can be considered, but they are usually considered together with other factors such as "having no proof of ownership of the vehicle [and] having no proof of authority to operate the vehicle." *United States v. Hunnicutt*, 135 F.3d 1345 (10th Cir. 1998).

V. Insufficient Amount of Luggage for Stated Purpose of the Trip
- A. This is almost a subset of implausible travel plans as the factor is usually considered with others that make the trip seem less likely. If the driver and passenger are telling you that they're taking a two week trip and only have three small pieces of luggage, that factor can be considered as part of the totality of the circumstances leading to reasonable suspicion. *United States v. Jones*, 44 F.3d 860 (10th Circ. 1995).
- B. Most of the case law deals with trips that last around the two week mark, although some deal with shorter spans of a week. *United States v. Arango*, 912 F.2d 441 (10th Circuit 1990) (probable cause to arrest after finding evidence of secret compartment plus "the inadequate amount of luggage in the truck for [the defendant's] purported two – week vacation." See also, *United States v. Ledesma*, 447 F.3d 1307 (10th Cir. 2006). (The court found the "small amount of luggage in the back of the van was inconsistent with the women's stated travel plans to spend up to two weeks in Los Angeles… was implausible."

3


LAW ENFORCEMENT OFFICIAL USE ONLY NOT TO BE REPRODUCED

VI. Ownership of or Authority to Operate the Vehicle
  A. Proof of Ownership or Authorization to Operate
    1. Driver's failure to provide proof of lawful possession of the vehicle creates reasonable suspicion that the car may have been stolen, even though the officer "did not characterize his questioning about the passengers as part of an investigation of possible car theft." *United States v. Galindo-Gonzalez*, 142 F.3d 1217, 1223 (10th Cir. 1998).
    **2.** Inability to prove ownership or authorization, with other factors may justify continued detention and expansion of questioning about drugs. *United States v. Lindsey*, 160 Fed.Appx. 708, 711 (10th Cir. 2005) **(unpublished case).**
  B. No Proof of Insurance / Suspended License: A driver's suspended license or lack of proof of insurance contributes to reasonable suspicion. *United States v. Hunnicutt*, 135 F.3d 1345, 1350 n.1 (10th Cir. 1998).
  C. Rented Vehicles
    1. The mere fact that the vehicle was rented is not in and of itself a factor that can be used to determine reasonable suspicion. *United States v. Kaguras*, 183 Fed.Appx. 783 (10th Cir. 2006) **(unpublished case)**.
    2. If an officer can articulate that based upon his training and experience that drug couriers often use third-party rental cars, the Court will use that as a factor in determining reasonable suspicion. *United States v. Wiliams*, 271 F.3d 1262, 1270 (10th Cir. 2001) and *United States v. Contreras*, 506 F.3d 1031 (10th Cir. 2007).
    3. An expired rental agreement, especially one that had lapsed 10 days prior to the stop, "was highly suggestive of a vehicle theft, for the agreement indicated on its face that [the defendant] may have been exerting unauthorized control over the vehicle for a substantial amount of time." *United States v. Brown*, 234 Fed.Appx. 838, 839 (10th Cir. 2007) **(unpublished case)**. See also: *United States v. Edwards*, 576 F.2d 1152, 1155 (5th Cir. 1978) ("exceeding the scope of the rental agreement would support a jury finding that [the defendant] intended to steal the car.")
  D. Third Party Owned Vehicles: Owner Not Present. This factor can lend support to a finding of reasonable suspicion as part of the totality of the circumstances. *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997).

VII. Drug Corridor / Traveling to or from Drug City
  A. Traveling on a known trafficking corridor can be considered along with other factors.
    1. "Pack's extreme nervousness, Pack's and Williamson's conflicting stories, and the fact that the two were traveling along a drug trafficking corridor already had caused Worley to suspect that they were engaged in criminal drug activity. Worley's suspicion is entitled to significant weight, because he had been a law enforcement officer for seventeen years." *United States v. Pack*, 612 F.3d 341, 361 (5th Cir.), opinion modified on denial of reh'g, 622 F.3d 383 (5th Cir. 2010). Citing *United States v. Arvizu*, 534 U.S. 266 (2002) (Officers draw from their specialized training and experience to make inferences and deductions from the information available to them that might not be apparent to the untrained person.)

