ELECTRONICALLY FILED
2019 Feb 24 PM 12:57
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2018-CR-000674

IN THE DISTRICT COURT OF SHAWNEE, KANSAS
CRIMINAL DEPARTMENT

STATE OF KANSAS,
    Plaintiff,

v.     Case No.: 2018-CR-674

JOSHUA C. JONES,
    Defendant.

MOTION TO QUASH STOP, DETENTION, AND ARREST
AND SUPPRESS EVIDENCE

Comes now the accused, Joshua C. Jones, by and through his attorney, Patrick M. Lewis, and moves this Court pursuant to K.S.A. 22-2401, 22-2402, 22-3215, 22-3216, the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Sections Ten and Fifteen of the Kansas Bill of Rights, to suppress identification, the evidence seized by the Highway Patrol and statements made by the accused on May 13, 2017.

**FACTS**

On May 13, 2017, Joshua Jones was driving his 2006 Honda, registered in Ohio, and was stopped by Trooper Simone of the Kansas Highway Patrol. Trooper Adam Simone was in a marked KHP car and wearing a KHP uniform. Trooper Simone was wearing a side arm. Mr. Jones was alone in his car. The trooper was likewise traveling alone.

Trooper Simone followed a number of cars traveling east bound on Interstate 70 as they approached mile post 362. The weather was clear and dry. At approximately 12:54 a.m. Trooper Simone stopped the Honda driven by Mr. Jones. Trooper Simone testified that he stopped the Honda for following too close in violation of K.S.A. 8-1523. The trooper turned on his overhead lights and Mr. Jones stopped his car appropriately, legally, and safely on the shoulder. Mr. Jones' stop was prompt and solely in response to the show of authority.

EXHIBIT 2

Trooper Simone witnessed no speeding, improper lane changes, other traffic violations, or illegal behavior by Mr. Jones beyond the alleged following too closely. Trooper Simone had received no information from any other sources that Mr. Jones or this car had been involved in any illegal activity. Trooper Simone has testified that the only reason he pulled Mr. Jones over was because of an alleged violation of K.S.A. 8-1523.

Trooper Simone came up to Mr. Jones' car on the driver's side. He told Mr. Jones he thought his Honda was following the semi in front of him too closely. He asked for driver's license and insurance from Mr. Jones. Trooper Simone began immediately questioning Mr. Jones about his travel plans. There was nothing which justified this inquiry. Nor were any of Mr. Jones' answers suspicious. Mr. Jones provided his license and insurance. The trooper left Mr. Jones in his car while he returned to the patrol vehicle to run a check and prepare a ticket.

At this time Trooper Simone has seen no evidence of any illegal activity by Mr. Jones other than the possible following too closely traffic violation. Mr. Jones was polite and cooperative. No weapons were visible. No contraband was seen or smelled. Mr. Jones had made no "furtive movements." There was no warrant for the arrest of Mr. Jones. No one had reported to Trooper Simone that Mr. Jones was engaging in any illegal activity. There were no reports of illegal activity associated with a Honda in the area at the time.

Trooper Simone, while in his car, checked on prior drug cases for Mr. Jones and found none. No warrants were found for Mr. Jones' arrest. Trooper Simone testified that he investigated over the computer the location of hotels in Hays. Nothing was wrong with Mr. Jones' license or registration. Someone, a police officer presumably, asks the trooper over the radio if he is going to search Mr. Jones' car. Trooper Simone responds "We'll see. I'm gonna ask for consent. We'll see how that goes." Someone responds "I'm gonna head your way."

Trooper Simone returned to the Honda and handed the documents back to Mr. Jones. The trooper handed Mr. Jones a written warning for the traffic violation. He then says "Have a safe trip." Within a second the trooper says "Hey, you mind if I ask you a couple more questions?" Mr. Jones says "Like what, sir?" Without a break in contact Trooper Simone began asking specific questions about illegal items in the car. Trooper Simone did not move back from the Honda. Trooper Simone did not even turn away from the driver's window. He immediately launched into a full blown drug interrogation. If Mr. Jones had attempted to drive away from the trooper after being handed the warning ticket and before the trooper began asking questions about illegal items he could easily have struck the trooper with his car. It would not have been reasonable or safe to simply drive away while Trooper Simone was standing at the window asking questions. It would not have been polite, but more importantly, it would not have been reasonable. Nor would it have seemed appropriate or even legal to the average person to drive away while the trooper continued talking and standing at the driver's window immediately after the uniformed law enforcement officer had handed him the ticket. Trooper Simone was so close to the car that his feet appear to be certain to be run over if the Honda had pulled forward.

