**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*,<br><br>*Defendants*. | **Case No. 6:19-cv-01343** |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Named Plaintiffs Blaine Shaw, Samuel Shaw, and Joshua Bosire submit this supplemental brief in support of their Motion for Class Certification (Dkt. 80, "Motion") in order to provide a status on discovery in this case as it relates to this Motion.

The Named Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Dkt. 93, "Reply") stated that discovery was still open for six months. This has changed. The parties have had significant difficulties in accessing materials in the Kansas Highway Patrol's (KHP) document database. (*See* Dkt. 104). On April 12, 2021, Judge Birzer altered the schedule, noting, "As for Plaintiffs' deadline to file any motion to compel regarding Defendant KHP's pending ESI issues (*see* ECF No. 126), the Court postpones that deadline indefinitely pending the outcome of the parties' continued conferral efforts, particularly in light of the recent deposition of the Global Systems representative." (Dkt. 135). Judge Birzer entered this order based on a request to revise the schedule filed by the Named Plaintiffs, which explained the discovery performed

to date. (Dkt. 129). Of particular importance to the Motion for Class Certification, Plaintiffs have had significant difficulties ascertaining what records, if any, KHP has created regarding individual traffic stops and canine searches, beyond reports written by canine handlers. Plaintiffs have requested documents that would show patterns or trends of unconstitutional stops and detentions that are contained in KHP's email servers and/or computerized Records Management System. As of this writing, Named Plaintiffs' have still not obtained any keyword search results from either of these sources with respect to canine searches or travel plans.

Nonetheless, the parties continue to meet and confer on ESI and other discovery issues. As part of the discovery process, Named Plaintiffs agreed to summarize detailed facts they had obtained from Kansas travelers who had experiences with the KHP similar to those of the Named Plaintiffs and Peter Vasquez, the plaintiff in *Vasquez v. Lewis*, 834 F.3d 1132 (10th Cir. 2016). These summaries were contained in the Response to Defendant Herman Jones' Second Set of Interrogatories served on defense counsel on April 12, 2021 (*see* Dkt. 136). This process and the general progress of the case indicate it is advisable to revise Ms. Tseng's declaration in support of the Motion (*see* Dkt. 81 at Ex. 1). Attached hereto as Ex. B is Ms. Tseng's supplemental declaration. All the Kansas travelers identified in Ms. Tseng's first declaration had contacted the ACLU stating that they had interactions with the KHP that were similar to the issues in this case. The supplemental declaration narrows the list of persons to those whose experiences are most similar to the allegations in this case.

Importantly, however, the universe of travelers who have been impacted by KHP's unconstitutional practices is likely far greater than the number of individuals listed in Named Plaintiffs' summaries. Named Plaintiffs have made diligent efforts to narrow discovery requests and work within KHP's various records systems to identify that universe. For example, the Named Plaintiffs' Reply explained how they expected that production of canine deployment reports and other documents from the KHP would identify the pattern and practice of unconstitutional conduct alleged in this case. (Dkt. 93 at 15 and Ex. A). The Reply explained that, while some of these deployment reports contained a narrative description of why the trooper had reasonable suspicion for requesting a canine search, in many more reports, the narrative description provided no indication of reasonable suspicion justifying a canine search. *Id.* At that time, Named Plaintiffs expected that they would obtain and review additional paperwork, such as the KHP's Narrative Incident Reports (form HP-133), to identify the troopers' reasonable suspicion for requesting a canine search. *Id.*

Since that time, the KHP has taken the position that it does not direct its troopers to document their reasonable suspicion for many canine searches, or that such documentation, if it exists, is not accessible.[1] Little such documentation has been produced by the KHP. For example, Named Plaintiffs obtained 1,900+ canine reports filled out by canine handlers employed by the KHP. Many of these reports were irrelevant, as they regarded canine searches of high schools, Fed Ex facilities, or parking lots. After reviewing all such reports,

[1] Accessibility and searchability of the KHP database remains an open issue on which the parties continue to confer.

