EXHIBIT D



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BLAINE FRANKLIN SHAW, et al.,

Plaintiffs,

Case No. 6:19-cv-01343

vs.

HERMAN JONES in his official capacity as the Superintendent of the Kansas Highway Patrol, et al.,

Defendants.

VIDEOTAPED DEPOSITION OF

MASTER TROOPER DOUG SCHULTE

TAKEN ON BEHALF OF THE PLAINTIFFS

February 25, 2021

INDEX


| MASTER TROOPER DOUG SCHULTE | PAGE |
|---|---|
| Examination by Mr. McInerney | 7 |
| Examination by Mr. Chalmers | 244 |


EXHIBITS


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 21 | Notification OAG010802-010803 | 24 |
| Exhibit 22 | "Search and Seizure" OAG011264-011293 | 33 |
| Exhibit 23 | Memo dated 2/3/11 OAG010703 | 67 |
| Exhibit 24 | Memo dated 5/19/11 OAG010697-010698 | 73 |
| Exhibit 25 | Memo dated 6/13/11 OAG010696 | 76 |
| Exhibit 26 | Memo dated 9/1/11 OAG010688 | 76 |
| Exhibit 27 | Memo dated 1/16/13 OAG010672 | 78 |
| Exhibit 28 | Memo dated 1/2/13 OAG010670 | 78 |
| Exhibit 29 | Memo dated 9/6/18 OAG010613 | 83 |
| Exhibit 30 | "Report Writing" OAG001307-001338 | 133 |
| Exhibit 31 | "Criminal Procedures, Arrests, Search and Seizure" OAG000042-000049 | 148 |
| Exhibit 32 | "Search and Seizure" OAG011000-011029 | 152 |
| Exhibit 33 | PowerPoint OAG011030-011045 | 168 |


Case 6:16-cv-01343-KHV Document 124-3 Filed 03/10/21 Page 2 of 13

| | | |
|---|---|---|
| Exhibit 34 | "Legal Issues in Car Stops 2020" OAG000174-000227 | 174 |
| Exhibit 35 | Video | 182 |
| Exhibit 36 | Video | 197 |
| Exhibit 36-A | Video | 230 |
| Exhibit 37 | Memo dated 8/5/19 OAG008501 | 235 |
| Exhibit 38 | Memo dated 7/25/19 OAG008503 | 237 |
| Exhibit 39 | Responses to Plaintiffs' First Set of Interrogatories to Defendants Schulte, McMillan and Jones | 244 |

NOTE: Deposition Exhibits were attached to the original transcript. Exhibits 35, 36, and 36A were retained.

Case 6:19-cv-01343-KHV Document 154-3 Filed 05/10/21 Page 3 of 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BLAINE FRANKLIN SHAW, et al.,

Plaintiffs,

vs. Case No. 6:19-cv-01343

HERMAN JONES in his official capacity as the Superintendent of the Kansas Highway Patrol, et al.,

Defendants.

VIDEOTAPED DEPOSITION OF MASTER TROOPER DOUG SCHULTE, produced, sworn and examined on February 25, 2021, between the hours of 8:45 a.m. and 3:14 p.m., at the offices of Spencer Fane, LLP, 6201 College Boulevard, Suite 500, Overland Park, Kansas 66211, before Sarah A. Davison, a Certified Court Reporter in a certain cause now pending in the United States District Court for the District of Kansas, between BLAINE FRANKLIN SHAW, et al., Plaintiffs, and HERMAN JONES in his official capacity as the Superintendent of the Kansas Highway Patrol, et al., Defendants; on behalf of the Plaintiffs.

