EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BLAINE FRANKLIN SHAW, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>HERMAN JONES, et al.<br><br>*Defendants*. | **6:19-cv-01343-KHV-GEB** |

**DECLARATION OF CHIEF HASSAN ADEN**

1. My name is Hassan Aden. I am the founder of the Aden Group LLC, a consulting group that provides strategic advisory services for law enforcement officials. I have an extensive background in law enforcement and law enforcement policies and practices. I previously served as the Chief of Police of the Greenville, North Carolina Police Department; the Chief Operations Officer of the Police Assessment Resource Center; and the Director of the Research and Programs Directorate of the International Association of the Chiefs of Police (IACP), where I oversaw the day-to-day management of operational programs and research projects aimed at advancing professional police services. I am a former Commissioner of the governing board of the Commission on the Accreditation of Law Enforcement Agencies (CALEA). I also served for 26 years with the Alexandria Police Department in Alexandria, Virginia, before retiring at the rank of Deputy Chief in 2012. I have personal knowledge of the matters stated in this declaration.

2. Plaintiffs retained me in the above captioned matter to serve as an expert on police practices and to conduct an analysis of the Plaintiffs' stops by Kansas Highway Patrol (KHP) troopers to determine constitutional deficiencies, and to analyze KHP policies, procedures, and

practices regarding interdiction and canine searches. I will be submitting an expert report consistent with the Court's scheduling order in this case.

3. Plaintiffs asked me to submit a declaration attesting to proper law enforcement practices regarding documentation of stops and the criteria used to justify prolonged detention for canine searches.

4. Based on my expertise and experience working with multiple law enforcement agencies, and my knowledge of best practices in policing and law enforcement record keeping, I state as follows:

a. Documenting police actions in all enforcement actions, is a national best practice as it maintains a clear record and account of what the officer observed, his or her analysis of the situation and the course of action decided. The resulting documentation provides the elements needed to assess whether the law enforcement action was lawful, within policy, and provides a window into whether training or other performance measures are necessary in the spirit of continuous improvement. Additionally, the records also provide transparency, which is a key reform being sought out in many communities as a part of the national police reform movement underway in the United States.

b. With regard to this case, the issue of transparency is a key factor, as the complete record of the decisions made by Troopers Schulte and McMillian to call for canine units' assistance in their traffic stops is incomplete. There is no contemporaneous record of the reasons they had, at that time, to request a canine unit.

c. The KHP requires documentation of the probable cause or reasonable articulable suspicion only when an arrest is made as a result of canine deployments. In cases

when an arrest is not made, it becomes very difficult to determine how often canine teams were requested, deployed and the results of those deployments.

d. The lack of this documentation is exacerbated by the frequent use of county and local canine teams, when KHP canine teams are unavailable. In such cases, the only documentation of the circumstances surrounding the event will come from non-KHP officers. I understand that KHP does not request this documentation from outside canine units in the normal course of business. In these instances, there is no record at all of the stop or the canine search within KHP's custody or control unless the search results in an arrest or a seizure.

e. As is standard with many law enforcement agencies, KHP should require that all troopers requesting the assistance of canine teams, either within or outside KHP, create a record of the reasons for such a request, even when the dog sniff does not result in an alert, search and arrest.

f. Because KHP does not currently require this, it is impossible to know how many drivers are subjected to unconstitutional dog sniffs each year, because for so many traffic stops and dog sniffs there is no record documenting the reasons for the dog sniff, and therefore whether or not reasonable suspicion existed to prolong the detention.

g. By not requiring that KHP troopers document the reasons for calling out a canine unit—regardless of whether the dog alerts or drugs/contraband are found—KHP supervisors avoid tracking and correcting problematic and unconstitutional conduct by troopers, to include prolonging detentions without sufficient reasonable suspicion.

5. I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2021.

HASSAN ADEN