08/10/2021     Case Nos. 19-1343 and 20-1067     1

 1            IN THE UNITED STATES DISTRICT COURT
                   DISTRICT OF KANSAS
 2


 3  BLAINE FRANKLIN SHAW, et al,

 4            Plaintiffs,

 5       vs.                        District Court
                                    Case Number
 6  HERMAN JONES, in his official   19-1343
    capacity as the Superintendent
 7  of the Kansas Highway Patrol,
    et al,
 8
              Defendants,
 9
    MARK ERICH, et al,
10
              Plaintiffs,
11       vs.                        Case No. 20-1067
    HERMAN JONES, in his official
12  capacity as the Superintendent
    of the Kansas Highway Patrol,
13  et al,

14            Defendants.


15


16            TRANSCRIPT OF PROCEEDINGS


17
            On the 10th day of August, 2021 came on to be
18  heard in the HEARING ON MOTION FOR PROTECTIVE ORDER in
    the above-entitled and numbered cause before the
19  HONORABLE GWYNNE E. BIRZER, Magistrate Judge of the
    United States District Court for the District of Kansas,
20  Sitting in Wichita.
            Proceedings recorded by electronically.
21          Transcript produced by mechanical stenography and
    computer.
22


23


24


25

08/10/2021     Case Nos. 19-1343 and 20-1067     2

1
  APPEARANCES
2
        The Plaintiff, Blaine Franklin Shaw, appeared by
3 and through:
        Mr. Patrick McInerney
4       Ms. Madison Perry
        Spencer Fane, LLP - KC
5       1000 Walnut Street
        Suite 1400
6       Kansas City, MO 64106

7       Mr. Joshua M. Pierson
        Ms. Sharon Brett
8       ACLU Foundation of Kansas
        6701 2. 64th Street, Suite 210
9       Overland Park, KS 66202

10
        The Defendant appeared by and through:
11      Mr. Arthur S. Chalmers
        Office of Attorney General
12      120 SW Tenth
        Topeka, KS 66612
13

14

15

16

17

18

19

20

21

22

23

24

25

08/10/2021     Case Nos. 19-1343 and 20-1067     3

1          (The following proceedings were electronically

2          recorded and have been requested transcribed:)

3          THE COURT:  So let me for ahead and call the

4  matter of Blaine Franklin Shaw, and others, versus Herman

5  Jones, in his official capacity as Superintendent of

6  Kansas Highway Patrol, et al, and that's case number 19

7  CV 1343.

8          And then I'll call the case of Mark Erich, et al,

9  versus Herman Jones, in his official capacity as

10  Superintendent of the Kansas Highway Patrol, et al, and

11  that is Case Number 20 CV 1067.

12          Just so that we can open the record, can we have

13  appearances.

14          MR. McINERNEY:  Good afternoon, Judge.  This is

15  Pat McInerney on behalf of the plaintiffs in this case.

16          And I'll let the other individuals enter their

17  appearances from our side.

18          THE COURT:  Okay.

19          MR. PIERSON:  Your Honor, this is Josh

20  Pierson -- I knew that was going to happen.

21          MS. BRETT:  I did, too.

22          MR. PIERSON:  This is Josh Pierson for the

23  plaintiff, Your Honor.

24          THE COURT:  Okay.

25          MS. BRETT:  And this is Sharon Brett and Madison

08/10/2021     Case Nos. 19-1343 and 20-1067     4

1  Perry, as well.

2       So Sharon Brett and Madison Perry.  Sorry about

3  that, Your Honor.

4          THE COURT:  Thank you.

5       Defendant?

6          MR. CHALMERS:  Arthur Chalmers, the Attorney

7  General's Office, Your Honor.

8          THE COURT:  Okay.  All right.  So I've had a

9  chance to review the motion for protective order and

10  supporting memorandum, as well as Exhibit 1, which is the

11  Declaration of Mr. Schulte.

12       I've also looked at the deposition excerpts of the

13  deponent; the deposition rough transcript.

14       I've looked at some case law that was cited by

15  counsel in their -- in your briefs.  I've also reviewed

16  plaintiff's response in opposition, together with the

17  exhibit that was attached to that response.

18       I've reviewed just this morning the defendant's

19  reply.

20       And then I looked at 30 -- Rule 30(c) and (d), and

21  then just Rule 26 just so that I could put you folks'

22  arguments in to context.

23       Is there anything else, counsel, that you feel

24  like I needed to review in order to prepare and be

25  well-versed on this matter before us today?

08/10/2021      Case Nos. 19-1343 and 20-1067      5

1        Let me start with Mr. McInerney.

2        MR. McINERNEY:  Not from the plaintiffs' side,

3    Judge, I think that -- I think what you have in front of

4    you and what you've listed covers the issues and the

5    factual basis.

6        THE COURT:  Okay.  All right.

7        Mr. Chalmers, anything else?

8        MR. CHALMERS:  I don't know of anything, Judge,

9    no.

10       THE COURT:  Okay.  All right.  So I guess,

11   Mr. Chalmers, I'll start with you since it is your motion

12   for protective order.  And one -- you know, I know you

13   have several things to cover but the one thing that

14   struck me almost immediately is during this deposition

15   when these two questions that you're complaining about

16   were posed, you know, you folks -- I've said it a lot of

17   times, you have an open invitation to call me any time

18   you get stuck on a hill that you can't get off of.

19       Why didn't you call me on these questions.

20       MR. CHALMERS:  Probably should have, Your Honor.

21       I -- as I understood that I was obligated to do

22   so, I will tell you that the real reason is that we are

23   in my conference room.  I don't know how to access the

24   phone from the conference room well enough to be able to

25   access your office so I filed it more of a practical

08/10/2021      Case Nos. 19-1343 and 20-1067      6

1  problem, I didn't know whether you would be available or

2  not.  But that was my thinking.

3          THE COURT:  Okay.

4          MR. CHALMERS:  I also had in my mind at the time

5  that what would happen would be if -- if the plaintiffs'

6  counsel was of the idea that -- that this really was a

7  proper question, that maybe at the end of the deposition,

8  after he asked all his questions, we'd kind of put that

9  on pause, that we might reach out to you.

10          But because I didn't get any feedback from

11  plaintiff that they were going to push this, I

12  didn't -- I didn't do anything further that day.

13  Instead, I reached out, obviously, the next day --

14          THE COURT:  Mm-hmm.

15          MR. CHALMERS:  -- to follow-up, as I thought the

16  rule requires us, to try to expeditiously try to get a

17  motion on file.

18          THE COURT:  All right.  I have had a chance to

19  review your -- your motion and your exhibits that was

20  attached to your memorandum.

21          Is there anything else you would like to argue?

22          Or anything -- you know, do you want to have

23  comments?

24          MR. CHALMERS:  I would be happy to answer any

25  questions you have but, no.  I think there is good cause

1  for the protective order we seek.  And I understand that

2  Rule 30 and Rule 26 dovetail together.  In fact, I think

3  Rule 30, for a matter of rule switchery got switched over

4  to the language to the pattern and switched over to 26

5  which gives broad discretion of the Court and there's

6  just no legal justification for the questions that are

7  being asked by plaintiffs' counsel and they really

8  shouldn't have been asked.

9        THE COURT:  Okay.  Well, you know, I -- I don't

10 you shouldn't have instructed the witness not to answer.

11 I mean, I understand the quandary that you found yourself

12 in with regard to that but what would have been

13 the -- what would have been the -- the problem with

14 submitting this later as a, you know, in a motion in

15 limine?

16        MR. CHALMERS:  Well, once the answer is out, the

17 opinion that he is inquiring in the form has been formed.

18 I -- I don't think a motion in limine is the solution.

19 It's requiring the witness to create an opinion that they

20 don't already hold that's the problem.

21        And -- and, in essence, it is allowing a party in

22 a deposition to -- to obligate someone to give an

23 opinion.  And you know, under, if anything, Rule 45, as

24 that has been constructed, when it talks about opinions,

25 has made it clear that when you have got a subpoenaed

08/10/2021      Case Nos. 19-1343 and 20-1067      8

1  party, which I guess this witness kind of fits more or

2  less fits in that category, just as a general rule that

3  isn't supposed to obligate them to give opinion

4  testimony.

5          So a -- a motion in limine is not a solution

6  to -- to the practice here, as I understand it, once the

7  opinion is granted.  Once the opinion is given.  And my

8  concern is that you now have an opinion that is given

9  off-the-cuff, they don't have an opportunity or time to

10  really think it through on a hypothetical such that it

11  appears to be aimed solely at trying to criticize or

12  evaluate what the -- the individual defendant is doing.

13  That's the setting that happened in *Richard*, that is the

14  very same setting that happened in the other cases that I

15  found and that type of setting is improper.

16          And not because they might ultimately be relevant

17  answered, it is because you can't -- you can't obligate a

18  party to -- to form an opinion at a deposition and give

19  it.  It's not discovery.

20          THE COURT:  Mm-hmm.  Okay.

21          Mr. McInerney in his response indicates that, you

22  know, you failed to state the grounds for your motion.

23          And, quite frankly, Mr. McInerney, I'll going to

24  talk with you about that as I'm addressing you.  But I

25  think that I believe that the grounds for your motion are

1 clear.  I mean, under Rule 7(b), I have no -- I have no

2 problem seeing the grounds for your motion.

3      But -- but Mr. McInerney also says that you failed

4 to assert the grounds for a Rule 26 protective order and

5 I'm sure, you know, you understand that -- that the

6 prongs for those are annoyance, embarrassment,

7 impression, undue burden or expense.  And I've reviewed

8 your reply, but walk me through how you believe that the

9 undue burden or expense applies here.

10      MR. CHALMERS:  Well, I think that the way that

11 the undue burden fits with this is a -- is, frankly, an

12 expansive reading of the language of the rule which I

13 think the Courts are generally given, where they grant

14 authority of the courts to do what is right in the

15 context of the facts of the case.

16      But the undue burden here would be that I would be

17 confronted, as the burden relates to -- to the

18 defendants, I would be confronted potentially with

19 opinion testimony that is made off-the-cuff without

20 persons being able to really form an opinion -- a careful

21 opinion that may be adverse to my clients' interests,

22 that may then be used against my clients later in

23 litigation.

24      Or at the very least would require me to file

25 motions and to try to explain those opinions and that's

1  the burden that's being addressed there.

2        But the concept, I think, as to why it is that

3  you're not supposed to or not permitted, particularly

4  when Rule 45 addresses it, to get to opinion testimony

5  that's not been formed.  Or in many instances, even just

6  opinion testimony is it is not a subject of discovery and

7  it is a burden on the party to form the opinion.

8        THE COURT:  Right.

9        MR. CHALMERS:  And it's undue being the notion

10  that it -- that there's not -- there is no obligation to

11  do it.

12        I think there's some question in this case,

13  frankly, in addition to whether it's an undue burden, as

14  to whether the question has a reasonable basis in the law

15  and, therefore, it could be said to be in good faith.

16  And I'm really troubled by, uh, all the arguments that

17  counsel makes where they suggest that there's another

18  purpose to their questions when they just confirmed in a

19  hypothetical, it appears to be tracking exactly what the

20  underlying facts were for reasonable suspicion at least

21  in a certified case and as you know, that was a tactic

22  used in another deposition.

23        THE COURT:  Well, but -- but at the same time,

24  Mr. McInerney says that, in essence, you borrowing worry,

25  you know, in your conclusory statements or your theory of

08/10/2021       Case Nos. 19-1343 and 20-1067       11

1    typical statements on how they would use

2    the -- the -- the information from this deponent.

3            So what would be your response?  I mean, I

4    understand what you're saying and, you know, that

5    your -- your reply and, you know, just your concerns in

6    general but how do you know that, um, you know, that it

7    would be used in the fashion that you suggest here?

8            MR. CHALMERS:  Well, I know how they tried to

9    use it, in the context of previous motions for a

10   protective order where they are focussing on opinion

11   testimony and where they've tried to offer opinion

12   testimony in the past and in the PSU report, so I think I

13   know how they would try to use it, assuming they got what

14   they thought is a favorable opinion from these witnesses.

15   I don't know that they would get a favorable opinion from

16   the witnesses, Your Honor.

17           But what I do know is that I would be engaged in

18   probably some, uh, the likely dispute down the line would

19   be the expense from having sat through the deposition --

20   well, it's not really an expense issue, it's just the

21   burden of having to -- to respond to potentially opinions

22   that are -- that are not prepared.  Again, the idea that

23   a witness is obligated to give an opinion the witness

24   doesn't want to give.

25           THE COURT:  Mm-hmm.  Well, I mean, we don't know

1  that because you wouldn't let the witness answer.  Right?

2       Did you say -- I mean, the phone may be muffled

3  but I thought you said that you were trying to get the

4  witness to give an opinion that the witness didn't want

5  to give?  Or did you say isn't allowed to give?

6            MR. CHALMERS:  Well, the witness was instructed

7  not to give an answer if it was a new opinion; one that

8  they had not formed.  I think that's what you're getting

9  at.

10       I -- if -- if the question is would the answer --

11  would the witness have answered the question, I guess

12  the -- if -- if he had been instructed to answer the

13  question, I suppose he would develop that opinion.

14       What I was saying is I don't know what the record

15  would be as to what opinion he would give.

16            THE COURT:  Mm-hmm.

17            MR. CHALMERS:  That -- if -- if the -- if the

18  argument is, well, we think that the opinion that he

19  would have given would -- would never have been adverse

20  to any of the defendants, I'm not sure that really solves

21  the problem that he shouldn't be obligated to give an

22  opinion that he is not obligated to give.  Depositions

23  are not about requiring persons to give opinions.

24       But -- but I suppose you're right.  But if you

25  were just giving an opinion that was -- ends up being

08/10/2021      Case Nos. 19-1343 and 20-1067      13

1  favorable to defendants, then in that sense I suppose

2  there probably is no undue burden from that but

3  that's -- the burden, I suppose, is still having to hear

4  what that opinion might be that's not prepared.

5           THE COURT:  Okay.  All right.  Anything else?

6           MR. CHALMERS:  No, Your Honor.

7           THE COURT:  Okay.  All right.

8       So, Mr. McInerney, I've reviewed your response and

9  I -- you know, the first thing that, you know, that

10  struck me, you know, just from review of all of the

11  pleadings and the deposition excerpts and then just the

12  rough transcript that I've reviewed is that, you know,

13  Mr. Chalmers permitted you to ask, you know, a lot of

14  questions that I, myself, kind of questionable.  Not to

15  the extent that he should have been instructed not to

16  answer.

17      But then there was a point where, you know, my

18  feeling is that you crossed the line.  I mean, you -- and

19  it seems like Mr. Chalmers gave you an opportunity to

20  even change your hypothetical and you didn't.  So if you

21  want [inaudible] to parade this deponent's statement or

22  his testimony in front of a jury, why else would you need

23  it?  I mean you've got experts.  This is the ultimate

24  question in the case.

25      And I -- while I don't -- I'm not sure that

08/10/2021     Case Nos. 19-1343 and 20-1067     14

1   the -- the undue burden, I've got to process that, that

2   Mr. Chalmers talked about, but bad faith is the -- is the

3   very thing that came to my mind.  Why review of this is

4   you tried to pit these officers against each other and

5   that's -- it's a non-expert witness and the law is clear

6   that that would have been an opinion and the ultimate

7   issue in the case.

8           So, I mean, it -- I'm -- I'm sort of with

9   Mr. Chalmers.

10          MR. McINERNEY:  Well, Judge, I would -- I would

11  direct you right to the transcripts and right to the

12  language, the precise language that was used.

13          Because I think the Government is taking in

14  this -- in this -- in our hearing today, is taking an

15  approach they took in the -- in the pleadings, which is

16  if you say "opinion" enough it becomes opinion.  And

17  there was -- specifically there was never opinion that

18  was solicited.  We were talking and I was asking

19  Lieutenant Jirak about his experience.  In fact, the very

20  language is, before the question is:

21          In your experience, have you ever pulled a car

22  over and had a reasonable suspicion, et cetera.

23          So that was -- that precisely the premise of the

24  question.  I didn't ask him what he thought about other

25  troopers.  I didn't ask him about a hypothetical.  I

08/10/2021      Case Nos. 19-1343 and 20-1067      15

1  asked him about his own experience.

2       And if we are going to take the language of the

3  question at face value then I think it is -- I think it

4  is difficult to get to -- get to a place where that

5  is -- is us eliciting an opinion.

6       And -- and I would tell you this, too:  If --

7       THE COURT:  But that isn't the problem,

8  Mr. McInerney.

9       The problem is if you -- if you pull the driver

10 over and you learn that the driver is, say, driving from

11 a couple of states that you mentioned before, from

12 Oklahoma to Colorado, as in this case, is that fact

13 something to consider in determining reasonable

14 suspicion?

15       Now the questions that you asked prior to that,

16 like what he would consider reasonable suspicion to be,

17 there was no -- you know, you were permitted to ask them

18 and the witness was permitted to answer the question.

19       But when you started to make the hypothetical

20 mirror this case that's where the rubber met the road.

21 Right?

22       MR. McINERNEY:  Well, I mean, there's a

23 number -- as you've read, there is a number of factors

24 that go into reasonable suspicion.  Several of them are

25 present in this case.

08/10/2021      Case Nos. 19-1343 and 20-1067      16

1          So, when I ask troopers who have been trained by

2    KHP in how to apply the -- the perception or the concept

3    of a reasonable suspicion, then -- then a lot of those

4    that are present in this case are going to be triggered.

5          And, Judge, I'd also suggest that -- that it's

6    important here that, you know, I believe we're entitled,

7    and the very point of these questions, is to probe the

8    objective reasonableness in individual stops.  Because if

9    the troopers are entitled to qualified immunity because

10   they didn't know their conduct was improper then, Judge,

11   I think it's entirely permissible for us to ask about the

12   Kansas Highway Patrol's training and their instruction

13   and their education of those troopers, but it's also

14   appropriate to ask who those individual troopers apply

15   that training and their education.

16         So that is -- and that's kind of the heart of the

17   matter from where we sitting.  And that's where these

18   questions -- that's where these questions were heading,

19   when attorney instructed --

20         THE COURT:  Well, you asked him -- you asked him

21   in his mind based upon his training and experience, you

22   know, what is reasonable suspicion.  And he started to

23   give you examples of that.

24         And then you went way over to the facts of this

25   case.  And that -- that's -- you know, I mean even -- you

1  know, that seemed to me to be what you were trying

2  to -- I don't know that -- that, you know, you are trying

3  to build a circumstantial case with this on top of this.

4       But I can foresee, like Mr. Chalmers has

5  indicated, that you get this piece of testimony from this

6  trooper; the next trooper you start to, you know, ask a

7  fact about this case, because I mean you tried to ask

8  him, too, and then there you've got it.  And you've

9  created it without an expert.  And you've got an expert

10 that you can ask these very questions.  Why is this not

11 cumulative?

12      MR. McINERNEY:  Judge, because it's based on

13 experience.  That's why.

14      These aren't -- these aren't opinions of troopers.

15 These are these troopers' experience in applying what

16 they have been trained and how they have been educated by

17 the Kansas Highway Patrol.  So it's not a comment on --

18 again, I'll go out of my way to say this, Judge.  It's

19 not a comment on anyone else's.  I was asking this

20 witness about his experience.  And if we're looking

21 at -- at the objective reasonableness of this approach

22 then, Judge, I -- I think that's an appropriate question

23 to ask.  Not only as a commentary on someone else, but as

24 a commentary --

25      THE COURT:  Well, except that this witness did

08/10/2021      Case Nos. 19-1343 and 20-1067      18

1  not say that he -- that he -- that I could see in the

2  testimony, that he ever had an opportunity to pull over a

3  driver from a couple of states that he mentioned before,

4  from Oklahoma to Colorado.  I mean, I just don't recall

5  this -- now, if that had been a fact in his experience

6  that he -- that this occurred, then I -- I don't -- I

7  think it would be an easier question.

8      But I mean he told you what reasonable suspicion

9  means to him and you did not establish the fact that

10  he -- he -- he pulled over a driver that was driving from

11  Oklahoma to Colorado and he determined it to be

12  reasonable suspicion.  You hadn't done that.  So I don't

13  know how you can say to -- today to this Court that you

14  were asking this deponent about his training and

15  experience as to what he actually experienced.

16      MR. McINERNEY:  I'll be -- well, I'm looking at

17  the language, Judge.  I'm looking at the language of the

18  question I asked:  In your experience, you ever pulled

19  over a car and had a reasonable suspicion?

20      And instead of -- and I would -- I would also tell

21  you, and I'm happy to point out in the transcript

22  passages that I'm describing right now, he said, and his

23  testimony was, That reasonable suspicion was a product of

24  the totality of the circumstances.

25      And we talked about --

08/10/2021      Case Nos. 19-1343 and 20-1067      19

1          THE COURT:  Mm-hmm.

2          MR. McINERNEY:  -- what elements go into

3    establishing the totality of the circumstances element by

4    element.

5          Because the approach that -- that the -- the

6    troopers and the KHP has taken is that no single element,

7    no single factor establishes reasonable suspicion by

8    itself but it's a totality of the circumstances analysis.

9          So when we talk about -- when we talk about these

10   individual elements, I think it's entirely appropriate to

11   ask what weight those elements are given in the context

12   of -- of other elements.  And only based on these

13   troopers' experience.

14         You know, I -- I mean, it's -- I guess

15   it's -- it's okay to suggest that, you know, somehow down

16   the road, we're going to use one trooper's testimony

17   against another trooper's testimony.  There is no

18   indication of that.  And as you said a little bit ago,

19   how would we know, because he instructed them not to

20   answer, in violation of Rule 30.

21         So I think, you know, some of this -- some of

22   these suggestions that the Government's made here

23   are -- they're a reach at best because -- because the

24   foundations on which those objections lay haven't been

25   laid.  And we -- you know, we weren't permitted ask these

1  questions.

2        But, again, I would tell you that because of

3  what's been placed in -- in the center of this case, this

4  qualified immunity defense, then I think it is

5  appropriate for us to ask about -- individual troopers

6  about their training and how they apply that training

7  in -- in making these stops.

8        THE COURT:  Well, it seems to me that, you know,

9  I didn't feel that -- that they were -- was trying to be

10  limitations on the questions to the troopers, you know,

11  and this particular witness concerning his observations,

12  actions and, you know, as a law enforcement officer.

13  But, again, you know, once you tried to seek answers to

14  questions concerning the standards applied by other law

15  enforcement officers, i.e., your two questions, based

16  upon clear facts that exist in this case, I just think

17  that that's a question for experts and this deponent was

18  not an expert.

19        I -- you know, it almost seems to me like you've

20  baited -- you tried to bait this witness in to -- to

21  giving an opinion about how another trooper acted and

22  what he determined to be reasonable suspicion.  And, you

23  know, I don't know objective, subjective or whatever and

24  I do agree that it does depend on the totality of the

25  circumstances, but this deponent, even though a

1  supervisor, wasn't there.

2        So -- right?

3        And so how -- I mean, I just -- I'm not sure how

4  we get to -- we get to where you're wanting to go

5  with -- with this situation.  And -- and I -- you know,

6  while I think I would not condone, you know, the

7  instruction not to answer the question, but even

8  suspending the deposition to file a 30(b) motion, which

9  Mr. Chalmers did, would have the same effect.

10        So I -- I mean, I -- this seems pretty harmless to

11  me.  I mean, I agree, you know, there shouldn't have been

12  an instruction not to answer, you know, the -- the -- not

13  to answer the questions but I'm not sure what else

14  Mr. Chalmers would have -- what he would have been able

15  to do.

16        MR. McINERNEY:  Well, Judge, respectfully -- I'm

17  sorry, go ahead.

18        THE COURT:  Other than, you know, take a chance

19  with a trial judge and hope that, you know, a motion in

20  limine, you know, would be granted on this issue.

21        But I -- you know, he -- Mr. Chalmers makes a

22  point.  You know, that -- that the elephant is in the

23  room there.  The opinion, you know, has been given by a

24  non-expert.

25        And I could -- I mean, I -- just as you can see, I

1 can see just how this would play out in a trial before a

2 jury.  And I know that you say that this wasn't going to

3 happen but, quite frankly, that kind of evidence would be

4 too useful to leave your briefcase.  And I know that.

5          MR. McINERNEY:  And he -- Judge, he's got a

6 remedy because what he is looking for now from you is an

7 advanced evidentiary ruling, right?

8          And that -- and we've cited authority in our

9 briefs that said -- for the proposition that a protective

10 order is precisely not for those purposes.  So he is

11 looking for an advance evidentiary ruling on issues that

12 haven't been raised in the evidentiary context.  It would

13 be entirely appropriate for a motion in limine if he

14 wants to make that, then the Court can rule on it --

15          THE COURT:  Mm-hmm.

16          MR. McINERNEY:  -- but that's a -- that's a

17 different calculation.  That's a different paradigm.

18 Especially, Judge, when he has failed to meet the

19 standard for a protective order under Rule 26 anyway.

20          THE COURT:  Well, I --

21          MR. McINERNEY:  On top of failing to meet

22 the -- of violating Rule 30.

23          THE COURT:  But -- but don't you agree

24 that -- that you can't really have a lay witness testify

25 on expert matters?

1          I mean, we don't disagree that this deponent is a

2    lay witness, right?  This -- this person is not, as far

3    as we know or has been represented here, is not

4    designated as an expert.

5          And, you know, what is determined to be reasonable

6    suspicion, um, is -- is -- that's like sort of kind of

7    the ultimate question in this case and that's for, you

8    know, for an expert to determine.  So I mean, wouldn't

9    you agree?

10          And I mean I thought I read even in your -- in

11    your response, in your -- I think it was your final

12    footnote that, um, while the questions were about factors

13    at issue in Shaw's stop, you said the questions exchanged

14    do not ask Lieutenant -- is it -- how do you say,

15    it's -- I'm not sure how to say the name.

16          MR. CHALMERS:  Jirak, Your Honor.

17          MR. McINERNEY:  It's Jirak.

18          THE COURT:  Jirak, yes.  To give opinion

19    testimony on the Shaw stop itself.

20          No, you didn't say "what is your opinion" but in

21    other words, you know, the way that the question was

22    framed it is clear to me that you tried to exert an

23    informal -- an informal opinion from this witness.

24          I mean, you -- you admit the questions were

25    factors about issues in Shaw's stop, so that's directly

08/10/2021      Case Nos. 19-1343 and 20-1067      24

1  related to this case.

2          MR. McINERNEY:  Well, again, Judge, I think

3  we're going to be at a place where we have to agree to

4  disagree.

5          Because the factors that were in play in the Shaw

6  stop are the factors that are in play in every stop and

7  the formation of a reasonable suspicion is, as we have

8  said over and over, a totality of the circumstances but

9  it is based on certain elements and it's based on certain

10 factors.

11         And, you know, I was looking for Jirak to tell me

12 about his own experience, not the factors in Shaw.  If I

13 wanted that I would have played the video for him and

14 stopped it every five seconds and asked him the question.

15 I was looking for what his understanding from his

16 experience was.  Not to opine anyone else.

17         But I think we're going to -- it sounds to me like

18 we are going to have to agree to disagree on that, Judge.

19         THE COURT:  Well, but -- well, but maybe you're

20 right, but I don't deny that you asked the witness -- the

21 witness questions regarding, you know, how he would form

22 reasonable suspicion based upon a variety of factors and

23 that being stated of origin, destination, items in the

24 vehicle, specific types of vehicles that lend themselves

25 to false comparments and that sort of thing, and even

1 though there were some objections again, given this line

2 of questioning, you know, that -- the witness was never

3 instructed not to answer.  And I can see how you would

4 need to know those things to see what the totality of

5 those things that makes a reasonable suspicion.

6       Again, and you crossed the line with when you

7 started to tailor your example to the facts of this case

8 and that changed the game.  That changed it from simply

9 asking somebody based upon their training and experience

10 to giving them -- asking them to give an opinion based

11 upon what occurred here.

12       And so and, I mean, and this witness told you

13 several times what he felt reasonable suspicion was

14 and -- and you added the facts of this case and I

15 just -- I can't help but think that -- that, you know,

16 that you crossed the line there.

17       Going forward, I'm not sure that I even agree

18 that, um, you know, that we're -- we're

19 asking -- Mr. Chalmers is asking for and -- a ruling that

20 effects evidentiary, um, you know, components here.  But

21 I do think that, you know, we do need to discuss whether

22 or not you should continue to be able to ask the, you

23 know, any additional witnesses that are not experts

24 this -- these same two questions, or because we'll be

25 back here.

08/10/2021      Case Nos. 19-1343 and 20-1067      26

1        So I do think that -- that that's worth some

2   discussion.

3        Mr. Chalmers.

4         MR. CHALMERS:  Your Honor, I don't know that I

5   have anything.

6         On that point, I am asking for a protective order.

7   It's my understanding that -- because I've asked whether

8   or not this is going to come up again, that it likely

9   would.  And I think that is part of the reason we're

10  having this hearing by telephone today, and I do

11  appreciate you accelerating it, is because we have

12  upcoming depositions of -- of another trooper and I'm

13  anticipating these sorts of questions will be asked and I

14  don't think they're proper and so I would seek a

15  protective order as to those, as well as -- as the -- at

16  least in my mind, a protective order as it concerns the

17  two questions that were asked in the Jirak deposition.

18        You know, I -- I think it is in this case

19  allowable for counsel to ask about those opinions that

20  troopers have reached and not necessarily on

21  the -- obviously not about a particular case, but those

22  opinions they've reached based on their training, based

23  on their education, and I've not instructed anyone not to

24  answer those.

25        I have -- I have sometimes worried about the way

1 that the questions were phrased because I thought they

2 were asking for a legal question or conclusion as opposed

3 to trying to track down the education, but what's getting

4 lost in the shuffle of the arguments I hear, I think,

5 that's being presented by plaintiff is that the

6 instruction was not to give an opinion that was new that

7 had not been informed -- not been formed.

8         Definitionally then it doesn't get to the

9 attorney.  And in fact, in the colloquy between counsel,

10 I point out, look, it's all in the form, in your

11 training, then you can go ahead and answer, paraphrasing

12 at the very end.

13        So I -- I think that there is just cause or good

14 cause, rather, for a protective order.  I think that in

15 the *Richards* case with the similar sort of issue where

16 the -- where Judge Humphreys found that a protective

17 order was proper as it concerned an opinion that a doctor

18 would have been required to give, that the doctor

19 actually held, that the point was not could that opinion

20 ultimately be useful or relevant, but it was the fact

21 that they were compelling someone to give an opinion that

22 was not an expert and the abusiveness of that.

23        Which is what I think is going on here, doubly so,

24 when they are being demanded to give an opinion that they

25 have not yet formed.  So that's why we have requested the

1  relief that is requested.

2          THE COURT:  Okay.  Mr. McInerney.

3          MR. McINERNEY:  Well, Judge, as we've set

4  out -- as we've set out in our pleadings, Judge, what the

5  Government's failed to meet the standard for a protective

6  order.

7          And -- and I -- despite our conduct, or our

8  conversation, rather, about undue burden, I don't -- we

9  don't believe that he has met any of those criterion,

10  annoyance, embarrassment, impression, or undue burden.

11  And in the best that you have now is kind of a conclusory

12  statement that the statements may come back to haunt

13  them, not knowing what the statements are, not knowing

14  what even the questions are, let alone the answers.  So I

15  think that falls short of defining the injury, as the

16  rule requires.

17          And I think you also know where we are -- working

18  our way up the chain I think you know where we are on the

19  violation of Rule 30.

20          THE COURT:  Mm-hmm.

21          MR. McINERNEY:  His instruction was well outside

22  of -- of that rule which is -- which Kansas courts and

23  the Tenth Circuit have pretty narrowly confined to

24  privilege, a court order, or a 30(b)(3).

25          So that's -- I think that's where -- that's where

08/10/2021      Case Nos. 19-1343 and 20-1067      29

1 we are, Judge, with respect to -- to the

2 Government's -- Government's position.

3          And we would be happy to provide any other

4 information that the Court wants.

5          THE COURT: Okay.  Well, again, as I've

6 indicated, you know, I'm not condoning the instruction

7 not to answer, the instruction of the witness not to

8 answer, you know, the -- the question.

9          And I -- even though I do think that Mr. Chalmers

10 did take steps to try to comply with Rule 30(b) in that

11 he attempted to -- you know, he contacted you to the next

12 day and then this motion followed up shortly.  And so I

13 do think that there were an effort to try to cure, um,

14 the problems with instructing the witness not to answer

15 so I do think that -- that even though improper, it was

16 harmless.

17          I do also believe that good cause exists under 26

18 (c).  I mean, this is a genuinely good dispute, I do

19 believe, regarding the appropriateness of the

20 non-expert's testimony to comment on another trooper's

21 actions.

22          And, you know, the -- the -- and I think the like

23 of the questioning, apparently will continue through

24 other witnesses and so I do think the good cause exists

25 there and I do think that a protective order is

08/10/2021      Case Nos. 19-1343 and 20-1067      30

1 appropriate in this instance.

2      I'm not sure about annoyance or embarrassment and

3 I still have to wrap my brain around the argument with

4 regard to undue burden but I do think that, you know,

5 this is -- this falls -- you know, on the line of -- you

6 know, just being oppressive to pit these officers against

7 each other when they're fact witnesses and, you know, one

8 is not, you know, an expert.

9      So -- and that makes me question, again, you know,

10 the initial -- my initial gut that made me feel like

11 there was some bad faith.  And I'm not talking about, you

12 know, the pilars of professionalism bad faith, I just

13 don't think that was a good faith question.

14      And -- and I thought that it was -- there was an

15 attempt to bait the witness when you know that the law is

16 clear that you can't have a lay witness testify on expert

17 matters and I am sure that as you disclose your experts,

18 you know, your experts are going to opine on what these

19 officers that were involved in this case considered to be

20 reasonable suspicion.

21      MR. MCINERNEY:  Judge --

22      THE COURT:  I also think --

23      MR. McINERNEY:  Judge -- I'm sorry.  Go ahead, I

24 just want to -- whenever I can.

25      THE COURT:  Okay.  Also my thought is to permit

1  the witness to be re-deposed on the same questions I

2  think is inconsistent with Rule 1.  So I've reviewed the

3  cases where the Court permitted you know, a witness to be

4  re-deposed but set some limits for so I am not going to

5  permit that.  Specifically, you know, especially if, you

6  know, your experts can come to the same conclusion and

7  there's an opportunity for you to obtain evidence and

8  expert opinions through that venue.

9         And then going forward, I think, as I said, the

10 motion for protective order is going to be granted.  I

11 don't think any other non-expert witnesses should be

12 presented with these two hypothetical questions.  And so

13 I can't speak to any other questions because I don't know

14 but they should not be asked, um, any -- you know, for

15 what they think to be reasonable suspicions as it relates

16 to the clear facts of this case.  And so -- or any other

17 questions where an opinion is sought as to the ultimate

18 question in this case.  I don't think lay witnesses

19 shouldn't be asked that.

20        MR. McINERNEY:  Judge, if I -- if I can ask a

21 clarifying question.

22        And I'm trying to -- as much as I -- as much as I

23 enjoy these phone conferences, I'm trying to reduce the

24 number of them.

25        So -- so when you talk about questions that

1  involve common concepts, with the facts of this case,

2  I'll just -- I'll represent to you that in the two stops

3  that we're talking about, and in the class of stops,

4  there are a host of factors that the troopers themselves

5  cite as the basis for their reasonable suspicion, whether

6  it -- whether they actually amount to it or not is really

7  the ultimate question.

8          THE COURT:  Mm-hmm.

9          MR. McINERNEY:  And I -- I would -- as I sit

10 here, based on my familiarity with the case, I would

11 venture to guess that there is probably 15 or 20 factors

12 that were -- that apply across the board in reasonable

13 suspicion traffic stop cases but that occurred here; that

14 were applied here.

15         THE COURT:  Mm-hmm.

16         MR. McINERNEY:  Is the Court's ruling that any

17 factor was cited -- that was cited by the Kansas Highway

18 Patrol in connection with the facts of this case cannot

19 be the subject of a question to a non-expert witness

20 going forward?

21         THE COURT:  Um, well, I mean, that's a loaded

22 question.  And --

23         MR. McINERNEY:  I'm just trying to get some

24 clarity.

25         THE COURT:  -- I think that you know that.

08/10/2021      Case Nos. 19-1343 and 20-1067      33

1       My ruling specifically says that the motion for

2  protective order applies to any other non-expert witness.

3  They should not be presented with these two particular

4  hypothetical questions because that's the issue that is

5  before me.

6       I don't know about any additional questions that

7  you may ask but if you -- you cannot ask the witness the

8  same two questions, hypothetical questions that you asked

9  in this case again.

10       You know, I -- you know, you ask the witnesses

11  questions regarding, you know, how they were found

12  reasonable suspicion, you know, based on state of origin,

13  that's proper.  You know, destination, that's proper.

14  Items in the vehicle, you know, specific types of

15  vehicles; and then false compartments and the like.

16       Now, do those make up reasonable suspicion?  You

17  can ask those in this case.

18       And, again, Mr. Chalmers did not instruct the

19  witness not to answer because those seem to be, you know,

20  the typical questions that you would need, quite frankly,

21  to pass up to your experts.  But -- but -- but once you

22  started -- you know, if you ask them questions that are,

23  you know, in line -- directly in line with the facts of

24  this case you're asking for an expert opinion.

25       So, I mean, I get that -- that it's a thin line,

08/10/2021      Case Nos. 19-1343 and 20-1067      34

1  you know, between that.  Because as you said, you know, a

2  lot of these situations happen just as they happened in

3  this case.  But here, the problem wasn't, you know, you

4  said, say, Oklahoma to Colorado.  No, that happens in

5  this case.

6        But you -- but before that you also stated

7  origins, was that important to reasonable suspicion?

8  Destination?  Is that -- maybe not in that way, is that

9  important to reasonable suspicion?  And those factors

10 are, I get that.  And I believe that they are.  But it

11 was -- it was the way you paired the question up that

12 made it the problem.  So, you know, I think, you know,

13 and if I -- my recollection there was an opportunity you

14 kind of change it up and you didn't.

15        So, you know, I can't speak to any other questions

16 because I don't know that they're going to be.  But I do

17 know that the two questions that you asked here were

18 clear facts that happened in this case and, you know,

19 couched under, you know, generalizations.  You know, I

20 mean you've got to -- you're at the experience level

21 where you can see through that and that would be you

22 asking for an opinion and I'm not going to permit you to

23 do that going forward.

24        MR. McINERNEY:  Understood.

25        THE COURT:  Okay.  All right.  And so I'm going

08/10/2021      Case Nos. 19-1343 and 20-1067      35

1  to -- I wanted to go ahead and rule on this so that, um,

2  you know, and you know, listen to what you folks said,

3  just so that you could continue to move forward but I am

4  going to write on this because I think that the issue is

5  important enough.  I, you know, I know that you folks

6  spent a lot of time, you know, kind of teeing this up for

7  me to review and think about and I -- I'm going to write

8  an opinion.

9        And I don't know when -- I can't tell you when it

10  will be out but, um, I'm -- I think I'm going to.  I

11  think this issue is important enough to -- to do that.

12        All right?

13        MR. McINERNEY:  Okay.  Thank you, Judge.

14        THE COURT:  Okay.  All right.  Good day to you

15  all.

16        MR. McINERNEY:  Thank you.  Good day.

17        (End of proceedings.)

18

19        *******************************************

20

21                C E R T I F I C A T E

22

23        I, Jana L. McKinney, certified shorthand reporter,

24  certify that the foregoing is a correct transcript from

25  the official electronic sound recording of the

Jana L. McKinney, CSR, RPR, CRR, RMR
United States Court Reporter
PH. (316) 315-4268

08/10/2021      Case Nos. 19-1343 and 20-1067      36

1 proceedings in the above-entitled matter.

2        Dated this 13th day of August, 2021.

3

4                    s/ Jana L. McKinney_____

5                    Jana L. McKinney
                     United States Court Reporter
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              I N D E X

                                                              PAGE
2

3
        REPORTER'S CERTIFICATE                                 36
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25