IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BLAINE FRANKLIN SHAW, et al.,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **DOUG SCHULTE, et al.,** ) <br> ) <br> **Defendants.** ) <br> _____ ) <br> ) <br> ) <br> **MARK ERICH, et al.,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **HERMAN JONES,** *KHP Superintendent*, ) <br> ) <br> **Defendant.** ) <br> _____ ) | Case No. 19-1343-KHV-GEB <br> **(LEAD CASE)** <br><br><br><br><br><br> Case No. 20-1067-KHV-GEB |

**MEMORANDUM AND ORDER**
**MEMORIALIZING RULINGS FROM JULY 14, 2021 HEARING**

On July 14, 2021, the Court conducted a motion and scheduling hearing. The Shaw and Bosire Plaintiffs (Case No. 19-1343) appeared through counsel, Sharon Brett, Leslie Greathouse, Madison Perry, and Joshua Pierson. The Erich and Maloney Plaintiffs (Case No. 20-2076) did not appear. Defendants appeared through counsel, Arthur Chalmers. After review of the parties' briefs and consideration of the parties' oral arguments, the Court orally **DENIED IN PART** and **GRANTED IN PART** Plaintiff's motion to compel

1

discovery (**ECF No. 167**) and modified the schedule governing this matter. (*See* Order, ECF No. 202.) This order memorializes the Court's rulings from the conference.

## I. Background[1]

On December 19, 2019, Blaine Shaw, Samuel Shaw and Joshua Bosire, on behalf of themselves and others similarly situated, initiated their case pro se against Kansas Highway Patrol ("KHP") Superintendent Herman Jones, and KHP troopers Doug Schulte and Brandon McMillan, claiming based on their travel origins and destinations, Defendants subjected them to prolonged detentions and vehicle searches. (No. 19-1343-KHV-GEB; Compl., ECF No. 1.) Plaintiffs later engaged counsel and filed a First Amended Complaint. (ECF No. 7.) Under 42 U.S.C. § 1983, the Shaw and Bosire Plaintiffs sue Defendants for violating their rights under Article IV and the Fourth and Fourteenth Amendments to the United States Constitution, seeking compensatory, punitive, declaratory and injunctive relief. (*See* No. 19-1343, Mem. and Order, ECF No. 36.)

On March 6, 2020, Mark Erich and Shawna Maloney filed a similar case individually and on behalf of the minor child, D.M., against Herman Jones in his official capacity as the Superintendent of the Kansas Highway Patrol as well as an individual Trooper, Justin Rohr. The Erich and Maloney plaintiffs made claims also under 42 U.S.C. §§ 1983 and 1988 against Trooper Rohr for compensatory and punitive damages arising

---

[1] Unless otherwise indicated, the information recited is gleaned from the parties' pleadings (No. 19-1343-KHV-GEB, Compl., ECF No. 1; Am. Compl., ECF No. 7; Answers, ECF Nos. 25, 28, 39; No. 20-1067-KHV-GEB, Compl., ECF No. 1; Answer, ECF Nos. 8, 13) and the briefing regarding the instant motion (ECF Nos. 167, 170). This background information should not be construed as judicial findings or factual determinations.

2

from an alleged prolonged detention and vehicle search. (No. 20-1067-KHV-GEB; Compl., ECF No. 1.) Plaintiffs bring claims against Defendant Jones, in his official capacity, seeking injunctive and declaratory relief to address alleged unconstitutional policies and customs of prolonged detentions and vehicle searches based on travel origins and destinations, which violate their Fourth Amendment rights. (*Id*.) Defendant Rohr was later dismissed from the action. (No. 20-2067-KHV-GEB; Order, ECF No. 26.)

After separate scheduling in each case and an unsuccessful mediation, the Erich/Maloney plaintiffs filed a motion to consolidate the two cases, noting their second claim "merely adopted the allegations in" the *Shaw* matter, Case No. 19-1343-KHV-GEB. (No. 20-2067-KHV-GEB, ECF No. 28.) On November 10, 2020, the cases were consolidated for all purposes, with the *Shaw* matter designated the lead case where all future filings should occur. (No. 19-1343-KHV-GEB, Order, ECF No. 84.) A Phase II Scheduling Order—governing both cases—set deadlines for class and merits discovery together. (ECF No. 83.) However, following the establishment of the joint schedule, discovery conferences and modifications to the schedule have occurred to account for difficulties in discovery.[2]

During one of such discovery conferences, the parties presented the question of whether one item on Defendant's privilege log was appropriately withheld as protected by the "deliberative process privilege." (Order, ECF No. 104.) The undersigned ordered

---

[2] *See, e.g*., ECF No. 104 (discovery conference held Jan. 12, 2021); ECF No. 135 (status and discovery conference held April 12, 2021); ECF No. 162 (discovery conference held May 17, 2021).

Defendant to produce the document for the Court's *in camera* review. (*Id.*) Following the Court's review of the documents and the parties' position statements, during the April 12, 2021 status conference the Court ordered the parties to file formal briefs on the topic.

The *Shaw* plaintiffs (hereinafter "Plaintiffs")[3] timely filed their Motion to Compel Documents Withheld Based on the Deliberative Process Privilege (ECF No. 167) and Defendants filed a timely Response (ECF No. 170). As noted, a motion hearing was held on July 14, 2021, in conjunction with the status conference previously scheduled on the same date. As described above, the motion was decided at the July 14 hearing and the ruling is memorialized here.

## II.    Plaintiffs' Motion to Compel Discovery (ECF No. 167)

The question presented is whether Defendants should be compelled to produce documents and portions of otherwise privileged documents Defendants withheld solely based on the deliberative process privilege. Plaintiff Bosire was stopped by KHP troopers, Defendants Schulte and McMillan, on February 10, 2019. (ECF No. 167 at 2.) Following his stop, Plaintiff Bosire made a complaint to the KHP that his search constituted a "prolonged unjustified detention." (*Id.*) That complaint resulted in his stop being investigated by Lieutenant Bullock of KHP's Professional Standard's Unit ("PSU"). (*Id.*) After Lieutenant Bullock's investigation was complete, Superintendent Jones reviewed the investigation. (*Id.*) Superintendent Jones provided his determination regarding the

---

[3] The Erich and Mahoney Plaintiffs are not parties to this motion.

4

investigation to Plaintiff Bosire by letter dated August 9, 2019. *Id.* Ultimately, Superintendent Jones determined some of Plaintiff Bosire's "concerns had merit." *Id.*

During discovery, Plaintiffs requested production of "all documents related to PSU Case #2019-0130," the investigation into Bosire's stop. (ECF No. 170 at 3.) Defendants withheld certain documents from discovery regarding the stop and KHP's resulting internal investigation, claiming the documents are subject to the "deliberative process" privilege. (*See* Third Suppl. Priv. Log, ECF No. 167, Ex. 2.) Four privilege log entries cite this privilege; however, only one document is being withheld solely based on this privilege.

The two-page document being withheld is an email chain dated May 24, 2019 and May 29, 2019. The initial email, dated May 24, 2019, is from Lt. Bullock to KHP Captain Brent Hogelin, with a copy to KHP officer Eric Pippin, regarding the PSU case review.[4] The second email is the responsive email from Cpt. Hogelin back to Lt. Bullock, dated May 29, 2019 (also copying Eric Pippin).

### A.   Parties' Positions

Plaintiffs contend the privilege does not apply to the Kansas Highway Patrol as a state agency, and even if it did, factors weigh in favor of disclosure. (ECF No. 167 at 4.) Plaintiffs argue in *Fish v. Kobach*,[5] one court in the District of Kansas found "the privilege is limited to authorities of the Government of the United States" and is therefore not applicable to state agencies.[6]

---

[4] The document provided to the court *in camera* is securely maintained in the undersigned magistrate judge's electronic case file.
[5] *Fish v. Kobach*, No. 16-2105-JAR, 2017 WL 1373882, at *5 (D. Kan. Apr. 17, 2017)
[6] *Id.*

Plaintiffs allege the cases cited by Defendants to apply the privilege to the KHP are either distinguishable (the Tenth Circuit case of *Denver Policemen v. Liechenstein*[7]) or nonbinding because they are not decided in this District (i.e., *Glossip v. Chandler*,[8] from the Western District of Oklahoma; and *Fogarty v. Gallegos*,[9] in the District of New Mexico). Plaintiffs outline the ten factors considered by the court in *Fogarty* and argue their application weighs in favor of production. (ECF No. 167 at 5-6.)

Defendants present three primary arguments. First, they contend the deliberative process privilege applies to all governments, not just federal agencies. Second, they maintain the deliberative process privilege applies to the Bullock/Hogedin email chain; and finally, because the privilege applies, the email chain should not be produced, especially for policy reasons. (ECF No. 170.)

Defendants cite to treatises discussing the privilege[10] and to the recent U.S. Supreme Court decision in *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*,[11] which defined the "deliberative process privilege," to argue the privilege applies to all governments, not just federal agencies. They maintain this privilege also applies to civil discovery, citing the 2016 District of Kansas opinion in *United States v. Malik*.[12] Defendants contend Plaintiffs improperly rely on the *Fish* decision because the ruling was clearly limited, and the Court

---

[7] *Denver Policemen's v. Lichtenstein,* 660 F.2d 432 (10th Cir. 1981).
[8] *Glossip v. Chandler*, No. CIV-14-0665-F, 2020 WL 7220789, at *1 (W.D. Okla. Dec. 7, 2020).
[9] *Fogarty v. Gallegos*, No. 05-26 WJ/LFG, 2005 WL 8163463, at *4 (D.N.M. Dec. 22, 2005).
[10] ECF No. 170, citing K. Graham, Jr. and A. Murphy, 26A Fed. Prac. & Proc. Evid. ("Wright & Miller") § 5685 (1st ed. April 2021). *But compare* M. Graham, 4 Handbook of Fed. Evid. ("Handbook of Fed. Evid.") 501:1 (9th ed. Nov. 2020) (reporting the privilege's long history).
[11] *United States Fish & Wildlife Serv. v. Sierra Club, Inc*., 141 S. Ct. 777, 785 (2021).
[12] *United States v. Malik*, No. 15-9092-CM-TJJ, 2016 WL 3167307, at *3, n. 5 (June 7, 2016).

6

acknowledged it was "not ruling that some manner of deliberative process privilege can never apply to state agencies."[13] Defendants further argue other courts, including the Tenth Circuit, have held the privilege applicable to state agencies.[14]

Second, Defendants argue the deliberative process privilege properly applies to the withheld email chain**.** (ECF No. 170 at 12-19.) Defendants apply three steps of analysis: they outline 1) the emails are predecisional, 2) deliberative, and 3) when properly weighed, Plaintiffs' need for the information does not outweigh the government's interest in maintaining the privilege. (*Id.*)

Defendants' final argument notes because the privilege applies, the email chain should not be produced. (ECF No. 170 at 19-21.) This "email chain contains predecisional, deliberative opinions provided to the head of a governmental agency for the agency's determination" and therefore is "quintessential deliberative-process privileged." (*Id*. at 19.) Defendants cite a recent decision in the Southern District of New York,[15] which cites 2021 Supreme Court decisions, noting "The privilege is 'rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news,' and 'is intended to promote 'open and frank discussions' amongst government officials." (ECF No. 170 at 20.)[16]

---

[13] *Fish*, 2017 WL 1373882 at *5, n. 39.
[14] Defs.' Brief, ECF No. 170 at 11-12 (citing *Glossip,* 2020 WL 7220789 at *1-2; and *Lichtenstein*, 660 F.2d at 437).
[15] *Am. Soc'y for Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv*., No. 19 CIV. 3112, 2021 WL 1163627, at *9 (S.D.N.Y. Mar. 25, 2021),
[16] Citing *Am. Soc'y for Prevention of Cruelty to Animals*, 2021 WL 1163627 at *9.

7

### B.     Duty to Confer

As outlined above, the topics of the pending motion were discussed at the January 12 and April 9, 2021 discovery conferences. Through pre-conference statements and their briefing, the parties outlined their attempts to confer regarding the disputes, and have demonstrated conferral as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).

### C.     Discussion

Trial "[c]ourts are given broad discretion to control and place appropriate limits on discovery."[17] And "a magistrate [judge] is afforded broad discretion in the resolution of non-dispositive discovery disputes."[18]

Upon review of the various cases cited by the parties, and particular review of the District of Kansas opinions in *United States v. Malik*[19] and *Mason v. Stock*,[20] this Court first determines whether the deliberative process privilege is applicable to a state agency. Finding it is applicable, the Court then applies the three-step analysis outlined in *Malik*.[21]

#### 1.     Application of the Privilege to a State Agency

After thorough consideration, this Court finds Plaintiffs' interpretation of the *Fish* case is simply too narrow. Although the court in *Fish* did not apply the "deliberative

---

[17] *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990) (discussing whether to stay discovery).
[18] *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2014 WL 61799, at *1 (D. Kan. Jan. 8, 2014) (citing *A/R Roofing, L.L. C. v. Certainteed Corp.*, 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) (other internal citations omitted).
[19] *Malik*, 2016 WL 3167307.
[20] *Mason v. Stock*, 869 F. Supp. 828 (D. Kan. 1994).
[21] The factors analyzed by the court in *Malik,* 2016 WL 3167307 at *3-4, mirror the factors later analyzed by the W. D. Oklahoma court in *Glossip*, 2020 WL 7220789, at *2-3. Both cases collect a number of authorities on the topic.

8

process" privilege to a federal case there, the decision specifically noted, "To be clear, the court is not ruling that some manner of deliberative-process privilege can never apply to state agencies. But defendant's privilege assertion [here] was based on the privilege accorded federal agencies. Defendant never directly asserted a state agency privilege."[22]

Because this is an action brought under federal law, the determination of privilege depends on federal common law.[23] And, federal common law clearly recognizes the existence of the deliberative process privilege, even if not specifically identified as such.[24] In *Denver Policemen's v. Lichtenstein*, the Tenth Circuit did not explicitly recognize the "deliberative process" privilege, but it did discuss the "executive privilege" afforded to governmental departments when determining whether police investigative records were discoverable.[25] And in *Mason*, although the Court referenced the "self-policing" or "self-critical analysis" privilege, it examined the privilege as "predicated on the notion that disclosure of officers' observations made during past internal investigations of their co-officer's alleged misconduct could have a chilling effect on their willingness to be candid in criticizing their fellow officers during future investigations."[26] This analysis is strikingly similar to other courts' analyses of the deliberative process privilege, for example, in *Malik*:

> The rationale for the privilege is that it will "enhance the quality of agency decisions by protecting open and frank discussion" among those who make

---

[22] *Fish*, 2017 WL 1373882 at *8 n. 39.
[23] *See Mason*, 869 F. Supp. at 832.
[24] *Id.*; *see also Glossip,* 2020 WL 7220789 at *1-2 (noting, "Federal common law recognizes the existence of the deliberative process privilege" and citing, *e.g.*, *Dept. of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Association*, 532 U.S. 1, 8-9 (2001)).
[25] *Lichtenstein*, 660 F.2d at 437. And recently, the Supreme Court clearly characterized the deliberative process privilege as "a form of executive privilege." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).
[26] *Mason*, 869 F. Supp. at 834.

9

decisions within the Government, which is based upon the belief that "officials will not communicate candidly among themselves if each [internal] remark is a potential item of discovery and front page news."[27]

Other district courts within the Tenth Circuit have persuasively found the deliberative process privilege potentially available to state and municipal agencies.[28] For the reasons set forth above, the deliberative process privilege is appropriately applied to the documents prepared in the Kansas Highway Patrol's internal investigation in this case.

### 2. Three-Step Analysis

After finding the privilege applicable to the KHP, the Court must then undergo a three-prong analysis of the documents to determine whether the privilege applies.[29] The Court evaluates: 1) whether the documents are predecisional; 2) whether the documents are deliberative; and then 3) whether the need of the party seeking disclosure outweighs the potential harm to the agency from disclosure.[30] "The party seeking to invoke the deliberative process privilege bears the burden of proving that the documents at issue are both predecisional and deliberative."[31]

---

[27] *Malik*, 2016 WL 3167307 at *3 (citing *Casad v. U.S. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1251 (10th Cir. 2002) (quoting *Klamath*, 532 U.S. at 8–9)).

[28] *See, e.g.*, *Glossip*, 2020 WL 7220789 at *2 (citing *Leadholm v. City of Commerce City, Colorado*, 2017 WL 3839454 (D. Colo. September 1, 2017)).

[29] Plaintiffs suggest analyzing a different set of 10 factors, those analyzed by the District of New Mexico court in *Fogarty*, 2005 WL 8163463 at *2-3 (Plaintiff's Motion, ECF No. 167 at 6). Regardless, the overarching considerations are the same. Plaintiffs acknowledge a number of the *Fogarty* factors do not apply here, and this Court prefers to analyze the issue in line with the recent District of Kansas opinion in *Malik*. Additionally, many of the applicable factors in *Fogarty* and *Malik* overlap, and the Court's consideration is heightened due to its opportunity to consider the document through in its *in camera* inspection.

[30] *See Malik*, 2016 WL 3167307 at *3, 8-9.

[31] *Id.* at *3 (citing *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226-27 (10th Cir. 2007)).

10

### a. Pre-decisional

Both the D. Kan. opinion in *Malik* and the Tenth Circuit's opinion in *Casad v. U.S. Dep't of Health & Human Servs.*[32] are instructive to determining whether the information sought is predecisional. As found in *Malik*,

> A document is pre-decisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision." In *Casad*, the Tenth Circuit cited two factors that are "helpful" in determining whether a document is pre-decisional: (1) "the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document;" and (2) "the relative positions in the agency's 'chain of command' occupied by the document's author and recipient."[33]

The First Circuit's analysis in *Providence Journal Co. v. U.S. Dep't of the Army* is more simplified: if the agency seeking to withhold the document can 1) identify its specific decision which correlates with the document; and 2) demonstrate the purpose of the document's creation was to assist the official required to make the agency decision; and 3) confirm the document being withheld was created prior to the agency decision being rendered, the document is predecisional.[34]

### b. Deliberative

To be deliberative, the document must be

> part of the agency's deliberative process. A document is considered a part of the deliberative process if it relates to government decision-making and its disclosure to the public 'would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and

---

[32] *Casad v. U.S. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1251 (10th Cir. 2002) (quoting *Klamath*, 532 U.S. at 8–9).
[33] *Malik*, 2016 WL 3167307 at *3 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975), and *Casad*, 301 F.3d at 1252).
[34] *Providence Journal Co. v. U.S. Dep't of the Army*, 981 F.2d 552, 557 (1st Cir. 1992) (internal quotations and citations omitted).

   thereby undermine the agency's ability to perform its functions.' A document is deliberative if it is 'a part of the agency give-and-take—of the deliberative process—by which the decision itself is made.'"[35]

A document is deliberative if it was "prepared to facilitate and inform a final decision or deliberative function entrusted to the agency."[36]

Although non-factual materials which state opinions or recommendations are clearly protected under the deliberative process privilege, "'memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context' is not protected unless it is 'inextricably intertwined with policy-making processes' or its disclosure itself would expose the agency's deliberative process.'"[37] When making such determinations, the court should apply a "'flexible, commonsense approach' to the factual versus deliberative classifications."[38]

### c. Balancing Process

Even if a document is found to be both pre-decisional and deliberative, and therefore covered by the deliberative process privilege, the Court must still undergo a balancing process to determine whether Plaintiffs' need for the document is outweighed by the harm likely to result from its disclosure. This balancing test is consistent with the approach

---

[35] *Malik*, 2016 WL 3167307 at *3 (citing *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987); quoting *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898-99 (D.C. Cir. 2015)).

[36] *Stalcup v. C.I.A.*, 768 F.3d 65, 70 (1st Cir. 2014).

[37] *Malik*, 2016 WL 3167307 at *4 (quoting *Trentadue*, 501 F.3d at 1227 (citing *N.L.R.B.*, 421 U.S. at 150)).

[38] *Id. See also Pitman v. United States Citizenship & Immigr. Servs.*, No. 2:17-CV-00166-CW-EJF, 2018 WL 6725535, at *3 (D. Utah Dec. 21, 2018) (quoting *Trentadue*, 501 F.3d at 1229) ("To the extent that [the D.C. Circuit] allows an agency to withhold factual material simply because it reflects a choice as to which facts to include in a document, we reject that approach.")

utilized by other judges in this District; for example, in *Malik*[39] and *Mason*,[40] as well as the balancing approach utilized by the Tenth Circuit in *Lichtenstein*.[41]

This privilege is "a qualified privilege and can be overcome by a sufficient showing of need. This need determination is to be made flexibly on a case-by-case, ad hoc basis. Each time the deliberative process privilege is asserted the district court must undertake a fresh balancing of the competing interests."[42] In *Malik*, the Court considered five factors to assess whether a plaintiff's need outweighs the potential harm to the government:

> 1) the relevance of the evidence sought to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.[43]

But "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal

---

[39] *Malik*, 2016 WL 3167307 at *8 ("The deliberative process privilege is a qualified privilege and can be overcome if the party seeking discovery shows sufficient need for the otherwise privileged material, with the court required to balance the litigant's need for the disclosure against the Government's need for secrecy.") (citing *Hinsdale v. City of Liberal, Kan.*, No. 96-1249-FGT, 1997 WL 557314, at *1 (D. Kan. Aug. 27, 1997)).

[40] *Mason*, 869 F. Supp. at 834 ("Federal courts recognizing this privilege balance the various factors weighing in favor and against disclosure to determine whether police files should be disclosed.")

[41] *Lichtenstein*, 660 F.2d at 437 (balancing the government's interest in maintaining confidentiality against the interests of those seeking disclosure).

[42] *Glossip*, 2020 WL 7220789 at *2 (quoting *In re Sealed Case*, 121 F.3d 729 (D. C. Cir. 1997); *see Malik*, 2016 WL 3167307 at *8.

[43] *Malik*, 2016 WL 3167307 at *8-9 (citing *Sealed Case*, 121 F.3d at 737–38; *Cobell v. Norton*, 213 F.R.D. 1, 5 (D.D.C. 2003); *Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330, 338 (2007); *Gambina v. Fed. Bureau of Prisons*, No. 10-CV-02376-MSK-KLM, 2012 WL 4040335, at *3 (D. Colo. Sept. 12, 2012)).

government deliberations in this context does not serve the public's interest in honest, effective government."[44]

### 3.     Analysis

This Court's *in camera* review of the emails in question confirm both portions of the email string are predecisional. The timing of the emails is significant—both occurred during the PSU investigation in May 2019, after Bosire's stop and complaint to KHP in February 2019 and prior to the KHP Superintendent's decision on the complaint in August 2019. Clearly, a conclusion on the review of Bosire's stop had not yet been made. The email string plainly correlates to Bosire's stop and the related PSU investigation. The initial email is from the PSU investigator, Lt. Bullock, specifically directed at soliciting Cpt. Hogedin's thoughts for inclusion in the investigation report to the Superintendent. Therefore, both emails are predecisional.

However, only the May 29, 2019 email appears deliberative. Both emails are a part of the KHP's give-and-take during the deliberative process by which the Superintendent's decision was made.[45] Lt. Bullock, the investigator, was seeking Cpt. Hogelin's input, "to facilitate and inform"[46] the KHP Superintendent's review and decision on Bosire's stop. But, the Court finds the initial May 24, 2019 email from Bullock to Hogelin was not truly deliberative, rather it simply contains factual information.

---

[44] *Glossip,* 2020 WL 7220789 at *2-3 (quoting *In re Sealed Case*, 121 F.3d 729); *see also Mason*, 869 F. Supp. at 835 (". . . privileges are to be construed especially narrowly when asserted by officers or cities in federal civil rights actions").
[45] *See Malik*, 2016 WL 3167307 at *3 (quoting *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898-99 (D.C. Cir. 2015)).
[46] *Stalcup v. C.I.A.*, 768 F.3d 65, 70 (1st Cir. 2014).

During the July 14, 2021 hearing, the Court posed this as a question to counsel. Defense counsel agreed the substance of the May 24, 2019 email would not necessarily be protected alone, but rather, Defendants were considering the email chain together as a whole.[47] As noted above, documents "consisting only of . . . purely factual material contained in deliberative memoranda *and severable from its context* is not protected unless it is 'inextricably intertwined with policy-making processes' or its disclosure itself would expose the agency's deliberative process."[48] Applying a commonsense approach, the Court finds by redacting the May 29, 2019 email and producing only the May 24, 2019 email, the Plaintiffs would not have access to any greater information than was frankly explained in the briefing or oral argument on this topic.

Although the May 29, 2019 email meets the criteria of predecisional and deliberative, and is therefore covered by the deliberative process privilege, this is not the end of the inquiry. The Court still must undergo a balancing process to decide whether the privilege is overcome by a sufficient showing of Plaintiffs' need for the document. To do so, it analyzes the five factors listed above. (*See supra* Part II.C.2.c, p. 13.)

First, the Court examines the relevance of the information sought to be protected. The information sought relates to the legality of the traffic stop of Plaintiff Bosire, which is one of the ultimate issues in this case. Therefore, the information is clearly relevant, and this factor weighs in favor of disclosure.

---

[47] The July 14, 2021 motion hearing was recorded but a transcript was neither requested nor filed as of the date of this order. (Zoom recording maintained in Chambers' file.)

[48] *Malik*, 2016 WL 3167307 at *4 (quoting *Trentadue*, 501 F.3d at 1227) (other internal citation omitted).

Second, the Court surveys the availability of other evidence, and finds this factor weighs heavily in favor of maintaining the privilege. Defendants contend, "all of the factual information collected in the PSU investigation has been produced." (ECF No. 170 at 18.) Even without knowing precisely what other evidence Plaintiffs possess, it is clear they have the final decision by the Superintendent, opining that "some of [Bosire's] concerns had merit" and Officer McMillan's "contact with [Bosire] was not what [the KHP] would consider standard under the confines of investigative reasonable suspicion regarding criminal interdiction."[49] (ECF No. 167-1.) The *in camera* review of the May 29, 2019 email from Hogelin to Bullock, compared to Jones' letter, supports the Court's finding that the withheld emails provide no additional information to Plaintiffs not otherwise available.

Turning to the next factor, this litigation is serious, as it involves multiple plaintiffs and alleged civil rights violations by law enforcement officers—a topic which can hardly be deemed insignificant. Additionally, it appears by KHP's own standards, the complaint by Bosire was considered a complaint "of a serious nature," as it was forwarded to the Superintendent and referred to the PSU for investigation. (*See* KHP Policy ADM-07, ECF No. 170-3, Ex. 3.) The seriousness of the litigation and the issues involved weigh in favor of disclosure.

The fourth factor of analysis is the role of the government in the litigation. Here, the government clearly plays a role. Although the Kansas Highway Patrol, as a state agency,

---

[49] Superintendent Herman T. Jones' letter to Joshua Bosire (Aug. 9, 2019) (attached as Ex. 1, ECF No. 167-1).

is not a named Defendant in this litigation; the processes of the agency are at issue. This factor weighs slightly in favor of disclosure.

The final factor is both the weightiest and most difficult to discern. The Court is tasked with reviewing the possibility of future timidity by government employees who will be forced to recognize that their secrets are subject to disclosure. Plaintiffs contend both the Tenth Circuit and this District have previously questioned whether disclosure would have a chilling effect on governmental self-evaluation. (ECF No. 167 at 6.) And, Plaintiffs are mostly correct. In *Lichtenstein*, the Tenth Circuit opined it "doubtful that citizens and police officers will absolutely refuse to cooperate in investigations because of a few isolated instances of disclosure."[50] But this doubt did not ultimately result in full disclosure. In *Lichtenstein*, disclosure of the staff inspection bureau's files was limited, and "*any opinions or policy decisions* of investigative officers were exempt from discovery."[51] And in the District of Kansas opinion of *Mason v. Stock*, the court relied in part on the *Lichtenstein* analysis to suggest the "disclosure of police files to civil rights litigants is, at best, a 'minute influence on officers' candor' and can, in some circumstances, serve to increase candor [rather] than chill it."[52] However, the *Mason* court did not explain how disclosure would actually increase candor, and did not ultimately rely on this issue for its decision.

---

[50] *Lichtenstein,* 660 F.2d at 437.
[51] *Id*. at 438 (emphasis added).
[52] *Mason*, 869 F. Supp. at 834 (citing *King v. Conde,* 121 F.R.D. 180, 192–93 (E.D.N.Y. 1988)).

Defendants contend their concern is not the information contained in the email chain itself, because the substance of any opinion contained therein has been disseminated through prior discovery of the Superintendent's decision. The true concern is how disclosure of the deliberative-process privileged records would impact future decision-making. (ECF No. 170 at 19.) Defendants quote a recent 2021 Supreme Court case, *U.S. Fish & Wildlife Serv.*,[53] noting "The privilege is 'rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." (ECF No. 170 at 20.[54]) The privilege is "intended to promote 'open and frank discussions' amongst government officials."[55]

After careful consideration and the advantage of *in camera* review, the Court finds Plaintiffs' need is minimal and, in this instance, does not outweigh the KHP's interest in open and frank review of its officers' future actions. Although Plaintiffs do not have the benefit of review of the document, as noted above the Court is convinced Plaintiffs have the information they require. Without the need for the information, the Court is loathe to find such need outweighs the government interest. As found in the more recent 2016 District of Kansas opinion in *Malik*, "the risk of harm to the Government from disclosure is significant because of the resulting 'possibility of future timidity by government employees who [would] be forced to recognize their secrets are violable.'"[56]

---

[53] *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785.
[54] *Id.* (citation and internal quotation marks omitted).
[55] *Dep't of the Interior v. Klamath Water Users Proective Ass'n*, 532 U.S. 1, 8-9 (2001) (citations omitted).
[56] *Malik*, 2016 WL 3167307 at *10.

### III.  Conclusion

Therefore, for the reasons discussed in the July 14, 2021 hearing and as set forth herein, in the Court's discretion, Plaintiff's Motion to Compel Discovery (**ECF No. 167**) is **DENIED in part** and **GRANTED IN PART**, in that the email chain withheld by Defendants on the basis of deliberative process privilege will not be ordered produced in full. Defendants must produce to Plaintiffs the **May 24, 2019** portion of the withheld communications because the email is found to not be deliberative. The **May 29, 2019** portion of the email chain is found to be deliberative process privileged, because it is predecisional, deliberative, and Plaintiffs' need for the document does not outweigh the KHP's interests.

Additionally, the schedule is amended as previously outlined in the Court's prior order (ECF No. 202) and will not be amended without a showing of good cause.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 21st day of September 2021.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
United States Magistrate Judge
