IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLAINE FRANKLIN SHAW, et al., )<br>)<br>       Plaintiffs, )<br>)<br>v. )<br>)<br>DOUG SCHULTE, et al., )<br>)<br>       Defendants. )<br>_____ )<br>)<br>)<br>MARK ERICH, et al., )<br>)<br>       Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>HERMAN JONES, *KHP Superintendent*, )<br>)<br>       Defendant. )<br>_____ ) | Case No. 19-1343-KHV-GEB<br>(LEAD CASE)<br><br><br><br><br><br><br><br><br>Case No. 20-1067-KHV-GEB |

**MEMORANDUM AND ORDER**
**MEMORIALIZING RULINGS FROM AUGUST 10, 2021 HEARING**

On August 10, 2021, the Court conducted a motion hearing on Defendants' Motion for Protective Order (ECF No. 220). The Shaw and Bosire Plaintiffs (Case No. 19-1343) appeared through counsel, Patrick McInerney, Sharon Brett, Madison Perry, and Joshua Pierson. The Erich and Maloney Plaintiffs (Case No. 20-2076) did not appear. Defendants appeared through counsel, Arthur Chalmers. After review of the parties' briefs and consideration of the parties' oral arguments, the Court orally **GRANTED** Defendants'

1

Motion for Protective Order (**ECF No. 220**) (see Order, ECF No. 227.) This order memorializes the Court's rulings from the conference.

## I.     Background[1]

The background of these consolidated cases was outlined in a recent order (Mem. & Order, ECF No. 240) and will not be repeated here. Generally, Plaintiffs Blaine Franklin Shaw, Samuel James Shaw, and Joshua Bosire (Case No. 19-1343), and Mark Erich and Shawna Maloney (Case No. 20-1067) claim Kansas Highway Patrol ("KHP") officers improperly subjected them to prolonged detentions and vehicle searches based on their travel origins and destinations. Plaintiffs sue individual defendant KHP troopers and KHP Superintendent Herman Jones for violating their rights under the Fourth and Fourteenth Amendments to the United States Constitution, seeking damages and equitable relief.

After separate scheduling in each individual case and an unsuccessful mediation, the Erich/Maloney plaintiffs sought to consolidate the two cases. (No. 20-2067-KHV-GEB, ECF No. 28.) On November 10, 2020, the cases were consolidated for all purposes, with the *Shaw* matter designated the lead case where all future filings should occur. (No. 19-1343-KHV-GEB, Order, ECF No. 84.) A Phase II Scheduling Order—governing both cases—set deadlines for class and merits discovery together. (ECF No. 83.) Following the

---

[1] Unless otherwise indicated, the information recited is gleaned from the parties' pleadings (No. 19-1343-KHV-GEB, Compl., ECF No. 1; Am. Compl., ECF No. 7; Answers, ECF Nos. 25, 28, 39; No. 20-1067-KHV-GEB, Compl., ECF No. 1; Answer, ECF Nos. 8, 13) and the briefing regarding the instant motion (ECF Nos. 220, 224, 225). This background information should not be construed as judicial findings or factual determinations.

establishment of the joint schedule, discovery conferences and modifications to the schedule have occurred to account for difficulties in discovery.[2]

Amid deposition practice, on July 29, 2021, Defendants sought a protective order that KHP's employees need not answer deposition questions that require them to form and express new opinions. (Motion, ECF No. 220.) Briefing on the motion progressed quickly, and on August 10, 2021, the undersigned held a motion hearing. As described above, the motion was decided at the hearing and the ruling is memorialized here.

## II.     Defendants' Motion for Protective Order (ECF No. 220)

On July 20, 2021, Plaintiffs deposed a KHP Trooper, Lieutenant Greg Jirak, as a fact witness. (Defs.' Motion, ECF No. 220.) During Lt. Jirak's deposition, Plaintiffs' counsel sought answers to hypothetical questions about what establishes the reasonable suspicion needed to detain a motorist. (*Id.* at 2.) Lt. Jirak answered multiple questions regarding the formation of reasonable suspicion despite counsel's objections. But, with regard to two specific questions alluding to factual situations mirroring Plaintiff Shaw's traffic stop, defense counsel instructed Lt. Jirak only to answer if he had already formed an opinion. (*Id.* at 2; *see also* Pls.' Resp., ECF No. 224 at 2.) Lt. Jirak did not answer those questions as follows in this excerpt:

> [Plaintiffs' counsel] MR. McINERNEY: . . . If you pull a driver over and you learn that that driver is, say, driving from a couple of the states that you mentioned before, driving from Oklahoma to Colorado, is that fact something to consider in determining reasonable suspicion?

---

[2] *See, e.g.*, ECF No. 104 (discovery conference held Jan. 12, 2021); ECF No. 135 (status and discovery conference held April 12, 2021); ECF No. 162 (discovery conference held May 17, 2021).

[Defendants' counsel] MR. CHALMERS: I'm going to object to the question the way it's framed. I think it's not only calling for legal conclusion, it's calling for opinion. And unless he holds an opinion, I'm going to instruct him not to answer. He's not obligated to give opinion testimony.

. . .

MR. McINERNEY: . . . I'm asking this witness based on his experience whether a certain situation would contribute to reasonable suspicion.

MR. CHALMERS: Well, now you're asking for opinion based on his experience, as I understand your question. And I object to the form and I'm going to instruct him not to answer. He's not obligated to give opinion testimony in this deposition.

. . .

MR. McINERNEY: Same situation, traffic stop. And the driver after you indicate your -- your lights and your siren fails to pull over immediately, is that something that would contribute to reasonable suspicion?

MR. CHALMERS: Again you're asking him for an opinion, also a legal opinion, but if it's -- unless it's an opinion that he has formed already, I'm going to instruct him not to answer.

I don't know if it's an opinion you've already formed in your -- in your training or your -- in your -- in -- that you either provided or received, but if it's an opinion -- if it's a new opinion I'm just telling you you're instructed not to answer.

BY MR. McINERNEY:
    Q. So, Lieutenant, let me ask you this: Based on Mr. Chalmers' direction to you, are you declining to answer those two questions.

    A. Yes.

Jirak Dep. Tr. 92:5-94:2 (ECF No. 224, Ex.1).

Following the deposition, counsel exchanged emails outlining their respective positions. They participated in a "meet and confer" on July 28 but were unable to resolve their differences. (ECF No. 220 at 3.)

4

On July 29, 2021 Defendants filed their motion for protective order, and the undersigned set the issue for hearing to permit the parties to continue with depositions. Plaintiffs quickly responded on August 9 (ECF No. 224), and on the morning of the conference, Defendants filed their Reply (ECF No. 224). Both parties provided excerpts from the transcript of Lt. Jirak's deposition. As of the time of the August 10 conference, Defendants' motion was ripe for decision.

### A.     Conferral under D. Kan. Rule 37.2

As outlined, the parties discussed the disputed issue in person during the July 20 deposition, through emails exchanges following the deposition, and in conference on July 28. Therefore, the parties have sufficiently demonstrated conferral as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).

### B.     Parties' Positions

Defendants contend they did not completely suspend the deposition in an attempt to avoid the inconvenience and delay of discovery. Instead, they limited the suspension of the deposition to only the two objectionable questions. Defense counsel emailed Plaintiffs' counsel the very next day to initiate conferral regarding the issue and any need for a protective order. (ECF No. 220 at 2.) Defendants contend a protective order is necessary to prevent KHP witnesses/employees from being asked to form and testify to opinions they do not already have. (*Id.* at 4.) They argue a non-designated, non-party witness should not be asked to provide an opinion on any expert matter in a hypothetical sense. (*Id.* at 5.)

Plaintiffs contend Defendants failed to articulate grounds for their motion, failed to state the proper grounds for a Fed. R. Civ. P. 26 protective order, and do not show the

5

"good cause" required by Rule 26. (ECF No. 224.) They claim Defendants wrongly instructed Lt. Jirak not to answer in violation of Rule 30, and the admissibility of the testimony is not for counsel to determine but is a question for the Court to later decide. Plaintiffs insist they did not seek improper opinion testimony, and Defendants are attempting to bar evidence essential to their case. (*Id*. at 9.) Plaintiffs ask the Court to overrule defense counsel's objection, order the deposition to be reconvened, and require the witness to answer the questions – and other questions regarding the formation of reasonable suspicion. Plaintiffs also ask that Defendants bear the associated attorneys' fees and costs under Fed. R. Civ. P. 26(c)(3) and 37(a)(5) for the time and expense associated with responding to the motion. (ECF No. 224 at 12.)

### C.   Legal Standards

Trial "[c]ourts are given broad discretion to control and place appropriate limits on discovery."[3] And "a magistrate [judge] is afforded broad discretion in the resolution of non-dispositive discovery disputes."[4]

#### 1.   Deposition Conduct

Fed. R. Civ. P. 30 governs behavior during oral depositions. Under Rule 30(c)(2), objections must be recorded, "but the examination still proceeds; the testimony is taken subject to any objection. . . . A person may instruct a deponent not to answer only when

---

[3] *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990) (discussing whether to stay discovery).

[4] *In re Urethane Antitrust Litig*., No. 04-1616-JWL, 2014 WL 61799, at *1 (D. Kan. Jan. 8, 2014) (citing *A/R Roofing, L.L.C. v. Certainteed Corp*., 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) (other internal citations omitted).

6

necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."

Rule 30(d)(3)(A) allows a "deponent or party to move to terminate or limit a deposition on the ground it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." And, "[i]f the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order."[5] Per Rule 30(d)(3)(B), the court may order a deposition to be terminated or may limit its scope and manner as provided in Rule 26(c).

The District of Kansas Deposition Guidelines augment this rule. Section 5(a) notes, "The only objections that should be asserted are those involving privilege or work product protection or some matter that may be remedied if presented at the time, such as an objection to the form of the question or the responsiveness of the answer. Other objections shall be avoided unless the deposition is being taken for the express purpose of preserving testimony." Section 5(b) requires, "Counsel shall not direct or request that a deponent not answer a question, unless (1) counsel has objected to the question on the ground that the answer is protected by privilege, work product immunity, or a limitation on evidence directed by the Court; or (2) *the direction not to answer is necessary to allow a party or deponent to present a Fed. R. Civ. P. 30(d) motion to the Court*."[6]

---

[5] Fed. R. Civ. P. 30(d)(3)(A).
[6] D. Kan. Deposition Guidelines § 5(b) (available at http://ksd.circ10.dcn/index.php/deposition-guidelines/) (emphasis added).

7

If a deposition dispute requires immediate resolution, section 9 of the D. Kan. Deposition Guidelines outline the process by which the parties may present the issue expediently to the Court in a telephone conference during the deposition, subject to the Court's availability.[7]

### 2.     Grounds for Protective Order

Rule 26(b)(1) permits discovery of "any non-privileged matter that is relevant to any party's claim or defense." Relevance, at discovery, is broad,[8] and does not mean the information obtained would necessarily be admitted at trial. Additionally, under Rule 26(b), the scope of discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[9]

Rule 26(c) allows the court, for good cause, to issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.  The court has broad discretion over discovery matters and to decide when a protective order is appropriate.[10]

---

[7] *Id*. at § 9 ("Disputes that arise during the deposition which cannot be resolved by agreement and which, if not immediately resolved, will significantly disrupt the discovery schedule or require a rescheduling of the deposition, may be addressed by oral motion in a telephone conference with the Court, subject to the Court's availability.").

[8] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc*., No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).

[9] *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (citing Fed. R. Civ. P. 26(b)).

[10] *See S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery ...") (internal citations omitted); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) ("Federal Rule of Civil

The court may use its discretion to fashion a protective order to specifically define and/or narrow the disclosure or discovery, including the terms, timing, and method of discovery, and forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.[11]

### D. Discussion

The issues presented are twofold: 1) whether it was appropriate for defense counsel to instruct the deponent not to answer; and 2) whether the questions asked by Plaintiffs' counsel amount to solicitation of inappropriate opinion testimony from a fact witness.

#### 1. Defense Counsel's Conduct

Upon review of the briefing and thorough discussion with counsel, the Court finds defense counsel might have handled the situation more effectively by suspending the deposition for a phone call with the undersigned. This is the undersigned's preferred method of addressing deposition disputes as noted not only in § 9 of the D. Kan. Deposition Guidelines, but in the previously-filed Scheduling Orders. (*See* ECF No. 44 at 3; No. 83 at 9.) When questioned during the motion hearing regarding why the parties did not immediately reach out to the undersigned, defense counsel noted he was not sure either during or at the conclusion of the deposition whether Plaintiffs planned to pursue the issue, until the parties later conferred.

---

Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.") (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).
[11] Fed. R. Civ. P. 26(c)(1)(A)-(H).

9

From a technical standpoint, this Court does not condone counsel's instruction to the deponent not to answer. However, it finds this error harmless under the circumstances, particularly given the issuance of a protective order on this line of questioning (discussed below). All counsel made a clear record regarding the objection. Both parties could precisely identify the objectionable questions, Defendants initiated conferral the very next day, and a Rule 30(d)(3) motion was filed within nine days of the deposition. Again, the Court does not necessarily excuse this process, as it takes a very *long* view of instructing a deponent not to answer for the purpose of presenting a Rule 30(d)(3) motion. But, the Court also understands the rules are not to be applied in a vacuum. At least one analyst agrees:

> Although there is thus a *substantial preference for requiring that deponents apply to the court for protection rather than simply refusing to answer questions*, it is to be hoped that the courts will take a realistic view of the conduct of depositions rather than foreclose deponents' objections in response to motions to compel answers. Rule 37(a) is expressly designed to cover the case of the deponent who appears but refuses to answer certain questions. It would be unduly draconian to penalize the deponent for failure to make [an instant] motion under Rule 30(d), especially since there will be many instances in which he or she will consider a question improper though unable to make the showing of bad faith, annoyance, or otherwise, required on a Rule 30(d) motion.[12]

Although the Court does not approve of the procedural avenue undertaken by Defendants here, under the circumstances presented, it finds this to be harmless error and, in its discretion, will consider the line of questioning on its merits.

---

[12] Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2116 (3d ed.) (emphasis and edits added).

### 2. Propriety of Questioning

The parties agree the information sought by Plaintiffs is relevant. As Plaintiffs note, they are seeking injunctive relief, asking the Court to "enjoin Defendant Jones from continuing the practice of targeting motorists with out-of-state plates and from detaining motorists without reasonable suspicion. How individual troopers, especially supervisors or trainers, form reasonable suspicion thus goes to the heart of the case."[13] The deponent, Lt. Jirak, is a longtime KHP officer with some supervisory and training responsibilities.[14]

The question is whether the witness should be required to provide previously-unformed opinion testimony. Defendant argues it does not oppose "questions about trooper training—both that provided and received—and experience. The problem arose from [plaintiffs'] hypothetical questions that required new opinions."[15] Defendants argue a "protective order is appropriate because KHP witnesses/employees cannot be properly required to form and testify to opinions (i.e., opinion testimony based on scientific, technical or specialized knowledge) that they do not already have." (Motion, ECF No. 220 at 4.)

On review of the deposition transcript, it is clear Plaintiffs asked the witness several questions regarding how he would form reasonable suspicion based on a variety of factors,

---

[13] Email from Plaintiffs' counsel, Josh Pierson, to KSD_Birzer_chambers@ksd.uscourts.gov (July 29, 2021).

[14] *See* Jirak Dep. Tr. (ECF No. 224, Ex.1). Lt. Jirak testified he is a 35-year veteran of the Kansas Highway Patrol (p. 5), a "line supervisor" in the interdiction unit (p.9), and conducts training of other troopers (pp. 10-11).

[15] Email from Defendants' counsel to Plaintiffs' counsel (July 21, 2021) (cited in Defs'. Motion, ECF No. 220 at 2-3).

11

such as state of origin, destination, items in the vehicle, specific types of vehicles that lend themselves to false compartments, and the like.[16] Although defense counsel objected numerous times during this line of questioning, he never instructed the witness not to answer until Plaintiff's counsel introduced "hypotheticals" mirroring the specific facts of the Shaw traffic stop.

While Plaintiffs characterize these questions as not seeking Lt. Jirak's opinion on other troopers' actions, but rather his own experience—the Court disagrees. By questioning Lt. Jirak on the precise factual scenarios present in the traffic stops at issue in this case, Plaintiffs were effectively asking the witness to provide his opinion on the actions taken by the troopers during those stops. In essence, Plaintiffs' counsel asked the witness whether he would have acted in the same manner.

Although somewhat distinguishable on its facts, the Court finds the D. Kan. opinion in *Richard v. Sedgwick County Bd. of Com'rs*[17] instructive. In *Richard*, unlike here, depositions were contentious, and questions were asked and answered before defense counsel filed a motion for protective order.[18] But, like here, the merits of the dispute in *Richard* was similar: defendant physicians argued plaintiff's counsel had a practice of asking healthcare fact witnesses to express expert opinions. The defendant doctors argued "they should not be required to answer questions concerning the standard of care of other health care providers based on hypothetical questions or factual events that were beyond

---

[16] Jirak Dep. Tr. (ECF No. 224, Ex.1) (pages 60-65, 68-69).
[17] *Richard v. Sedgwick Cty. Bd. of Comm'rs*, No. 09-1278-WEB-KMH, 2011 WL 5396096, at *1 (D. Kan. Nov. 8, 2011).
[18] *Id*. at *1.

their observations or care and treatment responsibilities."[19] Because the testimony was provided over objection, the magistrate judge did not address admissibility of the testimony. But, the court agreed the fact witnesses were not retained as expert witnesses for purposes of expert consultation or testimony, and entered a protective order limiting future questioning of the fact witnesses to their own factual observations, their own experiences, and any factual information or previously-held opinions formed in the role as supervisors of any subordinates.[20]

Much as in the *Richard* case—here, the Defendants are not trying to limit the questions asked of troopers generally concerning their "observations, actions, and incidental opinions in their roles"[21] as law enforcement officers or supervisors. But—the problem arises when Plaintiffs try to surreptitiously seek answers to questions concerning the standards previously applied by other law enforcement officers—"based on hypothetical questions or factual events that were beyond [the fact witnesses'] observations."[22] The troopers are not experts, unless designated as such, and thus may not formulate new opinions.

Also persuasive is a 2009 opinion from the Eastern District of California. In *Dagdagan v. City of Vallejo*,[23] also an action against law enforcement under § 1983 and state law, the plaintiff filed a motion to compel, in part, a police sergeant to answer certain

---

[19] *Id*. at *2.
[20] *Id.*
[21] *Id.*
[22] *Id*.
[23] *Dagdagan v. City of Vallejo*, 263 F.R.D. 632 (E.D. Cal. 2009), *on reconsideration,* (Jan. 29, 2010).

13

deposition questions. The sergeant was not designated as an expert witness, but as representative of the City under Rule 30(b)(6).[24] Plaintiff's counsel asked "opinion questions on issues pertinent to [the] case which would only be appropriate for those retained outside or inside experts who had reviewed the case for purpose of testifying to such opinions in the litigation."[25] In its analysis of the dispute, the court noted:

> The Federal Rules of Civil Procedure distinguish between those persons who are designated, testifying experts and those persons with expertise, not designated as testifying experts, who have performed some act in the normal course of their job duties, or who have some training in the issue at bar, pertinent to the facts of the litigation based on their expertise. The former persons must be designated as Rule 26 experts and must prepare a report setting forth their opinions and the bases therefore. Other non-designated persons with expertise who performed an act based on that expertise that has significance to the litigation may be asked what they did and why they did it, and what they based the action upon, *but the inquiry is limited to those past acts*. Finally, even retained experts, much less employees of the entity defendant, are immune from Rule 26 expert inquiry if they have not been designated by a party to testify as an expert.
>
> Take for example, the non-retained treating physician. This person may be asked about diagnoses of record and treatment performed; he may even be asked about a predictive opinion recorded in the records; but he may not be asked to opine on expert matters in an abstract or hypothetical sense. If this were not the rule, any party to a litigation could hijack in-house or third-party experts for free, and compel them to give the retained Rule 26 experts' testimony they would otherwise have to pay for. In the situation of a party's employee, a deposing counsel's roaming about the entity seeking opinions for use in the litigation makes a bad situation even worse. There may well be attorney-client or work product problems that are encountered in addition to the unfairness. And, the fact that a witness has been improperly designated pursuant to Rule 30(b)(6) to answer expert type questions does not make the questions any more appropriate.[26]

---

[24] *Id.* at 635–36.

[25] *Id*. at 635.

[26] *Id*. at 635-36 (internal citations omitted; emphasis added).

14

In the instant case, Plaintiffs may—and have—questioned trooper witnesses regarding their factual observations, their own experiences as troopers and how they generally form reasonable suspicion, and training both provided and received. But Plaintiffs may not ask any non-expert witness to newly evaluate the propriety of reasonable suspicion formed by other troopers, or express a previously-unformed opinion on whether another trooper acted appropriately, even in a hypothetical sense.

Even if the testimony is relevant under Rule 26(b)(1), Rule 26(b)(2)(C) authorizes the Court to limit the discovery otherwise allowed if it can be "can be obtained from some other source more convenient or less burdensome." The burden in this instance is inappropriately requiring a party's employee to provide uncompensated expert testimony against it. The two questions Plaintiff posed to Lt. Jirak were likely to elicit answers that would be inadmissible at trial or excluded on a motion because the questions called for speculation or sought expert opinion from a lay witness.[27] And, the answers Plaintiffs pursue could be obtained more directly from other sources, including Plaintiffs' own retained expert(s). So, "despite any difficulty Plaintiffs may encounter in attempting to obtain this information elsewhere, the burden of this discovery outweighs its likely benefit."[28] Requiring Lt. Jirak to sit for another deposition to permit Plaintiffs to again propound the subject questions runs afoul of the commands of Federal Rule of Civil Procedure 1.[29]

---

[27] *See Dagdagan*, 263 F.R.D. at 640.
[28] *Id.*
[29] *Id.*

### E. Fees

Pursuant to Fed. R. Civ. P. 37(a)(5), if a motion for a protective order is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." But fees are not appropriate if the actions of the party responding to the motion were "substantially justified."[30]

Here, Defendants do not request fees. And, given Defendants' procedural failure to technically abide by the deposition rules, and acknowledging the lack of relevant, binding authority on the merits of the dispute, the Court finds Plaintiffs' position substantially justified. No fees will be awarded related to this motion.

## III. Conclusion

Therefore, for the reasons discussed in the August 10, 2021 hearing and as set forth herein, in the Court's discretion, Defendants' Motion for Protective Order **(ECF No. 220)** is **GRANTED**, in that neither Lt. Jirak nor KHP's employees/deponents are required to answer the two unanswered deposition questions asked in the recent deposition of Lt. Jirak. Similar questions requiring Troopers not directly involved in the traffic stops at issue in this suit to form and express new opinions are not to be asked in future KHP employee

---

[30] *See Mar v. City of Wichita, Kansas*, No. 19-1330-TC-KGG, 2021 WL 2935895, at *6 (D. Kan. July 13, 2021) (citing FRCP 37(a)(5); also citing *Meyer v. United States*, No. 16-2411-KGG, 2017 WL 735750, at *5 (D. Kan. Feb. 24, 2017) (reviewing the "substantially justified" standard in the context of a motion to compel discovery)).

depositions. In the event a related dispute arises in any future deposition, counsel are expected to contact the undersigned by phone for efficient resolution.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 28th day of September 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

17