IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BLAINE FRANKLIN SHAW, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | No. 19-01343-KHV |
| ) | |
| **HERMAN JONES, in his official capacity as** ) | |
| **the Superintendent of the Kansas Highway** ) | |
| **Patrol, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |
| ) | |
| **MARK ERICH, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | No. 20-01067-KHV |
| ) | |
| **HERMAN JONES, in his official capacity as** ) | |
| **the Superintendent of the Kansas Highway** ) | |
| **Patrol,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

In this consolidated action, Blaine Shaw, Samuel Shaw, Joshua Bosire, Mark Erich and Shawna Maloney bring suit against Kansas Highway Patrol ("KHP") Superintendent Herman Jones and KHP troopers Doug Schulte and Brandon McMillan, alleging that based on their travel origins and destinations, defendants subjected them to prolonged and unconstitutional detentions and vehicle searches. Under 42 U.S.C. § 1983, plaintiffs sue defendants for violating their rights under Article IV and the Fourth and Fourteenth Amendment to the United States Constitution, and they seek compensatory, punitive, declaratory and injunctive relief.

This matter is before the Court on defendants' Motion For Summary Judgment Concerning Claims Against Defendant Jones (Doc. #295) filed August 24, 2022 and Plaintiffs' Motion For Summary Judgment Against Defendant Herman Jones (Doc. #307) filed September 8, 2022.  For the reasons stated below, the Court sustains defendants' motion for summary judgment as to the claim that defendant Jones violated plaintiffs' constitutional right to interstate travel and overrules plaintiffs' motion for summary judgment as to the same claim.  Both motions also seek summary judgment on plaintiffs' claim that Jones violated their Fourth Amendment rights.  The Court defers ruling on the motions for summary judgment as to that claim and will hear oral argument on the remaining issues at a time to be set in the near future.

## Legal Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets the initial burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  Liberty Lobby, 477 U.S. at 250–51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251–52.

**Facts**

The following facts are uncontroverted, deemed admitted or construed in the light most favorable to plaintiffs.

As Superintendent of KHP, Herman Jones is the chief officer of the statewide police force. Accordingly, Jones acts as KHP's lead policymaker, and he is responsible for training, guiding and directing KHP troopers.

KHP policy provides that KHP troopers may perform traffic stops and canine sniffs "based on specific articulable reasonable suspicion that a crime is being, is about to be or has been committed."  Exhibit 1 (Doc. #296-2) at 7.  These detentions "should only be long enough to either confirm or dispel the officer's concerns about the illegal activity" and troopers should calculate

3

reasonable suspicion "based on the totality of the circumstances, which includes articulable reasonable suspicion and the individual officers' training and experience."  Id.

### Disparities In KHP Detentions of Out-Of-State Drivers

In 2014, Colorado legalized the recreational cultivation, sale and possession of marijuana, which Kansas law enforcement characterize as a threat to the health and safety of Kansas residents. As a result, KHP troopers routinely consider a driver's out-of-state residence, origin or destination as a factor contributing to reasonable suspicion of drug possession.  Troopers routinely detain out-of-state drivers for prolonged traffic stops and canine sniffs at a disproportionately high rate compared to drivers who are Kansas residents.

Jones and other KHP supervisors, troopers and legal counsel testified that KHP troopers may consider a driver's residency, origin and destination in developing reasonable suspicion—in part because KHP officers consider states such as Colorado to be source states for marijuana and other drugs.  Jones testified that in developing reasonable suspicion, it is permissible for KHP troopers to consider a driver's destination and origin.  Exhibit 3 (Doc. #308-3) at 52.

Trooper John Douglas Rule, a lieutenant who trains and supervises troopers, testified that when calculating reasonable suspicion, he considers where a car is traveling to and from.  To him, a driver would be suspicious if he was coming from a state that produces a lot of marijuana.  Exhibit 4 (Doc. #308-4) at 21–22.  He trains troopers that asking stopped motorists where they are coming from and where they are going "is the basis of everything we do."  Id. at 25.

Trooper Greg Jirak, a lieutenant who trains and supervises troopers, testified that the state of origin of a driver "can be a consideration" in a trooper's decision to stop the driver because "[t]here are certain areas where drug production or distribution are prevalent, as opposed to other

4

areas where it's not as prevalent." As examples of places where drug production is prevalent, Jirak listed California and Colorado. Exhibit 7 (Doc. #308-7) at 18.

Trooper Doug Schulte, who conducted the traffic stop of the Shaw plaintiffs detailed below, testified that driving from Oklahoma to Colorado contributes to reasonable suspicion because Colorado is a drug source state. Exhibit 8 (Doc. #308-8) at 53–54.

Trooper Justin Rohr, who conducted the traffic stop of Erich and Maloney detailed below, testified that in calculating reasonable suspicion, a vehicle's state of origin is indicative of criminal activity if that state produces large amounts of drugs, including states like Colorado and California. Exhibit 9 (Doc. #308-9) at 16.

Sarah Washburn, an attorney in the KHP general counsel office, testified that whether a driver is traveling to or coming from a drug source state is a factor KHP troopers may use to formulate reasonable suspicion. Exhibit 12 (Doc. #309-2) at 21.

Shaws' Traffic Stop

Blaine Shaw and his brother Samuel Shaw reside in Oklahoma City, Oklahoma. The Shaws are members of the Osage Nation Native American tribe and have family and friends who live in Colorado. Several times a year, Blaine and Shaw drive through Kansas on I-70 to visit family and friends in Colorado, and they plan to do so in the future.

On December 20, 2017, Blaine was driving to Denver with Samuel in their father's 2010 Chrysler, which had Osage Nation license plates. Trooper Schulte pulled them over for speeding as they travelled westbound on I-70. Schulte told Blaine that he stopped him for driving 91 miles per hour in a 75 mile per hour zone. Schulte wrote Blaine a ticket for speeding and told him to have a safe trip. Blaine put his car into gear to leave.

Schulte took a few steps towards his patrol car, but then turned back to Blaine's vehicle and asked Blaine where he was traveling. When Blaine said they were going to Denver, Schulte asked whether Blaine had anything in the car that he was not supposed to have, such as weapons, narcotics or cash. Blaine stated that he did not have any of those items. Schulte asked if he could search the vehicle and Blaine refused. Schulte detained Blaine and Samuel for a canine drug search. When the canine unit arrived, Schulte, the canine and two other troopers searched the Shaws' vehicle for about 15 minutes. The dog did not alert. One or more of the KHP troopers on scene broke the zippers on several of Blaine's bags.

Schulte directed Blaine to follow him to the police station so that he could make copies of Blaine's medical paperwork, including his Colorado ID card and medical marijuana registration cards. Schulte did not cite the Shaws for any unlawful conduct. Schulte released them from detention after about one and a half hours.

Bosire's Traffic Stop

Bosire resides in Wichita, Kansas. Twice each month, he travels on I-70 to Colorado to see his daughter. During the winter, he uses a rental car because his vehicle is not equipped for snow or bad weather. On February 10, 2019, after visiting his daughter in Colorado, Bosire was returning to Wichita in a rented vehicle with Missouri license plates.

KHP Trooper Brandon McMillan stopped Bosire for speeding after he drove 82 miles per hour in a 75 mile per hour zone going eastbound on I-70. McMillan asked Bosire where he was coming from, and Bosire responded that he was coming from the west and headed east. McMillan asked him to clarify whether he was traveling from Colorado, but Bosire declined to provide more detail or state the purpose of his trip.

McMillan returned to his patrol car to run Bosire's information. While McMillan was in his vehicle, he asked for backup, stating that Bosire was refusing to speak. When more troopers arrived on the scene, McMillan stated that he could not smell any drugs, and he did not believe that he could hold Bosire for a canine search.

McMillan then informed Bosire that he was not getting a ticket for speeding but because Bosire had refused to clarify his travel plans, he was suspicious that Bosire was transporting something illegal. McMillan asked Bosire if he could search his vehicle, and when Bosire refused, McMillan called a canine unit. McMillan directed Bosire to get out of his vehicle when the canine unit arrived. The canine circled the vehicle, did not alert and McMillan permitted Bosire to leave. Bosire's detention lasted for about 45 minutes.

Erich's and Maloney's Traffic Stop

Mark Erich and Shawna Maloney reside in Willowick, Ohio. In 2018, they resided in Colorado. On March 9, 2018, Erich and Maloney traveled eastbound on I-70 in an RV, a Winnebago Chalet, with Colorado temporary tags. Their children (ages 13 and ten) rode in the back seat of the vehicle. KHP Trooper Rohr saw the RV and changed direction on the highway to follow it until Rohr observed it cross the fog line on the right side of the highway, at which point he pulled the vehicle over.

Rohr gave Erich a warning for crossing the fog line and told Erich and Maloney to have a safe trip. Rohr took a few steps towards his patrol car, but then turned back and asked if he could ask Erich and Maloney more questions. They said yes. Rohr began to ask for more information about their travel plans, at which point Erich asked if he had to answer these questions and if he was free to go. Rohr told him that he did not have to answer the questions and that he was free to go. Erich said that he would prefer not to answer the questions and that he intended to leave. Rohr

7

then detained Erich and Maloney, stating that he believed the vehicle might have a false compartment.

Rohr performed a canine sniff on the vehicle and informed Erich and Maloney that the canine alerted for a drug odor. Rohr and other KHP troopers searched the vehicle, unzipping and looking through bags and personal belongings. They did not find any drugs but they damaged Erich and Maloney's vehicle. Rohr apologized to Erich and Maloney and permitted them to leave. The detention lasted for about 45 minutes.

Procedural History

On January 30, 2020, Blaine Shaw, Samuel Shaw and Joshua Bosire filed an amended complaint against Jones, Schulte and McMillan, alleging in part that Jones maintains a policy or practice of disproportionately subjecting out-of-state drivers to prolonged detentions and that this practice violates their right to interstate travel under Article IV and the Fourteenth Amendment.

On March 6, 2020, Eric and Maloney filed a complaint against Jones and Trooper Rohr relating to their detention and vehicle search. On November 10, 2020, the Court consolidated the cases for all purposes. Order of Consolidation (Doc. #84).

**Analysis**

Jones seeks summary judgment on plaintiffs' interstate travel claim, arguing that even if the KHP regularly targets out-of-state drivers for prolonged roadside detentions, this practice does not violate plaintiffs' constitutional right to interstate travel.

The right to travel embraces at least three different components: (1) "the right of a citizen of one State to enter and to leave another State," (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," and (3) "for those

travelers who elect to become permanent residents, the right to be treated like other citizens of that State." Saenz v. Roe, 526 U.S. 489, 500 (1999).

Plaintiffs argue that Jones implemented a policy or practice[1] of disproportionately targeting out-of-state drivers for prolonged roadside detentions and that this practice violates the first and second components of the right to travel, namely the "right to enter and leave a state" and the "welcome visitor" components. Jones argues that disproportionately targeting and detaining out-of-state drivers does not violate either of these rights.

**I.    Right To Enter And Leave A State**

The freedom to travel throughout the United States "has long been recognized as a basic right under the Constitution." Dunn v. Blumstein, 405 U.S. 330, 338 (1972). State action violates the right to enter and leave a state when a citizen's ability to travel from one state to another is inhibited "by statutes, rules, or regulations which unreasonably burden or restrict movement." Saenz, 526 U.S. at 499. Reasonable restrictions on the right to interstate travel are permissible, however, and government conduct that does not "directly and substantially impair" the right to free interstate movement does not amount to a constitutional violation. Abdi v. Wray, 942 F.3d 1019, 1030 (10th Cir. 2019)

Plaintiffs argue that the KHP violates this right because the KHP disproportionately subjects out-of-state drivers to "prolonged detention" for dog sniffs and "some of them last for well over an hour, even in winter." Plaintiffs' Motion for Summary Judgment Against Defendant

---

[1] Plaintiffs appear to bring a "policy or practice" claim against Jones, who is a state official, under the liability standard put forth in Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978). Monell, however, applies to claims against municipal entities, leaving it unclear whether this liability standard governs plaintiffs' Section 1983 claim against Jones as a *state* official in his official capacity. For purposes of this motion, the Court assumes that plaintiffs can state a "policy or practice" claim against a state official because the Court grants summary judgment on other grounds.

9

Herman Jones (Doc #308) at 66.  The Shaws' detention lasted for about an hour and a half, while Bosire's, Erich's and Maloney's traffic stops lasted about 45 minutes.  Plaintiffs argue that the length of these detentions directly and substantially impairs the exercise of the right to free interstate movement.

Jones argues that even if he implemented a practice of disproportionately detaining out-of-state drivers, this practice does not violate the right to enter and leave Kansas because the traffic stops only delay the drivers' journeys.

The Tenth Circuit has held that government action which imposed a 48-hour delay on a plaintiff attempting to fly out of state at an airport did not deprive the plaintiff of his constitutional right to enter and leave a state and "merely reasonably encumbered his ability to travel interstate and internationally and by only one mode of transportation."  Abdi, 942 F.3d at 1032.  Delays of a few hours "are not uncommon for many air travelers and do not amount to a substantial interference with the rights to travel interstate."  Id. at 1031.  Other circuits have held that "burdens on a single mode of transportation do not implicate the right to interstate travel."  Miller v. Reed, 176 F.3d 1202, 1205 (9th Cir. 1999); see also Beydoun v. Sessions, 871 F.3d 459, 468 (6th Cir. 2017).

Even construing the evidence in the light most favorable to plaintiffs and assuming that the KHP disproportionately subjects out-of-state drivers to prolonged detentions, delays of up to several hours are "not uncommon" for drivers.  Abdi, 942 at 1031.  The prolonged detentions that KHP imposed on plaintiffs and other out-of-state drivers do not "substantially exceed those [delays] experienced by many . . . travelers."  Id.  These detentions also do not "preclude" out-of-state drivers' "ability to travel."  Id.  At most, they delay plaintiffs by a few hours, a much shorter delay than the "reasonable" 48-hour delay in Abdi.  Id. at 1032.  Also, the prolonged traffic stops

10

do not prevent plaintiffs from entering or leaving Kansas, nor do they prevent plaintiffs from traveling interstate by means other than driving.

Plaintiffs argue that KHP's disproportionate and prolonged detentions have caused "significant fear and anxiety" for plaintiffs and cause plaintiffs to alter their travel plans to avoid driving through Kansas whenever possible. Plaintiff's Motion For Summary Judgment Against Defendant Herman Jones (Doc. #308) at 67. Even viewing the facts in the light most favorable to plaintiffs, such fear and anxiety alone do not create a substantial impairment of their right to travel through Kansas. See Torraco v. Port Auth. Of New York & New Jersey, 615 F.3d 129, 141 (2d Cir. 2010) ("Assuming that the actions the defendants took did in fact deter these plaintiffs . . . the most-inconvenienced plaintiff was delayed a little over one day. This was a minor restriction that did not result in a denial of the right to travel.").

Plaintiffs cite no case, and the Court has found no case, which holds that a temporary delay of a few hours (at most) violates the right to enter and leave a state. Plaintiffs have not raised a genuine issue of material fact whether defendant has violated their right to enter and leave the State of Kansas. The Court sustains defendant's motion for summary judgment on this claim.

**II.      Right To Be Treated As A Welcome Visitor**

The Privileges and Immunities Clause of Article IV of the Constitution protects the right to be treated as a welcome visitor rather than as an unfriendly alien when temporarily present in another state. Saenz, 526 U.S. at 501–02. Plaintiffs argue that Jones' practice of disproportionately detaining out-of-state vehicles violates this right.

The Court uses a two-part test to determine whether a state practice violates the Privileges and Immunities Clause. First, the Court asks "whether the restricted activity is sufficiently basic to the livelihood of the Nation . . . as to fall within the purview of the Privileges and Immunities

11

Clause." Peterson v. Martinez, 707 F.3d 1197, 1213 (10th Cir. 2013) (citing Supreme Court of Virginia v. Friedman, 487 U.S. 59, 64–65 (1988)).  Second, if the challenged restriction deprives nonresidents of a protected privilege, the Court will invalidate it only if the restriction is not closely related to the advancement of a substantial state interest.  Id. at 1213–14.

Jones argues that plaintiffs cannot satisfy the first prong of this test because even if the KHP disproportionately detains out-of-state vehicles, this practice does not encroach on activity basic to the livelihood of the nation. Plaintiffs argue that freedom of movement on public roads without being subject to arbitrary prolonged detention by law enforcement is an activity basic to the livelihood of the nation.

Many state actions that treat residents and nonresidents differently fall outside the scope of the Privileges and Immunities Clause's protection.  Id. at 1215.  Some distinctions between residents and nonresidents "merely reflect the fact that this is a Nation composed of individual States, and are permitted."  Baldwin v. Fish and Game Comm'n of Montana, 436 U.S. 371, 383 (1978).  Denying concealed handgun licenses to out-of-state residents, for example, does not violate the "welcome visitor" component—in part because "our nation has a lengthy history of restricting the concealed carry of firearms," suggesting that concealed carrying is not sufficiently basic to the livelihood of the nation.  Peterson, 707 F.3d at 1211.

As explained above, Jones' practice of disproportionately detaining out-of-state drivers does not substantially impair travel on roads and highways because the detainments are temporary, last a few hours at most and only burden one method of travel.  For substantially the same reasons, this alleged practice is not sufficiently basic to the livelihood of the nation to meet the first prong of the Privileges and Immunities Clause test.

While "freedom of movement" itself is a constitutionally protected concept, see Kolender v. Lawson, 461 U.S. 352, 358 (1983), "minor restrictions on travel simply do not amount to the denial of a fundamental right." Selevan v. New York Thruway Authority, 711 F.3d 253, 258 (2nd Cir. 2013) (citations omitted).  Disproportionate traffic stops and canine sniffs of out-of-state vehicles do not amount to more than minor burdens on out-of-state drivers, and do not altogether prevent out-of-state drivers from using the roads of Kansas.  The burden on out-of-state travelers is relatively minor compared to burdens that could render the activity "sufficiently basic to the livelihood of the Nation," such as restricting their ability to serve in the military, imposing unfavorable tax consequences on them or limiting their access to the courts.  See Nelson v. Geringer, 295 F.3d 1082, 1090 (10th Cir. 2002) (military service); Austin v. New Hampshire, 420 U.S. 656, 661 (1975) (tax consequences); McKnett v. St. Louis & S.F. Ry. Co., 292 U.S. 230, 233 (1934) (access to courts).  Like the concealed carry handgun restrictions at issue in Peterson, our nation has a lengthy history of subjecting motorists, whether in-state or out-of-state, to regulations and restrictions of their right to drive on public roads and highways.  Peterson, 707 F.3d at 1211. In fact—and this fact is critical—troopers stopped all three plaintiff drivers in this case after witnessing them violate traffic laws.  Nothing in the Privileges & Immunities Clause protects plaintiffs from lawful enforcement of reasonable regulations of public highways.[2]

Even viewing the facts in the light most favorable to plaintiffs and assuming that the KHP subjects out-of-state drivers to disproportionate and prolonged roadside detentions, this practice does not violate the Privileges and Immunities Clause.  Plaintiffs have not raised a genuine issue

---

[2]  As noted, Blaine Shaw and Bosire were speeding and Erich crossed the fog line on I-70.  The record does not show that defendant officers lacked probable cause to detain them for such traffic violations.  Even if defendant officers detained them for a longer period of time than they would have detained in-state drivers who presented no indicia of travel to or from "drug source states," that longer period of time did not substantially impair their right to travel.

of material fact whether Jones has violated their right to be treated as welcome visitors in Kansas. The Court therefore sustains defendant's motion for summary judgment on this claim.

**IT IS THEREFORE ORDERED** that defendant's Motion For Summary Judgment Concerning Claims Against Defendant Jones (Doc. #295) filed August 24, 2022 is **SUSTAINED as to plaintiffs' interstate travel claim against Herman Jones under Article IV and the Fourteenth Amendment.** The Court defers ruling on defendants' motion as to plaintiffs' Fourth Amendment claim against Jones.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Summary Judgment Against Defendant Herman Jones (Doc. #307) filed September 8, 2022 is **OVERRULED as to plaintiff's claim interstate travel claim against Herman Jones under Article IV and the Fourteenth Amendment** for substantially the same reasons. The Court defers ruling on plaintiffs' motion as to plaintiffs' Fourth Amendment claim against Jones.

Dated this 23rd day of December, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil

KATHRYN H. VRATIL
United States District Judge