IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLAINE FRANKLIN SHAW, *et al.*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>HERMAN JONES in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*,<br><br>      *Defendants*. | **Case No. 19-1343-KHV-GEB** |
| MARK ERICH, *et al.*,<br><br>      *Plaintiffs,*<br><br>v.<br><br>HERMAN JONES, *KHP Superintendent,*<br><br>      *Defendant.* | **Case No. 20-1067-KHV-GEB** |

**PLAINTIFF BLAINE SHAW'S FINAL WITNESS LIST**

Pursuant to the Court's Order Setting Pretrial Filing Deadlines (Doc. #338), and Federal Rule of Civil Procedure 26(a)(3)(A)(i), Plaintiff Blaine Shaw submits the following final list of witnesses he intends to call at his trial against Defendant Douglas Schulte. This trial is set to begin on February 6, 2023.

Mr. Shaw will call the following witnesses in his case-in-chief:

1.    **Blaine Shaw**: Mr. Shaw will testify regarding the circumstances surrounding his stop and detention by Kansas Highway Patrol (KHP) Trooper Douglas Schulte, and the damages he experienced as a result. Specifically, Mr. Shaw will testify that he was traveling on I-70 through

Kansas to Colorado with his brother, Samuel Shaw, to visit friends and camp in the Denver area. Mr. Shaw will testify that he was driving his father's minivan with Osage Nation license plates and that he was on his father's insurance. Mr. Shaw will testify that he was pulled over for speeding by Trooper Schulte, who activated his patrol car lights while in front of Mr. Shaw. Mr. Shaw will testify that he was forthcoming with his answers to Trooper Schulte's questions, after which Trooper Schulte returned to his patrol vehicle with Mr. Shaw's license and registration. Mr. Shaw will testify that Trooper Schulte returned to Mr. Shaw's minivan with a ticket for speeding, explained the ticket, and then told Mr. Shaw to "have a safe trip and drive safely." Mr. Shaw will testify that Trooper Schulte took two steps away from the car and returned immediately and asked if he could ask Mr. Shaw additional questions. Mr. Shaw will testify that he did not feel free to leave at that time. Mr. Shaw will further testify that Trooper Schulte asked Mr. Shaw questions about his travel plans and then asked if Mr. Shaw would consent to a search. Mr. Shaw will testify that he declined. Mr. Shaw will testify that he was detained for a canine sniff. Mr. Shaw will testify that he and his brother were required to wait for the canine to arrive, and that they were not cited for possession of anything unlawful. Mr. Shaw will testify that the detention has deeply impacted him in several ways, including anxiety and nervousness when driving and around the police.

2. **Trooper Douglas Schulte**: Trooper Schulte will testify regarding the circumstances surrounding the stop and detention of Mr. Shaw. He will testify about his reasons for detaining Mr. Shaw including that he relied in part on Mr. Shaw's travel plans in deciding to detain the Shaws for a canine sniff. Trooper Schulte will further testify about prior statements he gave in this case.

3. **Chief Hassan Aden**: Chief Aden will testify as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). Chief Aden will testify regarding his background and

experience in policing; his qualifications as an expert regarding police practices, nationally accepted policing practices, and the evaluation of policing activities; and the evidence he was asked to review for this case. Chief Aden will further testify regarding nationally accepted police practices regarding traffic stops and detentions for canine sniffs. Chief Aden will provide analysis of Trooper Schulte's stop and detention of Mr. Shaw, including whether it comported with those nationally accepted police practices.

4. **Dr. Jonathan Mummolo**: Dr. Mummolo will testify as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). Dr. Mummolo will testify regarding his academic research and expertise in statistical methodology for evaluating law enforcement activities for disparities and/or discrimination. Specifically, Dr. Mummolo will testify regarding his expert report, which analyzed statistical disparities in KHP's traffic stop and canine sniff data and determined that KHP stops and detains out-of-state drivers for canine sniffs at a rate that is disproportionate to their total share of overall drivers on Kansas highways. Dr. Mummolo will also testify that these disparities cannot be explained by KHP enforcement policies for either traffic stops or canine detentions that are blind to the state-of-origin of a driver. Furthermore, Dr. Mummolo will testify that his study demonstrated that these disparities cannot be explained by differences in driver behavior between in- and out-of-state drivers. Finally, Dr. Mummolo will explain that the chances of finding illegal contraband following a canine sniff are higher for in-state than out-of-state drivers.

5. **Joshua Bosire:** Joshua Bosire will testify about the facts and circumstances surrounding his stop and detention by Trooper Brandon McMillan and Trooper Schulte, and the damages he experienced as a result. Specifically, Mr. Bosire will testify that he was observed by Troopers McMillan and Schulte at the Love's Gas Station in Ellis County, Kansas, after stopping

for gas on his way back from visiting his daughter in the Denver, Colorado area. He will testify that the Troopers targeted him for a roadside stop after seeing him at the gas station talking to a gas station attendant, whom Mr. Bosire had asked to assist with fixing a broken gas pump. Mr. Bosire will testify that he did not smell of marijuana. Mr. Bosire will testify that Trooper McMillan pulled him over for speeding between 6-7 mph over the speed limit while traveling eastbound on I-70. Mr. Bosire will testify that he asserted his right not to answer Trooper McMillan's invasive questions about Mr. Bosire's travel plans after Trooper McMillan pulled him over for speeding. Mr. Bosire will testify that he was detained without reasonable suspicion. Mr. Bosire will testify that he was driving a rental car, and that he had a valid rental agreement to return the car in Wichita by midnight. Mr. Bosire will testify that he had a bible on the backseat of his car. He will also testify he had cameras in his car, which he used to document his drives in the event he was in an automobile accident and had to submit a claim to his insurance provider. Mr. Bosire will testify that Trooper McMillan detained him on the side of I-70 for roughly forty minutes to conduct a canine sniff around Mr. Bosire's vehicle. The canine sniff did not result in an alert, after which point Trooper McMillan informed Mr. Bosire that he was free to leave. Mr. Bosire will testify that he submitted a complaint regarding the stop to KHP's Professional Standards Unit, which resulted in a finding that Mr. Bosire's concerns had merit and that Trooper McMillan had detained Mr. Bosire for a length of time that was "unnecessary given the suspicions articulated." Mr. Bosire will further testify that the detention has deeply impacted him, causing him severe anxiety and fear of the police.

6. **Shawna Maloney:** Shawna Maloney will testify about the facts and circumstances surrounding her stop and detention by KHP Trooper Justin Rohr while on a family road trip from Colorado to Alabama with her partner, Mark Erich, and two children. She will testify as to the

4

purported reasons Trooper Rohr pulled over their vehicle and the questions he asked them. She will also testify regarding Trooper Rohr's performance of the Two-Step maneuver, further questioning Mr. Erich, detention for a canine sniff despite telling them that they were free to go, and search of their vehicle. Ms. Maloney will further testify to the results of the search of their vehicle and the impact of the encounter with the KHP on her and her family.

7.  **Mark Erich:** Mark Erich will testify about the facts and circumstances surrounding his stop and detention by Trooper Justin Rohr while on a family road trip from Colorado to Alabama with his partner, Shawna Maloney, and two children. He will testify as to the purported reasons Trooper Rohr pulled over their vehicle and the questions he asked them. He will also testify regarding Trooper Rohr's performance of the Two-Step maneuver, further questioning of him, detention for a canine sniff despite telling them that they were free to go, and search of their vehicle. Mr. Erich will further testify to the results of the search of their vehicle and the impact of the encounter with the KHP on him and his family.

8.  **Curtis Martinez:** Curtis Martinez will testify about the facts and circumstances surrounding his 2022 stop and detention by KHP Trooper Scott Proffitt. Mr. Martinez will testify that he was traveling with his brother on I-70 in his wife's car, which has Colorado plates, to pick up his truck at the Kansas City airport for a contracting job in Sedalia, Missouri. He will testify that he was stopped after taking an exit off of I-70 to look for a restroom. He will testify that Trooper Proffitt asked if he was speeding, pointed out that his tags were out of date, and then proceeded to interrogate him about why his car's registration and insurance were not in his name and why he had chosen to take the exit that he did. He will testify that he explained to Trooper Proffitt that he was driving his wife's car, that she had probably forgotten to put on the new tags, and that he did not know the exit lacked a restroom because he is from Colorado. He will testify

5

that Trooper Proffitt ran his documentation, told him that everything appeared to be in order, and issued him a citation for out-of-date tags and a warning for speeding. He will testify that Trooper Proffitt then started to walk back towards his vehicle and Mr. Martinez initiated a U-turn to get back on the road. He will testify that Trooper Proffitt than ran back up to Mr. Martinez's vehicle in the middle of the road and told Mr. Martinez that he had one more question. He will testify that Trooper Proffitt asked whether he had any drugs or guns in the vehicle, and that Mr. Martinez replied he did not. He will testify that Trooper Proffitt asked whether he could search the vehicle, and that Mr. Martinez declined consent. Mr. Martinez will testify that Trooper Proffitt then told him that he was being detained for a canine sniff. Mr. Martinez will testify that Trooper Proffitt informed him that there was reasonable suspicion for the detention, but that Trooper Proffitt could not explain what reasonable suspicion was. Mr. Martinez will testify that the canine sniff alerted on his vehicle, but that no contraband was identified. He will testify that the entire detention lasted an hour, that it was a very frustrating and stressful experience, and that he is afraid that he will be subject to another baseless detention if he drives through Kansas again.

9. **Superintendent Colonel Herman Jones:** Col. Jones will testify about his supervision of the KHP and any steps he takes to ensure that constitutional violations do not occur.

10. **Sam Shaw (by deposition transcript):** Samuel Shaw will testify by deposition transcript about his Traumatic Brain Injury (TBI) and the disabilities it created for him; that he was in the car with brother, Blaine Shaw, traveling to Colorado when they were stopped and detained by Trooper Schulte; and how his brother was impacted by the stop and detention. He will also testify about his demeanor in the car while Trooper Schulte questioned Blaine Shaw.

11. **Captain Brent Hogelin:** Captain Hogelin will testify about his role within the KHP overseeing Troop N, which focuses on highway drug interdiction. Captain Hogelin will testify that

6

he reviews complaints that arise from traffic stops and searches. Captain Hogelin will further testify about how he tracks information related to KHP's seizure practices.

12. **Lieutenant Douglas Rule (by video deposition):** Lt. Rule will testify by video deposition regarding the training he provides KHP troopers on criminal interdiction. Specifically, Lt. Rule will testify about the "indicators" of criminal activity that he trains his officers to identify, and that among those indicators, he discusses travel to and from drug source states to be an appropriate indicator to develop reasonable suspicion. Finally, he will testify that he teaches troopers about using the Two Step maneuver during traffic stops.

13. **Lieutenant Greg Jirak (by video deposition):** Lt. Jirak will testify by video deposition that KHP has a commendation process that accounts for the quantity and quality of drug seizures troopers complete. He will further testify about the training he gives regarding advanced interdiction. Lt. Jirak will testify about indicators of criminal activity, including his belief that state of residency or destination can factor into a trooper's reasonable suspicion calculus. Lt. Jirak will testify about the Two-Step and when and how it is used.

14. **Lieutenant Justin Rohr (by video deposition):** Lt. Justin Rohr will testify by deposition about indicators of criminal activity, including his belief that state of residency or destination can factor into a trooper's reasonable suspicion calculus. Lt. Rule will further testify about the stop and detention of Mark Erich and his family, including the canine sniff and subsequent search of their vehicle, and that the search did not uncover anything illegal.

15. **Trooper Ryan Wolting (by video deposition):** Trooper Wolting will testify by video deposition that KHP has a commendation process that accounts for the quantity and quality of drug seizures troopers complete. Trooper Wolting will further testify about indicators of criminal activity, including his belief regarding what can amount to reasonable suspicion to detain

7

a driver for a canine sniff, and that state of residency or destination can factor into a trooper's reasonable suspicion calculus. Trooper Wolting will testify that he frequently uses the Two Step and that the job of criminal interdiction troopers like himself is to pull over as many people as possible.

16. **Any witnesses listed on Defendant's Rule 26(a)(3) witness list.**

Respectfully submitted by,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS**
s/ Sharon Brett
Sharon Brett                KS # 28696
Kunyu Ching                 *Pro hac vice*
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
sbrett@aclukansas.org
kching@aclukansas.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Brian Hauss                 *Pro Hac Vice*
125 Broad Street, Floor 18
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org

and

**SPENCER FANE LLP**
s/ Madison A. Perry
Leslie A. Greathouse        KS # 18656
Patrick McInerney           KS # 22561
Madison A. Perry            KS # 27144
Olawale O. Akinmoladun      KS # 25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100

Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com
wakinmoladun@spencerfane.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 23rd day of January 2023, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

s/ Madison A. Perry
Attorney for Plaintiffs
