## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLAINE FRANKLIN SHAW, *et al*., | |
| *Plaintiffs*, | |
| v. | **Case No. 19-1343-KHV-GEB** |
| HERMAN JONES in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al*., | |
| *Defendants*. | |

| | |
|---|---|
| MARK ERICH, *et al*., | |
| *Plaintiffs*, | |
| v. | **Case No. 20-1067-KHV-GEB** |
| HERMAN JONES, *KHP Superintendent*, | |
| *Defendant.* | |

### PLAINTIFF JOSHUA BOSIRE'S FINAL WITNESS LIST

Pursuant to the Court's Order Setting Pretrial Filing Deadlines (Doc. #338), and Federal Rule of Civil Procedure 26(a)(3)(A)(i), Plaintiff Joshua Bosire submits the following final list of witnesses he intends to call at his trial against Defendant Brandon McMillan. This trial is set to begin on February 13, 2023.

Mr. Bosire will call the following witnesses in his case-in-chief:

1.  **Joshua Bosire:** Joshua Bosire will testify about the facts and circumstances surrounding his stop and detention by Kansas Highway Patrol (KHP) Trooper McMillan and Trooper Douglas Schulte, and the damages he experienced as a result. Specifically, Mr. Bosire

will testify that he was observed by Troopers McMillan and Schulte at the Love's Gas Station in Ellis County, Kansas, after stopping to for gas on his way back from visiting his daughter in the Denver, Colorado area. He will testify that the Troopers targeted him for a roadside stop after seeing him at the gas station talking to a gas station attendant, whom Mr. Bosire had asked to assist with fixing a broken gas pump. Mr. Bosire will testify that he did not smell of marijuana.  Mr. Bosire will testify that Trooper McMillan pulled him over for speeding between 6-7 mph over the speed limit while traveling eastbound on I-70. Mr. Bosire will testify that he asserted his right not to answer Trooper McMillan's invasive questions about Mr. Bosire's travel plans after Trooper McMillan pulled him over for speeding. Mr. Bosire will testify that he was detained without reasonable suspicion. Mr. Bosire will testify that he was driving a rental car, and that he had a valid rental agreement to return the car in Wichita by midnight. Mr. Bosire will testify that he had a bible on the backseat of his car. He will also testify he had cameras in his car, which he used to document his drives in the event he was in an automobile accident and had to submit a claim to his insurance provider. Mr. Bosire will testify that Trooper McMillan detained him on the side of I-70 for roughly forty minutes to conduct a canine sniff around Mr. Bosire's vehicle. The canine sniff did not result in an alert, after which point Trooper McMillan informed Mr. Bosire that he was free to leave. Mr. Bosire will testify that he submitted a complaint regarding the detention to the KHP's Professional Standards Unit, which resulted in a finding that Mr. Bosire's concerns had merit and that Trooper McMillan had detained Mr. Bosire for a length of time that was "unnecessary given the suspicions articulated." Mr. Bosire will further testify that the detention has deeply impacted him, causing him severe anxiety and fear of the police. Mr. Bosire will testify that the detention has altered his behavior in numerous ways, including limiting the community activities in which he participates; causing him to install security equipment in his home; and

changing his driving behaviors so that he can avoid driving at night. Mr. Bosire will further testify that following this incident, he often elects to fly to Colorado, which is much more costly, so that he can avoid driving after dark in Kansas.

2. **Trooper Brandon McMillan:** Trooper McMillan will testify regarding the circumstances surrounding the stop and detention of Mr. Bosire. He will also testify about his reasons for detaining Mr. Bosire, including that he relied in part on Mr. Bosire's travel plans in deciding to detain Mr. Bosire for a canine sniff.  Trooper McMillan will further testify about prior statements he gave regarding the stop and detention of Mr. Bosire.

3. **Trooper Douglas Schulte**: Trooper Schulte will testify regarding the circumstances surrounding the stop and detention of Mr. Bosire, including that he was at the scene of the roadside detention of Mr. Bosire and spoke to Trooper McMillan regarding whether or not Trooper McMillan believed he could detain Mr. Bosire for a canine sniff. Trooper Schulte will testify that he observed Trooper McMillan state that Trooper McMillan did not believe he had enough reasonable suspicion to hold Mr. Bosire for a canine sniff, but that Trooper McMillan returned to Mr. Bosire's vehicle and detained him anyway. Trooper Schulte will further testify about prior statements he gave in this case.

4. **Chief Hassan Aden**: Chief Aden will testify as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). Chief Aden will testify regarding his background and experience in policing; his qualifications as an expert regarding police practices, nationally accepted policing practices, and the evaluation of policing activities; and the evidence he was asked to review for this case. Chief Aden will further testify regarding nationally accepted police practices regarding traffic stops and detentions for canine sniffs. Chief Aden will provide analysis

of Trooper McMillan's stop and detention of Mr. Bosire, including whether it comported with those nationally accepted police practices.

5.      **Dr. Jonathan Mummolo**: Dr. Mummolo will testify as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). Dr. Mummolo will testify regarding his academic research and expertise in statistical methodology for evaluating law enforcement activities for disparities and/or discrimination. Specifically, Dr. Mummolo will testify regarding his expert report, which analyzed statistical disparities in the KHP's traffic stop and canine sniff data and determined that KHP stops and detains out-of-state drivers for canine sniffs at a rate that is disproportionate to their total share of overall drivers on Kansas highways. Dr. Mummolo will also testify that these disparities cannot be explained by KHP enforcement policies for either traffic stops or canine detentions that are blind to the state-of-origin of a driver. Furthermore, Dr. Mummolo will testify that his study demonstrated that these disparities cannot be explained by differences in driver behavior between in- and out-of-state drivers. Finally, Dr. Mummolo will explain that the chances of finding illegal contraband following a canine sniff are slightly higher for in-state than out-of-state drivers.

6.      **Blaine Shaw**: Mr. Shaw will testify regarding the circumstances surrounding his stop and detention by Kansas Highway Patrol (KHP) Trooper Douglas Schulte, and the damages he experienced as a result. Specifically, Mr. Shaw will testify that he was traveling on I-70 through Kansas to Colorado with his brother, Samuel Shaw, to visit friends and camp in the Denver area. Mr. Shaw will testify that he was driving his father's minivan with Osage Nation license plates and that he was on his father's insurance. Mr. Shaw will testify that he was pulled over for speeding by Trooper Schulte, who activated his patrol car lights while in front of Mr. Shaw. Mr. Shaw will testify that he was forthcoming with his answers to Trooper Schulte's questions, after which

Trooper Schulte returned to his patrol vehicle with Mr. Shaw's license and registration. Mr. Shaw will testify that Trooper Schulte returned to Mr. Shaw's minivan with a ticket for speeding, explained the ticket, and then told Mr. Shaw to "have a safe trip and drive safely." Mr. Shaw will testify that Trooper Schulte took two steps away from the car and returned immediately and asked if he could ask Mr. Shaw additional questions. Mr. Shaw will testify that he did not feel free to leave at that time. Mr. Shaw will further testify that Trooper Schulte asked Mr. Shaw questions about his travel plans and then asked if Mr. Shaw would consent to a search. Mr. Shaw will testify that he declined. Mr. Shaw will testify that he was detained for a canine sniff. Mr. Shaw will testify that he and his brother were required to wait for the canine to arrive, and that they were not cited for possession of anything unlawful. Mr. Shaw will testify that the detention has deeply impacted him in several ways, including anxiety and nervousness when driving and around the police.

7.     **Shawna Maloney:** Shawna Maloney will testify about the facts and circumstances surrounding her stop and detention by KHP Trooper Justin Rohr while on a family road trip from Colorado to Alabama with her partner, Mark Erich, and two children. She will testify as to the purported reasons Trooper Rohr pulled over their vehicle and the questions he asked them. She will also testify regarding Trooper Rohr's performance of the Two-Step maneuver, further questioning Mr. Erich, detention for a canine sniff despite telling them that they were free to go, and search of their vehicle. Ms. Maloney will further testify to the results of the search of their vehicle and the impact of the encounter with the KHP on her and her family.

8.     **Mark Erich:** Mark Erich will testify about the facts and circumstances surrounding his stop and detention by Trooper Justin Rohr while on a family road trip from Colorado to Alabama with his partner, Shawna Maloney, and two children. He will testify as to the purported reasons Trooper Rohr pulled over their vehicle and the questions he asked them. He will also

testify regarding Trooper Rohr's performance of the Two-Step maneuver, further questioning of him, detention for a canine sniff despite telling them that they were free to go, and search of their vehicle. Mr. Erich will further testify to the results of the search of their vehicle and the impact of the encounter with the KHP on him and his family.

9.    **Curtis Martinez:** Curtis Martinez will testify about the facts and circumstances surrounding his 2022 stop and detention by KHP Trooper Scott Proffitt. Mr. Martinez will testify that he was traveling with his brother on I-70 in his wife's car, which has Colorado plates, to pick up his truck at the Kansas City airport for a contracting job in Sedalia, Missouri. He will testify that he was stopped after taking an exit off of I-70 to look for a restroom. He will testify that Trooper Proffitt asked if he was speeding, pointed out that his tags were out of date, and then proceeded to interrogate him about why his car's registration and insurance were not in his name and why he had chosen to take the exit that he did. He will testify that he explained to Trooper Proffitt that he was driving his wife's car, that she had probably forgotten to put on the new tags, and that he did not know the exit lacked a restroom because he is from Colorado. He will testify that Trooper Proffitt ran his documentation, told him that everything appeared to be in order, and issued him a citation for out-of-date tags and a warning for speeding. He will testify that Trooper Proffitt then started to walk back towards his vehicle and Mr. Martinez initiated a U-turn to get back on the road. He will testify that Trooper Proffitt than ran back up to Mr. Martinez's vehicle in the middle of the road and told Mr. Martinez that he had one more question. He will testify that Trooper Proffitt asked whether he had any drugs or guns in the vehicle, and that Mr. Martinez replied he did not. He will testify that Trooper Proffitt asked whether he could search the vehicle, and that Mr. Martinez declined consent. Mr. Martinez will testify that Trooper Proffitt then told him that he was being detained for a canine sniff. Mr. Martinez will testify that Trooper Proffitt

informed him that Trooper Proffitt had reasonable suspicion for the detention, but could not explain what reasonable suspicion was. Mr. Martinez will testify that the canine sniff alerted on his vehicle, but that no contraband was identified. He will testify that the entire detention lasted an hour, that it was a very frustrating and stressful experience, and that he is afraid that he will be subject to another baseless detention if he drives through Kansas again.

10.    **Superintendent Colonel Herman Jones:** Col. Jones will testify about his supervision of the KHP and any steps he takes to ensure that constitutional violations do not occur. Col. Jones will further testify about the PSU investigation of Trooper McMillan's stop and detention of Mr. Bosire, including the findings he reached.

11.    **Captain Brent Hogelin:** Captain Hogelin will testify about his role within the KHP overseeing Troop N, which focuses on highway drug interdiction. Captain Hogelin will testify that he reviews complaints that arise from traffic stops and searches, and that he reviewed the complaint filed by Mr. Bosire and the subsequent investigation by the PSU. Captain Hogelin will further testify about the purpose of his review and the PSU investigation as a whole, and how the PSU complaint process works. Captain Hogelin will testify about the opinion he formed about Troper McMillan's detention of Mr. Bosire at the time that Captain Hogelin reviewed the PSU investigation. Captain Hogelin will further testify about how he tracks information related to KHP's seizure practices.

12.    **Lieutenant Joe Bullock:** Lt. Joe Bullock will testify about his role within the KHP's PSU and the investigation he conducted into Trooper McMillan's stop of Mr. Bosire. He will testify about the organization of the PSU, what the PSU does to investigate complaints of misconduct, the general components of investigations, and the potential dispositions. He will

further testify about the findings and process of the investigation regarding Trooper McMillan's conduct.

13.     **Lieutenant Douglas Rule (by video deposition):** Lt. Rule will testify by video deposition regarding the training he provides KHP troopers on criminal interdiction. Specifically, Lt. Rule will testify about the "indicators" of criminal activity that he trains his officers to identify, and that among those indicators, he discusses travel to and from drug source states to be an appropriate indicator to develop reasonable suspicion. Finally, he will testify that he teaches troopers about using the Two Step maneuver during traffic stops.

14.     **Lieutenant Greg Jirak (by video deposition):** Lt. Jirak will testify by video deposition that KHP has a commendation process that accounts for the quantity and quality of drug seizures troopers complete. He will further testify about the training he gives regarding advanced interdiction. Lt. Jirak will testify about indicators of criminal activity, including his belief that state of residency or destination can factor into a trooper's reasonable suspicion calculus.  Lt. Jirak will testify about the Two-Step and when and how it is used. Finally, Lt. Jirak will testify about the ride along he conducted for Trooper McMillan following the stop and detention of Mr. Bosire.

15.     **Lieutenant Justin Rohr (by video deposition):** Lt. Justin Rohr will testify by deposition about indicators of criminal activity, including his belief that state of residency or destination can factor into a trooper's reasonable suspicion calculus. Lt. Rule will further testify about the stop and detention of Mark Erich and his family, including the canine sniff and subsequent search of their vehicle, and that the search did not uncover anything illegal.

16.     **Trooper Ryan Wolting (by video deposition):** Trooper Wolting will testify by video deposition that KHP has a commendation process that accounts for the quantity and quality of drug seizures troopers complete. Trooper Wolting will further testify about indicators of

criminal activity, including his belief regarding what can amount to reasonable suspicion to detain a driver for a canine sniff, and that state of residency or destination can factor into a trooper's reasonable suspicion calculus. Trooper Wolting will testify that he frequently uses the Two Step and that the job of criminal interdiction troopers like himself is to pull over as many people as possible.

17.      **Captain Mitchell Clark (by video deposition):** Captain Clark will testify regarding his role as the head of the PSU, the PSU investigation process and potential dispositions following investigations, and the difference between discipline and corrective action. Specifically, Captain Clark will testify that Trooper McMillan received corrective action following the PSU investigation into Trooper McMillan's stop and detention of Mr. Bosire.

18. **Any witnesses listed on Defendant's Rule 26(a)(3) witness list.**

Respectfully submitted by,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS**
s/ Sharon Brett
Sharon Brett                    KS # 28696
Kunyu Ching                     *Pro hac vice*
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
sbrett@aclukansas.org
kching@aclukansas.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Brian Hauss                     *Pro Hac Vice*
125 Broad Street, Floor 18
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org

and

**SPENCER FANE LLP**
s/ Madison A. Perry

| | |
|---|---|
| Leslie A. Greathouse | KS # 18656 |
| Patrick McInerney | KS # 22561 |
| Madison A. Perry | KS # 27144 |
| Olawale O. Akinmoladun | KS # 25151 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com
wakinmoladun@spencerfane.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of January 2023, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

s/ Madison A. Perry
Attorney for Plaintiffs

11