IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLAINE FRANKLIN SHAW, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> HERMAN JONES in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*, <br><br> *Defendants*. | **Case No. 19-1343-KHV-GEB** |
| MARK ERICH, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> HERMAN JONES, *KHP Superintendent,* <br><br> *Defendant.* | **Case No. 20-1067-KHV-GEB** |

**PLAINTIFFS' JOINT TRIAL BRIEF**

Plaintiffs Blaine Shaw and Joshua Bosire hereby respectfully submit the below Trial Brief, consistent with this Court's Order Setting Pre-trial Deadlines (Doc. #338) and District of Kansas Local Rule 7.6. The purpose of this brief is to highlight a complex area of the law addressed in the parties' proposed jury instructions and jury verdict forms regarding the jury's role in deciding the ultimate question in each upcoming trial. That ultimate question is whether Defendants violated Plaintiffs' Fourth Amendment right to be free from prolonged roadside detentions absent reasonable suspicion. After reviewing the Defendants' proposed jury instructions, it appears that the parties may generally agree on the jury's role. However, as this brief is due the same day as

jury instructions, Plaintiffs are filing it in the event it may be helpful. Based on authority from the Tenth Circuit discussed below, Plaintiffs assert that the ultimate question of whether Defendants violated Plaintiffs' constitutional rights should go to the jury through a general verdict, while the factual questions crucial for determining qualified immunity should be answered by the jury via special questions, consistent with Federal Rule of Civil Procedure 49(b).

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs Blaine Shaw and Joshua Bosire filed this lawsuit against Kansas Highway Patrol ("KHP") Troopers Defendants Doug Schulte and Brandon McMillan, respectively, alleging that Defendants subjected Plaintiffs to prolonged and unconstitutional detentions and vehicle searches. Under 42 U.S.C. § 1983, Plaintiffs sue Defendants for violating their rights under the Fourth Amendment to the United States Constitution. Plaintiffs seek compensatory and punitive damages. Plaintiffs' claims are bifurcated for trial: trial on Mr. Shaw's claim against Schulte will begin February 6, 2023, and trial on Mr. Bosire's claim against McMillan will begin February 13, 2023.

## DISCUSSION

### 1. Whether Defendants possessed adequate "reasonable suspicion" is a mixed question of fact and law for the jury to resolve.

Generally, "legal issues are for the court and factual issues for the jury . . . ." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013). The Tenth Circuit has taken the position that "where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury." *Id.*; *see also Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009) ("[I]n a damages action based on an alleged Fourth Amendment violation the reasonableness of a search or seizure is a question for the jury.").[1]

---

[1] Principles from probable cause and excessive force cases are equally applicable to Plaintiffs' case. *See Cavanaugh*, 718 F.3d at 1253–54 (citing *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007)). For example, the Tenth Circuit has "long recognized that it is a jury question in a civil

2

Most Fourth Amendment inquiries are mixed questions of law and fact. *Cavanaugh*, 718 F.3d at 1253 (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). The Supreme Court has stated:

> The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."

*Ornelas*, 517 U.S. at 696–97 (quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 289, n.19 (1982)). "Such mixed fact-law questions can be for the jury or the court depending on the situation." *Cavanaugh*, 718 F.3d at 1253.

On appeal of this Court's denial of Defendants' first motions for summary judgment (Docs. #139, 143, 187, 188), the Tenth Circuit identified disputed issues of material fact that precluded summary judgment on the basis of qualified immunity. *Shaw v. Schulte*, 36 F.4th 1006, 1009, 1013 (10th Cir. 2022) (noting that issues of fact remain regarding Schulte and McMillan's credibility and the veracity of their conflicting, changing stories).[2] As described above, it is the role of the

---

rights suit whether an officer had probable cause to arrest." *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).

[2] The Tenth Circuit also explicitly discussed several factors that the troopers advanced to support their reasonable suspicion, finding that those factors have "minimal," if any, value in creating reasonable suspicion to detain Mr. Shaw or Mr. Bosire. For Trooper Schulte's detention of Mr. Shaw, such factors include: "the amount of time it took Blaine [Shaw] to stop," "the Shaws' destination and the vehicle registration," and Blaine Shaw's prior drug arrest. *Id.* at 1015–16. The Tenth Circuit gave this last factor little weight because a decade had passed since that arrest. *Id.* at 1016. For Trooper McMillan's detention of Mr. Bosire's, the Tenth Circuit found that the following factors should be given minimal, if any, weight: Mr. Bosire was driving a rental car, but there was no discrepancy between the rental contract and Mr. Bosire's travel, *id.* at 1019; Mr. Bosire waited to roll his window down all the way until Trooper McMillan approached, *id.* at

jury to decide disputed issues of material historical fact. *Cavanaugh*, 718 F.3d at 1254. It is also within the jury's province to make credibility determinations which may counsel for or against adopting a particular party's version of events or the material facts in dispute. *See, e.g.*, *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008) (stating that "assess[ing] the credibility of witnesses or weigh[ing] conflicting evidence" are tasks "exclusively for the jury").

Therefore, determining whether each Defendant violated the Fourth Amendment is a mixed factual-legal inquiry for the jury. *Cavanaugh*, 718 F.3d at 1253; *Sherouse*, 573 F.3d at 1059; *see also Ornelas*, 517 U.S. at 696; *Dartez v. Peters*, No. 15-3255-EFM, 2021 U.S. Dist. LEXIS 36146 at *18, 2021 WL 764533 at *6 (D. Kan. Feb. 26, 2021) ("[W]here there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury." (internal quotation marks omitted))[3].

### 2. The Court should decide whether qualified immunity applies.

After the jury decides issues of historical fact and whether a constitutional violation occurred, the Court will be in the best position to consider the application of qualified immunity.

Where, as here, the defendants assert qualified immunity, the Court must decide whether the officer's actions were objectively reasonable in light of clearly established law. Whether qualified immunity should apply "is a question whether, in light of clearly established law, an

---

1019-1020; Mr. Bosire had a "notebook" in his car, *id.* at 1019, n.8 (the "notebook" was actually a bible); and the presence of cameras in the car, *id.* at 1020.

[3] *Dartez* is a § 1983 lawsuit against members of the KHP's Special Response Team ("SRT") and Defendant Superintendent Herman Jones, alleging that members of the SRT brutally beat Dartez during an arrest, resulting in numerous injuries. 2021 WL 764533, at *1. Denying summary judgment on the qualified immunity defense, Judge Melgren held that the KHP troopers "failed to carry their burden to demonstrate that there are no material issues of fact as to whether their conduct was objectively reasonable" due to "multiple genuine issues of material fact . . . ." *Id.* at *7.

objectively reasonable officer would believe his or her conduct was permitted." *Cavanaugh*, 718 F.3d at 1255. A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff—i.e., if the officer had arguable reasonable suspicion." *Shaw*, 36 F.4th at 1014 (cleaned up) (quoting *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008)). The qualified immunity question essentially asks whether a reasonable officer would have known that the Defendant's conduct violated the law. *Shaw*, 36 F.4th at 1013 ("In order for a constitutional right to be clearly established, the contours of the right must be sufficiently clear that *a reasonable official* would understand that what he is doing violates that right.") (cleaned up, emphasis added). In general, qualified immunity "is a legal [question] . . . for the court to decide; it involves a determination of what was clearly established law at the time of the officer's conduct, which requires an assessment of the state of the law that only the judge is qualified to make." *Cavanaugh*, 718 F.3d at 1255.

The Tenth Circuit has recognized that in many cases, the applicability of the qualified immunity doctrine—like the question of whether a constitutional violation occurred in general—may depend on the jury's resolution of the material historical facts. The Tenth Circuit has therefore recognized various approaches to resolving the question of the jury's role in the qualified immunity analysis. *Id.* at 1256. District courts determine which approach to utilize on a case-by-case basis. *Id.* at 1257.

The first approach ("Option 1") is to have the jury issue a general verdict regarding whether a constitutional violation occurred, followed by special interrogatories[4] that the Court can use to answer the qualified immunity question of "whether the defendant's conduct was objectively

---

[4] Following changes to the Federal Rules of Civil Procedure, these special interrogatories are now called a "General Verdict with Answers to Written Questions." *See* Fed. R. Civ. P. 49(b) and advisory committee notes.

5

reasonable in light of the clearly established law.'" *Id.* at 1256 (quoting *Gonzales v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009)); *see also Stephenson v. Doe*, 332 F.3d 68, 80–81 (2d Cir. 2003) (cited with approval in *Cavanaugh*, 718 F.3d at 1256).[5]

Another approach ("Option 2") would allow the Court to essentially instruct the jury on qualified immunity and have the jury issue the qualified immunity ruling through its general verdict.[6] *Cavanaugh*, 718 F.3d at 1256. The Tenth Circuit explained that this second approach should be used rarely, and only in those circumstances "when narrow issues of disputed material fact are dispositive of the qualified immunity inquiry." *Id.* (internal quotations omitted). Defendants have maintained throughout this case that the issue of qualified immunity is not appropriate for the jury to resolve. *See, e.g.*, Docs. #139, 143 (moving for summary judgment on qualified immunity); Mem. in Supp. of Mot. to Sever or for Separate Trials at 14 n.3, Doc. #287; Mem. in Supp. of Mot. to Sever or for Separate Trials at 12 n.3, Doc. #351. Plaintiffs agree. Plaintiffs therefore respectfully request that the Court not select Option 2, and that the Court not instruct the jury on qualified immunity at all.

Finally, the Tenth Circuit recognizes a third option ("Option 3"), wherein the court presents "only special interrogatories to the jury, and then once the jury determines the purely historical facts, the judge then decides" the ultimate questions of law, including whether a constitutional violation occurred and whether the defendants are entitled to qualified immunity. *Cavanaugh*, 718 F.3d at 1256 (cleaned up). Although not explicitly stated in *Cavanaugh*, this option amounts to a

---

[5] *Cavanaugh* recognized that it is the defendants' burden to request special interrogatories. 718 F.3d at 1256 n.6 (citing *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).

[6] Notably, the Tenth Circuit has "condemned a . . . method of 'simply allowing the jury to determine what the clearly established law is, what the defendant actually did, and whether the defendant's conduct was objectively reasonable in light of the clearly established law found by the jury.'" *Cavanaugh*, 718 F.3d at 1256 (quoting *Gonzales,* 590 F.3d at 860).

"special verdict" under Rule 49(a). Special verdicts include only findings of fact, rather than findings of liability. *See generally* Fed. R. Civ. P. 49(a); Martin A. Schwartz and George C. Pratt, Section 1983 Litigation: Jury Instructions § 1.05C (2023 suppl. to 2d ed.). Importantly, the best practice to employ out of these three options "undoubtedly depends on the case." *Cavanaugh*, 718 F.3d at 1257.

It is within the Court's discretion to decide between these three options. Here, Plaintiffs respectfully suggest that the most appropriate approach is Option 1: to issue a jury charge with a general verdict on liability, followed by written questions that address the factual disputes regarding credibility and veracity necessary for the Court to resolve the question of qualified immunity, consistent with Rule 49(b). This option would allow the jury to decide disputed issues of material historical facts, including those the Tenth Circuit highlighted in rejecting Defendants' prior motions for summary judgment based on qualified immunity. Option 1 would also leave with the jury the important role of assessing the witnesses' credibility. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."). As discussed above, the jury is well positioned to decide the "mixed question" of law and fact, i.e., on the basis of all the facts and evidence, whether Defendants had reasonable suspicion to detain Plaintiffs. To the extent that the jury's determination hinges on the resolution of disputed material facts that are also relevant for the Court's determination regarding qualified immunity, written questions on a special verdict form are the appropriate vehicle for probing the jury's decision-making process. The Court can then utilize the jury's resolution of the key factual disputes to assess whether Defendants' conduct violated clearly established law.

Notably, there are important normative justifications for having the jury issue the decision on Defendants' liability via a general verdict. As one scholar has noted, the "educative and self-government functions [of jury service] are particularly desirable in the context of basic civil rights norms," and "a jury finding of liability in a civil rights case serves as a more effective pronouncement" of public norms regarding civil rights because "it can be seen as embodying the judgment of representatives of the community." Catherine T. Struve, *Constitutional Decision Rules for Juries*, 37 Colum. Human Rights L. Rev. 659, 707–09 (2006). General verdicts in civil rights cases "empower[] the jury as a constitutional decision-maker." *Id.*

In light of the above, Plaintiffs have submitted proposed jury instructions and jury verdict form that present the jury with a general verdict, followed by written questions necessary to decide qualified immunity.

## CONCLUSION

Based on the Tenth Circuit's discussion in *Cavanaugh* and *Gonzales*, the issues of historical fact in this case, and the important role that juries serve in adjudicating the civil rights of community members in cases involving mixed questions of law and fact, Plaintiffs respectfully request that the Court determine that this case will be tried using a general verdict with special interrogatories necessary to decide the issue of qualified immunity.

Respectfully submitted by,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS**
s/ Sharon Brett
Sharon Brett                KS # 28696
Kunyu Ching                 *Pro hac vice*
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119

sbrett@aclukansas.org
kching@aclukansas.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Brian Hauss                    *Pro Hac Vice*
125 Broad Street, Floor 18
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org

and

**SPENCER FANE LLP**
s/ Madison A. Perry
Leslie A. Greathouse         KS # 18656
Patrick McInerney            KS # 22561
Madison A. Perry             KS # 27144
Olawale O. Akinmoladun       KS # 25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com
wakinmoladun@spencerfane.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 23rd day of January 2023, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

s/ Madison A. Perry
Attorney for Plaintiffs
