**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BLAINE FRANKLIN SHAW, *et al.*, | |
| *Plaintiffs*, | |
| v. | **Case No. 19-1343-KHV-GEB** |
| HERMAN JONES in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*, | |
| *Defendants*. | |

| | |
|---|---|
| MARK ERICH, *et al.*, | |
| *Plaintiffs*, | |
| v. | **Case No. 20-1067-KHV-GEB** |
| HERMAN JONES, *KHP Superintendent*, | |
| *Defendant*. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT SCHULTE'S MOTIONS IN LIMINE

Plaintiff Blaine Shaw submits this memorandum in opposition to Defendant Doug Schulte's motions in limine. Def. Schulte's Mots. in Limine and Supp. Mem. ("Schulte MIL"), (Doc. #364). Plaintiff Josh Bosire joins in this opposition brief.[1]

### ARGUMENT

The Court should overrule Defendants' motions in limine (Doc. #364), because Defendants' arguments are either moot or unavailing.

---

[1] Defendant McMillan incorporates Schulte's arguments by reference in McMillan's own Motion in Limine (Doc. #365). Plaintiff Josh Bosire therefore joins Mr. Shaw in his opposition to Schulte's arguments, as discussed herein.

1. **Defendants' "Golden Rule," "Conscience of the Community," and "send a message" motions should be overruled as moot.**

Defendants' first three motions concern the types of arguments Plaintiffs will be permitted to make before the jury. Defendants request that the Court prohibit counsel from arguing: (1) that jurors should put themselves in Plaintiffs' shoes and "do unto the plaintiff as they would have the plaintiff do unto them under similar circumstances"; and (2) that the jury should act as "the Conscience of the Community." (Doc.#364 at 2–3). Defendants further ask that the Court limit any "send a message" arguments concerning punitive damages to closing argument, acknowledging the propriety of such arguments at that time. *Id.* 3–4. Plaintiffs do not intend to make any "Golden Rule" or "Conscience of the Community" arguments. Accordingly, the Court should overrule these motions as moot.

2. **The Court should overrule Defendants' motion to exclude evidence of KHP's alleged practices, other stops and detentions, and complaints or lawsuits regarding other stops and detentions.**

Defendants move to exclude evidence and argument regarding KHP's alleged practices, other stops and detentions, and complaints or lawsuits regarding same. (Doc. #364 at 4-7). As set forth below, the Court should overrule Defendants' motion because: (1) evidence and argument regarding *Vasquez* is admissible to support Plaintiffs' requests for punitive damages; (2) evidence and argument regarding KHP's alleged practice of targeting out-of-state motorists is admissible to support Plaintiffs' requests for punitive damages; and (3) evidence and argument regarding KHP's alleged practice of targeting out-of-state motorists is admissible to impeach Defendants' credibility regarding the *post hoc* justifications given for Plaintiffs' detentions.

   a. **Evidence and argument related to the Tenth Circuit's decision in *Vasquez v. Lewis* is admissible to support Plaintiffs' requests for punitive damages.**

Plaintiffs seek to introduce evidence and argument related to the Tenth Circuit's decision in *Vasquez* and its effect on Defendants' police practices. Evidence about prior judicial

2

proceedings is not "*per se* admissible or excludable." *Mendenhall v. Cedarrapids, Inc.*, 5 F.3d 1557, 1573 (Fed. Cir. 1993). "[S]uch evidence must pass muster, like any other evidence, as relevant and probative of an issue in the second case," and its probative value must not be substantially outweighed by its prejudicial impact or tendency to confuse the jury. *Id.* (collecting cases). But if the proffered evidence clears those hurdles, and is not subject to exclusion on some independent ground, it is admissible. In determining whether to allow evidence about prior litigation, the court must consider the specific evidence proffered, the issues to which it may be relevant, and the reasons for its exclusion. *Id.*

Here, evidence that Defendants were indifferent to the Tenth Circuit's decision in *Vasquez*—a case holding that a strikingly similar detention by a KHP Trooper violated clearly established Fourth Amendment law—is admissible to establish Defendants' liability for punitive damages. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "'[R]eckless or callous indifference' requires that the defendant have acted 'in the face of a perceived risk that its actions will violate federal law.'" *Eisenhour v. Cnty.*, 897 F.3d 1272, 1281 (10th Cir. 2018) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999)). Importantly, "eligibility for punitive damages *does not require* that the defendant engaged in *egregious* misconduct. It is the defendant's mental state, not the scope of the harm, that counts." *Id* (emphasis added).

Evidence about prior proceedings is admissible to establish the requisite scienter for a punitive damages award. *See, e.g.*, *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 723-24 (10th Cir. 1984) (consent decree between defendants and the Commodity Futures Trading

3

Commission admissible to show defendants' knowledge and intent to commit fraud, which was relevant to plaintiffs' claim for punitive damages). In this case, evidence related to Defendants' awareness of the *Vasquez* decision could lead a reasonable jury to conclude that Defendants unconstitutionally detained Plaintiffs with reckless indifference to Plaintiffs' Fourth Amendment rights. *See, e.g.*, *Jones v. United States*, 207 F.3d 508, 511 (8th Cir. 2000) (stating that "the efforts of governmental agents to discover applicable legal principles may well be germane to the question of punitive damages"); *Montoya v. Shelden*, 898 F. Supp. 2d 1279, 1298–99 (D.N.M. 2012) ("A judgment entered before the alleged unconstitutional conduct, makes more probable that [defendants] acted with recklessness for the civil rights of the Montoyas, because it would put [them] on notice of constitutionally reasonable force, making it more probable that they appreciated the risk of using excessive force at the time they did so, and still acted in the face of that perceived risk.").

Defendants cite the district court's decision in *Montoya* to argue that evidence and argument related to *Vasquez* should be barred under Rule 403, but as shown above, the relevance principle from *Montoya* actually supports Plaintiffs' position, and as further discussed below, the prejudicial analysis in *Montoya* is distinguishable because of the facts of this case. First, the *Vasquez* decision—which addressed a substantially similar detention by another KHP Trooper— is significantly more probative of Defendants' scienter for punitive damages than the unrelated excessive force judgments offered against the defendant officers in *Montoya*. *Compare Montoya*, 898 F. Supp. 2d at 1299 (noting that the proffered prior judgments addressed "unrelated, dissimilar" uses of force by defendants) *with Shaw v. Schulte*, 36 F.4th 1006, 1016 (10th Cir. 2022) ("[T]he undisputed facts, including the minimal weight given to the factors not in dispute, are sufficiently similar to *Vasquez* to permit the Shaws to overcome the clearly established prong of

4

qualified immunity for purposes of this stage of the proceedings."). Second, the risk of unfair prejudice to Defendants is significantly lower here than in *Montoya*, because the *Vasquez* decision addresses a detention that took place over a decade ago and does not discuss any prior misconduct by Defendants. *See Montoya*, 898 F. Supp. 2d at 1301 ("[T]he Court is concerned that the jury, even if it tries mightily to faithfully follow the instruction to not use the judgments for an improper purpose, will use them to say that, because [defendants] used excessive force in the past, they did so again in this case."). It is unlikely a jury would improperly punish Defendants for acts committed by a third-party over a decade ago. Conversely, evidence that Defendants disregarded *Vasquez* would be highly probative on Plaintiffs' punitive damages claims. Defendants' motion to exclude evidence and argument related to *Vasquez* should therefore be overruled.

> **b. Evidence of KHP's practice of targeting out-of-state drivers for roadside detentions is admissible to support Plaintiffs' requests for punitive damages.**

Plaintiffs also seek to introduce evidence and elicit testimony regarding KHP's practice of targeting out-of-state drivers, and Defendants' participation in this practice, in order to establish that Defendants targeted Plaintiffs for prolonged roadside detentions—with reckless disregard for whether there was reasonable suspicion—because they believed Plaintiffs to be out-of-state motorists. Specifically, Plaintiffs intend to introduce: (1) statistical expert witness testimony by Dr. Jonathan Mummolo showing that KHP disproportionately and discriminatorily targets out-of-state motorists for stops and prolonged detentions; (2) lay witness testimony by other out-of-state motorists involved in detentions similar to those at issue here; and (3) KHP Professional Standards Unit ("PSU") complaints describing similar detentions of out-of-state motorists. Defendants' active participation in KHP's practice of targeting out-of-state motorists is corroborated by their own references to Plaintiffs' Colorado travel plans in statements identifying their grounds for the

KC 19709847.1

detentions. *See* Def. Schulte's Mem. in Supp. of Summ. J., Ex. 1, Decl. of D. Schulte ¶ 20 (Doc. #140-2); Pl. Bosire's Mem. in Opp. to Summ. J., Ex. 3, McMillan PSU Statement (Doc. #178-3).

Admission of this evidence, in whole or in part, would not unduly prejudice Defendants. Plaintiffs will not argue that Defendants should be held liable for their actions in other cases or for the actions of other law enforcement officers. Rather, Plaintiffs intend to use the other-acts evidence to support their assertion that Defendants targeted Plaintiffs for prolonged roadside detentions on the basis of innocent-travel criteria—with reckless disregard for the Tenth Circuit's clear instruction in *Vasqeuz* that such criteria do not support reasonable suspicion—because Defendants were participating in KHP's practice of targeting out-of-state motorists. Such evidence is probative of Defendants' callous indifference to Plaintiffs' Fourth Amendment rights, and therefore relevant to Plaintiffs' requests for punitive damages, without reference to improper character inferences under Rule 404. *See Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987) ("[E]vidence that the project created problems for local land owners on seven other occasions is probative on the issue of whether the incident involving Bradbury and Panunzio was simply an isolated mistake or, rather, part of a series of incidents that might illustrate outrageous conduct on the part of Phillips towards the rights and feelings of landowners."); *Peshlakai v. Ruiz*, 39 F. Supp. 3d 1264, 1338–39 (D.N.M. 2014). As discussed above, evidence regarding the conduct of third parties—whether it is statistical expert testimony regarding KHP's practice of targeting out-of-state motorists, or specific descriptions of similar detentions by other KHP Troopers—is significantly less likely to result in undue prejudice than evidence of prior misconduct by Defendants themselves.

Furthermore, to prevent any potential prejudice from the introduction of this evidence, Plaintiffs respectfully submit that the Court may issue a limiting instruction directing the jury that

KC 19709847.1

it should consider other-acts evidence solely for the purpose of determining whether Defendants were recklessly indifferent as to whether they had reasonable suspicion to detain Plaintiffs. The Court may also prevent any undue prejudice through a jury instruction confirming that Defendants may be held liable only for their own conduct at issue in this case and not for any other detentions that may have occurred. Defendants' motion to exclude evidence and argument related to KHP's practice of targeting out-of-state motorists should therefore be denied insofar as it applies to Plaintiffs' requests for punitive damages.

> **c. Evidence of KHP's practice of targeting out-of-state motorists for prolonged roadside detentions is admissible to impeach Defendants' testimony.**

Even if the Court disagrees that evidence of KHP's practice is admissible to establish the availability of punitive damages, the evidence should still be admitted for impeachment purposes. In affirming this Court's denial of summary judgment on qualified immunity, the Tenth Circuit held that the undisputed facts asserted by Defendants to justify Plaintiffs' respective detentions were insufficient to establish reasonable suspicion. *See Shaw*, 36 F.4th at 1016, 1019. There are live factual disputes as to the remaining facts asserted by Defendants to justify Plaintiffs' detentions, and both parties have indicated that they intend to put on evidence regarding the veracity of Defendants' purported reasons for detaining Plaintiffs. The jury's resolution of those factual disputes will hinge on their assessment of the parties' respective credibility.

Plaintiffs seek to elicit testimony and introduce evidence related to KHPs' practice of targeting out-of-state motorists for prolonged roadside detentions, and Defendants' active participation in that practice, in order to impeach Defendants by demonstrating their motive to testify untruthfully. Plaintiffs intend to use this evidence to argue that Defendants targeted Plaintiffs in accordance with KHP's practice of targeting out-of-state motorists for prolonged roadside detentions—despite *Vasquez*'s holding that out-of-state travel is not itself indicative of

KC 19709847.1

criminal activity—and that Defendants therefore had motive to fabricate *post hoc* grounds for reasonable suspicion that were not actually apparent at the time of Plaintiffs' detentions. It is "permissible impeachment to expose a witness's bias," *United States v. Baldridge*, 559 F.3d 1126, 1135 (10th Cir. 2009) (citing *United States v. Abel*, 469 U.S. 45, 51, (1984)), including "by exposing a motive for [a witness] to slant [their] testimony," *United States v. DeSoto*, 950 F.2d 626, 630 (10th Cir. 1991).

The proffered bias or motive evidence complements other evidence in this case raising doubts about Defendants' credibility. First, Defendants did not document their reasons for detaining Plaintiffs until after a complaint was filed—with KHP's Professional Standards Unit in McMillan's case, and with this Court in Schulte's case—giving Defendants ample opportunity to fabricate facts in support of reasonable suspicion. *See* Mem. in Supp. of Defs. Mot. to Exclude "Opinion" Test. from Pls. Witnesses Hassan Aden and Jonathan Mummolo ("Defs. Daubert Mot."), Ex. 1, Aden Rep. 22 (Doc. #304-1) the "lack of . . .policy and guidance from the KHP" regarding contemporaneous documentation of reasonable suspicion "allowed troopers to make up or supplement the reasonable articulable suspicion after the fact, in order to justify their actions.").

Second, the *post hoc* declarations Defendants eventually produced bear facial indicia of unreliability. The Tenth Circuit held that the Shaws' declarations disputing Schulte's account of the stop and "other evidence in the record—including Trooper Schulte's reaction to Blaine's refusal of consent to search and Trooper Schulte's questionable claim that he 'found it suspicious that B. Shaw claimed to be a criminal justice major at his age and that he would refuse a search if he were a criminal justice major,'" would "permit a reasonable jury to find the facts in favor of the Shaws and to question Trooper Schulte's credibility." *Shaw*, 36 F.4th at 1015 (citation omitted). The Tenth Circuit also agreed with this Court's observation that "McMillan's declaration is lacking

in coherence, paints an incomplete picture, and would permit a reasonable jury to find Trooper McMillan incredible on these matters." *Id.* at 1018. Under these circumstances, evidence that Defendants have a motive to testify falsely should be admitted because it supports Plaintiffs' other evidence impeaching Defendants' credibility.

Defendants incorrectly assert that Federal Rules of Evidence 404(b) and 608(b) prohibit Plaintiffs from introducing evidence of KHP's practice of targeting out-of-state motorists to impeach Defendants' credibility in Plaintiffs' individual damages actions. Neither rule applies here. Plaintiffs seek to introduce evidence of KHP's practice in order to establish Defendants' *motive* for testifying untruthfully. The admission of this bias or motive evidence would not violate Rule 608(b), which was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the *sole reason* for proffering that evidence is to attack or support the witness' character for truthfulness," and not to "bar extrinsic evidence for bias, competency and contradiction impeachment." Fed. R. Evid. 608 advisory committee's note to 2003 amendment (emphasis added); *see also, e.g.*, *Adams v. Mem'l Hermann*, 973 F.3d 343, 351 (5th Cir. 2020) ("Rule 608 does not prohibit the introduction of extrinsic evidence used to attack the credibility of a witness where 'the evidence tends to show bias or motive for the witness to testify untruthfully.'") (quoting *United States v. Thorn*, 917 F.2d 170, 176 (5th Cir. 1990)). Nor would the admission of this evidence violate Rule 404(b), which does not apply to impeachment evidence at all. *See United States v. Watson*, 766 F.3d 1219, 1244-46 (10th Cir. 2014).

Allowing evidence that KHP as a whole disproportionately and discriminatorily targets out-of-state motorists would not unduly prejudice Defendants, who have already acknowledged that Plaintiffs' out-of-state travel plans played a role in their decisions to detain Plaintiffs. Furthermore, there are special factors supporting "the probative value of bias evidence" in "a civil

KC 19709847.1

rights suit alleging police misconduct and cover-up," because "in the minds of the jurors, the officers' personal stake as defendants may be offset somewhat by their status as public servants charged with enforcing the law." *Osborne v. City of Long Beach*, 865 F.2d 264, 1988 WL 141391, at *5 (9th Cir. Dec. 20, 1988) (unpublished). "On the other hand, the plaintiff in this type of suit has typically been arrested at least once, and is often a member of a racial minority. Thus, the jurors in this type of case can be expected to enter the courtroom with a natural bias in favor of the truthfulness of the defendants and against that of the plaintiff." *Id.* (citing Project, *Suing the Police in Federal Court*, 88 Yale L.J. 781, 794–95, 800–02 (1979)). Appropriate impeachment evidence, including evidence of a law enforcement witness's motive to testify untruthfully, allows plaintiffs in civil rights cases to correct this disparity. Defendants' motion to exclude evidence and argument related to KHP's practice of targeting out-of-state motorists should therefore be overruled insofar as it applies to Plaintiffs' evidence and argument on impeachment.

### 3. The Court should overrule Defendants' motion to exclude evidence of departures from KHP policy, Defendants' training, and/or standard police procedures.

Defendants ask the Court to exclude any evidence of "[a]lleged departure from KHP policy, [Defendants'] training and/or standard police procedures," relying principally on *Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005) and *Jonas v. Bd. of Comm'rs of Luna Cnty.*, 699 F. Supp. 2d 1284 (D.N.M. 2010). (Doc. #364 at 7–8). Those cases concern admission of the Standard Operating Procedures ("SOPs") or policies of a specific law enforcement agency. *Tanberg*, 401 F.3d at 1161–62 (discussing "evidence related to the [Albuquerque Police Department's Standard Operating Procedures]"; *Jonas*, 699 F. Supp. 2d at 1287–88 ("The primary issue is whether the Court should exclude, pre-trial, all policies found in the Manual of Operating Procedures for the Luna County Sheriff's Department."). *Tanberg* cites the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806, 815 (1996), stating that "[i]n the exclusionary rule context, the

10

Supreme Court has rejected the use of *local* police regulations as a standard for evaluating constitutionality of police conduct . . . ." 401 F.3d at 1163 (emphasis added). Defendants do not point to anything in these cases addressing general standards for police practices within the field, as opposed to local departmental policy.

Moreover, another court in this District has already held that "[w]hile the *Tanberg* decision does state that a violation of a policy is insufficient to establish a violation of section 1983, . . . the Circuit did not hold that departmental policies are never admissible in civil rights cases." *Blackmon v. Sutton*, No. 05-1029-MLB, 2014 U.S. Dist. LEXIS 136742 at *3 (D. Kan. Sep. 29, 2014). But the application of *Tanberg* here is beside the point, because Plaintiffs do not intend to introduce evidence in their cases-in-chief concerning departures from KHP policy or training. They intend only to introduce opinion evidence through their expert witness, Chief Hassan Aden, concerning Defendants' detention of Plaintiffs, and whether those detentions violate nationally accepted policing practices. "Courts generally allow experts in [police training, tactics, and the use of deadly force] to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement." *Zuchel v. Denver*, 997 F.2d 730, 742 (10th Cir. 1993) (citing cases); *see also* Doc. #323 at 9–13. The Tenth Circuit has held that this type of opinion testimony based on the expert's understanding of generally accepted police custom and practice is entirely appropriate when accompanied by a proper limiting instruction. *Zuchel*, 997 F.2d at 742–43. And at the January 3, 2023 hearing, the Court confirmed that such testimony from Chief Aden is "a very proper subject of testimony." Tr. of Mot. Hearing 46:1-19 (Doc. #356).

Accordingly, the Court should overrule Defendants' motion in limine to exclude evidence of departures from KHP policy, KHP training, and/or standard police procedures. Should the Court be inclined to grant the motion as to KHP policy and training, then Plaintiffs request that if either

KC 19709847.1

of the Defendants open the door by referencing KHP policy or training, then that Plaintiff should be permitted to rebut the Defendant's evidence by introducing his own evidence on those matters.

### 4. The Court should overrule Defendants' motion to exclude evidence and argument regarding the intrinsic value of Fourth Amendment rights.

Defendants move to exclude evidence and argument "about damages or injury through denial or impairment of the intrinsic value or importance of a Fourth Amendment constitutional right." (Doc. #364 at 11-12). Defendants rely on the Supreme Court's decision in *Memphis v. Cmty. Sch. District v. Stachura*, 477 U.S. 299, 309 (1986). There, the Court held that a district court committed reversible error when it issued jury instructions that permitted the jury to award compensatory damages based on the jurors' "own unguided estimation of the value of [constitutional] rights." *Id.* at 304. The Court held that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in [Section 1983] cases." *Id.* at 308.

*Stachura* did not, however, conclude such considerations are irrelevant to a jury's determination of liability or to a plaintiff's request for *punitive* damages. In a footnote, the Court explained the erroneous damages instruction could not be plausibly construed as a punitive damages instruction, because the district court "expressly labeled the 'constitutional rights' damages compensatory" and "separately authorized punitive damages," and also because the court "authorized [the jury] to find damages for constitutional violations without any finding of malice or ill will." *Id.* at 306 n.9. As other courts have recognized, *Stachura*'s attention to this detail makes clear that the decision applies exclusively to the question of compensatory damages available in Section 1983 cases, and not to liability or punitive damages. *See Slappy v. City of Detroit*, 2021 WL 2986284, at *7 (E.D. Mich. July 15, 2021) ("Damages based on the abstract value or importance of constitutional rights are not a permissible element of compensatory damages.

KC 19709847.1

However, mention of constitutional rights may be relevant both in determining liability for constitutional violations and to a punitive damage assessment.") (internal citations and quotation marks omitted); *Bellotte v. Edwards*, 2011 WL 13186237, at *2 (N.D. W. Va. Feb. 3, 2011) ("In [*Stachura*], the Supreme Court of the United States held that damages based on the abstract value or importance' of constitutional rights are not a permissible element of compensatory damages in such cases. In a footnote, the Court appears to imply, however, that this rule does not apply when arguing for punitive damages.") (internal citations and quotation marks omitted).

Here, Plaintiffs do not request an instruction asking the jury to consider the extrinsic value of Fourth Amendment rights in determining the appropriate amount of compensatory damages. *Stachura* does not prohibit Plaintiffs from introducing evidence or argument regarding the value of Fourth Amendment rights for purposes of adjudicating Defendants' liability or evaluating Plaintiffs' requests for punitive damages. Defendants' motion to exclude evidence and argument related to the intrinsic value of Fourth Amendment rights should therefore be overruled insofar as it applies to evidence and argument unrelated to compensatory damages.

**5.   The Court should overrule Defendants' motion to exclude Dr. Mummolo's opinions based on Safegraph mobile phone data.**

In moving to exclude Dr. Mummolo's opinions based on the Safegraph mobile phone data, Defendants largely rehash the Rule 703 argument raised in their overruled *Daubert* motion. *See* (Doc. #364 at 8-10); Defs. Daubert Mot (Doc. #304) at 29–30. Specifically, Defendants contend that Dr. Mummolo cannot disclose his expert statistical opinions that are based, in part, on

13

Safegraph mobile phone data because Safegraph mobile phone data is hearsay from a nontestifying third-party. (Doc. #364 at 8-9).[2]

Defendants' arguments are no more persuasive now than they were before. As Plaintiffs pointed out in their opposition to Defendants' *Daubert* motion, Rule 703 prohibits an expert from simply serving as a mouthpiece for the introduction of otherwise inadmissible evidence, but it does not prevent an expert from using otherwise inadmissible data or opinion to form an independent opinion about a relevant topic—so long as the data or opinion on which the expert relies is of a type reasonably relied upon by other experts in the field. *See* Pls. Opp'n to Defs. Mot. to Exclude "Opinion" Test. from Pls. Expert Witness ("Pls. Daubert Opp'n") 28–30, Doc. #323; *Craton v. Birds Eye Foods, Inc.*, 2013 WL 12421822, at *9 (W.D. Mich. Dec. 20, 2013) (collecting cases).

 "Rule 703 permits experts to rely on hearsay" data or opinion from a third-party, "because the expert's 'validation [of the third-party opinion], expertly performed and subject to cross-examination, ought to suffice for judicial purposes.'" *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (quoting Fed. R. Evid. 703, advisory committee notes). Granted, "[t]hat rationale is . . . not satisfied" when the expert's "lack of familiarity with the methods and the reasons underlying" the third-party data or opinion "virtually preclude[s] any assessment of the validity of the [opinion] through cross-examination." *Id.* (noting that "the expert failed to demonstrate any basis for concluding that [the third-party] opinion on a subjective financial prediction was reliable, other than the fact that it was the opinion of someone he believed to be an expert who had a financial interest in making an accurate prediction"). But Dr. Mummolo *is* familiar with Safegraph's methods, its use in the scientific community to study human movement,

---

[2] Defendants do not move to exclude Dr. Mummolo's fourth and fifth expert opinions, which do not rely on Safegraph data. *See* Defs. Daubert Mot., Ex. 2, Mummolo Report ("Mummolo Rep.") 19–24, Doc #304-2.

14

and the scientific literature assessing its validity as a measure of human movement. *See* Mummolo Rep. 51-52; Pls. Mem. in Opp. to Def. Jones' Mot. for Summ. J., Ex. 67, Decl. of J. Mummolo ¶¶ 21, 22 (citing a study showing that Safegraph data correlates strongly with standard data sources on human movement, and another study relying on Safegraph data to study human movement), Doc. #316-47. Defendants—who have neither deposed Dr. Mummolo, nor submitted rebuttal expert testimony—have not shown otherwise.

Defendants also assert that, even if Dr. Mummolo's opinions are admissible, the underlying Safegraph data may not be disclosed to the jury unless its probative value substantially outweighs its prejudicial effect, and that even then it must be subject to a limiting instruction informing the jury that the Safegraph data may not be used for substantive purposes. (Doc. #364 at 10) (quoting Fed. R. Evid 703, advisory committee notes on the 2000 amendment). Defendants appear to argue that, because the Safegraph is not itself admissible for substantive purposes, Rule 703 prohibits Dr. Mummolo from testifying about his opinions relying on the Safegraph data. *Id.* Not so. The Rule's advisory committee notes go on to state:

> The amendment governs only the disclosure to the jury of information that is reasonably relied on by an expert, when that information is not admissible for substantive purposes. **It is not intended to affect the admissibility of an expert's testimony. Nor does the amendment prevent an expert from relying on information that is inadmissible for substantive purposes.**

Fed. R. Evid 703, advisory committee notes on the 2000 amendment (emphasis added).

Plaintiffs respectfully submit that Dr. Mummolo's mere reference to Safegraph data in explaining how he calculated KHP's disproportionate and discriminatory targeting of out-of-state drivers does not constitute "disclosure" of the underlying data to the jury. Even if it does, however, the information is substantially more probative than prejudicial. Indeed, Defendants have not identified any undue prejudice that would result from the disclosure of Safegraph mobile phone data. Their objections go entirely to Dr. Mummolo's expert opinions; however, as this Court has

already recognized, Dr. Mummolo's opinions satisfy the *Daubert* standard for admissibility. The Court should therefore overrule Defendants' rearguard motion to exclude Dr. Mummolo's testimony.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motions in limine.

KC 19709847.1

Respectfully submitted by,


**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF KANSAS**
s/ Sharon Brett
Sharon Brett                        KS # 28696
Kunyu Ching                       *Pro hac vice*
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
sbrett@aclukansas.org
kching@aclukansas.org


**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
Brian Hauss                        *Pro Hac Vice*
125 Broad Street, Floor 18
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
bhauss@aclu.org


and


**SPENCER FANE LLP**
s/ Madison A. Perry
Leslie A. Greathouse            KS # 18656
Patrick McInerney               KS # 22561
Madison A. Perry                KS # 27144
Olawale O. Akinmoladun          KS # 25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Phone: (816) 474-8100
Fax: (816) 474-3216
lgreathouse@spencerfane.com
pmcinerney@spencerfane.com
mperry@spencerfane.com
wakinmoladun@spencerfane.com


***Attorneys for Plaintiffs***

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of January 2023, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

<u>s/ Madison A. Perry</u>
Attorney for Plaintiffs

KC 19709847.1