IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Blaine Franklin Shaw, *et al.*<br><br>      Plaintiffs,<br><br>v.<br><br>Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,*<br><br>      Defendants. | Case No. 6:19-CV-01343 |
| Mark Erich, *et al.*<br><br>      Plaintiffs,<br><br>v.<br><br>Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,*<br><br>      Defendants. | Case No. 20-CV-01067 |

**TRIAL BRIEF CONCERNING "OPINION"
TESTIMONY FROM HASSAN ADEN**

  Hassan Aden's testimony was the subject of a *Daubert* motion. See Doc. 303 & 304. The Court overruled Defendants' motion without reaching the admissibility of Mr. Aden's opinions regarding effective training, policies addressing stops and searches and seizures, unity of command structure of the KHP and failing to hold troopers accountable. The Court found these opinions were irrelevant to the damage claims against troopers McMillan and Schulte. See Tr. of

1

Motion Hearing, Jan. 3, 2023, at 52.[1] Therefore, the question of the admissibility of Aden's opinions in this injunction trial against Jones is still before the Court.

Defendant's Position: *Mr. Aden's opinions concerning the KHP are inadmissible.*

Mr. Aden states that his opinions—including those concerning Defendant Jones and KHP's operations and policies—are based upon:

- Review and analysis of materials and documents
- Professional law enforcement experience
- Research of law enforcement policy and practices
- Generally accepted best practices in law enforcement

These unexplained grounds for his opinions put the issues of relevance and reliability into play. Expert testimony about desired best practices or even national best practices is not relevant to constitutional requirements. In *Valdez v. Motyka*, No. 15-CV-0109-WJM-STV, 2020 WL 3963717, at *13 (D. Colo. July 13, 2020), a Police Assessment Resource Center report that analyzed whether the Denver Police Department's policies, training, and practices comport with the best learning nationally on evaluation and management of deadly force and the avoidance of unnecessary or ill-advised shootings was held not relevant to oppose summary judgment. The report was "self-evidently aimed at supra-constitutional best practices, not constitutional requirements." *Id.* at *13. The court quoted *Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005), where the Tenth Circuit explained, "[a]lthough plaintiffs frequently wish to use administrative standards, like [police standard operating procedures], to support constitutional damages claims, this could disserve the objective of protecting civil liberties. Modern police departments are able—and often willing—to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of

---

[1] Pages 1, 40-56 are attached to provide the context of the Court's rulings pertaining to testimony at the damage trials.

the federal constitutional minima. If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards." *Id. See also Castro v. Bleimeyer*, No. 13-CV-483-SWS-GBW, 2015 WL 11143395, at *5 (D.N.M. Apr. 21, 2015) ("To the extent Mr. Van Blaricom intends to opine that Defendants violated nationally-accepted police standards, such as the National Law Enforcement Policy Center model policies, such testimony is irrelevant and potentially confusing").

While Mr. Aden does identify one allegedly recognized standard of police operations relating to the reports when canines are deployed, he does not otherwise list the origin, provide the source or any documentation of any other "best practices in law enforcement."

*United States v. Baca*, No. CR 16-1613 JB, 2018 WL 6602216, at *19 (D.N.M. Dec. 17, 2018), provides an apt summary of the reliability concern here.

> A second danger inherent in law enforcement officers' expert testimony is common to all situations where a witness' expertise is based on experience, rather than on scientific or technical principles. It is easy for an experience-based expert witness to pass off suspicion, speculation, and intuition as real expertise. *See* Joelle Anne Moreno, *What Happens When Dirty Harry Becomes an (Expert) Witness for the Prosecution?*, 79 Tul. L. Rev. 1, 30 (2004) ("When an expert opinion is based on personal experience, opinions and conclusions derived from this experience are often personal, idiosyncratic, and subjective.... '[T]he practical result is that the [experience-based expert] witness is immunized against effective cross-examination.'") (footnote omitted) (*quoting* David L. Faigman, David H. Kaye, Michael J. Saks & Joseph Sanders, Science in the Law: Forensic Science Issues 16, 16 (2002)). To prevent this danger, the district court must vigilantly apply the rule 702 reliability standard to each opinion or assertion to which the defendant objects and, again, ensure that facts outside of the case at hand back the witness' expertise. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (applying the rule 702 reliability standard to nonscientific expert testimony). Although expert witnesses generally need not disclose the bases of their assertions or opinions as they give them at trial, *see* Fed. R. Evid. 705 ("Unless the court orders otherwise, an expert may state an opinion -- and give the reasons for it -- without first testifying to the underlying facts or data."), -- pretrial, at the *Daubert* stage, an expert's obligation to show his or her work by establishing legitimate bases for the testimony may be higher when the expertise is of an experiential nature, *see*

> *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146 (stating that district courts should not "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert"); *Erickson v. Baxter Healthcare, Inc*., 131 F. Supp. 2d 995, 1000 (N.D. Ill. 2001) (Bucklo, J.) ("**More than bald assertions of opinion without any support are required; this is no more than any rational person would require.... It would be unacceptable to cite no sources for statistical evidence in a scholarly work, and it is likewise unacceptable in an expert disclosure**" (footnote omitted).). *Cf. Olander v. Bucyrus-Erie Co*., 187 F.3d 599, 608 (7th Cir. 1999) ("[O]ne bald assertion is as good as another....").

*Id.* (emphasis supplied).

*Erickson v. City of Lakewood* is an analogous case. The court excluded expert testimony about violation of standard police practices because it was not shown to be reliable. The court wrote:

> … Mr. DeFoe does not explain or identify what the standard police practices that he relies upon are, whether they are written in a manual or book, or how the practices that he relies upon (and not other practices) became the standard by which the Court should determine the reasonableness of defendants' actions. Mr. DeFoe states that his "opinions involve the consistency of the officers' actions with standard police practices." [ ] He also states that he bases his opinions on his "twenty-eight-year law enforcement career," [ ], and, while he mentions "standard police practices," [ ], he does not explain what these practices entail, where they are from, or how or when they are applied.
>
> While a witness may acquire expertise on a subject based on experience in that field, *Medina-Copete*, 757 F.3d at 1104, and "police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters." *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009), the witness must still connect the experience and the opinions. To the extent Mr. DeFoe relies solely on his experience, he has not explained "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See Medina-Copete*, 757 F.3d at 1104. Because there is no indication what methodology Mr. DeFoe used in deriving these standards, the Court is not able to determine whether the methodology is reliable. *See* Fed. R. Evid. 702 (the court must determine whether the testimony is "the product of reliable principles and methods" and whether "the witness has applied the principles and methods reliably to the facts of the case"); *see also Bitler v. A.O. Smith Corp*., 391 F.3d 1114, 1120 (10th Cir. 2004); *Joiner*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit .. evidence that is connected ... only by the ipse dixit of the expert"). This determination is

4

> sufficient to warrant the exclusion of all of Mr. DeFoe's opinions based on standard police practices.

*Erickson v. City of Lakewood*, No. 19-CV-02613, 2021 WL 4438035, at *13-14 (D. Colo. Sept. 27, 2021).

Moreover, Mr. Aden's proffered testimony is not helpful. In his report, Mr. Aden weighs "evidence" to reach conclusions of fact against a policing standard that he does not identify or define. The Court must weigh the evidence and reach its conclusions.

*Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (*en banc*), *cert. denied*, 488 U.S. 1008 (1989), discussed the "relevance/helpful" element at some length. The question was whether an attorney, called as an expert witness, could state his views of the law which governs the verdict and opine whether defendants' conduct violated that law. The Court approved Rule 702's advisory committee note that the "test for determining when experts may be used [is] the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Id*. at 807. It also noted a court must consider whether the expert's proposed testimony encroaches upon the trial court's authority to instruct the jury "for it is axiomatic that the judge is the sole arbiter of the law and its applicability." *Id.* Ultimately, the Court enforced the rationale expressed in the Rule 702 advisory notes:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.

*Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (*en banc*)*, cert. denied*, 488 U.S. 1008 (1989).

                                            Respectfully submitted,

                                            OFFICE OF ATTORNEY GENERAL
                                            DEREK SCHMIDT

                                            <u>s/ Arthur S. Chalmers</u>
                                            Arthur S. Chalmers, KS S. Ct. #11088
                                            Assistant Attorney General
                                            120 SW 10th Ave., 2nd Floor
                                            Topeka, Kansas 66612
                                            Ph: (785) 368-8426
                                            Fax: (785) 291-3707
                                            Email:  art.chalmers@ag.ks.gov
                                            *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

This is to certify that on this 9th day of May, 2023, the above was filed and served via the Court's Electronic Filing System, which sent notification of the same to all counsel of record.

s/ Arthur S. Chalmers
Arthur S. Chalmers
