**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Blaine Franklin Shaw, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 6:19-CV-01343 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |
| Mark Erich, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 20-CV-01067 |
| Herman Jones, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

Defendant Herman Jones will move the Court to dismiss Plaintiffs' claims for injunctive and declaratory relief or to find that Plaintiffs' have failed to prove defendant Jones is violating their Fourth Amendment rights. This motion is brought pursuant to Fed. R. Civ. P. 52(c).

1.      *Rule 52(c)*

In a bench trial, a motion for judgment at the close of a plaintiff's evidence is governed by Fed. R. Civ. P. 52(c). *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir.2001). Rule 52(c) states in pertinent part:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the

party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence.

The court addresses the motion in its role of fact finder. *See* Fed. R. Civ. P. 52(c) advisory committee's note ("The standards that govern judgment as a matter of law in a jury case have no bearing on a decision under rule 52(c)"); *see also United States v. $242,484.00 in U.S. Currency*, 389 F.3d 1149, 1172 (11th Cir.2004) ("In addressing a Rule 52(c) motion, the court does not view the evidence in the light most favorable to the nonmoving party, as it would in passing on a Rule 56 motion for summary judgment or a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as factfinder.").

2. *Plaintiffs Lack Standing*

It is sufficient for standing purposes that a plaintiff merely ***allege*** concrete injury concerning a motion to dismiss for lack of standing; however, where the case proceeds to summary judgment or to trial, standing is evaluated not on pleadings alone but on basis of all evidence in record and at this stage, a plaintiff must do more than plead standing; plaintiff must prove it. *Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 973 (10th Cir. 2020), *Glover River Org. v. U.S. Dep't of Interior*, 675 F.2d 251, 254 n. 3 (10th Cir. 1982).

Abstract injury is not enough to confer standing: "(t)he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Thus, a plaintiff cannot sustain a claim for prospective injunctive relief that is based on "speculative future harm." *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019). *See also Lopez-Aguilar v. Marion Cty. Sheriff's Dep't,* 924 F.3d 375, 396 (7th Cir. 2019) ("Without a 'showing of any real or immediate threat that the plaintiff will be wronged again,' [ ], [plaintiff] lacked standing to request, and the district court lacked jurisdiction to award, the declaratory

judgment and permanent injunction"). Plaintiffs are unable to establish standing to pursue injunctive relief because they cannot show it is likely that they will have another encounter with a KHP trooper that results in an unconstitutional detention.

The reasoning in *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974), *Rizzo v. Goode*, 423 U.S. 362 (1976) and *City of Los Angles v. Lyons,* 461 U.S. 95, 97-98 (1983), is controlling. Plaintiffs have abandoned their claims of widespread (a supposed Jones' policy or custom) unconstitutional post-traffic stop detentions. The hook then, to satisfy the standing requirement at the pleading stage to show standing, is gone. Now there is no evidence of widespread police misconduct, and certainly less than the pattern of misconduct that the Supreme Court found was required to provide standing in *Allee*, *Rizzo* and *Lyons*. There is no evidence of a prevailing and persistent pattern that troopers systematically detain people without reasonable suspicion or voluntary consent because of a policy or custom attributable to Jones.[1]

In *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974), the Supreme Court upheld a permanent injunction restraining further unconstitutional conduct by various Texas state law enforcement officials who had unlawfully threatened, detained, confined, and physically assaulted union leaders engaged in organizing efforts. *Id*. at 804-05. In affirming the district court's injunction, the Supreme Court found that the constitutional violations "were not a series of isolated incidents but a prevailing pattern" of police misconduct. *Id*. at 809. The Court also stated: Isolated incidents of police misconduct under valid statutes would not, of course, be cause for the exercise of a federal court's equitable powers. But …. [w]here, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate. *Id*., 416 U.S. at 815.

---

[1] Plaintiffs now assert that the "policy or custom" analysis is inapplicable to their claim for equitable relief.

*Rizzo v. Goode*, 423 U.S. 362 (1976), expanded upon the isolated incident/persistent pattern distinction. In *Rizzo*, equitable relief was granted by the district court in an effort to halt instances of police brutality directed at minority citizens. The injunction issued by the district court ordered police officials to submit for approval a comprehensive program for dealing with civilian complaints alleging police misconduct. *Id.* at 365. The Supreme Court held that nineteen constitutional violations in a year's time, by only a small percentage of the police, did not warrant injunctive relief. *Id.* at 367-369.[2] Articulating how the plaintiffs had failed in their proof, the Court explained that to succeed the plaintiffs needed to show that the police misconduct flowed from a policy, plan, or a pervasive pattern. Further, this pattern, plan or policy had to be causally linked to the defendants named in the action. *Id.* at 371. Thus, the evidence in this case insufficient to avoid application of the rule in *Lyon*, which in turn follows *Rizzo*. They have failed to show a real and immediate threat of future harm.

---

[2] The Plaintiffs' claims arise from three stops and detentions that happened between approximately 4 and 5 ½ years ago. [Shaw, 12/20/2017; Erich, 3/9/2018; Bosire, 2/10/2019]. There is no pattern in these cases. Rather, the articulated grounds for the alleged reasonable suspicion in each case was materially different.

Plaintiffs also present testimony regard three other stops/detentions. Mr. Kelly was stopped 5/27/2020, approximately 3 years ago. Mr. Martinez was stopped 9/5/2022, just short of 9 months ago. And Ms. Dunn was stopped 2/5/2021, approximately 2 years ago. The parties debate whether the Kelly and Martinez detentions were supported by reasonable suspicion. The articulated grounds for the alleged reasonable suspicion in each case was materially different from each other and the Plaintiffs' stops. Ms. Dunn voluntarily consented to the detention for a canine sniff–she says to be polite and respectful to law enforcement.

Together, the Plaintiffs' detentions and the supposed additional 3 illegal detentions, each be different troopers, falls far short of the nineteen constitutional violations that *Rizzo* held was insufficient.

In sum, Plaintiffs have failed to show a real and immediate threat of future harm in their Fourth Amendment claim, so it must be dismissed.[3]

3.      *The Court Should Not Enter the Demanded Equitable Relief*

Injunctive relief is not proper even assuming (a) Plaintiffs possess the required standing, (b) show their Fourth Amendment rights will be abridged in the future by a KHP trooper, and (c) Jones' actions or inactions culpably cause the future Fourth Amendment violations. First, the plaintiffs have adequate remedies at law so that their alleged harm is not irreparable absent an injunction. Second, the threatened injury from the demanded injunctive relief does not outweigh the harm that the injunction is likely to cause from adverse effects on public interest through interference with the principles and operations of federalism, risks from lack of comity afforded to other courts, and unbounded—or at least unreasonable—burdens in enforcement of the demanded injunctive relief. Third, Plaintiffs' injunction demands[4] are impermissibly vague under Rule 65's standards.

There is no dispute that Federal district courts have the power to order injunctive relief when equity so requires. *See Signature Props. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1268 (10th Cir. 2002). Yet, guiding this discretion, the Supreme Court has stated that courts must apply the "traditional four-factor test" which governs the award of permanent injunctive relief. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 394 (2006). Courts consider: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4)

---

[3] It is worthy of note, according to the date Plaintiffs' expert collected, in a similar approximately 5-year period of time more than a million citations were issued to motorists. Less than 2,000 stops resulted in canine sniffs during the period, according to the expert's data.

[4] Compare Pretrial Order, Doc. 290, at 46-48 (setting out Plaintiffs' demanded injunction relief) with Plaintiffs' response to Show Cause Order, Doc. 358, at 12.

the injunction, if issued, will not adversely affect the public interest." *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (*quoting Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir.2007)). "[A]ny modified test which relaxes one of the prongs ... and thus deviates from the standard test is impermissible." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Moreover, "caution is especially appropriate" when "the type of injunction sought is mandatory rather than prohibitory." *Signature Properties Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1269 (10th Cir. 2002).

Furthermore, there are constrains against injunctive relief in Fed. R. Civ. P., Rule 65. That rule requires that an injunction is specific in "its terms" and "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." *Id.* (d)(1). *See also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). *See e.g., Keyes v. Sch. Dist. No. 1, Denver, Colo*., 895 F.2d 659, 668 & n. 5 (10th Cir.1990) (cited and quoted in Monreal, 367 F.3d at 1236) ("[G]enerally, injunctions simply requiring the defendant to obey the law are too vague [to satisfy Rule 65]") (brackets original) (striking injunction prohibiting defendants "from discriminating on the basis of race, color or ethnicity in the operation of the school system" and directing defendants "to use their expertise and resources to comply with the constitutional requirement of equal education opportunity for all who are entitled to the benefits of public education in Denver, Colorado" was too vague).

### 3.1. *Absence of Irreparable Harm*

Where a plaintiff requests equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 [ ] (1983). Rather, a plaintiff must additionally demonstrate "an adequate basis for equitable relief"—that is, "[a] likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *O'Shea v. Littleton*, 414 U.S. 488, 499, 502 [ ] (1974); …

*Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011).

The Tenth Circuit not deem harm "irreparable" unless a petitioner can show "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (*quoting RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).

There is an adequate remedy at law for an illegal road side detention by a trooper (detention by the trooper, not Jones), under 42 U.S.C. § 1983 and, through the Kansas Tort Claims Act, Kansas common law.[5] Further, the exclusionary rule provides a remedy against illegal searches and seizures. The rule is fashioned specifically in criminal law context to address asserted irreparable harm to the accused.

Plaintiffs argue § 1983 does not provide an adequate remedy at law. They say that the Shaw verdict shows this. Just the opposite. The jury's verdict allowed nominal damages, the damages from the Fourth Amendment violation that Shaw proved. He received the remedy to which he is entitled. Plaintiffs assert that the rights of others may be violated and that these hypothetical other victims will not sue because they don't know that have that remedy. This speculation does not make the legal remedy under §1983 any less available. Further, the rights of "others" is not before the Court in Plaintiffs' demand for injunction. True, Plaintiffs want an injunction that would impact KHP practices to extend beyond Plaintiffs. But their standing and this suit is limited to Plaintiffs alleged right to an injunction. The Plaintiffs have pursued their § 1983 claims.

---

[5] *See also Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) (describing the elements of supervisory liability for damages under 42 U.S.C. § 1983).

Plaintiffs also argue violation of any constitutional right inherently creates irreparable harm. This argument paints with too wide a brush.

While some federal circuits have held irreparable injury should be presumed in constitutional cases, Prof. Anthony DiSarro shows such a blanket rule is poorly founded and contrary to modern Supreme Court jurisprudence on the subject. See Anthony DiSarro, "A Farewell to Harms: Against Presuming Irreparable Injury in Constitutional Litigation," 35 *Harv. J.L. & Pub. Pol'y* 743, 772-74 (2012). *See also Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) ("The court must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm (unless such a 'departure from the long tradition of equity practice' was intended by Congress). *eBay*, 547 U.S. at 391, 393-94 [ ]. Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay*, 547 U.S. at 391 [ ]…") (parenthetical in quote).

To our knowledge, the Tenth Circuit has not adopted the presumptive irreparable harm approach outside of the context of restraints on constitutionally protected speech. *See e.g., Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005) ("We therefore assume that plaintiffs have suffered irreparable injury when a government deprives plaintiffs of their commercial speech rights").[6]

*Floyd v. U.S.*, 860 F.2d 999 (10th Cir. 1988), does offer insight onto our Circuit's view on whether violation of the Fourth Amendment is inherently irreparable. While addressing a

---

[6] Wright and Miller appears to distinguish between harm from violations the right to free speech or freedom of religion and other constitutional violations, citing eBay. *See* Wright & Miller, 11A *Fed. Prac. & Proc. Civ*. § 2948.1 (3d ed.)

claim for return of allegedly illegal seized property[7], the court overruled district court's holding

that irreparable harm was not an element of the plaintiff's proof because it was presumed, and

the wrote:

> While we express no opinion regarding this issue on remand, we offer guidance
> on the proper characterization of irreparable harm. In rejecting irreparable harm as
> a required element of Rule 41(e) jurisdiction, the trial court cited a case indicating
> that "any deliberate violation of the fourth amendment is constitutionally
> irreparable." *Floyd*, 677 F.Supp. at 1087 (*citing In re Application of First United
> Fin. Corp.*, 620 F.Supp. 1450, 1452 (E.D.N.Y.1985)). We cannot approve of the
> application of this statement to the instant case.

*Id.* at 1005. The court reasoned: "it cannot be said that every individual whose fourth amendment

rights are violated suffers irreparable harm such that Rule 41(e)'s remedial provisions are

triggered." *Id.* at 1006.[8]

     *Bannister v. Bd of County Comm'rs.*, 829 F. Supp. 1249, 1252 (D. Kan. 1993), is the case

that Plaintiffs cite from our Circuit that appears to hold irreparable harm is presumed by a

violation of the Fourth Amendment. The decision is not controlling here and predates *eBay*.[9]

Furthermore, the alleged employee drug testing policy presented a different kind of violation to

the Fourth Amendment that is allegedly present here. The defendant's testing policy compelled

its employees to forfeit rights or lose their jobs. It was not a case about a subordinate's violation

of another's Fourth Amendment rights. The injury from Hobson's choice in Bannister is

arguably irreparable without resort to a presumption.

---

[7] *See* Fed.R.Crim.P. 41(e).

[8] *See also Tyler v. Russel*, 410 F.2d 490, 492 (10th Cir. 1969) (pre-*Younger* decision refusing to enjoin pending state criminal prosecution despite defendant's claim that prosecution violated Fourth Amendment, noting that "[n]o great and irreparable injury results to him which would not result to any other person charged with the same crime").

[9] In addition to applying a presumption of irreparable harm, the court applied a "none of the [four] factors, taken individually, is dispositive" test rejected in eBay.

Finally, it is very noteworthy that *O'Shea v. Littleton*, 414 U.S. 488, 490 (1974), involved claims of alleged patterns and practices of conduct in the administration of the criminal justice which were said to have deprived the plaintiffs of rights secured by the First, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. Yet, *O'Shea* observed that injunctive relief is not granted where there "is adequate remedy at law and [the plaintiff] will not suffer irreparable injury if denied equitable relief." *Id.* at 499. There is no hint in the Court's discussion that the requirement was satisfied simply by the fact constitutional violations was asserted.

In summary, the Court should exercise its discretion to not grant injunctive relief because Plaintiffs' claims do not establish irreparable harm unless the demanded injunction is issued.

### 3.2.    *Harm and Adverse Effect of Demanded Injunction*

It is not for the Court to author an injunction whole cloth. The harm and adverse effect of the demanded injunction must be measured by what Plaintiffs have submitted as their requested relief.

As in *O'Shea v. Littleton*, Plaintiffs do not seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin prosecutions that might be brought under a challenged criminal law. 414 U.S. at 501. Rather, they seek a multipart injunction supposedly aimed at controlling or preventing the occurrence of specific events involving any number of troopers that might take place in the course of future traffic stops.

Because an injunction against acts which might occur in future, compliance and enforcement will be before the Court where there is a charge that the injunction has been disobeyed. When illegal contraband is found during one of these traffic stops, the injunction seems very much like "an ongoing federal audit" of state criminal proceedings, which would indirectly accomplish the kind of interference that *Younger v. Harris, supra*, and related cases

sought to prevent," which *O'Shea* held was improper. *Id*. The injury is to federalism and impact from refused comity to other courts, which balances against entry of such an injunction.

Even when criminal proceedings are not involved, the demanded injunction is too intrusive and is unworkable. For the most part, the originally demanded injunction leaves unstated exactly how Jones must train or supervise troopers. It has no objective boundaries for Jones to know that he has complied or failed to comply with the injunction, thereby imposing expense, risk and duties on the KHP's operations.

The demanded injunction insists that the federal courts should direct the details of Jones' executive functions. Plaintiffs then demand continuous supervision by a court appointed "monitor" effectively to perform Jones' duties. Ultimately, the individual cases will come before Court, for enforcement of its injunction, whenever a claim is made that an individual stop or detention lacked reasonable suspicion (by the "monitor" or otherwise). And then, the Court's judgment is placed potentially in conflict with the judgment of state or other federal courts regarding the illegality of the stop/detention. Moreover, the obvious burden on the Court's resources argues against entry of the demanded injunction in this case.

Really, for the reasons stated in *O'Shea*, the demanded injunction is not proper. The Court can and should find that, in an exercise of its discretion, it will not grant the demanded injunction based on facts alleged.

3.3.    *The amended injunction demands are impermissibly vague.*

Plaintiffs appear to acknowledge that the injunction they demanded in the final pretrial order is improper. They demand instead an injunction:

•      KHP Superintendent is hereby enjoined from continuing his practice of permitting KHP troopers to prolong detentions of drivers without reasonable suspicion of criminal activity, in violation of the Fourth Amendment;

•     KHP Superintendent is hereby enjoined from his practice of targeting out-of-state motorists for roadside detentions without adequate reasonable suspicion;

•     The parties are ordered to confer regarding any additional operational changes that must be made to KHP practices to effectuate the two terms of the injunction listed above, and submit those proposals to the Court.

Doc. 358 at 12.

Fed. R. Civ. Pro., Rule 65(d)(1) rule requires that an injunction be specific in "its terms" and "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." None of Plaintiffs' bullet points come close to satisfying this basic requirement. The first two are just directing Jones to obey the law; thus, they are too vague. *See also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). The third is no injunction at all. Furthermore, the demanded amended injunction suffers from the same problems address above about the originally demanded injunction.

    3.4.    *Plaintiffs should not obtain declaratory relief.*

The fate of Plaintiffs' request for declaratory relief should be no different than their claim for an injunction. In *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426 (1948), the Supreme Court said "declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Id.* at 431. In that case, the Supreme Court required a showing of the equitable prerequisite irreparable harm in order to obtain Declaratory Judgment. *Id.* at 432-32. More specific to Jones, who is sued in his official capacity only, "[t]he *Ex parte Young* doctrine holds that the Eleventh Amendment generally does not stand as a bar to suits in which a party seeks only prospective equitable relief against a state official." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1260 (2002) (emphasis added).

In *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962), the Court observed that "the Declaratory Judgment Act was an authorization, not a command." The act gives the federal courts competence to make a declaration of rights; it did not impose a duty to do so. *Id.*

Any declaratory judgment must go to future conduct only.[10] Yet, Plaintiffs have offered no justification for a declaration that will tell Jones only to comply with the law. They have provided no support that a declaration would be appropriate given the available remedies at law. Further, they do not explain how a declaratory judgment will not potentially interfere or possibly conflict with other courts' adjudications—and, if not, why a declaratory judgment is needed.

Therefore, judgment is proper against Plaintiffs' injunction and declaratory claims under Rule 52(c).

4.   *Plaintiffs have not proved Defendant is violating or is certain to violate their Fourth Amendment rights.*

There are two overarching elements of a § 1983 claim. The plaintiff must allege and ultimately prove both (1) a deprivation of a federal right, and (2) that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988).

Liability under §1983 does not exist in a vacuum. Plaintiffs must prove a present or imminent violation of federal law, here the Fourth Amendment of the Constitution. *Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020). For example, in an analogous situation, when a § 1983 plaintiff pursues a claim of supervisory liability, he must show the subordinate violated his constitutional rights—a supervisor cannot be liable if the subordinate did not commit a violation. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (stating that the causation element of the affirmative-link test requires a plaintiff

---

[10] This incorporates the Eleventh Amendment's limitation on official capacity suits. *See Green v. Mansour*, 474 U.S. 64, 68-69 (1985).

to show "that the defendant's alleged action(s) caused the constitutional violation" committed by a subordinate, suggesting that an underlying constitutional violation is required).

Then, regarding the deprivation of a federal right, to determine the elements of a constitutional claim under § 1983, courts must first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022).

This official capacity suit against KHP Superintendent Jones is the equivalent to suing the state itself. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against Pennsylvania Auditor General); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (suit against Commissioner of the Kentucky State Police). The state is not vicariously liable, under 42 U.S.C. § 1983, for the "unconstitutional conduct of [ ] subordinates." *Carr v. El Paso Cty., Colorado*, 757 F. App'x 651, 655 (10th Cir. 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).[11]

Plaintiffs say that they only need to show that a causal nexus between Jones's conduct— specifically his failure as the head of the agency to ensure his troopers are complying with the Constitution—and continuing constitutional violations occurring in the field under his watch, citing the Court's ruling regarding a motion in limine. *See* Doc. #466 at 3. The nexus language is a product of the requirement in *Ex parte Young*, 209 U.S. 123, 157 (1908), for its exception to Eleventh Amendment immunity to apply that, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer *must have some connection*" with the enforcement of the act, or else it is merely

---

[11] "Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

making him a party as a representative of the state, and thereby attempting to make the state a party." Our Circuit has interpreted this "some connection" requirement to be a "nexus," *e.g., Peterson v. Martinez*, 707 F.3d 1197, 1206 (2013), where defendants are not required to have a "special connection," but only "some connection" to the unconstitutional act or conduct. "Rather, state officials must have a particular duty to 'enforce' the statute in question [or we contend here a challenged policy or custom] and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (2007). This "nexus" requirement cannot be conflated to state the elements of a § 1983 claim against Defendant Jones.

Back to § 1983, as there is no vicarious liability, what is the required state-of-mind? A deliberate indifference state-of-mind is required to establish municipal liability for an employee's unconstitutional actions. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences," *quoting Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). There is no logical reason that state officials should be held to a lesser or different state-of-mind.[12]

---

[12] The Supreme Court, in *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (a suit against the Pennsylvania Auditor General), stated: "In *Kentucky v. Graham*, [a suit against the Commissioner of the Kentucky State Police] … We emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*, at 165 [ ] (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 [ ] (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166 [ ]. … ***Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, supra, at 166, [ ] (quoting Monell, supra, 436 U.S., at 694)." Id. at*** 25 (emphasis supplied).

Therefore, Defendant contends that Plaintiffs must show both an ongoing, future reasonably certain, denial of their Fourth Amendment rights and (1) "an official policy or custom, (2) causation, and (3) deliberate indifference" flowing from the fact that Jones office is not vicariously liability under § 1983. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020). These "policy or custom" requirements apply to a demand for prospective relief, such as an injunction or a declaratory judgment. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010).

   4.1.   *Absence of a constitutional violation*

Plaintiffs argue KHP troopers are violating Fourth Amendment rights in two categories: (1) Troopers detain individuals "in part based on innocent travel plans," citing *Vasquez v. Lewis*,[13] Pl. Trial Brief, Doc. 484, at 2, and (2) employ a "Two-Step" maneuver, *id.* at 5.

In neither category has Plaintiffs shown an on-going or reasonably certain future Fourth Amendment violation.

*Travel*: Detention based in part on innocent travel plans is not a constitutional violation.

"Reasonable suspicion" is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). The inquiry depends on "the totality of the circumstances." *Navarette v. California*, 572 U.S. 393, 397 (2014). The law requires looking at each nuance of an encounter as part of a larger mosaic to determine whether the "whole picture" suggests that criminal behavior may be afoot. *Cortez*, 449 U.S. at 418. The emphasis is on the "whole picture," rejects a "divide-and-conquer analysis" of a situation's relevant circumstances. *United States v. Arvizu*, 534 U.S. 266, 274

---

[13] Plaintiffs include an assertion that Trooper have asserted reasonable suspicion in part based out-of-state license plates and residence. Doc. 484, at 5.

(2002) (found reasonable suspicion in part by defendant's use of a "little-traveled route used by smugglers," *id.* at 277) "[B]ecause the mosaic which is analyzed for a reasonable-suspicion … is multi-faceted, 'one determination will seldom be a useful 'precedent' for another'"; the "exception" being when precedent is "so alike," without "any substantial basis for distinc[tion]," "remarkably similar." *Ornelas v. United States*, 517 U.S. 690, 698 (1996). Furthermore, the analysis is an objective one. An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Brigham City v. Stuart*, 547 U.S. 398, 404-05 (2006). The officer's subjective motivation is irrelevant. *Id.; see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers").

Therefore, because the Fourth Amendment concerns objective reasonableness under the totality of the circumstances, an officer's "[c]onsideration of [ ] unpersuasive factors does not negate the otherwise valid bases for his objectively reasonable suspicion." *United States v. Lopez*, No. 5:21-CR-40026-TC, 2021 WL 5279923, at *9 (D. Kan. Nov. 12, 2021). *E.g. United States v. Berg*, 956 F.3d 1213, 1219 (10th Cir.), *cert. denied sub nom. Berg v. United States*, 2020 WL 6037395 (U.S. Oct. 13, 2020) (finding reasonable suspicion, while noting traveling at night along a known drug corridor, using a slightly indirect route, was too innocuous to support reasonable suspicion under the fact of the case); *United States v. Santos*, 403 F.3d 1120, 1133 (10th Cir. 2005) (finding reasonable suspicion while concluding some offered factors were "pure makeweights").

Moreover, circumstances involving the motorist's travel frequently plays a recognized factor in law enforcement's reasonable suspicions. The Circuit's cases where the motorist's

travel combined with other circumstances to establish reasonable suspicion to detain a motorist after the traffic stop concluded are ubiquitous. *E.g., United States v. Mercado-Gracia*, 989 F.3d at 839; *United States v. Torres*, 786 Fed. Appx. 726 (10th Cir., Aug. 23, 2019) (unpublished); *United States v. Ma*, 254 F. Appx. 752, 756 (10th Cir. 2007) (unpublished); *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001) (place of departure or destination was factor). *See also United States v. Mendoza*, 817 F.3d 695, 700 (10th Cir. 2016); *United States v. Karam*, 496 F.3d 1157, 1165-66 (10th Cir. 2007); *United States v. Pettit*, 785 F.3d 1374, 1381 (10th Cir. 2015); *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011); *United States v. Santos*, 403 F.3d 1120, 1130-32 (10th Cir. 2005); *United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir. 1995) (implausible travel plans were factors). *See also United States v. Orozco-Rivas*, 810 F. Appx. 660, 667 (10th Cir. 2020) (unpublished); *United States v. Torres*, 786 F. Appx. 726, 738 (10th Cir. 2019) (unpublished); *United States v. Sanchez-Valderuten*, 11 F.3d 985, 989 (10th Cir. 1993) (failure to disclose travel history or plans were factors); *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir. 1997); *United States v. Soto*, 988 F.2d 1548, 1556 (10th Cir.1993) (vague travel plans were a factor). And, during the course of a traffic stop, an officer may inquire about the driver's travel plans and the identity of the individuals in the vehicle. *Cortez*, 965 F.3d at 838 (*citing Pettit*, 785 F.3d at 1379).[14]

While a particular motorist's route "is not entitled to much weight" in the reasonable suspicion calculus, *United States v. Mercado-Gracia,* 989 F.3d 829, 839 (10th Cir. 2021), *cert.*

---

[14] *Cortez*, 965 F.3d at 839 ("Such questioning is consistent with both the public's expectations regarding ordinary inquiries incidental to traffic stops and taking the least burdensome approach to ensuring officer safety"); *United States v. Holt*, 264 F.3d 1215, 1221 (10th Cir. 2001) (*en banc*), *overturned on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005) (such inquiries are justified because "[t]ravel plans typically are related to the purpose of a traffic stop") *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (travel questions are permissible as the type of "negligibly burdensome" inquiries directed at ensuring officer safety).

*denied*, 142 S. Ct. 1374 (2022)[15], courts have found it can add to the calculus. *See United States v. Farmer*, 215 F.3d 1338 (10th Cir. 2000) ("We have previously considered the fact that a car is traveling at night on a known drug corridor, from a known drug source city when evaluating whether an officer had reasonable suspicion"); *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995) (considering in determination that officer had reasonable suspicion the fact that the car was traveling between Los Angeles and Detroit, two cities known for high drug usage). *See e.g., United States v. Barbee*, 968 F.2d 1026, 1029 (10th Cir.1992); *Mercado-Gracia,* 989 F.3d 829, 839; *United States v. Betances*, 650 F. App'x 615, 618 (10th Cir. 2016) (unpublished); *United States v. Westhoven*, 562 F. App'x 726, 728 (10th Cir. 2014) (unpublished); *United States v. Arjon*, 573 F. App'x 683, 688 (10th Cir. 2014) (unpublished) (driving slowly back and forth and stopping on a remote stretch of highway widely known as a drug-smuggling corridor only a few miles from the border provided reasonable suspicion); *United States v. Gutierrez*, 498 F. App'x 786, 793 (10th Cir. 2012) (unpublished); *United States v. Guerrero-Sanchez*, 412 F. App'x 133, 140 (10th Cir. 2011) (unpublished). *Cf. United States v. Cortez*, 965 F.3d 827, 835 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 1250, (2021) ("geography ["fifty miles from the Mexico border"] and context of the stop generated suspicion"). *See also, United States v. Arvizu*, 534 U.S. 266, 277 (2002) (border patrol agent had reasonable suspicion to believe illegal activity was occurring where vehicle was stopped during a patrol shift change on a "route used by smugglers to avoid [a] checkpoint").

And factors that are typically "consistent with innocent travel" may contribute to reasonable suspicion depending on the circumstances. *United States v. Ahmed*, No. 18-4092,

---

[15] *Accord Vasquez v. Lewis*, 834 F.3d 1132, 1137 (10th Cir. 2016); *Shaw v. Schulte*, 36 F.4th 1006, 1015 (10th Cir. 2022).

2020 WL 5415813, at *2 (10th Cir. Sept. 10, 2020). *Accord, United States v. Pettit*, 785 F.3d 1374, 1379-80 (10th Cir. 2015). In *Arvizu, supra*, the Supreme Court rejected the lower court's analysis that gave no weight to observations which were "readily susceptible to an innocent explanation" and that attempted to "clearly delimit the extent to which certain factors may be considered by law enforcement officers in making stops." *See also United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts"). For example, *Arvizu* stated: "*Terry*, however, precludes this sort of divide-and-conquer analysis. The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation." 534 U.S. at 274. *Arvizu*, cited *Sokolow* as standing for the proposition "that factors which by themselves were "quite consistent with innocent travel" [may] collectively amount[ ] to reasonable suspicion." *Id.* at 274-75.

In sum, even if it is assumed that "innocent travel" cannot be factor in the reasonable suspicion calculus, the consideration of such by troopers is not a constitutional violation. Thus, the allegations regarding travel, even if true, do not establish the first element of a § 1983 suit, *i.e.,* a violation of federal law.

*Two-Step*: The Two-Step is also not a violation of the Fourth Amendment. Stated another way, the procedure through which a trooper completes a traffic enforcement action and then reengages the driver to ask additional questions does not unconstitutionally prolong the stop.

An officer may constitutionally prolong a stop after the traffic stop is or should be complete when (1) the seized individual consents or (2) the officer has independent reasonable suspicion of criminal wrongdoing on behalf of the seized individual that justifies further

investigation. *United States v. Cortez*, 965 F.3d 827, 833 (10th Cir. 2020). Thus, the procedure

through which a trooper completes a traffic enforcement action and then reengages the driver to

ask additional questions in a consensual encounter does not unconstitutionally prolong the stop.

*See e.g.*, *Ohio v. Robinette*, 519 U.S. 33, 35 (1996). *See also United States v. Lopez*, No. 5:21-

CR-40026, 2021 WL 5279923, at *10 (D. Kan. Nov. 12, 2021) (collecting some of the cases).

This process has been referred to as the "two-step", *Lopez,* 2021 WL 5279923, at *10, or

"Columbo Gambit," *State v. Thompson*, 284 Kan. 763, 778, 166 P.3d 1015 (2007), *as modified*

(Oct. 17, 2007). In the application of the procedure, the issue becomes whether any consent

granted for post-stop detention or a search was voluntary.

It is not necessary to read *Miranda* rights or even inform the driver of their right to not

consent, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Moreover, the driver need not be

explicitly told that he or she has the right to leave. *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).

"Law enforcement officers do not violate the Fourth Amendment by merely approaching an

individual on the street or in another public place, by asking him if he is willing to answer some

questions, by putting questions to him if the person is willing to listen, or by offering in evidence

in a criminal prosecution his voluntary answers to such questions" … If there is no detention—

no seizure within the meaning of the Fourth Amendment—then no constitutional rights have

been infringed. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983).

The argument that the Two-Step, by itself, violates the Fourth Amendment has been

rejected directly and indirectly in numerous decisions. If a motorist is willing to answer

questions, the issue becomes whether any consent granted for post-stop detention or a search was

voluntary and the Two-Step does not prevent this voluntary consent. *See e.g., United States v.

Gomez-Arzate*, 981 F.3d 832, 842 (10th Cir. 2020) (found a consensual encounter permitted

extended detention even after issuing the citation, the driver began walking back to his car when Deputy Mora turned around and yelled to him to ask if he would talk); *United States v. Martin*, No. 18-CR-40117, 2019 WL 6682990, at *1 (D. Kan. Dec. 6, 2019) (found consent was given after trooper issuing and explained a warning, told the defendant to have a safe trip, back towards his patrol car but then re-approached defendant and asked whether he could ask Defendant some questions; to which Defendant replied "sure" and then also said sure to a vehicle search); *United States v. Beltran*, No. 17-40105-01, 2018 WL 5720247 (D. Kan. Nov. 1, 2018) (found consent was granted after trooper "told Mr. Beltran that he was going to give him a warning and instructed him to watch his speed in construction zones… asked Mr. Beltran if he had any questions" then "told Mr. Beltran to 'have a safe trip'" and "began to walk back to his patrol vehicle," but when the trooper reached the rear edge of Mr. Beltran's vehicle, he pivoted and started back in the direction of the driver's side window of Mr. Beltran's car" and "asked him, 'Hey, can I ask you a question, Juan?'"); *United States v. Delgado-Lopez*, No. 18-10095-01, 2018 WL 6200032 (D. Kan. Nov. 28, 2018) (found consent granted, responding "Defendant complains that [Trooper] Parr asked for consent almost immediately after telling Defendant he was free to go, without allowing him time to get out of the car.… But regardless of the timing, the unequivocal message to Defendant that he was "free to go" was sufficient to convey to a reasonable person that he was not required to stay and answer questions."); *United States v. Ochoa*, No. 16-40028-01, 2017 WL 119628, at *5 (D. Kan. Jan. 12, 2017) (found consent to talk and search, Ms. Ochoa gave permission after trooper told her to have a safe trip, she opened the patrol vehicle, but before she exited the trooper asked her a few more questions and if he could search her truck and trailer).

Therefore, as with travel, use of the Two-Step is not a violation of the Fourth Amendment.[16] Again, the first element of the § 1983 claim is not established.

       4.2.    *Plaintiffs have not proved an official policy or custom, causation, and deliberate indifference.*

Largely, Plaintiffs' evidence and their expert's opinions focus on past detentions, past training and past data collection. This is not legitimate fodder for entry of equitable relief concerning current and future conduct.

The Court may not share Defendant's view of the elements of Plaintiffs' official capacity claim against Jones. Yet, there should be no dispute that Plaintiffs have failed to prove deliberate indifference and an unconstitutional official custom or policy. Over the last 5 ½ years[17] there have been, according to Plaintiffs' six detentions that are claimed to have been illegal. Each has a different set of facts, each a different set of factors presented to support reasonable suspicion. Only the Shaw and Bosire detentions have been found to violate the Fourth Amendment.

---

[16] A few witnesses have testified that they did not think that they could safely leave after a trooper turned to walk away from the vehicle because to trooper was too close. Their subjective belief is not relevant to whether the traffic stop had concluded. Furthermore, the worry about the trooper safety is at most a single factor in whether consent provided was voluntary. In the examples provided, only Ms. Dunn consented to a canine sniff. She testified had been told by her father to wait for the trooper to return to his vehicle before leaving. She testified, that she consented to the dog sniff to be polite and respectful to police-that is, the consent was voluntary. She also understood she did not need to consent, as she refused consent to a search of her vehicle.

[17] See *supra*, n. 2.

Defendant challenges that conclusion regarding the other four.[18] The evidence required to show a policy or custom and deliberate indifference simply is not present.

But given the questions about what proof Plaintiffs' must present to establish a required § 1983 state-of-mind and culpable conduct by Defendant Jones, the central problem with Plaintiffs' § 1983 claim against Jones is lack of causation. Plaintiffs do not challenge the substance of the training provided to troopers and the KHP policies that, if followed, proscribe unconstitutional detentions. Plaintiffs do not establish earlier training on *Vasquez*, old reporting requirements, current data collection and analysis, current ill-defined short comings in supervision, and a past singular failure require more punishment of Trooper McMillan, cause current or will cause future unconstitutional detentions. Plaintiffs have offered nothing but speculation on this point.

Therefore, Plaintiffs fail to establish the second element of a § 1983 claim, *i.e.*, that Jones deprived the plaintiffs of the federal (here constitutional) right.

5. *Conclusion.*

In summary, judgment is proper against Plaintiffs' claim under Fed. R. Civ. P. 52(c). Plaintiffs' lack standing. The Court should not grant the equitable relief demanded. Plaintiffs have not proved the required elements of a § 1983 claim in their official capacity suit against Defendant Jones.

---

[18] There are multiple and different reasons that the troopers had reasonable suspicion to call for canine sniffs in the Erich stop [principally new white paint or bono smelled and located in area on van that suggested a hidden compartment combined with driver's denial of painting, but having white paint on his hand]; Kelly stop [principally extreme and unusual nerviness after being advised he was receiving a warning and a history of multiple drug crimes and possession of a sawed-off shotgun]; and Martinez stop [principally attempting to evade the trooper and by all reasonable appearances lying about his speeding, reason to leave (evade) the highway, and his bullying tactics.] The Dunn detention was consensual canine sniff. The validity or lack of the same of the trooper's suspicions in that case are not relevant.

Respectfully Submitted,

OFFICE OF KANSAS ATTORNEY GENERAL
KRIS KOBACH

/s/ Arthur S. Chalmers
Arthur S. Chalmers #11088
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Telephone: 785-368-6244
FAX: 785-291-3767
Email: art.chalmers@ag.ks.gov
*Attorneys for the Defendant Jones*

## **CERTIFICATE OF SERVICE**

This is to certify that on this 9th day of May, 2023, I electronically sent a copy of

MEMORANDUM IN SUPPORT OF JUDGMENT to all counsel of record.

s/Arthur S. Chalmers
Arthur S. Chalmers

25