IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BLAINE FRANKLIN SHAW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-CV-1343-KHV |
| | ) | |
| HERMAN JONES, in his official capacity as the | ) | |
| Superintendent of the Kansas Highway Patrol, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MARK ERICH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 20-CV-1067-KHV |
| | ) | |
| HERMAN JONES, in his official capacity as the | ) | |
| Superintendent of the Kansas Highway Patrol, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO THE ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT ENTER THE PROPOSED INJUNCTION**

COMES NOW the Defendant, and submits the following response to this Court's July 21, 2023 order to show cause why the Court should not enter the proposed injunction set forth on pages 76 – 79 of the July 21, 2023 MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE.  (Case no. 20-CV-01067-KHV-GEB, Doc 86; Case no. 19-CV-1343-KHV, Doc 539).  The proposed injunction should not be entered for the following reasons:

**Adequate Legal Remedies**

"A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law." *N. Cal. Power Agency v. Grace Geothermal Corp.*, 469

U.S. 1306, 1306 (Rehnquist, Circuit Justice 1984); *accord Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1353–54 (10th Cir. 1989).

Plaintiffs failed to establish the absence of an adequate legal remedy for any potential future violation of Plaintiffs Fourth Amendment rights by KHP during a traffic stop. If that should happen, there are several remedies available. In any criminal prosecution based on evidence obtained during a traffic stop, Plaintiffs can move to suppress all evidence obtained in violation of the Fourth Amendment. They can also file a civil lawsuit to recover damages and attorney fees, which some of these plaintiffs did. (Doc 539 at 10). "If damages can compensate a plaintiff an injunction will not lie." *Holly Sugar Corp. v. Goshen Cty. Coop. Beet Growers Ass'n*, 725 F.2d 564, 570 (10th Cir. 1984) (citation omitted).

Therefore, because there are adequate legal remedies for any potential future violation of Plaintiffs Fourth Amendment rights by KHP during a traffic stop, there is no legal basis for an injunction, and the proposed injunction should not be entered.

In its order, this Court addressed the adequacy of legal remedies in the context of its analysis of irreparable harm. As this Court noted: "Adequate legal remedies foreclose injunctive relief." (Citation omitted) (Doc 539 at 67).

The Court first defined irreparable harm as: "harm that cannot be compensated after the fact by money damages." (Doc 539 at 66). The Court then determined that Plaintiffs had suffered irreparable harm; that there was a risk that they would experience irreparable harm in the future; and that available legal remedies are inadequate:

> Here, plaintiffs established that constitutional violations by KHP troopers caused them profound distress, humiliation, anger and other non-monetary damages. The risk that they will experience future harm cannot be compensated after the fact by money damages. Drivers who experience illegal roadside detentions have some remedies at law, such as bringing suit under 42 U.S.C. § 1983 and through the Kansas Tort Claims

> Act, K.S.A. § 75-6101 et seq., but these remedies are not sufficient to abate the significant risk that plaintiffs will again experience irreparable harm.

(Doc 539 at 67)

This analysis appears to equate non-monetary damages with irreparable harm. They are not the same. Non-monetary harm is frequently compensated for by an award of money damages. Personal injuries are nonmonetary harm for which compensation is money damages. Negligence claims typically involve non-monetary damages compensated by an award of money damages. Most tort claims involve nonmonetary harm compensated by awarding money damages, the most obvious example being the tort of Intentional Infliction of Emotional Distress. Pain and suffering, emotional distress, anxiety, and other non-monetary injuries are routinely compensated for with an award of money damages. The fact that these plaintiffs experienced distress, humiliation, anger and other non-monetary harm does not mean that available legal remedies are inadequate, nor does it mean that such harm is irreparable. Therefore plaintiffs have not established that they face a substantial risk of future irreparable harm in the absence of an injunction, and the proposed injunction should not be entered. Furthermore, the emotional consequences of a prior violation are not sufficient grounds for an injunction. *City of Los Angeles v Lyons*, 461 U.S. 95, 107 n.8 (1983).

### **Great and Immediate Irreparable Injury**

Also, because the proposed injunction will be entered against KHP, there are additional considerations not addressed by this Court.

"In exercising their equitable powers federal courts must recognize the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Lyons*, 461 U.S. at 112, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). (internal quotes

omitted). This is true "even where an important countervailing federal interest [is] involved." *Stefanelli v. Minard*, 342 U.S. 117, 121 (1951).

Consequently, where the proposed injunction is to be issued by a federal court against state officers engaged in the administration of the state's criminal laws (as the Kansas Highway Patrol plainly is), plaintiffs must establish an *immediate* risk of *great, irreparable* injury. *Lyons*, 461 U.S. at 112.

The Court did not discuss this issue or make any findings in this regard, nor is there any evidence in the record to support such findings. As discussed above, no injury asserted in this case is irreparable. But even if it were, the risk in the future is certainly not immediate: all the Plaintiffs are from out of state and are not routinely traveling on Kansas highways. Because Plaintiffs have not established that they face an immediate risk of great irreparable harm in the absence of an injunction, the proposed injunction should not be entered.

**The Proposed Injunction Is Overbroad, Unduly Intrusive, Unduly Burdensome, and Infringes on Kansas Law Enforcement Processes and Procedures**

The proposed injunction requires the Kansas Highway Patrol (KHP) to create specified documents and dictates the language to be used, the format of the documents, specific information to be included in such documents, when and to whom those documents must be submitted, additional documentation required by the persons receiving those documents and the timeframe for completing the additional documentation. It dictates specific procedures troopers and their supervisors must follow prior to conducting a consensual search and requires additional documentation in such instances, including a specific form to be signed by the individual consenting. It dictates specific procedures troopers must follow, specific information they must convey, and specific documents they must use whenever they ask someone to voluntarily answer questions after they are no longer legally detained. It further

4

specifies data that must be collected and how it is to be analyzed and retained. It requires additional annual training for all troopers. It dictates how troopers are to be assigned supervisors and regulates the days and hours troopers and their respective supervisors must work. It dictates how audio and video recordings are to be maintained and reviewed. It provides for the appointment of a special master to monitor compliance and requires KHP to pay all fees and costs and expenses of the special master. (Doc 539 at 76 – 79.) In short, it places the Court in the position of micromanaging the KHP with respect to traffic stops, documentation of traffic stops, personnel assignments, work assignments, work schedules, record creation and retention, internal reporting requirements, and annual training requirements. It also places the Court, acting through the special master, in the position of reviewing virtually every traffic stop made by KHP. "A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." *OShea v Littleton*, 414 U.S. 488, 500 (1974).

The proposed injunction violates well-established principles of comity and federalism. It involves the Court in continuous monitoring and supervision of KHP (periodic reporting is a form of monitoring of the operation of state court functions that is contrary to established principles of comity. *OShea*, 414 U.S. at 501) and will disrupt the operations of KHP. It also creates the potential for inconsistent decisions in both civil and criminal matters as to whether a violation of the injunction is also a constitutional violation.

The harm caused by such an intrusive and unwarranted abuse of the equity power of this Court far outweighs any benefit that might be gained from the proposed injunction, and no injunction should be entered.

Furthermore, it is a "well-settled principle that an injunction must be narrowly tailored to remedy the harm shown." *Citizen Band Patowatomi Indian Tribe v. Okla. Tax Comm'n*, 969

F.2d 943, 948 (10th Cir. 1992).  But the proposed injunction is not narrowly tailored in any way.  It involves the court (or its special master) in the day-to-day operations of the KHP not just in specific traffic stops that might potentially trigger the same constitutional concerns, but also in the hiring, scheduling, record-keeping, and management practices of the agency—none of which are unconstitutional in and of themselves.  An injunction that broad oversteps the Court's legitimate authority. See *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1021 (10th Cir. 1996).

## Objections to Specific Provisions in the Proposed Injunction

Section IB.  The term "investigatory stop" is undefined.  If it is intended to mean all traffic stops, the documentation requirement is unduly burdensome.

Section IC.  The time limits of submission to a supervisor by the end of the shift and 12 hours for the supervisor to review are impractical, particularly in conjunction with the requirement in another part of the injunction that supervisors and subordinates work identical hours.  If this provision is retained, Defendant recommends 48 hours to submit and 72 hours to review.

Section IIA.  This requirement is impractical.  KHP has 425 troopers, including all levels of command.  Of these, 86 are Lieutenants or field supervisors.  The KHP is spread out over 105 counties, many of which are rural, and patrols 9,386 miles of interstate and state highways. (exhibit 1, Affidavit of Luther Ganieany) The supervisor will not be present on the scene and may not be immediately available by telephone.  This requirement will unduly lengthen the amount of time a driver is detained while waiting for supervisory approval.

Section IIB.  Vertical stare decisis dictates that this Court is bound by the decisions of the Tenth Circuit Court of Appeals and the United States Supreme Court.  *United States v.*

*Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020).  Vertical stare decisis is absolute.  *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023).

Both the Tenth Circuit Court of Appeals and the United States Supreme Court have held that a law enforcement officer is not required to inform an individual, verbally or in writing, that they have the right to refuse to consent to a search and, if consent is given, they have the right to revoke it at any time.

"An officer is not required to inform a suspect that she does not have to respond to his questioning or that she is free to leave." *United States v. Bradford*, 423 F.3d 1149, 1158 (10th Cir. 2005).  See also *United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006) ("[A]n officer's failure to inform the defendant that she is free to leave, standing alone, does not make an encounter nonconsensual.")  accord: *Ohio v Robinette*, 519 U.S. 33 (1996).

Furthermore, insofar as the purpose of the injunction is to ensure that the Constitution is being followed, this requirement is overkill. An injunction that is not actually directed at remedying an identified constitutional violation is improper. *McClendon*, 79 F.3d at 1021. The problem that the Court found in this trial was not that the Plaintiffs did not know they could leave or decline the requested search (and, in fact, their subjective knowledge was irrelevant, *see Bradford*, 423 F.3d at 1158).  In three of the stops, the Court found that the troopers' actions did not in fact indicate that the "seizure" of the traffic stop was over. (Doc 539 at 15, 33, 35).  In one of the stops, the Court found that the trooper lacked reasonable suspicion to detain the driver for a canine sniff. (Doc 539 at 28).  Finally, in one of the stops, the Court found that the trooper lacked reasonable suspicion to initiate the traffic stop. (Doc 539 at 24). This requirement goes far beyond anything necessary to remedy those issues.

Thus, this provision is overbroad and imposes a burden on KHP that the law does not require and therefore impairs troopers ability to do their job.

Section IIC.  The second sentence appears duplicative of the preceding section. Assuming the last three words were inadvertently included and should be deleted, it is not duplicative.  Either way, the law does not require a trooper to inform an individual, verbally or in writing, that they have the right to refuse to voluntarily consent to engage or re-engage with the trooper and that, if they do consent, they have the right to revoke that consent at any time, nor does it require that any such consent must be given in writing and signed by the person consenting.

> "[J]ust as it '"would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning,"' so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary."

*Ohio v Robinette*, 519 U.S. 33, 39 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 231 (1973)).

Thus, this provision imposes a burden on KHP that the law does not require and therefore impairs troopers ability to do their job.

Section V.  This is impractical to the point of being virtually impossible.  KHP has a total of 425 troopers, 86 of which are lieutenants or field supervisors, spread out over 105 mostly rural counties, to patrol 9,386 miles of interstate and state highways 24 hours a day every day.  Assigning each trooper to a specific supervisor and scheduling each group of specific troopers and their supervisor for the same shift on the same days with the same days off and the same vacations would be a logistical nightmare.  Compliance with this provision will require a significant number of additional troopers and significant additional funding. KHP lacks the ability to unilaterally increase its funding and is experiencing the same recruiting difficulties reported by many law enforcement agencies.  There are simply not enough qualified applicants to fill current vacancies, let alone the additional positions that would be required to comply with this provision.

Section VI. The first paragraph and subsections A and B are unnecessary. KHP does this now. In October 2022 KHP began replacing vehicle cameras with new digital cameras. That process has been completed and all vehicles now have new cameras.

The final sentence is vague in that it fails to identify the person or entity to receive such referrals and conduct such investigations. It is also unnecessary. Failure to follow KHP policy is a disciplinary and/or corrective action issue between troopers and their supervisor. There is no evidence indicating that this internal procedure is inadequate. Requiring referral to an unidentified person or entity for investigation is unduly burdensome and disrupts the established procedure regarding failure to follow KHP policies.

Section VII. This provision is unnecessary and unduly burdensome. It assumes KHP will not comply with any injunction issued by this Court, without any evidence to support that assumption. "We generally presume that government agencies comply with the law" *WildEarth Guardians v. Conner*, 920 F.3d 1245, 1261 (10th Cir. 2019), citing *Pit River Tribe v. U.S. Forest Service*, 615 F.3d 1069, 1082 (9th Cir. 2010); *Poe v. Gerstein*, 417 U.S. 281 (1974).

It also assumes that KHP routinely engages in "unconstitutional policing", something not supported by the evidence in the record. At trial, evidence was presented regarding one traffic stop in 2017, one in 2018, one in 2019, one in 2020, one in 2021, and one in 2022, for a total of six traffic stops over six years. The last of those was found to be constitutionally valid. In one of the remaining five, this Court found the trooper lacked reasonable suspicion to initiate the stop, and that if the stop had been valid; the subsequent detention for a canine sniff would have been valid. Evidence was also presented by plaintiffs expert witness, a statistical consultant, who "conducted a quantitative analysis of KHP traffic enforcement policies to

determine whether the KHP enforces traffic laws differently against Kansas motorists and out-of-state motorists." (Doc 539 at 11.)

Four traffic stops in six years that were unconstitutionally extended for canine sniffs, along with a statistical analysis concluding that KHP stopped significantly more out-of-state drivers than would be expected if out-of-state and in-state drivers were stopped at the same rate, is not sufficient to support the assumption that KHP routinely engages in "unconstitutional policing" so as to require a special master to conduct and perform outcome assessments, compliance reviews and audits to determine whether the injunction "is effective in achieving constitutional policing".

Requiring KHP to provide any and all information and data demanded by the special master and to participate in various outcome assessments, compliance reviews and audits will place an undue burden on an already understaffed agency.  Furthermore, as there is no evidence in the record indicating that KHP has sufficient funds to pay all fees, costs and expenses of the special master without diverting said funds from other legitimate law enforcement purposes, requiring such payment will impose an undue financial burden on KHP.

Finally, the grant of such broad authority to the special master does not adequately account for the state's interests as a separate sovereign, conducting and directing its own law-enforcement activities (as discussed above).

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS KOBACH

*/s/ Stanley R. Parker*
Stanley R. Parker, KS #10971
Assistant Attorney General/Trial Counsel

        120 SW 10th Avenue, 2nd Floor
        Topeka, Kansas, 66612-1597
        Phone: (785) 368-8423
        Fax:　　(785) 291-3767
        Email: stanley.parker@ag.ks.gov
        *Attorney for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of August 2023, the above and foregoing was filed and served using the Court's CM/ECF system, which sent electronic notice to all counsel of record.

        */s/ Stanley R. Parker*
        Stanley R. Parker