IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BLAINE FRANKLIN SHAW, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-1343-KHV |
| | ) | |
| **ERIK SMITH, in his official capacity as the Superintendent of the Kansas Highway Patrol, et al.,** | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| **MARK ERICH, et al.,** | ) ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 20-1067-KHV |
| | ) | |
| **ERIK SMITH, in his official capacity as the Superintendent of the Kansas Highway Patrol,** | ) ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**ORDER**

On July 21, 2023, the Court entered its Memorandum and Order (Doc. #539) which held that in violation of the Fourth Amendment and Vasquez v. Lewis, 834 F.3d 1132 (10th Cir. 2016), defendant Herman Jones was responsible for a policy or practice which unlawfully detains motorists in Kansas (especially out-of-state motorists) without reasonable suspicion or consent, based on out-of-state residency and—to more than a minimal extent—based on travel plans that are not implausible or inherently contradictory. It also held that in violation of the Fourth Amendment, Jones is responsible for a policy or practice of using the Kansas Two-Step to extend traffic stops of motorists in Kansas without reasonable suspicion and without the motorists'

knowing, intelligent and voluntary consent.[1]  To remedy these violations, the Court ordered that the parties show cause why it should not enter the injunction outlined in the order.

The parties responded on August 3, 21 and 28, 2023.  The Court has carefully reviewed their responses and set a status conference for September 11, 2023 to discuss these issues.  In order to make good use of time at that status conference, the Court hereby orders as follows:

1. Preliminarily, subject to further order, the Court overrules defendant's general arguments that injunctive relief should be denied because (a) other remedies are available, and plaintiffs therefore "failed to establish the absence of an adequate legal remedy for any potential future violation of Plaintiffs['] Fourth Amendment rights by KHP during a traffic stop;" and (b) the Court improperly conflated plaintiffs' non-monetary injuries with irreparable harm and therefore failed to properly apply the test for irreparable harm.  The Court also overrules any objections that the proposed injunctive relief is "unduly burdensome" or is not "narrowly tailored" to the violations at issue here.  Defendant has not proposed any alternatives which would be less burdensome, or more narrowly tailored, yet achieve substantially the same goals.  The Court therefore cannot properly evaluate whether any particular burden is "undue" in light of the constitutional principles which must be vindicated in this case.

2. The parties shall meet, confer and present to the Court a joint proposed order which grants injunctive relief with the specificity required by Rule 65, Fed. R. Civ. P.  This submission

---

[1] Because Jones retired on July 1, 2023, the Court directed the parties to show cause in writing why it should not substitute Erik Smith, the current Superintendent of the KHP, as defendant in this case.  All parties agreed to the substitution and on August 8, 2023, the Court ordered substitution under Rule 25(d), Fed. R. Civ. P.  Order (Doc. #545); see Hafer v. Melo, 502 U.S. 21, 25 (1991) (when official leaves office, successor automatically assumes his position in official capacity litigation).

shall be filed no later than 5:00 PM on September 8, 2023, and shall be without prejudice to defendant's right to object to or to appeal from the grant of injunctive relief or the specifics thereof. This submission is an opportunity for defendant to help shape the form of the Court's injunctive relief to minimize the burdens which it alleges—but has not proven—will flow from the injunction which the Court has proposed.

3. The proposed order shall comply with Rule 65(d)(1)(A)-(C) and state the reasons why it issued; contain its specific terms; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. Pursuant to Rule 65(d)(2), it shall also outline who, in addition to defendant, shall be bound.

4. Because the evidence at trial only established constitutional violations on federal highway I-70, absent agreement to the contrary, the proposed injunction shall be limited to motorists on that highway.

5. As an appendix to the proposed order granting injunctive relief, the parties shall submit agreed administrative forms that the Court can require to implement the terms of the injunction. The forms shall include consent forms, logs, reports and all other documents which this order requires.

6. In the event that the parties cannot agree on certain specifics of the proposed order granting injunctive relief, they shall file no later than 5:00 PM on September 8, 2023, an agenda of unresolved issues which the Court can address at the status conference on September 11, 2023.

7. Subject to agreed modifications, the proposed injunction shall generally incorporate these provisions:

    **I.    Documentation**

        A. Beginning within 60 days, in any reports which document investigatory

stops, detentions, searches or consents, troopers shall use accurate and specific descriptive language and not rely on boilerplate or "pat" language or conclusory invocation of their training and experience as law enforcement officers and their consideration of all the relevant factors.[2]  Articulation of reasonable suspicion, along with consents, shall be clear and factually specific to particular individuals.

      B.  Beginning within 60 days, troopers shall document all investigatory stops and detentions, any searches (including canine sniffs) resulting from or proximate to the stop or detention, and any consents to search or to engage with troopers after the conclusion of a traffic stop.  Within 60 days, the KHP shall develop an electronic report format to document all investigatory stops, searches and consent, whether or not they result in an arrest, issuance of a citation, search or discovery of contraband.  The electronic documentation system shall allow for summarization, reports and searches, and shall be submitted for review and approval by the Court.  The reporting format shall require troopers to document the following:

    a.  the trooper's name and badge number;

    b.  the date and time of the stop;

    c.  the location of the stop;

    d.  the duration of the stop (including detention, if any);

---

[2]  The Court notes defendant's objection that the term "investigatory stop" is insufficiently defined.  Unless the parties agree on more restrictive terminology, the Court intends that this provision would apply to any stop in which a trooper detains a vehicle and its occupants to initiate inquiry into a traffic violation.

e. the identifying characteristics of the vehicle, including its make, model, year, color and the state that issued its license plate;

f. the number of any passengers present and the names of such passengers if voluntarily given;

g. the reason for the stop, including a description of all facts on which the trooper relied in developing reasonable suspicion to justify the initial stop;

h. whether the trooper asked any individual to consent to a search, whether the trooper advised the subject that he or she had a right to refuse or revoke consent at any time, whether such advice of rights has been independently documented, and whether consent to search was given;

i. whether a search (including a canine sniff) occurred and if so, a description of all facts on which the trooper relied in developing reasonable suspicion to search;

j. the nature and duration of the search and, if a canine was deployed, the length of any delay occasioned by the need to procure a canine unit;

k. whether the trooper seized any drugs or contraband, and the nature and disposition of any such drugs or contraband;

l. when and how the traffic stop concluded; and

m. after the traffic stop concluded, whether the trooper sought to engage in any conversation with the driver or occupants of the vehicle and if so, specific steps which the trooper took to communicate to the driver that the traffic stop was concluded and that the driver was free to go, the length of time from the conclusion of the traffic stop to the trooper's effort to re-

engage and—if the driver re-engaged—the total length of the engagement after the end of the traffic stop.

C. Beginning within 60 days, all documentation shall be submitted to the trooper's supervisor by the end of the shift. Supervisors shall review such reports by the end of the supervisor's following shift and absent exceptional circumstances in no event later than 72 hours of when the stop occurred. If the trooper's regular supervisor is unavailable for more than 72 hours after the stop occurred, an emergency back-up supervisor shall review the report. Supervisors shall report and shall document (1) those investigatory stops and detentions which appear unsupported by reasonable suspicion; (2) those searches which appear to be without legal justification; (3) stops, detentions or searches which appear to violate KHP training or policies; and (4) stops or searches that indicate a need for corrective action or review of KHP policy, strategy, tactics or training.

D. The supervisor shall take appropriate action to address all violations or deficiencies in investigatory stops, detentions, searches and consents, including recommending corrective action for the involved officer and/or referring the incident for administrative or criminal investigation. For each trooper, the supervisor shall track each violation or deficiency and any corrective action taken, to identify troopers who need repeated corrective action. All documentation from I.B. and I.C. shall be submitted to the trooper and the supervisor's Troop Commander and maintained and preserved for no less than three years for investigatory and audit purposes.

## II.     Searches And Continued Questioning

A.  Beginning within 60 days, prior to conducting a search which is purportedly based on consent, a trooper shall notify a supervisor of the plan to conduct a consensual search, and receive approval from the supervisor before conducting it.[3]  As part of the supervisory review, the supervisor shall document in an auditable format those requests that are legally unsupported, are in violation of KHP policy or this injunction, or that indicate a need for corrective action or review of any KHP policy, strategy, tactics or training.  The supervisor shall take appropriate action to address violations or deficiencies, including recommending corrective action for the involved officer.  If a trooper's regular supervisor is not available, the KHP shall arrange for back-up coverage by another supervisor.

B.  Beginning within 60 days, when a trooper seeks consent for a search, the trooper shall affirmatively inform the subject of his or her right to refuse and to revoke consent at any time, and document the subject's consent on a written form which explains these rights.  The written form shall include separate signature lines for the trooper to certify that the trooper has read and explained these rights to the subject, and for the subject to affirm that he or she understands the right to refuse and to revoke consent to the search.

---

[3]     The Court notes defendant's concern that this requirement will unduly lengthen the amount of time a driver is detained while awaiting supervisory approval for a search.  Given the evidentiary record in this case, this "concern" seems disingenuous.  More likely, defendant is concerned that drivers will revoke their consent to search if the process of getting approval takes too long.  Be that as it may, defendant should focus its attention on how to get timely supervisory approval so that undue delay does not occur.

C. Beginning within 60 days, when a trooper seeks to re-engage with a driver or occupant of the vehicle to continue conversation after a traffic stop has concluded, the trooper shall affirmatively inform the subject of his or her right to refuse and to revoke consent at any time, and document the subject's consent on a written form which explains these rights. The written form shall include separate signature lines for the trooper to certify that the trooper has read and explained these rights to the subject, and for the subject to affirm that he or she understands the right to refuse and to revoke consent to continue the conversation.

D. Beginning immediately, when KHP troopers develop reasonable suspicion with regard to motorists on I-70, they must give no weight to the fact that a motorist is traveling (1) toward a "drug source" or "drug destination" state, (2) away from a "drug source" or "drug destination" state, or (3) on a drug corridor.

E. Beginning within 60 days, the KHP shall maintain a log which lists each request for a search, the trooper who requested the search, the supervisor who reviewed the request and the action taken on the request.[4]

**III.** The KHP shall develop a protocol for comprehensive analysis, no less frequently than every three months, of the foregoing data. The report shall analyze the data, identify steps taken to correct problems and shall be publicly available, served on the parties in this case and filed with the Court.[5]

---

[4] The Court orders the parties to submit an agreed format for this log.

[5] The Court orders the parties to submit an agreed format for this analysis and report.

**IV.** Within 60 days, the KHP shall provide all officers with at least eight hours of training on facts and circumstances that may be considered in initiating, conducting, terminating and expanding an investigatory stop or detention; the difference between reasonable suspicion and mere speculation; and between knowing, voluntary and intelligent consent to engage with law enforcement, as opposed to seizure and/or mere acquiescence to police authority.[6] No later than September 1, 2024, the KHP shall provide all officers with at least 16 hours of additional training, and at least ten hours thereafter on an annual basis, on these same topics. The KHP shall institute a testing protocol which satisfies the Court that each trooper has mastered the required subjects.

**V.** KHP supervisors shall be held accountable for providing close and effective supervision necessary to direct and guide troopers in complying with constitutional requirements. To this end, within 90 days, all troopers shall be assigned a single, consistent and clearly-identified supervisor. Supervisors shall work the same days and hours as the troopers they are assigned to supervise.[7]

---

[6] The parties shall propose an agreed curriculum for that training, specify the format of the teaching and also describe the agreed testing protocol.

[7] The Court notes defendant's objection that such a requirement is unreasonable, given KHP recruitment and funding constraints. If defendant wishes the Court to consider alternative staffing protocols, it is incumbent on defendant to outline specific alternatives which would satisfy the same objectives but be more consistent with defendant's view of its recruitment and funding constraints.

**VI.** Within 60 days, the KHP will maintain and operate audio recording and video cameras in all marked and unmarked vehicles that are assigned to routine patrol duties and shall promptly repair or replace any non-functioning equipment. Such recordings shall be maintained, reviewed by supervisors as appropriate and preserved for no less than three years for investigatory and audit purposes. The KHP shall require:

> A. activation of in-car cameras for all traffic stops or pursuits until the stop is concluded and the stopped vehicle departs, or until the officer's participation in the vehicle stop ends (whichever is later); and
>
> B. activation of in-car cameras or audio recording to record requests for consent to search a vehicle, consent to deployment of drug-detection canines and consent to engage with a driver after the conclusion of a traffic stop, and all parts of the driver's response to said requests.

A trooper must immediately notify a supervisor when an event was not recorded, and provide a full explanation. Supervisors shall refer for investigation any trooper who fails to properly make and preserve such recordings.

**VII.** The KHP will submit performance compliance reviews and audits so that the Court can assess whether this injunction is effective in achieving constitutional policing.[8] Within 60 days, the parties will submit to the Court an agreed plan for

---

[8] This provision does not assume that the KHP will refuse to comply with the injunction. Its purpose is to afford the KHP an opportunity to prove to the world that it is in compliance. Defendant objects that gathering the information and engaging in the monitoring

(continued . . .)

conducting outcome assessments and compliance reviews and audits. To the extent that the parties cannot agree on certain specifics of the proposed plan, they shall file an agenda of unresolved issues which the Court can address at a status conference.

The Court anticipates that the KHP's filing of periodic compliance reviews and audits will be sufficient to assess whether this injunction is effective in achieving constitutional policing. To the extent that the Court determines that additional monitoring is necessary, it will appoint an independent monitor to help achieve this goal. If the appointment of a monitor is necessary, the KHP shall be liable for all fees and expenses of the monitor.

**VIII.** This injunction will remain in effect for four years unless no sooner than two years, the KHP has achieved all objectives of the injunction, in which case the Court may dissolve this injunction at an earlier date. On the other hand, if the KHP has not obtained full and effective compliance within four years, this injunction may be extended.

**IX.** The Court retains jurisdiction of this action for all purposes until the KHP

---

[8](. . .continued)
process "will place an undue burden on an already understaffed agency." Here again, defendant is free to propose (and elicit plaintiffs' agreement to) less burdensome means of achieving the same level of supervision and compliance. At trial, the record established that KHP troopers devoted vast resources to traffic stops which yielded minuscule amounts of drugs and other contraband. The record suggests that the KHP's problem is not so much lack of resources as good judgment in deploying the resources which it has.

has achieved full and effective compliance for no less than two years, and the Court so certifies.

**IT IS SO ORDERED**.

Dated this 30th day of August, 2023 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge