IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLAINE FRANKLIN SHAW, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ERIK SMITH in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*,<br><br>*Defendants*. | **Case No. 19-1343-KHV-GEB** |
| MARK ERICH, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>ERIK SMITH, *KHP Superintendent,*<br><br>*Defendant.* | **Case No. 20-1067-KHV-GEB** |

**PROPOSED PERMANENT INJUNCTION**

On July 21, 2023, the Court entered its Memorandum and Order (Doc. #539) which held that in violation of the Fourth Amendment and Vasquez v. Lewis, 834 F.3d 1132 (10th Cir. 2016), defendant Herman Jones was responsible for a policy or practice which unlawfully detains motorists in Kansas (especially out of state motorists) without reasonable suspicion or consent, based on out-of-state residency and—to more than a minimal extent—based on travel plans that are not implausible or inherently contradictory. It also held that in violation of the Fourth Amendment, Jones is responsible for a policy or practice of using the Kansas Two-Step to extend

traffic stops of motorists in Kansas without reasonable suspicion and without the motorists' knowing, intelligent, and voluntary consent.

In conjunction with that <u>Memorandum and Order</u>, the Court hereby enters the following orders, terms, and conditions as a Permanent Injunction in this case.

I. **SCOPE AND APPLICABILITY**

   a. The purpose of this Injunction is to remedy the ongoing pattern of constitutional violations identified in the Court's Memorandum and Order (Doc. #539) related to practices of the Kansas Highway Patrol (KHP). Specifically, the Court finds that the KHP engaged in a pattern of unconstitutional detentions based on impermissible criteria and insufficient reasonable suspicion, and without knowing, intelligent and voluntary consent, and that a Permanent Injunction is necessary to remedy that pattern and ensure constitutional policing by the KHP going forward.

   b. This injunction shall apply and bind the actions of both Defendant Erik Smith, Superintendent of the KHP, and all his successors and assigns, and all employees and contractors, sworn and unsworn, of the KHP.

   c. This injunction shall apply to and bind all activities conducted by KHP employees and contractors.[1]

   d. This injunction shall be effective on the date it is signed by the Court, as noted at the end of this document.

   e. This injunction shall remain in effect for four years. If the KHP is able to prove that it achieved all objectives and directives of this injunction, the Court may dissolve

---

[1] Although "the evidence at trial only established constitutional violations on federal highway I-70," Order at 3 (Doc. #550), it is unfeasible to maintain one set of policies and practices for troopers when they police on I-70, and a separate set of policies and practices for troopers policing elsewhere in the state. Accordingly, the terms of the injunction apply generally to KHP policies and practices.

this injunction at an earlier date, but no earlier than two years from the effective date of the injunction. If the KHP has not obtained full and effective compliance with all the objectives and directives of this injunction at four years from the effective date, the Court may, in its discretion, extend the length of this injunction.

II. **ACTIONS ENJOINED**

   a. When developing reasonable suspicion with regard to motorists, the KHP is hereby enjoined from giving any weight to the fact that a motorist is traveling (1) toward a "drug source" or "drug destination" state, (2) away from a "drug source" or "drug destination" state, or (3) on a drug corridor.

   b. When conducting a traffic stop and investigatory detention, the KHP is hereby enjoined from using the "Kansas Two-Step"[2] to extend traffic stops of motorists without reasonable suspicion or without the motorists' knowing, intelligent, and voluntary consent.

III. **REQUIRED REMEDIAL ACTIONS.** To effectuate the terms of this Injunction and ensure full and effective compliance with the terms described in Part II, the Court orders additional remedial actions by the KHP, as set forth below.

   a. **Documentation of Stops and Detentions:**

      i. Within 60 days of the effective date of this Injunction, the KHP shall revise its policies and procedures to require that:

---

[2] The "Kansas Two-Step" shall be defined and understood for the purposes of this Injunction to include any attempt to end the purposes of the traffic stop and then reengage with the driver, in an attempt to ask additional questions, without first informing the driver that the traffic stop is concluded and they do not need to answer additional questions.

1. Troopers shall document all investigatory stops[3] and detentions, any searches (including canine sniffs) resulting from or proximate to the stop or detention, and any consents to search or to engage with troopers after the conclusion of a traffic stop.

2. In any reports which document stops, detentions, searches or consents, troopers shall use accurate and specific descriptive language and not rely on boilerplate or "pat" language or conclusory invocation of their training and experience as law enforcement officers and their consideration of all the relevant factors. Articulation of reasonable suspicion, along with consents, shall be clear and factually specific to particular individuals.

ii. Within 60 days of the effective date of this Injunction, the KHP shall develop an electronic report format to document all investigatory stops, searches and consent, whether or not they result in a warning, an arrest, issuance of a citation, search or discovery of contraband. The electronic documentation system shall be searchable by keyword, allow for summarization, and shall be submitted for review and approval by the Court. The reporting format shall require troopers to document the following:

1. the trooper's name and badge number;
2. the date and time of the stop;

---

[3] An "investigatory stop" shall be defined and understood for the purposes of this Injunction to include any traffic stop in which a trooper detains a vehicle and its occupants to initiate inquiry into a traffic violation or any other criminal infraction.

3. the location of the stop;

4. the duration of the stop (including detention, if any)

5. the identifying characteristics of the vehicle, including its make, model, year, color and the state that issued its license plate;

6. the number of any passengers present and the names of such passengers if voluntarily given;

7. the reason for the stop, including a description of all facts on which the trooper relied in developing reasonable suspicion to justify the initial stop;

8. whether the trooper asked any individual to consent to a search, whether the trooper advised the subject that he or she had a right to refuse or revoke consent at any time, whether such advice of rights has been independently documented, and whether consent to search was given;

9. whether a search (including a canine sniff) occurred and if so, a description of all facts on which the trooper relied in developing reasonable suspicion to search;

10. the nature and duration of the search and, if a canine was deployed, the length of any delay occasioned by the need to procure a canine unit;

11. whether the trooper seized any drugs or contraband, and the nature and disposition of any such drugs or contraband;

      12. when and how the traffic stop concluded; and

      13. after the traffic stop concluded, whether the trooper sought to engage in any conversation with the driver or occupants of the vehicle and if so, specific steps which the trooper took to communicate to the driver that the traffic stop was concluded and that the driver was free to go, the length of time from the conclusion of the traffic stop to the trooper's effort to re-engage and—if the driver re-engaged—the total length of the engagement after the end of the traffic stop.

   iii. Within 60 days of the effective date of this Injunction, all documentation described in Section III.a shall be submitted to the trooper's supervisor by the end of the shift.

      1. Supervisors shall review such reports by the end of the supervisor's following shift and absent exceptional circumstances in no event later than 72 hours of when the stop occurred. If the trooper's regular supervisor is unavailable for more than 72 hours after the stop occurred, an emergency back-up supervisor shall review the report.

      2. Supervisors shall report and shall document (1) those investigatory stops and detentions which appear unsupported by reasonable suspicion; (2) those searches which appear to be without legal justification; (3) stops,

>   detentions or searches which appear to violate KHP training or policies; and (4) stops or searches that indicate a need for corrective action or review of KHP policy, strategy, tactics or training. ==Such documentation shall be submitted up the chain of command==.
>
> 3. The supervisor shall take appropriate action to address all violations or deficiencies in investigatory stops, detentions, searches and consents, including recommending corrective action for the involved officer and/or referring the incident for administrative or criminal investigation. For each trooper, the supervisor shall track each violation or deficiency and any corrective action taken, to identify troopers who need repeated corrective action. All documentation from Section III.a.iii shall be submitted to the trooper and the supervisor's Troop Commander and maintained and preserved for no less than three years for investigatory and audit purposes.

b. **<u>Consent Searches</u>:**

  i. Within 60 days of the effective date of this Injunction, KHP shall update its policies to require that when a trooper seeks consent for a search, the trooper shall affirmatively inform the subject of his or her right to refuse and to revoke consent at any time, and ==document the subject's consent on a written form== which explains these rights. The written form shall include separate

7

      signature lines for the trooper to certify that the trooper has read and explained these rights to the subject, and for the subject to affirm that he or she understands the right to refuse and to revoke consent to the search.

ii. Within 60 days of the effective date of this Injunction, KHP shall update its policies to require that prior to conducting a search which is purportedly based on consent, a trooper shall notify a supervisor of the plan to conduct a consensual search and receive approval from the supervisor before conducting it. If a trooper's regular supervisor is not available, the KHP shall arrange for back-up coverage by another supervisor.

1. The KHP supervisor who reviews requests for approval to conduct a consensual search shall document, in a searchable, electronic format, the reasons why the request to conduct the consensual search was either granted or denied. As part of this documentation, the supervisor shall document requests that are legally unsupported, are in violation of KHP policy or this injunction, or that indicate a need for corrective action or review of any KHP policy, strategy, tactics or training.

2. The supervisor shall take appropriate action to address violations or deficiencies in troopers' requests to conduct consensual searches, including recommending corrective action for the involved officer.

iii. Within 60 days of the effective date of this Injunction, the KHP shall create and maintain a log which lists each request to conduct a vehicle search following an investigatory stop, the trooper who requested the search, the

      supervisor who reviewed the request, and the action taken on the request. The KHP shall submit these logs to the Court for review on a quarterly basis, by the last day of March, June, September, and December.

c. **<u>Reingagement for Additional Questioning:</u>**

    i. Within 60 days of the effective date of this Injunction, KHP shall update its policies to require that when a trooper seeks to re-engage with a driver or occupant of the vehicle to continue conversation after a traffic stop has concluded, the trooper shall affirmatively inform the subject of his or her right to refuse and to revoke consent at any time, and ==document the subject's consent on a written form== which explains these rights.

    ii. The written form shall include separate signature lines for the trooper to certify that the trooper has read and explained these rights to the subject, and for the subject to affirm that he or she understands the right to refuse and to revoke consent to continue the conversation.

    iii. ==Within 60 days of the effective date of this Injunction, the KHP shall create and maintain a log which lists each request to reengage a driver or occupant of a vehicle for additional questioning following an investigatory stop, the trooper who made the request, the response received, and resulting action taken. The KHP shall submit these logs to the Court for review on a quarterly basis, by last day of March, June, September, and December==.

d. **<u>Data Analysis and Reporting:</u>**

    i. The KHP shall develop a protocol for conducting a comprehensive analysis of the reports and data described in Sections III.a-c on at least a quarterly

basis and producing a report containing the results of that analysis. The report shall identify and examine trends in the reports and data identified above and present steps taken to correct any identified problems. The quarterly reports shall be publicly available, served on the parties in this case and filed with the Court.

ii. The first such quarterly report shall be prepared and served within 90 days of the effective date of this Agreement.

iii. Within 30 days of the effective date of this Injunction, the KHP shall submit a proposal regarding the analysis and format for this report to Plaintiffs for consideration. The parties shall then meet and confer within 30 days of receipt of the initial proposal, and present an agreed upon format for this analysis and report to the Court for approval.

e. **Training**:

i. Within 30 days of the effective date of this Injunction, the KHP shall create, and present to Plaintiffs for approval, a revised training curriculum and testing protocol regarding the facts and circumstances that may be considered in initiating, conducting, terminating and expanding an investigatory stop or detention; the difference between reasonable suspicion and mere speculation; and between knowing, voluntary and intelligent consent to engage with law enforcement, as opposed to seizure and/or mere acquiescence to police authority regarding extension of the encounter. The parties shall meet and confer regarding any objections to the proposed

curriculum and submit an agreed upon curriculum to the Court for approval no later than 45 days from the effective date of this Injunction.

ii. Within 60 days of the Court's approval of the curriculum, the KHP shall provide all officers with at least eight hours of training on facts and circumstances that may be considered in initiating, conducting, terminating and expanding an investigatory stop or detention; the difference between reasonable suspicion and mere speculation; and between knowing, voluntary and intelligent consent to engage with law enforcement, as opposed to seizure and/or mere acquiescence to police authority.

iii. No later than September 1, 2024, the KHP shall provide all officers with at least 16 hours of additional training, and at least ten hours thereafter on an annual basis, on these same topics.  The KHP shall institute a testing protocol which satisfies the Court that each trooper has mastered the required subjects.

f. **Supervision**: KHP supervisors shall be held accountable for providing close and effective supervision necessary to direct and guide troopers in complying with constitutional requirements.  To this end, within 90 days of the effective date of this Injunction, all troopers shall be assigned a single, consistent and clearly-identified supervisor.  ==Supervisors shall work the same days and hours as the troopers they are assigned to supervise==.

g. **Audio-Video Equipment:**

i. Within 60 days of the effective date of this Injunction, the KHP will maintain and operate audio recording and video cameras in all marked and

      unmarked vehicles that are assigned to routine patrol duties and shall promptly repair or replace any non-functioning equipment. Such recordings shall be maintained, reviewed by supervisors as appropriate and preserved for no less than three years for investigatory and audit purposes.

  ii. Within 60 days of the effective date of this Injunction, the KHP shall revise its policies and procedures to require:

    1. Activation of in-car cameras for all traffic stops or pursuits until the stop is concluded and the stopped vehicle departs, or until the officer's participation in the vehicle stop ends (whichever is later); and

    2. Activation of in-car cameras or audio recording to record requests for consent to search a vehicle, consent to deployment of drug-detection canines and consent to engage with a driver after the conclusion of a traffic stop, and all parts of the driver's response to said requests.

    3. Immediate notification of a supervisor when an event was not recorded and a full explanation thereof.

    4. Referral for investigation of any trooper who fails to properly make and preserve such recordings.

h. **<u>Performance Compliance Reviews (Audits):</u>** The KHP shall submit performance compliance reviews and audits every six months so that the Court can assess whether this injunction is effective in achieving constitutional policing.

      i. Within 60 days of the effective date of this Injunction, the parties will submit to the Court an agreed plan for conducting outcome assessments and compliance reviews and audits.

     ii. To the extent that the parties cannot agree on certain specifics of the proposed plan, they shall file an agenda of unresolved issues which the Court can address at a status conference.

    iii. To the extent that the Court determines that additional monitoring is necessary, it will appoint an independent monitor to help achieve this goal. If the appointment of a monitor is necessary, the KHP shall be liable for all fees and expenses of the monitor.

i. **Creation of Forms, Logs, Reports, and Other Administrative Documents as Required by this Injunction:**

      i. The KHP shall develop an initial draft of all forms, logs, reports, and other administrative documents that must be developed under the terms of this Injunction.

     ii. Except as otherwise noted in this Injunction, within 30 days from the effective date of this Injunction, the KHP shall submit a draft version of each required document to Plaintiffs for review and approval. The parties shall then meet and confer to discuss any necessary revisions. The parties shall submit the agreed upon documents to the Court for approval no later than 30 days after the initial draft is provided by KHP.

IV. **JURISDICTION**

    a. Upon entry of this Injunction the Court shall issue a final order resolving all claims in this case.

b. The Court retains jurisdiction over this action for the purposes of monitoring and ensuring compliance with this Permanent Injunction, and resolving any subsequent fee petitions or other post-judgment motions.

c. Nothing in this Injunction shall be construed as limiting Defendant's right to appeal the Court's prior <u>Memorandum and Order</u> (Doc. #539).

**IT IS SO ORDERED**.

Dated this __th day of September, 2023 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge