## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Blaine Franklin Shaw, *et al*. | |
| Plaintiffs, | |
| v. | Case No. 19-CV-01343 |
| Erik Smith, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |
| Mark Erich, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 20-CV-01067 |
| Erik Smith, in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.,* | |
| Defendants. | |

## MOTION TO STAY INJUNCTION PENDING APPEAL

Defendant Erik Smith moves for a stay of this Court's Permanent Injunction entered

November 20, 2023, pending the outcome of his appeal to the Tenth Circuit Court of Appeals.

*See* Fed. R. Civ. P. 62; Fed. R. App. P. 8(a)(1). A stay is appropriate "to preserve the status quo

pending appellate determination." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020-21

(10th Cir. 1996).

This Court should consider four factors in determining whether to grant a stay: "(a) the

likelihood of success on appeal; (b) the threat of irreparable harm if the stay or injunction is not

granted; (c) the absence of harm to opposing parties if the stay or injunction is granted; and (d) any risk of harm to the public interest." *Id.* at 1020; *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (explaining that "the factors regulating the issuance of a stay are generally the same" in district courts and courts of appeals). All four factors favor granting a stay here.

### *Colonel Smith can demonstrate a sufficient likelihood of success on appeal.*

To demonstrate a likelihood of success on appeal, Colonel Smith need not convince this Court that its decision was wrong. Rather, when the other stay factors are present, this factor is satisfied by "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Id.* (quoting *Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995)). In other words, a stay to preserve the status quo is appropriate when an appeal presents "serious legal questions." *Id.*

Colonel Smith's appeal presents at least four serious legal questions that warrant a stay of the injunction. *First*, there is a substantial dispute over whether Plaintiffs have standing. Plaintiffs have demonstrated no more than "speculative future harm," which is insufficient to sustain a claim for prospective injunctive relief. *See Collins v. Daniels*, 916 F.3d 1302, 1314-15 (10th Cir. 2019). The Supreme Court has held that to have standing, a plaintiff must demonstrate an injury that is "both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). A "threatened injury must be *certainly impending* to constitute injury in fact;" "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (emphasis and brackets in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

2

Thus, in *Lyons*, the Supreme Court held that a plaintiff who alleged he had been subjected to an unconstitutional police chokehold in the past lacked standing to obtain prospective injunctive relief. Although the Supreme Court acknowledged that "among the countless encounters between the police and the citizens of a great city such as Los Angeles, there will be certain instances in which strangleholds will be illegally applied," "it is surely no more than speculation to assert . . . that Lyons himself will again be involved in one of those unfortunate instances." 461 U.S. at 108.

The same reasoning applies here. Plaintiffs argue that because they continue to travel in and through Kansas, they may be stopped by KHP troopers in the future. But there are a number of problems with that argument. Plaintiffs have made no showing of a KHP practice of stopping vehicles in the absence of an actual traffic infraction. Thus, for Plaintiffs to be stopped in the future, the Court must assume that they will violate the law. *But see O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("We assume that respondents will conduct their activities within the law and so avoid . . . exposure to the challenged course of conduct said to be followed by petitioners."). Not only that, but the Court must assume that their potential traffic violations will be detected, and specifically by KHP troopers as opposed to other law enforcement officers not covered by the injunction.

Even then, the alleged injury for purposes of standing is not a potential traffic stop itself, but being subjected to either nonconsensual questioning after the stop as part of a "Two-Step" encounter or a post-traffic stop detention on the basis of insufficient reasonable suspicion. But it is "no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict

injury without provocation or legal excuse." *Lyons*, 461 U.S. at 108. There is no evidence that troopers perform the "Two-Step" in every traffic stop, or even in a substantial probability of traffic stops, they carry out. And if a Plaintiff were to be stopped by a KHP trooper and the trooper were to attempt to voluntarily question the Plaintiff following the conclusion of the traffic stop, a constitutional injury would occur only if the Plaintiff's consent to that questioning were coerced, which is particularly unlikely given that Plaintiffs—having brought this lawsuit— will surely be aware that they are free to leave. Likewise, the concern that a KHP trooper would not only stop one of the Plaintiffs but also (1) conclude that there is reasonable suspension to detain that Plaintiff following the conclusion of the traffic stop and (2) be wrong about the existence of reasonable suspension is incredibly implausible. These far-fetched fears come nowhere close to providing standing.

*Second*, the appeal also presents the serious legal question of whether injunctive relief is appropriate when Plaintiffs have demonstrated—at most—only a handful of detentions without reasonable suspicion. In *Rizzo v. Goode*, 423 U.S. 362 (1976), the district court granted an injunction based on 19 instances of police misconduct over the course of a year. *Id.* at 367-70. The Supreme Court reversed, holding this to be an "unwarranted intrusion by the federal judiciary into the discretionary authority committed to them by state and local law to perform their official functions" *Id.* at 366. Here, Plaintiffs have identified no more than five instances where KHP troopers detained drivers without reasonable suspicion over the course of five years—in other words, one unconstitutional detention per year. These isolated incidents, even more tenuously linked than the "statistical pattern" identified by the district court in *Rizzo*, *id.* at 375, are insufficient to justify a federal court's supervision of a state law enforcement agency. As

in *Rizzo*, "principles of equity . . . militate heavily against the grant of an injunction except in the most extraordinary circumstances," *id.* at 379, which do not exist here.

The inappropriateness of equitable relief is underscored by the fact that Plaintiffs have an adequate remedy at law. *Cf. O'Shea*, 414 U.S. at 502 (holding that plaintiffs had failed "to establish the basic requisites of the issuance of equitable relief" because "there are available state and federal procedures which could provide relief from the wrongful conduct alleged"). The Supreme Court has made clear that in order to obtain permanent injunctive relief, a party must demonstrate, among other things, "that it has suffered an irreparable injury" and "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006); *see also Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) ("To show a threat of irreparable harm, a plaintiff must demonstrate 'a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'"). If a motorist is detained without reasonable suspicion, that motorist has an adequate legal remedy in the form of a damages action under 42 U.S.C. § 1983. This Court questioned the adequacy of that remedy because of the existence of qualified immunity. But qualified immunity was held not to apply in *Vasquez v. Lewis*, 834 F.3d 1132 (10th Cir. 2016), and this Court held it inapplicable to Plaintiffs' damages claims here.

"Nor is it true that unless the injunction sought is available federal law will exercise no deterrent effect in these circumstances." *O'Shea*, 414 U.S. at 503. The Court's Memorandum and Order states that the alleged constitutional violations occurred "in the name of drug interdiction," Doc. #539 at 1, but the exclusionary rule provides KHP troopers with a strong motivation to ensure their actions comply with the Fourth Amendment, lest any drug offenders they apprehend

escape scot-free. Given the serious federalism and separation-of-powers concerns raised by equitable relief, the existence of adequate remedies at law, and the deterrent effect of the exclusionary rule, this Court's injunction warrants close scrutiny by the Tenth Circuit.

*Third*, this Court's holding that the "Kansas Two-Step" violates the Fourth Amendment raises serious legal questions in light of Supreme Court and Tenth Circuit precedent. This Court defined the "Kansas Two-Step" as "any attempt to end the purposes of the traffic stop and then reengage with the driver in an attempt to ask additional questions, without first informing the driver that the traffic stop is concluded and the driver does not need to answer additional questions." Doc. #582 at 3 n.2. Colonel Smith does not dispute that the "Two-Step" can be carried out in an unconstitutional matter. *See*, *e.g.*, *State v. Gonzalez*, 455 P.3d 419, 426 (Kan. App. 2019) (holding that an encounter was not consensual when the officer was leaning into the vehicle with his hands on the open window at the same time as he was asking the driver if he would be willing to answer more questions); *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007) ("[R]eturning a driver's documentation may not end the detention if there is evidence of 'a coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled.'" (quoting *United States v. Bustillos-Munoz*, 235 F.3d 505, 515 (10th Cir. 2000)). But to conclude that the "Kansas Two-Step" is categorically unconstitutional and must therefore be enjoined conflicts with governing precedent. The Tenth Circuit has on numerous occasions held "Two-Step" encounters to be consensual. *See, e.g.*, *United States v. Hunter*, 663 F.3d 1136, 1140, 1144-45 (10th Cir. 2011); *United States v. Velazquez*, 349 Fed. Appx. 339, 341-42 (10th Cir. 2009) (unpublished) (Gorsuch, J.); *Guerrero*,

472 F.3d at 786, 789; *United States v. West*, 219 F.3d 1171, 1174-1177 (10th Cir. 2000). The Kansas Supreme Court has reached the same conclusion. *See State v. Thompson*, 166 P.3d 1015, 1044-45 (Kan. 2007).

It is also well-established that officers are not required to inform drivers that they are free to leave for consent to be voluntary. *See Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996); *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999). And the Fourth Amendment certainly does not require that an officer obtain a driver's written consent to ask additional questions after the conclusion of a traffic stop, as this Court's injunction requires. This Court cannot hold officers to standards higher than the Constitution demands.

*Fourth*, the portion of this Court's injunction regarding consent searches raises serious legal questions given that it not only imposes conditions far beyond what the Fourth Amendment requires but also given that Plaintiffs made no showing of a pattern of unconstitutionally coerced consent searches. Not a single traffic stop identified in the Court's Memorandum and Order, Doc. #539, involved a search of a vehicle based on consent. Every time troopers requested consent to search, the driver refused, Doc. #539 at 13, 28, 31, 35, 40, belying any argument that the search requests were unconstitutionally coercive. Yet the Court's injunction requires KHP troopers to (1) affirmatively inform drivers of their right to refuse consent to a search of their vehicle and to revoke consent at any time, (2) obtain consent to search in writing, and (3) obtain supervisor approval before searching any vehicle based on consent. These requirements are not only unsupported by Fourth Amendment doctrine, *see Robinette*, 519 U.S. at 39-40, they are also not tied to any demonstrated constitutional violation. This violates the "well-settled principle that

an injunction must be narrowly tailored to remedy the harm shown." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Oklahoma Tax Comm'n*, 969 F.2d 943, 948 (10th Cir. 1992).

Given these significant legal questions, this Court's injunction warrants further review by the Tenth Circuit, and this Court should stay the injunction to preserve the status quo pending the outcome of that appeal.

### KHP will suffer irreparable harm if a stay is not entered.

Without a stay of the injunction, KHP will suffer irreparable harm while this case proceeds on appeal. To establish irreparable harm, a movant must demonstrate a significant risk that it will suffer an injury that monetary damages cannot later remedy. *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). The harm must be certain, great, actual, and not theoretical. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). There are at least three types of irreparable harm KHP will suffer if it must implement the injunction while this case is being reviewed: (1) accrual of unrecoverable compliance costs; (2) loss of state sovereignty in exercising traditional state police powers; and (3) interference with its ability to investigate crimes and enforce the law.

*First*, complying with the injunction will cause KHP to incur significant administrative costs that it could not later recoup. Broadly speaking, the Court's injunction directs KHP to develop and implement several new internal and external standard operating procedures; to draft new forms, reports, and logs; to create new curricula and testing protocols; and conduct supplemental training of troopers and supervisors. Particularly costly is the Court's order to develop "a protocol for conducting a comprehensive analysis of the reports and data" the Court has ordered KHP to collect. Doc. #582 at 10. KHP will have to hire additional staff to develop and

implement the protocols and systems necessary to comply with this mandate. Another financially burdensome provision is the requirement that KHP pay all fees and expenses of an independent monitor if one is appointed. *Id.* at 14. The injunction also imposes administrative burdens on troopers seeking to question drivers after the conclusion of a traffic stop or seeking consent to search a vehicle, requiring them to obtain written consent and maintain that documentation. *Id.* at 7-9. These are only some of the compliance costs KHP will incur.

Courts have held that a party's unrecoverable compliance costs with a lower court's order is sufficient to constitute irreparable harm. *See Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social & Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994) (plaintiffs established irreparable harm where sovereign immunity prevented them from recouping alleged insufficient Medicaid payments); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part) ("[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs."); *Kentucky v. Biden*, 57 F.4th 545, 555 (6th Cir. 2023) (three states and two local law enforcement offices demonstrated that they would suffer irreparable harm by incurring unrecoverable compliance costs in complying with mandate); *Texas v. United States Envtl. Prot. Agency*, 829 F.3d 405, 434 (5th Cir. 2016) ("No mechanism here exists for the power companies to recover the compliance costs they will incur if the Final Rule is invalidated on the merits."). Like the movants in these cases, KHP would be unable to recoup the significant costs it would incur in complying with the injunction that may later be invalidated or narrowed.

*Second*, the Court's injunction irreparably harms the KHP by encroaching on the State's sovereign interest in exercising its traditional police power. "Where, as here, the exercise of

authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Rizzo*, 423 U.S. at 362 (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)). Courts have consistently recognized that the federal government's intrusion into a state's sovereignty causes irreparable harm. *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001) (deeming loss of "sovereign interests" irreparable harm); *see also Texas*, 829 F.3d at 434 ("[T]he institutional injury to Texas from the inversion of the federalism principles enshrined in the Clean Air Act may constitute irreparable injury.").

*Third*, the Court's injunction irreparably harms KHP by interfering with its ability to investigate potential crimes. *See McClendon*, 79 F.3d at 1023-24 ("[T]he district court's procedure will interfere with law enforcement initiatives, prosecutorial discretion and state judicial power."). The injunction imposes a number of conditions on KHP troopers that even Plaintiffs admit go beyond the requirements of the Constitution, hamstringing KHP troopers from performing their duties as allowed by law. And the administrative burdens the injunction places on KHP will drain resources—both staff time and money—that KHP could focus on other law enforcement priorities. Put simply, these requirements will interfere with KHP's ability to enforce the law. And these law enforcement activities are not limited to drug interdiction; they include a number of other priorities, such as combating human trafficking.

Irreparable harm will result from the enforcement of the injunction.

### *A stay will not harm Plaintiffs.*

Granting a stay also would not result in any harm to the Plaintiffs. As discussed above, it is highly speculative that Plaintiffs will be subjected to either an unconstitutionally coercive

"Two-Step" encounter or a post-traffic stop detention without reasonable suspension by KHP troopers in the future. And the likelihood of either of those occurring while this case is on appeal is even smaller. After all, the most recent incident involving Plaintiffs (the Bosire stop) occurred in 2019, and none of the Plaintiffs have claimed to have had unconstitutional interactions with KHP since that time.

Further, it is far from clear that the injunction would directly prevent any harm to Plaintiffs. The injunction requires that KHP troopers obtain written consent before asking questions following the conclusion of a traffic stop, but Plaintiffs by now are no doubt aware of their right not to answer questions. And in the extremely unlikely event a KHP trooper were to detain one of the Plaintiffs based on a mistaken belief about the existence of reasonable suspicion, a damages action under 42 U.S.C. § 1983 would be a far more effective method of addressing those harms than the record-keeping and reporting requirements imposed by the injunction.

### Granting a stay is in the public interest.

Both the need for effective law enforcement and principles of federalism militate strongly in favor of a stay. There is an especially strong public interest in furthering effective law enforcement. *E.g.*, *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *United States v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010). In addition, "[f]ederalism and concern for local control concerning law enforcement, prosecution and adjudication, counsel in favor of an orderly resolution of the serious claims involved." *McClendon*, 79 F.3d at 1024. These concerns outweigh any speculation that the injunction might prevent a hypothetical Fourth Amendment violation during the pendency of the appeal, particularly given the availability of other remedies.

**CONCLUSION**

In light of all the stay factors and the substantial legal questions presented by Colonel Smith's appeal, this Court should grant a stay to preserve the status quo until the Tenth Circuit resolves the appeal.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS KOBACH

*/s/ Stanley R. Parker*
Stanley R. Parker, KS #10971
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Telephone: 785-368-8423
Fax: 785-291-3767
Email: stanley.parker@ag.ks.gov
*Attorney for Defendant Erik Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2023, the above document was filed and served using the Court's CM/ECF system, which sent electronic notice to all counsel of record.

*/s/ Stanley R. Parker*
Stanley R. Parker