## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLAINE FRANKLIN SHAW, *et al.*, <br><br>   *Plaintiffs*, <br><br>v. <br><br>ERIK SMITH in his official capacity as the Superintendent of the Kansas Highway Patrol, *et al.*, <br><br>   *Defendants*. | **Case No. 19-1343-KHV-GEB** |
| MARK ERICH, *et al.*, <br><br>   *Plaintiffs,* <br><br>v. <br><br>ERIK SMITH, *KHP Superintendent,* <br><br>   *Defendant.* | **Case No. 20-1067-KHV-GEB** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO STAY INJUNCTION PENDING APPEAL**

Superintendent Smith's Motion to Stay Injunction Pending Appeal (Doc. #586) consists entirely of previously rejected arguments and vague assertions lacking evidentiary support. Because the Court's ruling was unequivocal, balanced, and factually and legally sound, none of Smith's arguments are meritorious, and the motion should be denied.

## LEGAL STANDARD

When considering a motion to stay an order granting an injunction pending appeal, courts consider the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.[1]

Of these factors, likelihood of success on the merits and irreparable harm are the most critical.[2] The party seeking a stay must demonstrate that the circumstances warrant the Court's exercise of judicial discretion.[3] The Tenth Circuit reviews the grant of a permanent injunction for abuse of discretion, overturning only "arbitrary, capricious, whimsical, or manifestly unreasonable" decisions.[4]

## ARGUMENT

Smith has not made an adequate showing on any of the four factors necessary to stay enforcement of the injunction. His motion should therefore be denied.

### I. The Superintendent is not likely to succeed on the merits of his appeal.

Smith offers four arguments on his likelihood of success, but none withstand scrutiny.

---

[1] *EEOC v. UPS Ground Freight, Inc.*, 344 F. Supp. 3d 1256, 1265 (D. Kan. 2018) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).
[2] *Nken v. Holder*, 556 U.S. 418, 434 (2009).
[3] *Id.* at 433–34.
[4] *United States v. Uintah Valley Shoshone Tribe*, 946 F.3d 1216, 1223 (10th Cir. 2020) (internal quotation marks omitted); *see also Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1011 (10th Cir. 2018); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009).

### A. As the Court has repeatedly ruled, Plaintiffs have standing.

The Court has already determined at multiple stages in this case that Plaintiffs possess standing to obtain injunctive relief. The Court first considered standing in the Superintendent's motion to dismiss and rejected his position, rightly ruling that *O'Shea*'s standing analysis "merely applied the 'real and immediate threat' test to the plaintiffs' claims."[5] *O'Shea* did not hold that plaintiffs categorically lack standing for injunctive relief based on anticipated future encounters with law enforcement.[6] The Superintendent again raised standing at summary judgment, in his closing argument, and in his post-bench trial Proposed Findings of Fact and Conclusions of Law, relying on the same case law he does now.[7] Each time, the Court rejected those arguments.[8] Smith offers no new arguments that would call the Court's prior rulings into question.

These prior rulings are correct and will be affirmed. Under established law, a plaintiff demonstrates standing to sue for injunctive relief by showing a "realistic threat" that he will be wronged similarly in the future.[9] A future injury need not be certain to establish standing; rather, "[e]ven a small probability of injury is sufficient to create a case or controversy . . . ."[10] Moreover, courts have consistently found standing to sue for prospective relief against law enforcement profiling practices even where the statistical likelihood of the plaintiff being stopped again was unknown or low.[11] The fact that a plaintiff has experienced the harm sought to be enjoined only

---

[5] Doc. #36 at 15 n.8.
[6] *Id.* (distinguishing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).
[7] Doc. #296 at 33–39; Doc. #567 at 853:1-7, 874:10–875:6; Doc. #531 at 20–25.
[8] Doc. #355; Doc. #539 at 56–59.
[9] *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 109 (1983); *Harris v. Champion*, 51 F.3d 901, 907 (10th Cir. 1995) (citing *Lyons*), *abrogated on other grounds by statute*, Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, 96 Stat. 25, *as recognized in Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).
[10] *Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) (quotation omitted)).
[11] *See, e.g.*, *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011) (finding standing to challenge stop policy where "likelihood that any particular named Plaintiff will again be stopped in the same way may not be high"); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 752 (N.D. Ill. 2015) (holding that "Plaintiffs have alleged ongoing constitutional violations pursuant to an unconstitutional policy or practice in tandem with allegations . . . which lead[]

once in the past does not undermine their standing to sue for prospective relief.[12]

Furthermore, Smith's claim that Plaintiffs lack standing because they have not demonstrated a KHP practice of stopping vehicles absent an actual traffic infraction is belied by the evidence adduced at trial. The Court found that Mr. Erich and Ms. Maloney did not commit a traffic infraction at all; that video evidence did not credibly substantiate Trooper McCord's claim that Daniel Kelly was following a vehicle too closely; and that although the Court could not determine whether Suzanne Dunn unquestionably committed a traffic infraction, her stop was, at minimum, "exceedingly pretextual."[13] Regardless, whether an actual traffic infraction occurs prior to a roadside detention is beside the point—the issue here is the KHP's practice of unconstitutionally extending roadside detentions based on residency and travel plans.

As Plaintiffs have maintained and the Court has consistently found, Plaintiffs possess standing for injunctive relief.

### B. Injunctive relief is the only appropriate form of relief for a state agency that violates the Constitution as a practice.

Next, Smith argues that injunctive relief is inappropriate because the evidence is insufficient for an injunction based on *Rizzo v. Goode*, 423 U.S. 362 (1976). The Superintendent

---

to the reasonable inference of the likelihood that CPD officers will unlawfully stop and frisk Plaintiffs in the future"); *Md. State Conf. of NAACP Branches v. Md. Dep't of State Police*, 72 F. Supp. 2d 560, 564 (D. Md. 1999) (distinguishing *Lyons*, because plaintiffs had "allege[d] a pattern and practice of racially discriminatory stops, [and] 'clearly . . . made a reasonable showing that there was a pattern and practice of stops by the Maryland State Police based upon race'" but *Lyons* did not so allege); *Floyd v. City of New York* ("*Floyd II*"), 959 F. Supp. 2d 540 (S.D.N.Y. 2013) (granting injunction to reform NYPD's stop and frisk program, even though the total number of stops and frisks each year was small compared to the total population of New York City).

[12] *See, e.g.*, *Aid for Women v. Foulston*, 441 F.3d 1101, 1110 (10th Cir. 2006) (finding plaintiffs alleged realistic threat of a future constitutional injury absent no previous enforcement); *Leadholm v. City of Commerce City*, No. 16-CV-02786-MEH, 2017 WL 1862313, at *8 (D. Colo. May 9, 2017) (one occasion of excessive force during traffic stop was sufficient to establish standing); *Roe v. City of New York*, 151 F. Supp. 2d 495, 503 (S.D.N.Y. 2001) ("[T]here is no per se rule requiring more than one past act . . . as a basis for finding a likelihood of future injury"); *Floyd v. City of New York* ("*Floyd I*"), 283 F.R.D. 153, 170 (S.D.N.Y. 2012) ("Even [a] single stop, in light of the tens of thousands of facially unlawful stops, would likely confer standing."). Indeed, the Superintendent has acknowledged as much. Doc. #356 at 12:15–13:11.

[13] Doc. #539 at 21–23, 30 n.35, 34 n.39.

cited *Rizzo* extensively during his closing argument and his post-trial briefing, making many of the same arguments he does now.[14] In finding for Plaintiffs, the Court rejected those arguments.[15] Smith offers no reason why the Tenth Circuit is likely to find an abuse of discretion.

Smith seeks to create a bright line rule requiring over 19 instances of misconduct in order for a court to grant prospective relief, but *Rizzo* articulated no such rule. In *Rizzo*, the district court identified 20 unrelated instances of unconstitutional police misconduct over a year.[16] The district court "found that the evidence did not establish the existence of any policy on the part of the named petitioners to violate the legal and constitutional rights of the plaintiff classes,"[17] and "no affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners -- express or otherwise -- showing their authorization or approval of such misconduct."[18] Nevertheless, the district court took it upon itself to fashion "prophylactic procedures for a state agency designed to minimize this kind of misconduct on the part of a handful of its employees."[19] The Supreme Court ultimately rejected the district court's prophylactic injunction because it was untethered to any particular unconstitutional policy or practice by Philadelphia law enforcement, or even any particular constitutional right.

Here, the situation is entirely different. Plaintiffs have proven that the KHP engages in a practice of unconstitutional behavior that is widespread among its troopers, not merely "a small,

---

[14] Doc. #567 at 853:1-5, 867:7–868:18, 873:23, 874:25–875:6, 896:20, 897:11-13; Doc. #531 at 22–25.
[15] *Compare, e.g.*, Doc. #567 at 868:5-10 ("Supreme Court ruled there's a difference between officer conduct and Constitutional violations by government officials. There must be an affirmative link, causal link. In fact, the affirmative link language that you probably heard frequently, I think the genesis of it is *Rizzo* case . . . .") *with* Doc. #539 at 57 ("Plaintiffs have demonstrated an injury in fact by establishing violations of their Fourth Amendment constitutional rights, and have shown a causal connection between their injuries and the complained-of conduct by Jones.").
[16] *Rizzo*, 423 U.S at 367–68, 373.
[17] *Id.* at 368-69.
[18] *Id.* at 371.
[19] *Id.* at 378.

unnamed minority of policemen" engaging in separate, unrelated incidents of misconduct.[20] Specifically, KHP troopers target out-of-state drivers for prolonged roadside detentions by inappropriately relying on residency and travel plans in violation of the Fourth Amendment.[21] The evidence for this pattern is not limited to testimony concerning specific individual troopers, but also includes testimony from the Superintendent himself regarding a systemic practice attributable to his conduct as agency head, bolstered by expert statistical analysis of KHP activities.[22] The Superintendent encourages and trains his troopers to engage in pretextual traffic stops of out-of-state motorists and to use the manipulative Kansas Two-Step maneuver to trick those individuals into giving up additional information, which troopers then use to justify prolonged detentions for canine sniffs.[23] Plaintiffs have also demonstrated that the Superintendent allows troopers to violate *Vasquez v. Lewis*, 834 F.3d 1132 (10th Cir. 2016) with impunity[24] and, until recently, did not even implement a policy requiring his troopers to document detention decisions.[25] This documentary failure means that supervisors never reviewed detention decisions, further contributing to the ongoing pattern of constitutional abuses without consequence. Even worse, at trial, the Superintendent offered no evidence of compliance with the new policy or meaningful efforts to discipline troopers adjudged to have violated constitutional rights.[26]

Because the evidence showed that Plaintiffs' experiences were part of a broader KHP effort to target certain motorists and attempt to gain access to their vehicles absent sufficient reasonable suspicion, *Rizzo* does not provide a useful comparison here. Rather, this case more closely

---

[20] *Id.* at 372.
[21] Doc. #539 at 44–45, 62–63.
[22] *Id.* at 11–12, 47–50, 56, 63–64.
[23] *Id.* at 4–8.
[24] *Id.* at 58 ("It is also undisputed that Jones permits troopers to consider a driver's out-of-state residence and travel plans as—at the very least—'a' factor contributing to reasonable suspicion.").
[25] *Id.* at 46–49.
[26] *Id.* at 16, 30, 35; *see also id.* at 49.

resembles *Allee v. Medrano*, 416 U.S. 802, 815 (1974), where the Supreme Court identified a "persistent pattern" of unconstitutional law enforcement intimidation that "flowed from an intentional, concerted, and indeed conspiratorial effort to deprive the [plaintiff] organizers of their First Amendment rights."[27] Integrating *Allee* and *Rizzo*, courts have held that "[s]pecific findings of a persistent pattern of misconduct supported by a fully defined record can support broad injunctive relief" against a state law enforcement agency.[28] Plaintiffs have established just such a persistent pattern of constitutional violations here, and *Rizzo* poses no obstacle to the relief ordered.

Smith further argues that injunctive relief is inappropriate because those whose rights have been violated can file a damages action under 42 U.S.C. § 1983. But a damages suit is not an adequate remedy at law here, as the Court has repeatedly ruled.[29] As detailed in previous briefing,[30] damages suits are insufficient for a wide variety of reasons: victims may not know their rights were violated, may not be able to find representation, or may not be willing to bring and pursue such a case. A damages award is a remote possibility that does not deter KHP troopers from engaging in unconstitutional behavior, as the KHP's post-*Vasquez* behavior revealed.[31] Ultimately, Smith's suggestion that Plaintiffs can file yet another § 1983 case if they are stopped again seeks to shift the KHP's burden of complying with the Constitution to Plaintiffs and other motorists.

Smith suggests that the Court erred in determining that a damages action is an inadequate remedy because of qualified immunity, which he says the Court held did not apply to Plaintiffs' damages claims here.[32] But the Court's rulings on qualified immunity are beside the point. The

---

[27] *Allee*, 416 U.S. at 814–15.
[28] *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) (internal quotation marks omitted); *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 3996453, at *6 (D. Ariz. July 26, 2016), *aff'd sub nom. Melendres v. Maricopa Cnty.*, 897 F.3d 1217 (9th Cir. 2018).
[29] *See, e.g.*, Doc. #539 at 66–68; Doc. #550 at 2.
[30] Doc. #358 at 20–22.
[31] *Lankford v. Gelsteon*, 364 F.2d 197, 202 (4th Cir. 1966) ("[T]he lesson of experience is that remote possibility of money damages serves no deterrent to future police invasions.") (approvingly cited in *Allee*, 416 U.S. at 816 n.9).
[32] Doc. #586 at 5.

fact that qualified immunity did not apply in *Vasquez* or to Plaintiffs' damages claims here does not mean that a court is categorically precluded from finding that the doctrine applies in future cases brought by motorists against KHP troopers. Qualified immunity is a situation-specific inquiry that turns on the individual facts of each case.[33] Here, both the Tenth Circuit and the Court found that the facts of the Shaw stop were close enough to those in *Vasquez*—a decision directed at the KHP itself—and *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997), such that qualified immunity did not apply to Trooper Schulte.[34] As to the Bosire stop, the Court found Trooper McMillan was either "plainly incompetent" or that he "knowingly violated the law" based at least in part on his blatant admission—caught on dash camera video—that he lacked reasonable suspicion to detain Mr. Bosire for a canine sniff, yet proceeded to do so anyway.[35] It seems highly unlikely that other troopers would make similar confessions. At any rate, qualified immunity is not the only reason damages suits are an insufficient remedy, as explained above.

Finally, Smith's contention that the exclusionary rule provides KHP troopers with sufficient incentive to comply with the Constitution is belied by trial testimony and evidence demonstrating otherwise, particularly with respect to the KHP's post-*Vasquez* approach. A motion to suppress cannot serve as a remedy if the motorist—like Plaintiffs and other trial witnesses—is not prosecuted.[36] And even if prosecution ensues, "[a]Fourth Amendment violation is fully accomplished by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can cure the invasion of the defendant's rights which he has already

---

[33] *See, e.g.*, *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1308 (10th Cir. 2015).
[34] *Shaw v. Schulte*, 36 F.4th 1006, 1016 (10th Cir. 2022); Doc. #460 (citing Doc. #452); Doc. #452 (noting, among other things, that no evidence materialized at trial that would materially alter the Tenth Circuit's prior analysis).
[35] Doc. #512; Doc. #539 at 28.
[36] *Lankford*, 364 F.2d at 202 ("It would be a grotesque irony if our courts protect only against the unlawful search which actually uncovers contraband (by the exclusionary rule), while offering no relief against an admittedly unlawful pattern and practice affecting hundreds of innocent homeowners.").

suffered."[37] Despite cases where courts suppressed improperly obtained evidence, the KHP continues to engage in roadside detentions absent reasonable suspicion, often employing the Kansas Two-Step.[38] As the Tenth Circuit held, "whether to apply the exclusionary rule in a given case turns on whether such application will be an effective deterrent against future Fourth Amendment violations"[39]—and the rule appears to have little deterrent effect on KHP troopers.

The Court rightly found that remedies at law are not sufficient to deter the KHP from continuing its systemic Fourth Amendment violations.[40] A cycle of constitutional violations followed only by repeated damages awards or fighting to suppress evidence if criminally charged is a futile outcome that the equitable relief authorized in § 1983 is intended to avoid.[41] Section 1983 works to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[42]

For these reasons, Smith will not succeed on the merits of his appeal in this regard.

---

[37] *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998) (cleaned up) (quoting *United States v. Leon*, 468 U.S. 897, 906 (1984)); *see also Easyriders*, 92 F.3d at 1501.

[38] *See, e.g.*, *State v. Gonzalez*, 57 Kan. App. 2d 510, 513 (2019); First Am. Compl., Doc. #7, Exs. 2, 3, 4, 5 (collected Kansas state court cases where evidence seized by KHP troopers was suppressed because troopers improperly relied on driver's travel plans to or from states with legalized cannabis).

[39] *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018).

[40] *See* Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ("Probably the most common method of determining that there is no adequate legal remedy is by showing that plaintiff will suffer irreparable harm if the court does not intervene and prevent the impending injury."); *cf. Steagald v. United States*, 451 U.S. 204, 215–16 (1981) ("The Government recognizes the potential for such abuses, but contends that existing remedies—such as motions to suppress illegally procured evidence and damages actions for Fourth Amendment violations—provide adequate means of redress. We do not agree. As we observed on a previous occasion, '[t]he [Fourth] Amendment is designed to prevent, not simply to redress, unlawful police action.'" (footnote, internal quotation marks, and citation omitted)).

[41] *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress.").

[42] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).

### C. The Court's ruling concerning the Kansas Two-Step is not improper.

Smith's argument concerning the Kansas Two-Step likewise misses the mark. As an initial matter, he mischaracterizes the injunction terms. The Court did not "conclude that the 'Kansas Two-Step' is categorically unconstitutional"; rather, it held that the KHP engages in a pattern or practice of using the Two-Step in a manner that violates the Fourth Amendment.[43]

Smith's attempt to hide behind a shield of prior rulings on the Two-Step is unpersuasive for multiple reasons.[44] First, those cases concerned motions to suppress in individual criminal cases that did not reveal the true extent of the KHP's constitutional violations through the use of the Two-Step.[45] In contrast, the evidence at trial demonstrated a practice of using the Two-Step to engage in improper behavior—for instance, seeking destination or state of residency information that the KHP knows its troopers are not permitted to rely on for reasonable suspicion to detain motorists for canine sniffs.[46] KHP troopers did, in fact, employ the Two-Step against Plaintiffs and others in such a way that a reasonable driver would not have felt free to leave.[47]

Smith's argument completely ignores the practice of unconstitutional activity revealed at trial. Based on that evidence, the Court found that it is the *manner* in which the KHP conducts the Two-Step that is problematic,[48] and the injunction terms concerning consent are intended to remedy the specific constitutional harms arising from the KHP's particular use of the Two-Step. Smith complains that the injunction goes beyond what the Constitution demands in requiring

---

[43] Doc. #582 at 75; *see also* Doc. #582 at 1, 2.
[44] Doc. #586 at 6–7 (citing *United States v. Hunter*, 663 F.3d 1136, 1140, 1144–45 (10th Cir. 2011); *United States v. Velazquez*, 349 F. App'x 339, 341–42 (10th Cir. 2009) (unpublished) (Gorsuch, J.); *United States v. Guerrero*, 472 F.3d 784, 786, 789 (10th Cir. 2007); *United States v. West*, 219 F.3d 1171, 1174–77 (10th Cir. 2000); *State v. Thompson*, 166 P.3d 1015, 1044–45 (Kan. 2007)).
[45] *Hunter*, 663 F.3d at 1141; *Velazquez*, 349 F. App'x at 341; *Guerrero*, 472 F.3d at 786; *West*, 219 F.3d at 1175–76; *Thompson*, 166 P.3d at 771.
[46] Doc. #539 at 9, 13, 17–18, 33, 38, 42.
[47] *Id.* at 15 (Schulte), 17–18 (Rohr), 26 n.32 (Rohr), 33 (McCord), 34–35 (Rule), 42 (Proffitt).
[48] *Id.* at 50–53.

troopers to inform drivers that they are free to leave, but this argument glosses over the KHP's historical disregard for the law and the steps the Court determined are necessary to bring the KHP back in line. In fashioning an equitable remedy, a court may go beyond the Constitution's minimum requirements if it determines such steps are necessary to cure the underlying constitutional violation.[49] "'[I]n federal equity cases[,] the nature of the violation' of a federal right 'determines the scope of the remedy' available."[50] "Once a constitutional violation is established, remedial decrees may require actions not independently required by the Constitution if those actions are, in the judgment of the court, necessary to correct the constitutional deficiencies."[51] That is precisely what the Court has done here: the injunction terms regarding written consent are intended to remedy the KHP's coercive use of the Two-Step that results in consent that is not knowing, intelligent, or voluntary. Nothing about the Court's order constitutes an abuse of discretion in this regard, and Smith cannot show that the Tenth Circuit will find otherwise.

> D.  **The injunction provisions on consent searches directly address the KHP's practice of constitutional violations.**

Similarly, the injunction provisions concerning consent searches are intended to remedy the KHP's unconstitutional use of the Two-Step. A stricter remedy is justified where a state actor not only engages in a practice of violating the Fourth Amendment, but also has a penchant for

---

[49] *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (courts have broad remedial powers to address state officials' intransigent refusal to implement constitutional requirements); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (upholding injunctive relief where "the police chief has expressed her intent to continue to use the program until a judge stops her"); *Duran v. Carruthers*, 678 F. Supp. 839, 846–47 (D.N.M. 1988) ("[T]he Tenth Circuit has directly applied to institutional reform litigation the vital principle that a federal court's equitable powers are inherently sufficiently broad to allow federal courts to fashion effective injunctive relief to cure federal constitutional violations"), *aff'd,* 885 F.2d 1492 (10th Cir. 1989).
[50] *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017) (quoting *Rizzo*, 423 U.S. at 378; internal quotation marks omitted).
[51] *Duran*, 678 F. Supp. at 847 (citing *Green v. Cnty. Sch. Bd.*, 391 U.S. 430, 438 (1968); *Milliken v. Bradley,* 433 U.S. 267 (1977); *Gilmore v. City of Montgomery,* 417 U.S. 556 (1974)).

disregarding Tenth Circuit precedent and the Constitution.[52] The injunction terms are thus narrowly tailored to the KHP's individual situation and the evidence the Court heard at trial. Moreover, the injunction provisions Smith now complains of are of the KHP's own making, as KHP repeatedly failed to provide the Court with alternatives, despite numerous opportunities.[53]

In sum, Smith has not shown more than "more than a mere possibility of relief."[54] None of these rehashed arguments are likely to succeed on appeal, and a stay is not warranted.

## II.   The KHP's claims of irreparable harm are total conjecture.

As with likelihood of success, Smith must show more than a "possibility of irreparable injury,"[55] but he has not managed even that. The Court has already ruled that the balance of hardships favors an injunction.[56] Smith does not point to any material change in circumstances since then that would justify a stay. Instead, he describes three purported types of irreparable harm without providing any evidence that would support what is otherwise pure attorney argument and speculation. The Court should reject these unsupported assertions of "burden."

<u>Administrative costs.</u> Despite the Court already rejecting his unsubstantiated complaints about administrative costs,[57] Smith continues to dispute the idea that the KHP should expend funds to remedy its unconstitutional practices. His claims concerning costs are unmoored from any sort of evidence. Smith asserts that "KHP will have to hire additional staff to develop and implement the protocols and systems necessary to comply" with the Court's order, but he provides no

---

[52] *See, e.g.*, *Swann*, 402 U.S. at 15; *Mills*, 571 F.3d at 1312; *Safe Streets Alliance*, 859 F.3d at 902; *Duran*, 678 F. Supp. at 846–47.
[53] *Cf.* Doc. #550 at 2 (overruling KHP's objections that the proposed injunction is "unduly burdensome" and not "narrowly tailored" because the KHP failed to propose any alternatives that would be less burdensome or more narrowly tailored).
[54] *Nken*, 556 U.S. at 434 (internal quotation marks and alterations omitted).
[55] *Id.* at 434–35.
[56] Doc. #539 at 68–71.
[57] Doc. #550 at 2 ("The Court also overrules any objections that the proposed injunctive relief is 'unduly burdensome' or is not 'narrowly tailored' to the violations at issue here. Defendant has not proposed any alternatives which would be less burdensome, or more narrowly tailored, yet achieve substantially the same goals.").

description of any proposed protocol or system that necessitates hiring additional staff, nor does he explain why the KHP's current information systems are inadequate for the job.[58] Additionally, Smith's gripe about an independent monitor is entirely speculative, as the Court has not yet decided that one is necessary, much less appointed one.[59] Finally, his claim of "administrative burdens" on troopers of additional documentation has nothing to do with financial costs; instead, it simply amounts to a complaint about having to do more work.

*State sovereignty.* Smith contends that the injunction would irreparably harm the KHP by "encroaching on the State's sovereign interest,"[60] relying on cases that have nothing to do with violations of individual federal constitutional rights.[61] This argument disregards the Supremacy Clause and basic concepts of federalism. Decades of jurisprudence affirm that requiring state actors to comply with the Constitution—and particularly the Bill of Rights as applied to state law enforcement—does not violate state sovereign interests.[62] Indeed, adopting Smith's position would render § 1983—which Congress enacted specifically to address state actors[63]—null and void.

---

[58] Doc. #586 at 8–9.
[59] Doc. #582 at 14 ("*To the extent that the Court determines that additional monitoring is necessary*, it will appoint an independent monitor to help achieve this goal. *If the appointment of a monitor is necessary*, the KHP shall be liable for all fees and expenses of the monitor." (emphases added)). Indeed, the KHP could save itself the costs of a monitor by dedicating itself to rectifying its past constitutional violations through genuine, good faith compliance with the Court's injunction.
[60] Doc. #586 at 9–10.
[61] *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001) (affirming preliminary injunction in favor of the State of Kansas concerning the National Indian Gaming Commission's decision that a thirty-five acre tract of land in Kansas constituted "Indian lands" within the meaning of the Indian Gaming Regulation Act); *Texas v. U.S. EPA*, 829 F3d 405 (5th Cir. 2016) (granting motion to stay EPA's imposition of its own plans for controlling regional haze over Oklahoma and Texas's plans under the Clean Air Act).
[62] *See, e.g.*, *Ex parte Young*, 209 U.S. at 155–56 (federal courts may enjoin state officials to conform their conduct to federal law); *O'Rourke v. Norman*, 875 F.2d 1465, 1469 n.10 (10th Cir. 1989) ("In the Constitution, the power to regulate criminal law has been left to the individual States . . . . *All the federal government can do is insure that the States do not, via police powers, . . . deprive any citizen of rights guaranteed by the federal Constitution*." (internal quotation marks omitted; emphasis added)). Federal courts continue to enjoin ongoing practices of unconstitutional stops and searches. *E.g.*, *United States v. Colorado City*, No. 12-8123, 2017 WL 1384353, at *2 (D. Ariz. Apr. 18, 2017); *Melendres v. Arpaio* (*Melendres II*), 989 F. Supp. 2d 822 (D. Ariz. 2013); *Floyd II*, 959 F. Supp. 2d 540.
[63] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (Section 1983 applies against anyone acting "under color of *state* law" (emphasis added)).

*Interference with the KHP's ability to investigate potential crimes.* As with his other arguments, Smith offers only total conjecture and pure generalities when asserting that the injunction will interfere with law enforcement activities.[64] His notion that the injunction—which aims to ensure that the KHP complies with the Constitution—"interfere[s] with KHP's ability to enforce the law"[65] speaks volumes on the KHP's recalcitrance. As KHP personnel acknowledged on the stand, troopers must conduct themselves in compliance with the Constitution.[66] If Smith's position is that KHP troopers are incapable of investigating crimes without violating the Constitution, then the agency's problems go even deeper than this suit has revealed.

Because Smith has failed to satisfy both the likelihood of success and irreparable harm factors, the Court need not proceed with any further analysis before denying his motion.[67] Nevertheless, Plaintiffs address the remaining stay factors.

### III.   A stay of the injunction poses a harm to Plaintiffs.

Smith's assertion that Plaintiffs will not be harmed by a stay is incorrect. Each testified at trial that they continue to travel on interstate highways through Kansas.[68] In fact, Mr. Bosire recently drove to Colorado from his home in Wichita to visit his daughter for the holidays.[69] He continues to experience anxiety on such trips without an injunction in place. A stay would mean a delay in justice for Plaintiffs, who have patiently endured—and continue to endure—years of litigation and negative effects from their encounters with the KHP. Furthermore, the injunction

---

[64] *Cf.* Doc. #539 at 5 n.11 ("The KHP has presented no evidence that its war on motorists is necessary for effective enforcement of drug laws, or even that such law enforcement tactics are effective . . . .").
[65] Doc. #586 at 10.
[66] *See, e.g.*, Doc. #570 at 449:19–450:1, 515:2-5 ("Q. And KHP troopers have an obligation by KHP policy to conduct searches and arrests and seizures in compliance with both the federal and the state constitutions, correct? A. Yes.").
[67] *See Nken*, 556 U.S. at 435 ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."); *United States v. Various Tracts of Land*, 74 F.3d 197, 198 (10th Cir. 1996) (denying motion for stay pending appeal for lack of likelihood of success and irreparable harm, without further consideration of harm to other parties or public interest).
[68] Doc. #539 at 8, 20–21, 30.
[69] Ex. A, Decl. of Joshua Bosire, ¶¶ 2-3.

13

benefits not just Plaintiffs, but all motorists driving on Kansas interstates. Conversely, a delay in correcting the KHP's unconstitutional practice poses harm not just to Plaintiffs, but to all motorists. And as described above, damages suits for any constitutional violations that occur during the pendency of the appeal will not sufficiently compensate those whose rights are violated.[70]

## IV. The public interest favors immediate enforcement.

The public interest does not favor a stay—quite the opposite. Preventing constitutional violations is "always in the public interest,"[71] and the Court's injunction aims to achieve just that. Again, Smith provides no evidence to support his claim that the injunction would prevent the KHP from engaging in effective law enforcement. Instead, Plaintiffs would suggest that law enforcement cannot be effective if it does not comply with the Constitution.[72] Correcting its constitutional deficiencies is the best and most effective way for the KHP to fulfill its mission.

Finally, the "principles of federalism" on which Smith so heavily relies militate against a stay.[73] "When a plaintiff seeks to enjoin the activity of a government agency, . . . his case must contend with 'the well-established rule that the Government has traditionally been granted the

---

[70] *See supra* Section I.B.
[71] *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019); *see also Awad*, 670 F.3d at 1132 (the public has a "profound and long-term interest in upholding an individual's constitutional rights").
[72] Statement of Interest, U.S. Dep't of Justice, Civil Rights Division, *Floyd v. City of New York*, No. 08-cv-1034, Doc. #365 (S.D.N.Y. June 12, 2013) ("[T]here is significant evidence that unlawfully aggressive police tactics are not only unnecessary for effective policing, but are in fact detrimental to the mission of crime reduction. Officers can only police safely and effectively if they maintain the trust and cooperation of the communities within which they work, but the public's trust and willingness to cooperate with the police are damaged when officers routinely fail to respect the rule of law."); *see also* J. McDevitt, A. Farrell, & R. Wolff, COPS Evaluation Brief No. 1: Promoting Cooperative Strategies to Reduce Racial Profiling 21 (Office of Cmty. Oriented Policing Servs., U.S. Dep't of Justice 2008) ("Being viewed as fair and just is critical to successful policing in a democracy. When the police are perceived as unfair in their enforcement, it will undermine their effectiveness.").
[73] 17A Fed. Prac. & Proc. Juris. § 4231 (3d ed.) ("The effect *of Ex parte Young* is to bring within the scope of federal judicial review *actions that might otherwise escape such review, and to subject the states to the restrictions of the United States Constitution that they might otherwise be able safely to ignore*." (emphasis added)); 17A Moore's Fed. P. Civil 123.40 ("Thus, when a plaintiff alleges a continuing or future violation of federal law, the federal government's interest in ensuring compliance with federal law predominates, and a federal court has jurisdiction to enjoin the violation.").

widest latitude in the dispatch of its own internal affairs.'"[74] The KHP has been given latitude to conduct its own internal affairs, but not only did it fail to course-correct post-*Vasquez*, it deliberately chose not to abide by the Tenth Circuit's ruling.[75] Time and again, the KHP has demonstrated its flagrant disregard for the Tenth Circuit's unambiguous order to cease and desist its unconstitutional practice of improperly targeting motorists based on travel plans. Far from counseling against a stay, federalism obliges the KHP to comply with the Constitution—the supreme law of the land—and authorizes this Court to enforce compliance when confronted with state officials' blatant intransigence.[76]

## CONCLUSION

For the foregoing reasons, Superintendent Smith has not met any of the four factors required for a stay. Plaintiffs respectfully request the Court deny his motion to stay enforcement of its permanent injunction.

Dated: January 19, 2024

        Respectfully submitted by,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF KANSAS**
s/ Kunyu Ching
Sharon Brett    KS # 28696
Kunyu Ching    KS # 29807
10561 Barkley St., Ste. 500
Overland Park, KS 66212
Phone: (913) 490-4110
Fax: (913) 490-4119
sbrett@aclukansas.org
kching@aclukansas.org

---

[74] *Rizzo*, 423 U.S. at 378–79 (internal citation and quotation marks omitted).
[75] Doc. #539 at 43–46.
[76] *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.")).

        **AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
        Brian Hauss        *Pro Hac Vice*
        125 Broad Street, Floor 18
        New York, NY 10004
        Phone: (212) 549-2500
        Fax: (212) 549-2654
        bhauss@aclu.org

        and

        **SPENCER FANE LLP**
        s/ Madison A. Perry
        Leslie A. Greathouse        KS # 18656
        Patrick McInerney        KS # 22561
        Madison A. Perry        KS # 27144
        Olawale O. Akinmoladun        KS # 25151
        1000 Walnut Street, Suite 1400
        Kansas City, MO 64106
        Phone: (816) 474-8100
        Fax: (816) 474-3216
        lgreathouse@spencerfane.com
        pmcinerney@spencerfane.com
        mperry@spencerfane.com
        wakinmoladun@spencerfane.com

        *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

      I hereby certify that on the 19th day of January 2024, a copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record.

        s/Kunyu Ching
        Attorney for Plaintiffs