IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BLAINE FRANKLIN SHAW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-1343-KHV |
| | ) | |
| ERIK SMITH, in his official capacity as the Superintendent of the Kansas Highway Patrol, DOUGLAS SCHULTE and BRANDON MCMILLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| MARK ERICH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 20-1067-KHV |
| | ) | |
| ERIK SMITH, in his official capacity as the Superintendent of the Kansas Highway Patrol, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on <u>Plaintiffs' Amended Motion For Attorneys' Fees And Non-Taxable Costs</u> (Doc. #622 in No. 19-1343) and <u>Plaintiffs' Amended Motion For Attorneys' Fees And Non-Taxable Costs</u> (Doc. #157 in No. 20-1067), both filed March 4, 2024. Specifically, plaintiffs Blaine Shaw, Samuel Shaw, Joshua Bosire, Shawna Maloney and Mark Erich seek attorney fees and costs in the total amount of $3,010,931.08 against defendants Douglas Schulte, Brandon McMillan and Erik Smith in his official capacity as Superintendent of the Kansas

Highway Patrol ("KHP").[1]  The following table represents the total fees and costs that plaintiffs request in their amended motion:

|  | **Plaintiffs' Requested Award** |
|---|---|
| Attorney Fees – Bench Trial | $634,503.85 |
| Attorney Fees – Jury Trials | $2,013,278.95 |
| Non-Taxable Costs – Bench Trial | $231,733.44 |
| Non-Taxable Costs – Jury Trials | $131,414.84 |
| **Total** | **$3,010,931.08** |

Plaintiffs request that the fees and costs attributable solely to the bench trial—$634,503.85 in attorney fees and $231,733.44 in non-taxable costs—be held in abeyance pending appeal. Plaintiffs do not explain this request except to argue in conclusory terms that such an approach would advance "the interest of judicial economy."  Memorandum In Support Of Plaintiffs' Motion For Attorneys' Fees And Litigation Expenses (Doc. #623) filed March 4, 2024 at 2.  The Court perceives no advantage to holding the bench trial issues in abeyance and proceeds to address plaintiffs' motion in full.  For reasons stated below, the Court sustains plaintiffs' motion in part and overrules it in part.

### Legal Standard

In an action under 42 U.S.C. § 1983, the Court has discretion to grant reasonable attorney fees to the prevailing parties as part of costs.  42 U.S.C. § 1988(b).  For purposes of Section 1988, plaintiffs prevail when "actual relief on the merits of [their] claim[s] materially alters the legal relationship" between the parties by modifying defendants' behavior in a way that directly benefits plaintiffs.  Verlo v. City & Cty. of Denver, 789 F. App'x 709, 712 (10th Cir. 2019) (citations

---

[1] Schulte and McMillan did not respond to plaintiffs' amended motion for attorney fees and non-taxable costs.  Accordingly, the Court only addresses the objections by Smith.

omitted).

"Relief on the merits" occurs when plaintiffs "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. (citations omitted). Section 1988 does not distinguish between actions for injunctive relief and actions for damages. Lefemine v. Wideman, 568 U.S. 1, 5 (2012). Injunctive relief, compensatory damages and nominal damages may all support an award of fees under Section 1988. Id.; see also Farrar v. Hobby, 506 U.S. 103, 112 (1992) (plaintiff is prevailing party when awarded nominal damages).

A "material alteration" of the parties' legal relationship occurs when "there is judicial imprimatur on the change." Verlo, 789 F. App'x at 712. "The requisite judicial imprimatur can be in the form of an enforceable judgment on the merits, a court-ordered consent decree, or a judicially enforceable settlement." Id. at 712–13. Such action by the Court, along with plaintiffs obtaining relief on the merits, confers prevailing party status on plaintiffs. Id. at 713.

## Factual And Procedural Background

The factual background underlying the parties' dispute is set forth in detail in the Court's Memorandum And Order And Order To Show Cause (Doc. #539) filed July 21, 2023.[2]

Highly summarized, plaintiffs Blaine Shaw, Samuel Shaw, Joshua Bosire, Shawna Maloney and Mark Erich filed suit under 42 U.S.C. § 1983 against Colonel Herman Jones in his official capacity as Superintendent of the KHP and the individual troopers who conducted their traffic stops, alleging violations of the Fourth Amendment rights. See First Amended Complaint (Doc. #7) filed January 30, 2020.

Samuel Shaw settled his damage claim against Schulte prior to trial. The Court entered the

---

[2]  Unless otherwise indicated, all docket citations are to Case No. 19-1343.

parties' stipulated consent judgment on January 13, 2023. See Consent Judgment As To Samuel Shaw's Claim Against Douglas Schulte (Doc. #366). The consent judgment waived any claim for attorney fees and costs related to Samuel Shaw's damage claim against Schulte; it did not waive any claim for attorney fees and costs as to the claim for injunctive relief against Jones. Id. at 3.

In February of 2023, the Court conducted a three-day jury trial on Blaine Shaw's damage claim against Schulte. The jury found that Schulte lacked reasonable suspicion to extend Shaw's detention and awarded him $1.00 in nominal damages. See Verdict (Doc. #438) filed February 8, 2023 at 1–2. In April of 2023, the Count conducted a four-day jury trial on Bosire's damage claim against McMillan. That jury determined that McMillan also lacked reasonable suspicion to extend Bosire's detention. See Verdict (Doc. #499) filed April 27, 2024. The jury awarded Bosire $20,163.70 in compensatory damages and $20,000 in punitive damages. Id. at 2.

Plaintiffs also brought claims for injunctive and declaratory relief against Jones in his official capacity. Jones retired on July 1, 2023, and the Court substituted Smith, the current KHP Superintendent, as defendant. On July 21, 2023, following a seven-day bench trial on plaintiffs' claims for injunctive and declaratory relief, the Court held that in violation of the Fourth Amendment and Vasquez v. Lewis, 834 F.3d 1132 (10th Cir. 2016), the KHP was responsible for a policy or practice which unlawfully detained motorists in Kansas (especially out-of-state motorists) without reasonable suspicion or consent, based on out-of-state residency and—to more than a minimal extent—based on travel plans that were not implausible or inherently contradictory. Memorandum And Order (Doc. #539) at 75. It also held that in violation of the Fourth Amendment, defendant was responsible for a policy or practice of using the so-called Kansas Two-Step to extend traffic stops of motorists in Kansas without reasonable suspicion and without their knowing, intelligent and voluntary consent. Id.

On November 20, 2023, the Court issued a permanent injunction.  See Permanent Injunction (Doc. #582).  Smith appealed.  See Notice Of Appeal (Doc. #585) filed December 15, 2023.  That appeal remains pending.

Plaintiffs now seek attorney fees and non-taxable costs.  See Plaintiffs' Amended Motion (Doc. #622).  Pursuant to Section 1988, plaintiffs request attorney fees in the amount of $2,647,782.80 and non-taxable costs in the amount of $363,148.28 against Schulte, McMillan and Smith.  Id.  In response, Smith has filed a three-page objection that plaintiffs billed an excessive number of hours on the cases.  See Defendant's Response To Plaintiffs' Amended Motion For Attorneys' Fees And Non-Taxable Costs (Doc. #626) filed March 19, 2024.

## Analysis

Defendants do not dispute that plaintiffs are prevailing parties and are entitled to attorney fees.  Further, defendants do not object to the hourly rates which plaintiffs request.  As noted however, Smith objects to the number of hours for which plaintiffs seek fees.  Specifically, Smith asserts that plaintiffs' counsel overstaffed and overworked these cases.  Accordingly, Smith requests that the Court reduce plaintiffs' fees by at least 50 per cent.

As noted, in an action under Section 1983, the Court has discretion to grant reasonable attorney fees to the prevailing parties.  42 U.S.C. § 1988(b).  To determine whether a fee request is reasonable, the Court first calculates the lodestar amount by multiplying the reasonable hourly rate by the hours that counsel reasonably spent litigating.  Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1176 (10th Cir. 2010).  If parties seek compensation for services by non-lawyers, such as legal assistants or student law clerks, the Court must scrutinize the reported hours and suggested rates in the same manner.  Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan., 157 F.3d 1243, 1249 (10th Cir. 1998).  The parties who seek fees bear the burden of establishing

entitlement to an award and documenting the appropriate hours and hourly rates.  United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000).  If they do so, the Court presumes that the lodestar figure is a reasonable fee.  Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

Initially, the Court notes that plaintiffs' counsel was extremely capable and well prepared, and attained excellent results.  The Court specifically commends plaintiffs' lead counsel, Sharon Brett and Patrick McInerney, for exceptional work at all three trials.  They and their litigation team achieved great success at the three trials and demonstrated outstanding integrity, practicality, preparation and diligence in litigating this matter.

A. Reasonable Rate

To determine whether billing rates are reasonable, the Court establishes a rate for each lawyer based upon the norm for comparable private firm lawyers in the area, which the Court calculates at the time of the fee award.  Fish v. Kobach, No. 16-2105-JAR, 2018 WL 3647132, at *6 (D. Kan. Aug. 1, 2018) (citations omitted).  The Court also applies this framework to non-lawyer assistants, such as paralegals and law students.  See Case, 157 F.3d at 1255 (court scrutinizes suggested rates for legal assistants in same manner as lawyers).

Plaintiffs seek the following hourly billing rates:[3]

| Plaintiffs' Attorney | JD Class | Plaintiffs' Requested Rate |
|---|---|---|
| Sharon Brett | 2012 | $400 |
| Kunyu Ching | 2013 | $350 |
| Brian Hauss | 2011 | $350 |
| Joshua Pierson | 2012 | $350 |
| Lauren Bonds | 2013 | $350 |

---

[3] Plaintiffs are not requesting fees for various staff, paralegals and law school interns who worked on the cases.

| Kayla DeLoach | 2018 | $225 |
|---|---|---|
| Zal Schroff | 2017 | $195 |
| Leslie Greathouse | 1991 | $493 (2020)[4] |
| | | $518 (2021) |
| | | $569 (2022) |
| | | $612 (2023) |
| Patrick McInerney | 1990 | $510 (2020) |
| | | $535 (2021) |
| | | $591 (2022) |
| | | $630 (2023) |
| Olawale O. Akinmoladun | 2010 | $450 |
| Madison Perry | 2015 | $289 (2020) |
| | | $319 (2021) |
| | | $374 (2022) |
| | | $408 (2023) |
| Daniel Nelson | 2002 | $467.50 |
| Andrew Lester | 1981 | $476 (2021) |
| | | $522.76 (2022) |
| Esmie Tseng (Paralegal) | N/A | $100 |
| Alyssa Seacat (Paralegal) | N/A | $127 (2020) |
| | | $144 (2021) |
| | | $153 (2022) |
| | | $170 (2023) |
| Ron Griffin (Paralegal) | N/A | $255 |
| Noam Schemtov (Paralegal) | N/A | $100 |

Memorandum In Support (Doc. #623) at 17–18, 24.

Defendants do not challenge the above-listed rates, and the Court finds that they are

---

[4] The hourly rates for Greathouse, McInerney, Perry, Lester and Seacat increased year over year during their work on the case.

reasonable rates in the Kansas City legal community for similar services by lawyers of comparable skill, experience and reputation. The Court therefore finds that plaintiffs have established the reasonableness of the hourly rates which they request for all counsel and paralegals.

B. Reasonable Hours

Having established the reasonableness of the requested rates, the next step in calculating the lodestar is to determine the number of hours that counsel for plaintiffs reasonably expended on the litigation. Id. at 1249. Work is reasonable if it is "useful and of a type ordinarily necessary to secure the final result obtained." Johnson v. City of Tulsa, Okla., 489 F.3d 1089, 1107 (10th Cir. 2007) (citation omitted). In reviewing whether the hours were necessary, the Court considers the following factors: "(1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers." Robinson, 160 F.3d at 1281 (citation and internal quotation marks omitted).

Having litigated these cases since 2019, plaintiffs request fees for 6,740.70 hours of work between 13 attorneys and four paralegals spread across three offices: the American Civil Liberties Union ("ACLU") of Kansas, ACLU National and Spencer Fane LLP. In support of their request, plaintiffs have submitted Brett's affidavit, Declaration Of Sharon Brett In Support Of Plaintiffs' Application For Fees And Costs (Doc. #623-1), and detailed time records for all timekeepers.

Smith argues that plaintiffs overstaffed the cases and had multiple attorneys billing on the same day, resulting in duplicative time and excessive fees. While it is not per se unreasonable to have many timekeepers on a case, the Court carefully reviews whether the number of timekeepers on a case implicates potential inefficiencies. M.B. v. Howard, 555 F. Supp. 3d 1047, 1076 (D.

Kan. 2021). Indeed, in cases staffed with multiple attorneys across distinct organizations, inherent inefficiencies arise. Id. at 1077 (reducing plaintiffs' hours given inherent inefficiencies of 25 attorneys across five organizations). In their motion for attorney fees, plaintiffs represent that by dividing their work, counsel worked diligently to avoid duplicative labor. Even so, the billing records reflect inefficiencies that are consistent with overstaffing.

For example, throughout this litigation, ACLU and Spencer Fane attorneys had various team conference calls, sometimes weekly, for which numerous individuals submitted time. On June 10, 2021, plaintiffs had a "team litigation call" and seek fees for five attorneys and one paralegal. See Exhibit C (Doc. #623-3) at 15; Exhibit H (Doc. #623-8) at 19–20. On the team calls that occurred on June 17 and June 24, 2021, at least four attorneys and one paralegal participated in each. Id. While the Court recognizes the positive effect of collaboration, the Court can reduce hours for duplicated conferences and inter-office and intra-office meetings when the request is for "excessive time." United States ex rel. Awad v. Coffey Health Sys., No. 16-2034-CM-JPO, 2019 WL 6910280, at *3 (D. Kan. Dec. 19, 2019). Indeed, here, the total time for team meetings is not the kind of bill that "a senior partner in a private law firm" would send to a client. See Robinson, 160 F.3d at 1281.

Various status conferences, hearings and trials provide another example of overstaffing. For example, five attorneys attended the Rule 26(f) conference with opposing counsel. Exhibit C (Doc. #623-3) at 5; Exhibit H (Doc. #623-8) at 4. For Shaw's three-day jury trial, plaintiffs request fees for 261.71 hours for six attorneys and three paralegals. Exhibit C (Doc. #623-3) at 35; Exhibit F (Doc. #632-6) at 6; Exhibit H (Doc. #623-8) at 56–57. For Bosire's four-day jury trial, plaintiffs request fees for 266.75 hours for five attorneys and two paralegals. Exhibit C (Doc. #623-3) at 39–40; Exhibit H (Doc. #623-8) at 61–62. Finally, for the seven-day bench trial, plaintiffs request

fees for 411.85 hours for seven attorneys and one paralegal. Exhibit B (Doc. #623-2) at 12–13; Exhibit E (Doc. #623-5) at 4; Exhibit G (Doc. #623-7) at 11–14. A paying client would not expect to bear such fees, and a prudent lawyer would not bill them.

The Jones deposition also exemplifies overstaffing. In advance of the deposition on October 6, 2021, six attorneys and one paralegal billed time preparing for the deposition and participating in multiple team conference calls. Exhibit B (Doc. #623-2) at 2; Exhibit H (Doc. #623-8) at 27–28. This deposition was admittedly important, but preparation time for this single deposition totaled more than 20 hours. Id. Moreover, three attorneys (Brett, Perry and McInerney) attended the deposition and each billed for travel time. Id.

Although the Court highlights these specific examples, plaintiffs' request includes numerous other inefficiencies which are unavoidable when 13 attorneys and four paralegals across three offices jointly litigate a case. Faced with a similar problem of overstaffing in M.B. v. Howard, the Honorable Daniel D. Crabtree reduced plaintiffs' hours by 20 per cent. M.B., 555 F. Supp. 3d at 1077. Here, defendant requests a reduction of 50 per cent.

Because the billing records reveal duplicative entries, the Court reduces plaintiffs' total number of hours by 25 per cent. The record could arguably support a somewhat higher discount, but the Court finds that this reduction is reasonable in light of the factual complexity of the three trials, the number of plaintiffs and witnesses and the litigation strategies (including interlocutory appeals) which defendants pursued.

C.     Lodestar Calculation

Based on the Court's above findings, it calculates a total lodestar of $1,985,837.10 (75 per cent of plaintiffs' fee request of $2,647,782.80).

For the bench trial, plaintiffs request fees for 1,658.99 hours. The Court reduces this

amount by 25 per cent, which equals 1,244.2425 hours. Multiplied by the reasonable hourly rates, the lodestar for the bench trial is $475,877.89. For the jury trials, plaintiffs request fees for 5,081.71 hours. The Court reduces this amount by 25 per cent, which equals 3,811.2825 hours. Multiplied by the reasonable hourly rates, the lodestar for the jury trials is $1,509,959.21. The following table summarizes the Court's lodestar calculation:

|  | **Lodestar** |
| --- | --- |
| Attorney Fees – Bench Trial | $475,877.89 |
| Attorney Fees – Jury Trials | $1,509,959.21 |
| **Total** | **$1,985,837.10** |

D.   Enhancement Of Lodestar

The Supreme Court has explained that because the lodestar figure includes "most, if not all, of the relevant factors constituting a reasonable attorney's fee," the lodestar is a presumptively reasonable fee. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010) (citations omitted). Accordingly, the Court can only enhance the lodestar figure in rare circumstances where it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id.; see Anchondo v. Anderson, Crenshaw & Assocs., L.L.C., 616 F.3d 1098, 1102 (10th Cir. 2010). In Perdue, the Supreme Court specifically held that only in "rare and exceptional" circumstances does the lodestar figure not adequately account for "superior attorney performance." Perdue, 559 U.S. at 554.

In considering whether to adjust the lodestar, courts typically consider the following:

(1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and

(12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989).

Plaintiffs request that the Court approve an upward adjustment of the lodestar for four reasons: (1) counsel spent significant time and resources for which the lodestar cannot fully account, including defendants' refusal to make timely settlement offers and defendants' inability to produce accessible and searchable documents in discovery; (2) counsel accepted the difficulties inherent in litigating these cases which involved complex legal issues; (3) counsel has extensive experience litigating police misconduct cases and displayed thorough preparation and professionalism throughout; and (4) counsel took these cases despite their undesirability and, for the attorneys at Spencer Fane, spent time litigating the case in lieu of paid client work.  Plaintiffs do not propose a specific number or per cent for an upward adjustment of the lodestar.

Plaintiffs' arguments are not persuasive.  Addressing the first and third arguments, the Supreme Court has made clear that under Section 1988, courts cannot adjust the lodestar figure based on factors which the figure already addresses.  See Perdue, 559 U.S. at 553 (court should not adjust lodestar based on novelty and complexity of case or quality of attorney performance). Here, the Court has already accounted for the length of the litigation, the expertise of plaintiffs' attorneys, defendants' refusal to make timely settlement offers and time incurred in document discovery.  As to plaintiffs' second argument, Section 1983, the Fourth Amendment and qualified immunity are legal issues which are complex, but not novel.  Plenty of case law and scholarship exists on these issues, and counsel have extensive experience litigating such matters.  Again, the requested hourly rates take into account the skill level and experience necessary to take on this matter.  Finally, as to plaintiffs' fourth argument, these cases are not necessarily undesirable and

even so, the lodestar adequately reflects any purported undesirability and properly compensates counsel for any trade-offs made in pursuing this litigation in lieu of paid client work, billable by the hour and payable in advance.

For these reasons, the Court awards the lodestar amount of $1,985,837.10 with no enhancement.

|  | **Attorney Fee Award** |
| --- | --- |
| Attorney Fees – Bench Trial | $475,877.89 |
| Attorney Fees – Jury Trials | $1,509,959.21 |
| **Total** | **$1,985,837.10** |

### E. Non-Taxable Costs

In addition to attorney fees, the prevailing party is entitled to recover reasonable non-taxable litigation costs that are usually itemized and billed separately, as long as the costs are reasonable. See Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997). Plaintiffs request $363,148.28 in non-taxable litigation costs for all three trials, including expenses for travel, lodging, food, expert witness fees, photocopying, legal research, filing fees, service of process fees and mediation costs. Defendants do not challenge this request.

Accordingly, the Court sustains plaintiffs' motion for non-taxable costs and awards plaintiffs $363,148.28 in non-taxable costs.

|  | **Non-Taxable Costs Award** |
| --- | --- |
| Non-Taxable Costs – Bench Trial | $231,733.44 |
| Non-Taxable Costs – Jury Trials | $131,414.84 |
| **Total** | **$363,148.28** |

**IT IS THEREFORE ORDERED** that Plaintiffs' Amended Motion For Attorneys' Fees And Non-Taxable Costs (Doc. #622 in No. 19-1343) and Plaintiffs' Amended Motion For

Attorneys' Fees And Non-Taxable Costs (Doc. #157 in No. 20-1067), both filed March 4, 2024, are **SUSTAINED in part** and **OVERRULED in part.  Defendants Douglas Schulte, Brandon McMillan and Erik Smith in his official capacity as Superintendent of the Kansas Highway Patrol shall pay plaintiffs $1,985,837.10 in attorney fees and $363,148.28 in non-taxable costs. The Court directs the Clerk to enter judgment for the awarded amount in attorney fees and costs.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Attorneys' Fees And Non-Taxable Costs (Doc. #584 in No. 19-1343) and Plaintiffs' Motion For Attorneys' Fees And Non-Taxable Costs (Doc. #131 in No. 20-1067), both filed December 5, 2023, are **OVERRULED as moot**.

Dated this 12th day of April, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge