FILED
U.S. District Court
District of Kansas

SEP 18 2024

Clerk, U.S. District Court
By_____ Deputy Clerk

to ksd_vratil_chamber

**Good Afternoon Honorable Judge Vratil**

My name is Jasmine Tipton, and I am reaching out to bring to your attention a recent incident in which I believe my rights were violated by the Kansas Highway Patrol. Upon conducting research, I learned that you are the presiding judge overseeing the cases involving the Kansas Highway Patrol's violations of the two-step stop rule.

I have attached a detailed account of my experience for your review. I would greatly appreciate any guidance or consideration you can provide regarding this matter.

**Report on Violation of Kansas Highway Patrol Two-Step Rule**

**Date:** September 02, 2024
**Incident Date:** August 30, 2024
**Location:** Salina, Kansas
**Time:** Approximately 10:00 AM
**Involved Officer:** Officer Voss (or Officer Voult)

**Background:**
On August 30, 2024, I was subject to a traffic stop by the Salina Kansas Highway Patrol while driving on I-70 near Salina, Kansas. The stop was initiated under the pretext of a window tint violation. However, the subsequent actions of Officer Voss indicate a clear violation of the two-step rule established by the Kansas Highway Patrol, a rule emphasized in the recent injunction by Honorable Judge Kathryn Vratil.

**Details of Incident:**

On August 30, around 10 AM, I was stopped by a Salina Kansas Highway Patrol officer named Voss (or Voult). I was driving in the right lane when the highway patrol vehicle began driving erratically in the left lane behind me. The officer kept speeding up and slowing down in my blind spot. He then pulled up on the driver [~~passenger~~] side of my car, looked in, and slowed down, preventing me from merging over as I was stuck behind an 18-wheeler. The patrol car eventually got behind me and turned on its lights. I pulled over to the side.

Officer Voss walked up to the passenger side window and asked, "Do you know why I pulled you over?" I responded, "Was it because I hesitated to merge over, but I couldn't because you were in my blind spot, like you were going to pass me, but then kept slowing down and speeding up?" He laughed and said, "No, I noticed your tint; it is darker than the legal limit." I replied, "It can't be. I took this car to a professional to tint it to the legal limit, and I've had this car for two years with no issue."

on Sept. 3 took it to be tested/ windows tested at 30%. on Sept. 4 they were tested at a different shop/ 7 tested at 32 also.

He had a tint meter with him and tested the front, saying it measured 27%. Then he tested the back, which he said measured 29%. He commented that the back was a lot better than the front. He said the limit in Kansas is 35%. I told him I wasn't sure of the percentage, but I knew I had it professionally done two years ago, and they said they could only tint to the legal limit, and I've never been pulled over for it before.

He then said, "Well, I'm going to give you a warning, and you can take that to the company and let them know." I thanked him, explaining that I had never been bothered about it before because it should be within the legal limit. He replied, "Well, it's not, but I will give you a warning for this." He then told me I could take the warning to where I got my windows tinted to let them know it's against the limit. I said, "Thank you, I will do that."

He then asked for my car insurance and registration. I handed him my registration, and while I was pulling up the insurance on my phone, he started asking where I was coming from. I told him I was coming from Colorado, and his demeanor changed—he perked up. Then he started asking me how long I was there, who I saw while I was there, where I work, how I got off work to travel, what I did while in Colorado, and who I saw there. I answered his questions and then showed him my car insurance on my phone.

The officer then said, "Okay, like I said, I'm going to check this out, and if everything comes back okay, I'll give you a warning and let you go on your way." I said, "Okay, thank you." He then said, "Oh, here, take your registration." I took it and thanked him. He walked away from the car but still had my driver's license. I put my registration back in the envelope and the envelope back in the glove box. The officer was already back at my driver's side window so quickly.

I said, "Wow, that was quick." He said, "Oh yeah." Then he asked, "Do you mind coming over to my car to answer a few questions? I need to fill out your warning." I said, "Huh?" He replied, "I don't want to get hit standing here asking you the questions." I then said, "Well, I don't want to get hit answering any questions standing outside your car." He said, "There are just a few questions to fill out the warning, and I will stand on the other side of my car," on the outside. He showed me where you [to stand].

I was not comfortable with it, but he still had my ID, and it didn't seem as if I had a choice. He told me where to stand, got in his car, and I stood outside. He started asking me all the same questions again, focusing on where I was coming from, how long I was in Colorado, where I lived, where I worked, and how often I travel to Colorado. I answered the questions, but I finally asked, "Wow, you need all this information for a warning?" He said, "Yes." At this point, I became irritated and short with my responses. He finally said, "Okay," and got out of the car. I asked, "Hold on, where is the warning, and I need my ID."

He walked over to me and said, "So, I smell weed in your car." I said, "No, you don't, or you would have said that a long time ago. There is no weed in my car." He said, "Look, I

smell it." I said, "No, you pulled me over for tint, and now you're talking about smelling weed, which is a lie. You're saying that because I said I'm coming from Colorado." He said, "I smell it in your car and on you." We went back and forth about it—I said no, he said yes.

He asked to search my car. I told him no. He said he was going to search it anyway because he smells weed and claimed he could smell it in my hair (I have locs). I said, "There is no weed in my car; you do not smell weed in my car." He insisted he was going to start searching. At this time, another highway patrol officer arrived and moved me to the front of my car while the other officer started searching. The new officer began asking me a bunch of questions. I answered a few, but then I stopped. He then asked, "Why are you being short and defensive all of a sudden?"

I responded, "Because I just answered all these questions for the other officer. He pulled me over for tint, but as soon as I said I was from Colorado, he started acting funny and now is searching my car without my permission. You walked past my car; did you smell weed?" That officer said, "No, but you are acting nervous and paying a lot of attention to the other officer." I repeated, "Because he pulled me over for my tint, and now he is searching my car without my permission."

The officers searched the inside of my car and then the trunk. Officer Voss called the second officer over to the trunk, and they talked. They then came to me and told me I was now under arrest and that they were putting me in the patrol car. They handcuffed me behind my back and put me in the front seat. Both officers then went back to searching my car. I saw Officer Voss swiping through my phone, which was on. I was yelling from the patrol car that he did not have my permission to go through my phone. He continued scrolling, bending out of sight but clearly still going through it.

Officer Voss got back in the patrol car and asked, "What were you saying? I didn't hear you." I said, "You do not have permission to go through my phone; you need a warrant for that." He replied, "I don't for what's already in sight on your phone." I told him again, "You do not have permission to go through my phone, and I want to lock my phone or turn it off. Once you get your warrant, then you can scroll." He laughed and said no.

The officer then started driving. I said, "My car keys and the windows are down." He said, "The car is seized and will be towed. They will roll the windows up." While driving on the highway, he used his knee to steer while typing on his computer. I told him to stop doing that as it is against the law and puts my life in jeopardy. He said, "No, being in possession of weed is against the law." The officer then started texting with both hands while driving with his knee on the highway. I told him to stop texting and driving because it's against the law and unsafe. He said it's not against the law for him and kept texting and driving. He said, "You were so friendly before; let's get back to that." I responded, "Yes, I was when you pulled me over for my tint, but then you violated my rights."

I told him again I wanted my phone locked after I got a number to call my mom or sister. He said no, that my phone had been seized. I told him he couldn't do that and that he needed to lock my phone if he didn't have a warrant. He refused. This entire time, the screen on my phone was on and open. I asked him if he had body cameras, and he laughed and said no. I said, "So we will be fighting this in court." I added, "And that makes you feel good, to not be held accountable for violating people's rights." Then I asked if the camera in the car was on. He said yes. I said, "Good, then they got you scrolling through my phone."

I told him, "You stopped me for tint, but when I said I was from Colorado, you perked up and wanted to search my car. But you stopped me for tint and said I would get a warning." He said, "But I smelled weed." I said, "No, you didn't, or you would have said that when you first walked up to the car. That's a violation of the two-step rule." Voss then asked, "Are you a lawyer or something?" I replied, "No, I just know my rights, and it has been all over the news about the lawsuit." He then got frustrated and continued texting on his phone.

We arrived at the highway patrol building, and I asked him if this was the jail. He said no, that he had to do paperwork and someone wanted to talk to me. I told him I didn't have anything to say and to just take me to the jail. He said no, that they wanted to talk, and that he was in charge—I didn't dictate what happened. We went inside, and he put me in a room. He kept tapping my phone to keep it open, sitting me at the table while he sat on the other side. He pulled out all his stuff and started texting, then picked up my phone and continued scrolling. I told him to stop, that he couldn't do that. He told me to calm down and said I was no longer in charge. I told him to lock my phone, but he refused.

He then said he was going to uncuff me. I said okay. He uncuffed me, and I grabbed my phone, gripping it to hit the lock button or the power button. I never moved or got out of the chair, but Officer Voss jumped on top of me in the chair, hitting me as we rolled back some. He then slammed my body into a filing cabinet, hitting me in the head, causing my face to hit the desk. He was yelling at me to release the phone, saying he was going to "bust my fucking face open." I said I did release the phone, that I just wanted to lock it. He was still on top of me when a lady officer came in and grabbed my arms, telling me to stop. I said, "You have my hands; I don't have anything." She told him to back off and then cuffed me again. She said she was going to call an ambulance, but Voss said no. The lady officer asked what happened to my face. He said nothing. She insisted, saying I was bleeding and that she was going to call the ambulance.

I was crying and told her that he attacked me. Voss said, "Yes, you were trying to delete things in your phone." I said, "No, that is not true. I grabbed it to lock it because you were violating my rights by going through my phone." He said, "You had a grip on it, so I was going to fucking beat your head in." I said, "Yes, I grabbed it to hit the lock on the side. You can't delete items with one hand."

The EMTs came and checked my eye—it was swollen and scratched. They bandaged my arm, which was scratched deeply and bleeding. My ear was red and hurting, so they checked that too. My back was sore, but they didn't check that. I then signed a form for them. I asked if they could take photos, and the lady officer said no, but they would. The EMTs left, and the lady officer left. Another officer came in with Voss. I hadn't seen this officer before. He asked me random questions and then left. The second officer from the stop came into the room. I asked him if he was the officer from the highway. He said yes and asked if we were still cool. I said yes, everyone was just doing their job, and I didn't want any more problems after already being attacked.

He said, "I smell like you." I said, "Huh?" He laughed and said my perfume smelled like my car. He asked if I had sprayed perfume or spilled it in the car. I said no, that there was a diffuser in my car. He said it smelled so good, asking again if I was sure I hadn't spilled any perfume because it was wet. I said no, there was a diffuser that puffed out a constant mist of essential oil, so it could get wet. He asked the name of it, and I told him I thought it was Black Orchid. He then asked, "So it's not a perfume?" I said, "No, it's a car diffuser I got from Temu; it lights up. You put in a mix of essential oil and water, and it sends out a constant liquid mist." He said that's all he could smell in the car, like I had spilled it and it was wet, but it smelled really good. I told him it was funny he said that because the other officer said my car smelled like weed.

Voss laughed. I asked the second officer if I could get a number out of my phone to let someone know where I was since I didn't live there. He said yes, we could do that. He went to get the phone from Voss, but Voss said no, that I had lost that privilege when I locked the phone. I got upset and kept saying I needed to let someone know where I was. They couldn't keep me for hours without letting me tell someone. They kept me there for hours after I told them I was ready to be taken to the jail and booked. Then someone from the DEA in Wichita came. He said he wanted to take me to a room to talk. I said I had nothing to say as I had already given my information to the officer. He said, "Well, that's for his investigation, and this is for mine." I told him again that I didn't have anything to say. He got upset, flashed his badge, and said, "I'm DEA, and I need you to answer some questions. Why are you being so difficult? I just need your name and that type of information." I said, "Look, I just gave him all of that information. I understand you drove up here from Wichita, but I told him hours ago that I didn't want to talk to anyone, but that officer still called you."

I told the second officer I didn't want to talk to anyone. The agent then asked, "Voss, did you hear that?" Voss said yes, but it didn't matter; he was already on his way. The agent then said, "If you're upset, be upset with that officer." The agent then asked me to please just give him some of my basic information. I agreed and gave him my name, birthdate, social security number, and address. I then asked him if I could get some phone numbers out of my phone so I could let someone know where I was. I told him the other officer had been going through my phone and wouldn't give me a number. I explained that I went to lock it because he was scrolling through my GPS screen. The agent said the officer shouldn't have done that and that he would go check it out. He agreed to hold the phone and let me unlock it. He looked away while I unlocked my

phone and let me get three numbers out of it. I then asked if he would lock it back or turn it off. He said he wouldn't turn it off but would lock it back and wait until he got a warrant because he wanted to do it the right way. He couldn't get the phone to lock after several tries, so he put the phone in an evidence bag. He then stated he knew I wasn't the person he wanted, that I was a small fish. I told him I still didn't have anything to say. Then Voss and an intern transported me to the Salina jail. It was about 3:30 PM when I arrived at the Saline County Jail.

**Violation of Two-Step Rule:**
The Kansas Highway Patrol's two-step rule, as highlighted in the recent ruling by Judge Kathryn Vratil, is designed to protect motorists' constitutional rights by ensuring that stops are not improperly prolonged. According to the injunction issued by Judge Vratil following the ACLU of Kansas's lawsuit, officers are required to document all stops and any searches that occur after a stop has legally ended.

In this instance, Officer Voss extended the stop without justification by shifting from the initial reason for the stop (window tint) to a baseless claim of detecting marijuana. This action was a clear violation of the two-step rule, as the stop was prolonged beyond its legitimate purpose without proper cause or consent.

**Conclusion:**
The actions of Officer Voss on August 30, 2024, directly violated the two-step rule as outlined in Judge Vratil's injunction. The officer's failure to inform me that the stop was over, combined with the unauthorized search of my vehicle and the invasive questioning, constituted an infringement on my constitutional rights. I respectfully submit this report for review and request that appropriate actions be taken to address this violation.

Thank you for your time and attention to this serious issue.

**Sincerely,**
Jasmine Tipton
~~(785)210-9470~~
(645)216-6423
hebebyjasmine@gmail.com