LAW ENFORCEMENT
OFFICIAL USE ONLY
NOT TO BE REPRODUCED

2. In the 10th Circuit there are no published cases on the use of a "drug corridor." But all the unpublished cases will treat this as a potential factor leading to reasonable suspicion when taken as part of the totality of the circumstances. When the route taken is the most direct route between the stated destination and the starting point, the fact that the route is also a known drug courier route may not carry the same weight as if it were an odd or circuitous route. See: *United States v. Farmer*, 215 F.3d 1338 (10th Cir. 2000)(unpublished), and *United States v. Gamez-Acuna*, 375 F. Appx. 809, 813 (10th Cir. 2010)(unpublished)

B. Traveling from or to a known hub for narcotics is a weak factor at best but can still be counted in the reasonable suspicion calculus.
1. "Standing alone, a vehicle that hails from a purported known drug source areas is, at best, a weak factor in finding suspicion of criminal activity." *United States v. Williams*, 271 F.3d 1262 (10th Cir. 2001).
2. "If travel between two of this country's largest population centers is a ground on which reasonable suspicion may be predicated, it is difficult to imagine an activity incapable of justifying police suspicion and an accompanying investigative detention." *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005).

## VIII. Observations of Interior of the Vehicle

A. Air fresheners or other masking odors
1. Absent any logical reason for the strong odor or the presence of multiple air fresheners (traveling cross country with a toddler in diapers in an RV), these may be considered as part of the officer's reasonable suspicion that the odor is being used to mask the odor of illegal drugs. *United States v. Villa-Chaparro*, 115 F 3.d 797, 902 (10th Cir. 1997) see also *Rodriguez v. United States*, 135 S.Ct. 1609, 1624 (2015) (strong masking odors along with other factor sufficient to meet Supreme Court's standard for reasonable suspicion.)
2. "And, though the use of cologne or perfume is certainly consistent with lawful activity, our cases have acknowledged that it is 'commonly used to mask the odor of drugs' and so can contribute to a reasonable suspicion calculus." *United States v. Ludwig*, 641 F.3d 1243, 1248 (10th Cir. 2011) See also: *United States v. Ortiz–Ortiz*, 57 F.3d 892, 895 (10th Cir.1995); *United States v. Salzano*, 158 F.3d 1107, 1114 (10th Cir.1998); *United States v. Stone*, 866 F.2d 359, 362 (10th Cir.1989).

B. Presence of Fast Food Wrappers
1. The suspicion associated with possession of fast-food trash "is virtually nonexistent." *United States v. Wood*, 106 F.3d 942, 947 (10th Cir. 1997). BEFORE *Arvizu*.
2. "[W]rappers from fast food establishments strewn about a car may indicate slovenliness or the need to travel while eating, but do not **by themselves** indicate a driver smuggling contraband." *United States v. Bradford*, 423 F.3d 1149, 1157 (10th Cir. 2005). AFTER *Arvizu*.

C. Religious Iconography
1. "The presence of religious iconography in the vehicle is, similarly, not merely consistent with innocent conduct but so broad as to provide no reasonable indicium of wrongdoing. *United States v. Guerrero*, 472 F.3d 784, 788 (10th Cir. 2007)

2. "Under some circumstances, particular religious symbols—notably those identified with gangs—might provide meaningful indicia of reasonable suspicion." *Id.* So, if you're going to cite religious iconography, make sure you tie the image(s) to narcotics trafficking and explain the significance.

D. Two – way or Short – Range Radios, Walkie – Talkies, Boost Phones
   1. Even if the officer does not see it being use, the walkie-talkie contributes to reasonable suspicion. *United States v. Johnson*, 364 F.3d 1185, 1193 (10th Cir. 2004) see also *United States v. Sokolow*, 490 US 1, 9-10 (1989) (An officer need not actually observe an individual use an object in a criminal manner for it to raise the officer's suspicions.)
   2. "Mr. Williams also contends that the presence of a two-way, short-range radio was too innocuous to provide any support for a finding of reasonable suspicion. The district court found that the officer knew from experience that cars traveling in tandem and transporting drugs sometimes used such radios to avoid detection by law enforcement personnel. Although, as pointed out by Mr. Williams in his brief, there are numerous legitimate uses for these types of radios, all of these uses generally involve a link to someone else in close proximity. Thus, the officer could have reasonably inferred that Mr. Williams was using the radio to communicate with individuals in a second vehicle. Coupled with this inference are the officer's training and experience that provided him with the knowledge of how drug traffickers use such devices while driving in tandem." *United States v. Williams*, 271 F.3d 1262, 1269 (10th Cir. 2001).

E. Cell Phones
   1. "There is nothing suspicious about carrying a cell phone and an atlas or road map while driving on an interstate highway." *United States v. Ledesma*, 447 F.4d 1307, 1318 (2006).
   2. The presence of multiple cell phones, while possibly innocuous considered in a vacuum, heightened the trooper's suspicion. *United States v. Jeter*, 175 F. App'x 261, 265 (10th Cir. 2006)(unpublished). See *United States v. Windrix*, 405 F.3d 1146, 1153 (10th Cir.2005) (officer's statement that drug traffickers often use multiple cell phones contained in an affidavit establishing probable cause).
   3. Defendant's possession of more than one cell phone, along with expert's testimony that this is a "common practice in the drug trade" as evidence in support of defendant's conviction for possession with intent to distribute marijuana. *United States v. Burkley*, 513 F.3d 1183, 1189 (10th Cir. 2008).

F. Odor of marijuana
   1. Moreover, we conclude the odor of marijuana Trooper Smith detected from the vehicle, <u>along with the other suspicious conduct</u> cited by the government, including Mr. Ozbirn and Mr. Feldman's nervous, talkative, and overly-friendly behavior, and vague description of their travel plans also satisfies the higher standard of probable cause. *United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999).



LAW ENFORCEMENT
OFFICIAL USE ONLY
NOT TO BE REPRODUCED

2. "In a case involving raw marijuana, this court has held that 'the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.'" *United States v. Morin*, 949 F.2d 297, 300 (10th Cir.1991)

3. There is some indication that Courts are differentiating between the odor of burnt and fresh marijuana. Since they consider burnt marijuana to be indicative of personal use, they have held that there is no probable cause to search the trunk of a vehicle when the officer smells burnt marijuana. UNLESS he or she confirms the probability of the presence of contraband in the trunk during the search of the passenger compartment. *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998).

4. "The scope of a warrantless search of an automobile 'is defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir.1993). See also, *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995).

G. Evidence of Alterations to the Vehicle or Hidden Compartments

1. "Disassembled interiors, scratched paint, missing screws or other signs that a vehicle's paneling or natural configuration has been altered often lead law enforcement officers to the discovery of contraband." *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir. 1997).

2. Discovery of "what appeared to be a hidden compartment in the gas tank," as well as other evidence found during <u>consensual search</u>, sufficient to furnish probable cause. United States v. Anderson, 114 F.3d 1059, 1066 (10th Cir. 1997).

3. "Observations by law enforcement officer, who had made <u>lawful traffic stop</u> of vehicle for license plate violation, that vehicle's bumper appeared to have been altered, with three-inch void or discrepancy between bottom of truck bed, and bottom of hatchback door, which was where factory installed truck bed would be, and with visible seam that had been bonded and coated over where alterations had been made, warranted a reasonable belief that vehicle contained a hidden compartment, and established probable cause to search vehicle." *United States v. Jurado-Vallejo*, 380 F.3d 1239 (10th Cir. 2004).

## IX. Criminal Record and Aliases

A. Prior Criminal Record / Lying About Prior Criminal Record

1. "[I]n conjunction with other factors, **[relevant]** criminal history contributes powerfully to the reasonable suspicion calculus." *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005).

2. "When the individual lies about having a criminal history, the inference of wrongdoing is all the more powerful." *Santos*, 403 F.3d at 1132-33 (10th Cir. 2005).

3. Collecting cases where such knowledge of prior criminal activity with other factors may foster a reasonable suspicion of current criminal activity may be sufficient for reasonable suspicion where "knowledge of a person's prior criminal involvement (to say nothing of an arrest) is **alone** insufficient to give rise to the requisite reasonable suspicion." *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994).


LAW ENFORCEMENT OFFICIAL USE ONLY NOT TO BE REPRODUCED

B.  Aliases
   1. "[T]raveling under an alias contributes to reasonable suspicion." *United States v. Valles*, 292 F.3d 678, 680 (10th Cir. 2002).
   2. "The Supreme Court held that officers had reasonable suspicion to detain the defendant's luggage when they knew that the defendant: (1) was young and casually dressed, (2) *was traveling under an alias*, (3) had paid cash for a one-way ticket, (4) was traveling from Miami, a drug source city, to New York, a destination city, and (5) had filled out luggage identification tags but omitted an address and phone number. The Court held that, taken together, these factors provided objective justification for detaining the defendant and his luggage. *United States v. Hall*, 978 F.2d 616, 620 (10th Cir. 1992) citing *Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983).


LAW ENFORCEMENT
OFFICIAL USE ONLY
NOT TO BE REPRODUCED