Trooper Simone asked for consent to search the Honda. Mr. Jones declined to give consent. Trooper Simone confirmed that Mr. Jones did not consent to the search of his car or property. Mr. Jones reiterated that he did not consent. Trooper Simone then ordered Mr. Jones to stay where he was while the trooper checked on the availability of a drug dog. Trooper Simone returned to his car and radioed about the drug dog.

Trooper Simone at this point had extended the scope of the traffic stop beyond the reason for the stop without reasonable articulable suspicion. This interaction never became a consensual encounter, as at no time could Mr. Jones leave. There was no break in the contact between the

traffic stop, under a show of legal authority, and the narcotics interrogation. There was no legal justification to extend the detention beyond handing the warning ticket to Mr. Jones.

To do so denied Mr. Jones his freedom of movement and right to be left alone in violation of K.S.A. 22-2401, K.S.A. 22-2402, K.S.A. 22-32l5, K.S.A. 22-32l6, the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Sections Ten and Fifteen of the Kansas Bill of Rights.

Mr. Jones remained at the side of the highway, in response to Trooper Simone's directive until Topeka Police Officer Michael Ahlstedt arrived on the scene with his police dog, Kaiser. Mr. Jones was ordered out of his car while Officer Ahlstedt and Kaiser searched. Officer Ahlstedt interpreted Kaiser's behavior to indicate the possible presence of drugs. Trooper Simone then searched Mr. Jones' car and containers therein based on the Officer Ahlstedt's interpretation of the dog's behavior. Trooper Simone located what he believed was a quantity of marijuana which is the subject of Count I of the Complaint/Information in this case, and what he believed was paraphernalia which is the subject of Count II of the Complaint/Information in this case. Mr. Jones was subsequently arrested and questioned about the suspected contraband by Trooper Simone. He was then transported to a highway patrol facility and questioned further.

The dash camera from Trooper Simone's car shows Mr. Jones traveling down the highway. It shows other vehicles including the truck Mr. Jones was alleged to have followed too closely. The footage shows Trooper Simone's activation of his emergency equipment and Mr. Jones stopping in response thereto. It also records the conversation between Mr. Jones and Trooper Simone. Lastly, and perhaps most importantly, it shows that the trooper did not break contact between the traffic stop and the narcotics investigation.

## ARGUMENTS AND AUTHORITIES

The Fourth Amendment to the United States Constitution provides that all persons shall be free from unreasonable searches and seizures. In order for this protection to apply there must be a reasonable expectation of privacy in the place to be searched or the item to be seized. Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, l9 L. Ed. 2d 576, (l967). There is no question that Mr. Jones had a reasonable expectation of privacy with respect to his person, car and the things inside it. The question in this case is whether or not he was subjected to an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the US Constitution and the Kansas Bill of Rights. The Kansas Supreme Court has defined a seizure as follows:

> "An individual is 'seized' when an officer retrains his freedom, even if the detention is brief and falls short of arrest". State v. Damm, 787 P2d ll85, ll88, (l990).

## THE CAR STOP

A car stop by an officer using lights or sirens from a marked police vehicle is always a seizure. State v. Knight, 33 Kan. App. 2d 325, 104 P.3d 403 (2004), United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995). A traffic stop is a seizure within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395-96, 59 L.Ed.2d 660 (1979). A traffic stop is a seizure within the meaning of the Fourth Amendment. State v. Slater, 267 Kan. 694, 696-97, 986 P.2d 1038 (1999); State v. Mitchell, 265 Kan. 238, 241, 960 P.2d 200 (1998); State v. McKeown, 249 Kan. 506, 510, 819 P.2d 644 (1991). To stop a moving vehicle, an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402(1) and Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968). McKeown, 249 Kan. at 510.

The trooper did not have a warrant for the arrest of Mr. Jones or probable cause to believe that an arrest warrant had been issued as per K.S.A. 22-2401(a) or K.S.A. 22-2401(b). The trooper had no information such that he could reasonably suspect Mr. Jones was committing, had committed or is about to commit a crime as per K.S.A. 22-2402. The stop and detention was therefore illegal, in violation of K.S.A. 22-2401, K.S.A. 22-2402, the Fourth and Fourteenth amendments to the United States Constitution and the Constitution of the State of Kansas, Bill of Rights, Sections Ten and Fifteen unless a traffic violation can be established.

K.S.A. 8-1523, following another vehicle too closely provides that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." The video from Trooper Simone's car shows that at no time was the Honda driven by Mr. Jones closer than reasonable and prudent. Trooper Simone was unable to estimate with any certainty how far behind the semi the Honda was traveling.

His stop, seizure, and detention were therefore illegal in violation of K.S.A. 8-1523, K.S.A. 22-2401, K.S.A. 22-2402, the Fourth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Kansas, Bill of Rights, Sections Ten and Fifteen.

Any and all evidence, physical or otherwise, discovered subsequent to the stop, detention, and arrest of Mr. Jones is therefore fruit of an illegal stop, detention, and arrest and should be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

Any and all statements, oral or otherwise, identifications and actions made subsequent to the stop, detention, and arrest of Mr. Jones are therefore fruits of an illegal stop, detention, arrest and seizure of defendant and should be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

Any and all waivers to Constitutional Rights are defective as fruits of an illegal stop, detention and arrest.  U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).  Without the illegal stopping of the Honda, Mr. Jones would never have been placed in a situation where any waiver could occur.

Any and all statements, oral or otherwise, and actions of Mr. Jones based on such waivers are therefore fruits of the poisoned tree and should be suppressed.  U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).  Any and all physical evidence seized or discovered as a result of such waivers are fruits of the poisoned tree and should be suppressed.  U.S. v. McSwain, 29 F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

## THE DURATION OF THE SEIZURE

A seizure must be limited in scope and duration by the circumstances that rendered it proper.  However, not every detention of an individual amounts to an illegal seizure thus triggering the protections of the Fourth and Fourteenth Amendments and the Kansas Bill of Rights.  K.S.A. 22-2402(l) authorizes police officers to stop a person without making an arrest whom they reasonablely suspect is committing, has committed or is about to commit a crime. An officer with this belief who stops an individual may demand the name, address and explanation of the person's actions.  The statute also allows the officer to frisk the individual stopped pursuant to subsection (l) for firearms if he reasonably suspects his safety requires it. This statute is the codification of the rule set out in Terry v. Ohio, 391 U.S. 1, 85 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) and applied in State v. Jackson, 213 Kan. 219, 515 P.2d 1108 (1973).

A traffic stop is an investigatory detention, and is a seizure implicating the Fourth Amendment. State v. Thompson, 284 Kan. 763, 773; 166 P.3d 1015 (2007). An investigatory traffic stop is only reasonable, and thus Constitutional if (1) the stop is justified at its inception and (2) the scope and duration of the stop are reasonably related to the initial justification for the stop. State v. Smith 286 Kan. 402,407, 417-419, cert denied 129 S. Ct. 628 (2008).

In U.S. V. McSwain, 29F.3d 558 (10th Cir. 1994) a Utah trooper stopped the defendant's car because he could not read the temporary tag. After the stop, as the trooper was approaching on foot he was able to read the tag. This should have ended the encounter but the trooper persisted to obtain "consent to search." However, the 10th Circuit ruled this an improper use of the police power.

"Trooper Avery stopped Mr. McSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Once Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. Trooper Avery's further detention of the vehicle to question Mr. McSwain about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification." McSwain at 561.

In the absence of reasonable suspicion of criminal activity unrelated to the circumstances of the traffic stop further detention and search is unreasonable. State . Schneider, 32 Kan. App. 2nd 258, 263 (Kan. App. 2003).

"An investigative detention must last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500, 75 L. Ed.2d 229, 103 S. Ct. 1319 (1983). That purpose in this case was, theoretically, for Mr. Jones following the truck in front of him too closely. This is not what the video tape shows. Additionally once a warning ticket had been given to Mr. Jones the law required that Trooper Simone allow him to proceed on his way. This was not done.

"In summary, a `stop and frisk,' under <u>Terry</u> and our statute, [K.S.A. 22-2402(1),] requires that the officer have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime." <u>State v. Epperson</u>, 237 Kan. 707, 712, 703 P.2d 761 (1985). In <u>Epperson</u> the Kansas Supreme Court affirmed a suppression order, noting: "The officer was suspicious but he had no objective facts upon which to form a belief that the men were involved in criminal activity." 237 Kan. at 713.  In the <u>Epperson</u> case Officer Borkowski though that he may have smelled a faint odor but by his words it was not enough.

<u>State v. Mitchell</u>, 960 P.2d 200 (1998), makes clear that the length of detention must be strictly related to the reason for the stop.   Additionally, "a law enforcement officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he or she is entitled to operate the car, the driver must be allowed to proceed on his or her way, without being subject to further delay by the officer for additional questioning." <u>State v. Anderson</u>, 281 Kan. 896, 902 (2006).

The Tenth Circuit was presented with similar factual circumstances in <u>United States v. Edgerton</u>, 438 F.3d 1043 (10th Cir. 2006). There, a Kansas highway patrol trooper stopped the defendant's vehicle at night because he could not read the state of origin or tag number on the vehicle's temporary registration tag. The trooper believed the defendant had failed to display a "clearly visible" tag in violation of K.S.A. 8-133. <u>Edgerton</u> at 438 F.3d at 1045-46.

However, when the trooper approached the vehicle, he could see that the temporary tag was issued by the State of Colorado and appeared to be valid. Nevertheless, the trooper approached the defendant, asked for license and registration, and returned to his patrol car to prepare a warning ticket. When the trooper returned the defendant's license and registration and

handed her the warning ticket, he obtained consent to search the vehicle's trunk and ultimately discovered over 20 kilograms of cocaine.

The Edgerton court concluded the initial stop was valid, but found the defendant was unlawfully detained after the trooper determined she had a valid, properly displayed, temporary tag.  Ultimately, the Edgerton court reversed the district court's denial of the defendant's motion to suppress, finding that the reasons for the stop dissipated after the trooper was able to read the tag and determined it did not violate K.S.A. 8-133. Edgerton at 438 F.3d at 1051.

Probably the closest appellate case to the instant situation is State v. Jimenez, 420 P.3d 464 (Kan. 2018).  In Jimenez the defendant was stopped for following too closely.  The officer asked detailed questions about travel plans.  These questions extended the duration of the stop and had nothing to do with the reason for the stop.  That is what happened to Mr. Jones with Trooper Simone asking about where he had slept while in Hays and then attempting to locate hotels in Hays to determine whether he believed what Mr. Jones had told him.  The Kansas Supreme Court held that although travel questions could be permissible, they must be related to the reason for the stop. Jimenez at 472.  Referring to the United States Supreme Court decision in Rodriguez v. U.S., 135 S. Ct. 1609, (2015) the Kansas Supreme court explained

> "Starting with Rodriguez, as explained, a plain reading shows the Court's intention to clarify that any traffic stop extension without reasonable suspicion or consent – even by a *de minimis* length of time – amounts to an unreasonable seizure when the delay is based on anything but the articulated components of the stop's mission." Jimenez at 474.

There was nothing upon which to base an investigation into Mr. Jones' travel plans or where he had spent his nights while in Hays.  This was an impermissible extension of his detention.  It was not related to the reason for the stop in any way.  Such information could not shed any light on whether Mr. Jones was following the semi too closely.

That the police did not have a warrant for the arrest of the defendant or probable cause to believe that an arrest warrant had been issued as per K.S.A. 22-2401(a) or K.S.A. 22-2401(b) is uncontested. Such arrest and detention was therefore illegal, in violation of K.S.A. 22-2401, K.S.A. 22-2402, the Fourth and Fourteenth amendments to the United States Constitution and the Constitution of the State of Kansas, Bill of Rights, sections Ten and Fifteen.

Any and all statements, oral or otherwise, identifications and actions made subsequent to the detention, and arrest of Mr. Jones are therefore fruits of an illegal stop, detention arrest and seizure of defendant and should be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963). Any and all evidence, physical or otherwise, discovered subsequent to the stop, detention, and arrest of Mr. Jones is therefore fruit of an illegal stop, detention arrest and seizure of defendant and should be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

Any and all waivers to Constitutional Rights are defective as fruits of an illegal arrest. U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963). Any and all statements, oral or otherwise, and actions of accused based on such waivers are therefore fruits of the poisoned tree and should be suppressed. U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963). Any and all physical evidence seized or discovered as a result of such waivers are fruits of the poisoned tree and should be suppressed. U.S. v. McSwain, 29 F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

There was no violation of K.S.A. 8-1523. Regardless, once Mr. Jones had been seized and pulled over to the side of the highway Trooper Simone questioned him about his travel, tried to disprove what Mr. Jones had told him, and issued a warning ticket but did not allow him to leave. The trooper had no legal reason to extend the stop further by asking about Mr. Jones' travel plans, investigating the geography of Hays, holding Mr. Jones by the road, and waiting for Officer Ahlstedt and his dog, Kaiser. These delays and search were without legal justification. Trooper Simone then physically search the car and its containers causing further delay. This additional delay and search were without legal justification. Yet more illegal detention and delay occurred as Mr. Jones was transported to the police station and questioned.

## THIS WAS NEVER A VOLUNTARY ENCOUNTER

Although Trooper Simone Trooper Simone returned to the Honda and handed the his documents back to Mr. Jones and a written warning for the traffic violation the encounter never moved from an investigatory detention to a voluntary encounter. The trooper says "Have a safe trip," but within one second says "Hey, you mind if I ask you a couple more questions?" There was no break in contact before Trooper Simone began asking specific questions about illegal items in the car. Trooper Simone did not step away from the Honda. Trooper Simone did not even turn away from the driver's window. Looking at State v. Diaz-Ruiz, 211 P.3d 836, (Kan. App 2009), we see that even when a trooper steps away from the citizen's truck if he immediately turns back and asks if the occupants would mind answering a few questions the officer has not established a sufficient break. A few seconds are not enough to show a change to a consensual encounter. Diaz-Ruiz at 845.

## NO CONSENT WAS OBTAINED

At no time did Mr. Jones give Trooper Simone permission to search his car or any containers therein. Trooper Simone asked him twice and both times he denied to provide permission for the officer to search any of his property. Although consent can provide grounds for a warrantless search during a consensual encounter it did not occur in the early morning hours of May 13, 2017.

## NO REASONABLE SUSPICION JUSTIFIED DETAINING MR. JONES AND SEARCHING HIS CAR

There was no reasonable articulable suspicion of criminal activity which justified detaining Mr. Jones and searching his car and the containers therein. The only factors Trooper Simone was able to cite to justify his holding the car for Kaiser and Officer Ahlstedt was a perceived "nervousness" based on a quivering in his voice and what he saw as difficulty answering questions about his recent travel plans. The video tells a different story. The conversation between Trooper Simone and Mr. Jones was captured on the trooper's microphone. Mr. Jones' voice does not quiver and he does not have difficult answering questions about where he has been or where he is going.

This situation is extremely similar to the factual scenario found in State v. Lowery, 420 P.3d 456, (Kan. 2018). That was also a stop for "following too close." The officer there asked many questions related to travel plans which had nothing to do with completing the mission of the traffic stop for following too closely. Again the officer told the driver he was free to go but started asking more questions. Consent to search was denied by the driver.

The State tried to justify that detention and search in the Lowery case by referring to the nervousness of the driver and his passenger and discrepancies in relaying travel plans, along with the fact that the pair were headed to Colorado, and the officer's on-line research about air fare prices. The District Court suppressed the search and its results. The Supreme Court agreed with the suppression. Both courts found that the video of the stop did not show more than that the driver was nervous and answered the officer's questions with little hesitation and without confusion. Both courts found that minor inconsistences in travel plans were not a basis for suspecting criminal activity. Nor was the fact that they were headed to Colorado any basis for suspecting criminal activity. Lastly the officer's research on air line prices to see if the answers given to his travel plan questions were not found to aid in providing grounds for the detention and search.

State v. DeMarco, 263 Kan. 727 (Kan. 1998) gives further instruction as to the establishment of reasonable suspicion justifying a search of a car. The State in that case offered eight grounds including nervousness and fidgeting of the driver's hands; coming from Los Angeles, a source city for narcotics; an unusual route to the destination of Florida; that I-70 is a "major drug highway"; and inconsistent travel plan answers between the driver and passenger. The Kansas Supreme Court found that nervousness alone is not sufficient for further detention. Although travel route could be a factor, it was not held to be so in DeMarco's case. Much less in Mr. Jones' situation where he told the trooper he was going from Hays to Ohio. I-70 is by far the most likely route. The minor inconsistencies between the drive and the passenger in DeMarco were not held to establish sufficient reasonable suspicion either. The question is one of totality of circumstances. All eight of the circumstances in DeMarco together did not add up to establish reasonable suspicion. Much less so in Mr. Jones' case.

The 2008 case of State v. Gross, 184 P.3d 978, (Kan. App 2008) explores this concept of reasonable suspicion and builds upon DeMarco.  The trial court in this case cited nervousness as one of the factors giving rise to reasonable suspicion. The court stated at 991:

> "We point out that nervousness alone does not give rise to reasonable suspicion. See DeMarco, 263 Kan. at 738, 952 P.2d 1276. Although nervousness along with other suspicious circumstances might contribute to a finding of articulable suspicion, this factor should be considered with caution in light of the fact that most individuals are likely to exhibit some signs of nervousness when confronted by police. Concluding that the defendant's nervousness alone did not provide a reasonable suspicion of illegal activity, our Supreme Court in DeMarco quoted United States v. Hall, 978 F.2d 616, 621 n. 4 (10th Cir.1992), as follows:
>
>> "`While a person's nervous behavior may be relevant, we are wary of the objective suspicion supplied by generic claims that a Defendant was nervous or exhibited nervous behavior after being confronted by law enforcement officials, even recognizing that reasonable suspicion may be the sum of noncriminal acts and is based on the totality of circumstances, see [U.S. v.] Sokolow, 490 U.S. [1,] 7-10, [109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)]. As we recently observed:
>>
>> "`"In all search and seizure cases of the type here concerned, the government argues that a defendant's nervousness, either alone or in conjunction with other factors, supports the contested search or seizure. This repetitive assertion by the Government in all cases of this kind must be treated with caution. It is common knowledge that most citizens ... whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness." [Citations omitted.]'" 263 Kan. at 738, 952 P.2d 1276."

Likewise the case of State v. Chapman, 23 Kan. App. 2d 999 (Kan. App. 1997) shows that nervousness, a clean car interior, and coming from an area with narcotics activity, Phoenix, did not amount to reasonable suspicion under the totality of circumstances.

> "A majority of the factors relied upon by Jimerson—heavy breathing, avoidance of eye contact, trembling hands, and trembling voice—can be explained as normal nervousness. "We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on ... nervousness ... as a basis for reasonable suspicion ... `must be treated with caution.' [Citation omitted.]" United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994). It is not uncommon for most citizens, whether innocent or guilty, to exhibit signs of nervousness when stopped by the police. See United States v. Lambert, 46 F.3d 1064, 1070-71 (10th Cir. 1995);

United States v. Hall, 978 F.2d 616, 621 n.4 (10th Cir. 1992); United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992). Jimerson had no prior acquaintance with Chapman which would enable him to contrast Chapman's behavior during the traffic stop with his usual demeanor." Chapman at 1009.

Additionally, Trooper Simone testified that he found it suspicious that Mr. Jones said he had spent time in Hays. The trooper said drivers often say they have been in Hays. At preliminary hearing he stated that he assumed that Mr. Jones had actually been coming from Colorado. But he went on to testify that he would likewise have considered it suspicious if Mr. Jones had said he had come from Colorado itself.

Basically, Trooper Simone is considering anyone traveling east bound on Interstate 70 with out of state tags to likely be traveling from Colorado and therefore under suspicion of committing a crime, possessing marijuana. It is a fact that Colorado has an industry legal under its laws which allows the sale of marijuana to individuals. Nevertheless this does not amount to reasonable articulable suspicion of a crime for everyone who travels east from Colorado. This is not what the Supreme Court was talking about in Terry v. Ohio, 391 U.S. 1, 85 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Equating travel from one state into another to being a ground for suspicion of committing a crime is a violation of the privileges and immunities clause of the U.S. Constitution. The U.S. Supreme Court decision in Crandall v. Nevada, 73 U.S. 35 (1868) declared that freedom of movement is a fundamental right. Traveling from Hays, or from Colorado for that matter can not be considered an appropriate ground for suspicion.

In State v. Moore, 154 P.3d 1 at 13, (Kan. 2007), another following too closely stop, the Court opined that "We do not advocate a total, or substantial, deference to law enforcement's opinion concerning the presence of reasonable suspicion." "Such a level of deference would be an abdication of our role to make a de novo determination of reasonable suspicion." Ibid.

Any and all evidence, physical or otherwise, discovered subsequent to the stop, detention, seizure, and arrest of Mr. Jones is therefore fruit of an illegal stop, detention arrest and seizure of accused and his property and should be suppressed.  Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

Any and all statements, oral or otherwise, identifications and actions made subsequent to the seizure, detention, and arrest of defendant and search of his car and the containers therein are therefore fruits of an illegal stop, detention arrest and seizure of Mr. Jones and should be suppressed.  Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

Any and all waivers to Constitutional Rights are defective as fruits of an illegal arrest. U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).  Any and all statements, oral or otherwise, and actions of Mr. Jones based on such waivers are therefore fruits of the poisoned tree and should be suppressed.  U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).  Any and all physical evidence seized or discovered as a result of such waivers are fruits of the poisoned tree and should be suppressed. U.S. v. McSwain, 29 F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

## ALL COMMENTS, COMMENTS AND RESPONSES OF MR. JONES ARE INADMISSABLE

After the search of his car and the containers in his car Mr. Jones was questioned by Trooper Simone. He answered a few questions and then requested an attorney. Mr. Jones was taken to the Highway Patrol office and the situation discussed further. All comments and responses by Mr. Jones whether verbal, written, or by visual cues to any and all communication by Trooper Simone or other law enforcement officers were the result of the illegal stop, detention, search and arrest as described above.

Any and all statements, oral or otherwise, identifications and actions made subsequent to the detention, and arrest of accused are therefore fruits of an illegal stop, detention, arrest and seizure of Mr. Jones and should be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963). Any and all evidence, physical or otherwise, discovered subsequent to the stop, detention, and arrest of Mr. Jones is therefore fruit of an illegal stop, detention, arrest and seizure of defendant and should be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963).

Any and all waivers to Constitutional Rights are defective as fruits of an illegal arrest. U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (U.S. 1963). Any and all statements, oral or otherwise, and actions of accused based on such waivers are therefore fruits of the poisoned tree and should be suppressed. U.S. v. McSwain, 29F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 9 L.Ed. 2d 441 (U.S. 1963). Any and all physical evidence seized or discovered as a result of such waivers are fruits of the poisoned tree and should be suppressed. U.S. v. McSwain, 29 F.3d 558 (10th Cir. 1994), Wong Sun v. United States, 371 U.S. 471, 9 L.Ed. 2d 441 (U.S. 1963).

THEREFORE, Mr. Jones was improperly stopped, and seized, his detention illegally extended, and the exterior and then the interior of his car illegally searched.  After the physical search of the interior of his car and the containers inside it, Mr. Jones was improperly questioned by Trooper Simone.

WHEREFORE, Mr. Jones prays that an order be issued quashing his stop, detention, arrest and seizure, and suppressing any and all evidence, physical or otherwise, statements, of all kinds, and identifications obtained by the State of Kansas pursuant to said stop, detention, seizure, and arrest, and the search of his property and person and responses to police questions and interrogation.

Respectfully submitted,

PATRICK M. LEWIS, # 13803
The Law Office of Patrick Lewis, LLC
104 E. Poplar Street
Olathe, KS 66061
(913) 558-3961 tele
(913) 764-5012 fax
patricklewislaw@gmail.com

  /s/ Patrick M. Lewis
Attorney for Accused

CERTIFICATE OF DELIVERY

       I hereby certify that I delivered a true and correct copy of the above and foregoing Motion to Quash Stop, Detention, and Arrest and Suppress Evidence by the electronic delivery system to the Office of the Shawnee County District Attorney, on the 24th day of February, 2019.

       /s/ Patrick M. Lewis