Named Plaintiffs identified 332 such reports potentially relevant to this case (e.g., the driver had out of state plates, a canine search was called, and the canine did not alert,) Of those 332 reports, the KHP only produced 38 HP-133/narrative reports. Through the meet and confer process, the KHP has explained this lack of documentation by the fact that it directs its troopers *not to prepare* HP-133s unless there is an arrest or seizure. Through this KHP policy and practice, it appears that the KHP is able to conceal any evidence of improper and unconstitutional searches—KHP troopers do not need to justify canine searches at all for a large number of canine searches. Likewise, without such documentation, KHP's supervisors avoid tracking and correcting problematic and unconstitutional conduct by troopers, including prolonged detentions without sufficient reasonable suspicion. The KHP is bold in choosing this policy and practice, despite the Tenth Circuit's warning. *See Vasquez*, 834 F.3d at 1138 ("Absent a demonstrated extraordinary circumstance, the continued use of state residency as a justification for the fact of or continuation of a stop is impermissible.")

Since the decision in *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997), it has been "clearly established" that KHP troopers cannot rely on factors like an "unusual" car (e.g. rented or older), containing "'unusual' but typical items" (e.g. items covered by blankets, trash wrappers, and maps), operated by a nervous driver, with travel through Kansas to or from a drug source date. *Vasquez*, 834 F.3d at 1139. *Vasquez* expressly informed the KHP that the *Wood* decision "'place[s] the statutory or constitutional question beyond debate' and provides 'contours [that] are sufficiently clear that a reasonable office[er] would understand that what he is doing violates that right." *Id.* quoting *Carroll*

*v. Carman*, 574 U.S. 13, 16 (2014). One of the two individual trooper defendants in this case testified that he did not change how he conducted traffic stops and investigations after the *Vasquez* decision. *See* Ex. C hereto, deposition of McMillan at 240:10-17. The other trooper testified about how he still uses travel plans, including travel from a marijuana source state like Colorado, in his reasonable suspicion analysis. *See* Ex. D hereto, Deposition of Schulte at 128:20-129:19, 164:6-11, 165:1-15, 186:9-188:3, 188:13-189:8. Neither trooper could point to how *Vasquez* altered their conduct in traffic stops and searches.

One of Named Plaintiffs' experts, Chief Hassan Aden, explains that best practices and proper law enforcement procedure require documentation of stops and the criteria used to justify prolonged detention for canine searches. *See* Ex. E hereto, Declaration of Chief Hassan Aden. Only through adoption of such documentation practices can an agency like the KHP assess whether its troopers are undertaking lawful action, within policy, or whether additional training and other performance measures are necessary. *Id.* at ¶ 4-a. Chief Aden notes that KHP's records of the decisions of the named Defendant troopers in this case are incomplete because there is no contemporaneous record of why they requested a canine search in either stop. *Id.* at ¶ 4-b. He concludes that because the KHP does not currently require such reporting absent a seizure or arrest, it appears impossible to know exactly how many drivers are subjected to unconstitutional dog sniffs each year. *Id.* at ¶ 4-c. However, plaintiffs have identified several hundred canine deployments where there is no record of the justification for the deployment, and the dog never alerted. This is a sufficient number of travelers who experienced canine searches after a KHP stop where the

KHP cannot show any reasonable suspicion justifying the canine search.[2] The numerosity requirement of Federal Rule of Civil Procedure 23 has been met.

## CONCLUSION

WHEREFORE, Named Plaintiffs respectfully request that the court (1) find that the Class meets the requisites of Rule 23(a) and (b)(2); (2) certify this action as a class action using the Class definition set forth above; (3) appoint Plaintiffs B. Shaw, S. Shaw and Bosire as class representatives for the Class; (4) appoint undersigned counsel as Class Counsel pursuant to Rule 23(g); and, (5) grant all other and further relief that the Court deems equitable and just.

Respectfully submitted by,

SPENCER FANE LLP

s/ Leslie A. Greathouse
Leslie A. Greathouse KS # 18656
Patrick McInerney KS # 22561
Madison A. Perry KS # 27144
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com

and

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF KANSAS

s/ Sharon Brett

[2] *See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Dkt. 81) at 7-8 explaining that joinder is impractical and numerosity is established where identification of class members is difficult because the information is within the defendant's control.

Sharon Brett KS # 28696
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
lbonds@aclukansas.org
sbrett@aclukansas.org

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of May 2021, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

s/ Leslie A. Greathouse
Attorney for Plaintiffs