Case 6:19-cv-01343-KHV Document 125-3 Filed 05/07/21 Page 4 of 13

A P P E A R A N C E S

For the Plaintiffs:

MR. PATRICK A. McINERNEY
SPENCER FANE, LLP
1000 Walnut Street
Suite 1400
Kansas City, Missouri 64106
Pmcinerney@spencerfane.com

MS. SHARON BRETT
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF KANSAS
6701 West 64th Street
Suite 210
Overland Park, Kansas 66202
Sbrett@aclukansas.org

For the Defendants:

MR. ARTHUR S. CHALMERS
ATTORNEY GENERAL'S OFFICE
120 Southwest 10 Avenue
Third Floor
Topeka, Kansas 66612
Arthur.chalmers@ag.ks.gov

VIDEOGRAPHER: DEDRIC MOORE

ALSO PRESENT: Plaintiffs

Court Reporter:
Sarah A. Davison
CCR #1397-MO #1589-KS
Alaris Litigation Services
1608 Locust Street
Kansas City, Missouri 64108
1-816-221-1160
1-800-280-DEPO

Case 6:19-cv-01343-KHV Document 154-3 Filed 05/10/21 Page 5 of 13

Has their nervousness changed, or, you know, they take that big sign and they're no longer worried about having to pay a fine.

Are they real jumpy? Are they -- are they fidgeting with something in the car constantly? Are they trying -- even before you get them pulled over, are they reaching places in the car trying to put something away? A lot of times -- or sometimes they'll tell you, hey, I got a firearm in the car. Okay. And I'll ask -- and I'm kind of a gun guy, so I like that -- what kind of gun you carrying? Or I noticed a concealed carry permit in their billfold or their purse and I'll ask about that. So do you have your firearm with you today?

No.

Why not? You know, is there anything else in the car?

Well, I got my shotgun in the trunk or something else.

**Q. So -- and I think you just said, a lot of people are nervous when they're pulled over by law enforcement, and I guess that's consistent with your experience over 17 years or so.**

**Is there anything about nervousness that -- that indicates that they're carrying**

Case 6:19-cv-01343-KHV Document 154-3 Filed 05/10/21 Page 6 of 13

**narcotics?**

A. It can. Of course, it's -- by itself it's not. You --

**Q. So -- I'm sorry, go ahead.**

A. You take into consideration their travel plans, where they're going, where they're coming from, how -- if they're going out and coming right back. I'm just going out for the evening, and driving 300 miles one way for an evening is -- doesn't make sense to me, or further.

**Q. So sounds like some of that's based on -- at least some of it is based on out-of-state tags?**

A. It could be. It could be an out-of-state tag. It could be a Kansas tag.

**Q. Is that -- is an out-of-state tag a factor that weighs, in your mind, in favor of reasonable suspicion?**

A. No.

**Q. Is -- you mentioned a lot of factors and -- and we talked earlier about totality of circumstances and -- and things like that.**

**Does it matter -- if it is an out-of-state tag, does it matter whether it's an adjacent state or a state a long way away?**

Case 6:19-cv-01343-KHV Document 124-3 Filed 05/10/21 Page 7 of 13

A. Investigative.

**Q. Correct.**

A. Okay.

**Q. Is that your understanding?**

A. Yes.

**Q. Okay. When you break contact in the vehicle stop that we've talked about and conduct the Two-Step, you step away and then you reengage, at the point you reengage -- this is my question: At the point you reengage, do you have reasonable suspicion?**

MR. CHALMERS: Incomplete hypothetical.

MR. McINERNEY: Okay. You've already objected that way, okay?

MR. CHALMERS: Well, you keep asking the question. I've got an obligation to object and I'm making my objection.

MR. McINERNEY: And we'll note a continuing line of objection on it.

MR. CHALMERS: No, we're not. I'm going to make my objection.

Case 6:19-cv-01343-KHV Document 124-3 Filed 05/10/21 Page 8 of 13

You go ahead and answer his question.

THE WITNESS: Answer?

MR. CHALMERS: Answer his question, yeah.

A. You're not giving -- you don't have -- you're not giving me enough information. I developed my reasonable suspicion, like we talked about before, maybe the car in itself is not -- the car itself is not reasonable suspicion by itself. The person driving is not reasonable suspicion by itself. Their travel plans aren't reasonable suspicion by itself. There are things that are stacking up, I am developing reasonable suspicion. Do I have enough -- do I have completely what I want to get to ultimately probable cause? What you -- and maybe you can rephrase the question differently -- but from what you're asking, I really don't understand the rest of it.

BY MR. McINERNEY:

**Q. Let me try it a different way.**

A. Okay.

**Q. If -- if you were -- you described you returned the license and insurance and -- and you end that contact. And the driver, you say even though you don't tell them, you said the driver is free to go at that point. Does that mean that you don't have reasonable suspicion?**

Case 6:16-cv-01343-KHV Document 124-3 Filed 05/10/21 Page 9 of 13

A. No.

**Q. Okay.**

**Do you recall that?**

A. Yes.

**Q. Was that suspicious to you?**

A. Most of the time people tell you where they're going and what they're -- what they're doing.

**Q. So that was suspicious to you?**

A. Taking it for what it's worth.

**Q. Okay. Did -- did the combination of the cameras in the car, the fact that Mr. Bosire appeared to be recording the encounter on his phone, and his refusal to provide his travel plans, did all those amount to a reasonable suspicion from where you sat?**

MR. CHALMERS: Calls for an opinion as phrased.

THE REPORTER: What was the last part?

MR. CHALMERS: As phrased.

A. Starting -- it's getting there. There's -- with just that, there's not enough there in my opinion. Do I -- have I seen cameras in car before, yes. For narcotics transportation specifically, they'll put -- to keep an on eye on the product, they'll put cameras in the car or tracking devices, that way they know if it ever

Case 6:16-cv-01343-KHV Document 124-3 Filed 05/10/21 Page 10 of 13

leaves the highway or if this person is trying to steal their -- their product.

BY MR. McINERNEY:

**Q. Okay. So explain, if you will, how travel plans factor into your determination of reasonable suspicion.**

A. Where they're going, where they're coming from, how long are they going to be where they're at, is it a quick turnaround. A lot of times people will not -- they won't use their own car or personal car because of the possibility of being seized, so using rental cars and they don't have to worry about -- or a friend's car -- they don't have to worry about it being taken away from them. There's a whole lot more -- there's a lot that goes into that, but...

**Q. If -- if Mr. Bosire had provided information in that context, say he said I'm coming from Colorado, I'm headed to Wichita, would that have made you, just you, more suspicious or less suspicious?**

Case 6:16-cv-01343-KHV Document 124-3 Filed 05/10/21 Page 11 of 13

A. That by itself, it's -- it could go either way. With -- depends on his -- like I said -- his turnaround time, if I knew that, how long he had been out in Colorado, was he actually

out there -- was he seeing family or friends or vacationing, how long did he stay. Just that as itself wouldn't make me any more suspicious.

**Q. Does the -- does the fact that someone's traveling -- well, first, let me define something. The state of Kansas does not have either medical or recreational marijuana that's legal at this point, correct?**

A. Correct.

**Q. State of Colorado has both medical and recreational marijuana legal, correct?**

A. Yes.

**Q. If I refer to Colorado as a source state, that being one that has legalized marijuana, then you'll understand the term I use?**

A. Yes, sir.

**Q. Is the fact somebody is traveling from a source state like Colorado through a state that does not have lawful marijuana, does that contribute to your -- to a finding of reasonable suspicion?**

A. It's building on that reasonable suspicion. It can. Just because they're coming from a state that -- just because they're coming from a state that it is legal in per state statute or state law doesn't mean -- that they're coming

Case 6:19-cv-01343-KHV Document 124-3 Filed 02/10/21 Page 12 of 13

Case 6:18-cv-01343-KHV Document 124-3 Filed 05/10/21 Page 13 of 13

from that area and going wherever doesn't mean they're under -- or doesn't mean they're doing anything wrong.

**Q. So I want to understand your testimony. Is it -- is it your testimony that coming from a source state like Colorado does not make you more suspicious?**

A. As of itself, no.

**Q. At this point, based on what you've been told by Trooper McMillan and based on what you know in this stop, is there reasonable suspicion to detain Mr. Bosire beyond citing him for speeding?**

MR. CHALMERS: Calling for an opinion. Lack of foundation.

THE REPORTER: I'm sorry?

MR. CHALMERS: Lack of foundation.

THE REPORTER: I didn't hear the first part you said.

MR. CHALMERS: Calling for an opinion.

You can go ahead and answer.

A. From what I know from what Brandon told me, of course, I didn't see what he seen up there, just what he's told me and from what I can remember or in looking at it now, no.

BY MR. McINERNEY: